# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-00109-MR |
| v. | ) ) | |
| AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF OPTUMHEALTH CARE SOLUTIONS, INC.'S MOTION TO DISMISS THE COMPLAINT

Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Brian D. Boone (NC Bar No. 38910)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
mark.calloway@alston.com
michael.hoernlein@alston.com
brian.boone@alston.com

*Counsel for Defendant OptumHealth Care Solutions, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ............................................................... 1

BACKGROUND ................................................................. 5

STANDARD OF REVIEW ..................................................... 7

ARGUMENT .................................................................... 8

    I.     THE RICO CLAIMS FAIL AT EVERY POINT IN THE
          ANALYSIS .......................................................... 8

         A.  Peters has not pleaded fraud with Rule 9(b) particularity ................... 9

         B.  Peters has not plausibly alleged a criminal enterprise ...................... 11

         C.  Peters has not plausibly alleged Optum's operation or
            management of a criminal enterprise ................................. 12

         D.  There are no particularized allegations giving rise to a
            strong inference of fraudulent intent ................................ 13

         E.  There are no plausible allegations of a RICO "pattern" ................... 14

         F.  There are no plausible allegations of a RICO conspiracy ................. 16

    II.    THE ERISA CLAIMS FAIL BECAUSE OPTUM IS NOT
          AN ERISA FIDUCIARY ....................................... 17

CONCLUSION ................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. The Brink's Co.*,
   420 F. Supp. 2d 523 (W.D. Va. 2006)............................................................18

*United States ex rel. Ahumada v. NISH*,
   756 F.3d 268 (4th Cir. 2014)..........................................................................9

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
   217 F.3d 225 (4th Cir. 2000)..............................................................4, 14, 15

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*,
   14 F. Supp. 3d 619 (E.D. Pa. 2014)..............................................................20

*Am. Dental Ass'n v. CIGNA Corp.*,
   605 F.3d 1283 (11th Cir. 2010).............................................................*passim*

*Ambrosia Coal & Constr. Co. v. Pages Morales*,
   482 F.3d 1309 (11th Cir. 2007).......................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................2, 7

*Bailey v. Atl. Auto. Corp.*,
   992 F. Supp. 2d 560 (D. Md. 2014)...............................................................15

*Baker v. Big Star Div. of the Grand Union Co.*,
   893 F.2d 288 (11th Cir. 1989)........................................................................18

*Baxter v. C.A. Muer Corp.*,
   941 F.2d 451 (6th Cir. 1991)..........................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................*passim*

*Benard v. Hoff*,
   727 F. Supp. 211 (D. Md. 1989) ....................................................................12

*Boyle v. United States*,
   556 U.S. 938 (2009).......................................................................................11

ii

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)......................................................................................10

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    No. 95-cv-405, 1995 WL 931702 (S.D. Fla. Sept. 22, 1995), *aff'd*
    116 F.3d 1364 (11th Cir. 1997) (per curiam)......................................................2

*Confer v. Custom Eng'g Co.*,
    952 F.2d 34 (3d Cir. 1991)...........................................................................18

*Continental Petroleum Corp. v. Corporation Funding Partners, LLC*,
    No. 11-cv-7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012).......................11

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
    102 F.3d 712 (4th Cir. 1996)........................................................................20

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009)........................................................................11

*Davis v. Wilmington Fin., Inc.*,
    No. 09-1505, 2010 WL 1375363 (D. Md. Mar. 26, 2010)................................9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)........................................................................14

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004)......................................................................3, 13

*Flip Mortg. Corp. v. McElhone*,
    841 F.2d 531 (4th Cir. 1988)......................................................................4, 15

*GE Inv. Private Placement Partners II v. Parker*,
    247 F.3d 543 (4th Cir. 2001)........................................................................16

*Geddes v. United Staffing Alliance Emp. Med. Plan*,
    469 F.3d 919 (10th Cir. 2006)......................................................................21

*Givens v. Am. Ben. Corp.*,
    No. 92-2005, 1993 WL 165002 (4th Cir. May 17, 1993) ...............................18

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998)......................................................................3, 13

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)....................................................................................14

*Hansen v. N. Trident Reg'l Hosp., Inc.*,
  60 F. Supp. 2d 523 (D.S.C. 1999) ...............................................................17

*Hayduk v. Lanna*,
  775 F.2d 441 (1st Cir. 1985) .........................................................................8

*HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*,
  101 F.3d 1005 (4th Cir. 1996)..................................................................5, 18

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
  134 S. Ct. 604 (2013) ...................................................................................19

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)......................................................................................8, 10

*Holmes v. Sec. Investor Protection Corp.*,
  503 U.S. 258 (1992)......................................................................................10

*Joseph P. Cunningham Pension Plan v. Mathieu*,
  No. 97-2230, 1998 WL 403324 (4th Cir. July 6, 1998) .................................18

*Korotynska v. Metro. Life Ins. Co.*,
  474 F.3d 101 (4th Cir. 2006) ........................................................................21

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008)......................................................................................21

*Lockheed Martin Corp. v. Boeing Co.*,
  357 F. Supp. 2d 1350 (M.D. Fla. 2005)........................................................12

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
  872 F.2d 80 (4th Cir. 1989)..........................................................................19

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985)......................................................................................21

*Menasco, Inc. v. Wasserman*,
  886 F.2d 681 (4th Cir. 1989).........................................................................15

iv

*Midwest Grinding Co. v. Spitz*,
   976 F.2d 1016 (7th Cir. 1992)....................................................................8

*MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*,
   No. 13-cv-60051, 2013 WL 1899689 (S.D. Fla. May 7, 2013) ........................20

*Rao v. BP Prods. N. Am., Inc.*,
   589 F.3d 389 (7th Cir. 2009)....................................................................11

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)........................................................................3, 12, 13

*Traber v. Mortg. Elec. Registration Sys., Inc.*,
   No. 1:11-cv-126, 2012 WL 4088865 (W.D.N.C. Aug. 6, 2012)......................10

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
   615 F.3d 312 (4th Cir. 2010)....................................................................15

*United States v. Turkette*,
   452 U.S. 576 (1981)................................................................................8

*Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993)...............................................................12, 13

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)...............................................................................21

*Vuyyuru v. Jadhav*,
   No. 3:10-cv-173, 2011 WL 1483725 (E.D. Va. Apr. 19, 2011)......................11

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012)................................................................4, 16

*Wilson v. Aetna Life Ins. Co.*,
   497 F. Supp. 2d 710 (M.D.N.C. 2007)........................................................18

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008)..................................................................2, 7

## Statutes, Rules, & Other Authorities

18 U.S.C. § 1961(4) ...............................................................................12

18 U.S.C. § 1962 *et seq*...................................................................*passim*

v

18 U.S.C. § 1964(c) ...................................................................................8, 10

29 U.S.C. § 1002(21)(A)(i), (iii) ...........................................................17

29 U.S.C. § 1132 *et seq.*...............................................................19, 20

29 C.F.R. § 2509.75-8 *et seq.*..............................................................5, 17

Federal Rule of Civil Procedure 9(b) ...........................................*passim*

Case 1:15-cv-00109-MR   Document 38   Filed 09/02/15   Page 7 of 30

## INTRODUCTION

This case is about the Explanations of Benefits (EOBs) that Aetna sent Sandra Peters after she received medical care. Peters contends that Aetna (the claims administrator for her plan) sent her misleading EOBs characterizing as medical expenses the fees that OptumHealth Care Solutions, Inc. charged Aetna for administrative services. *E.g.*, Compl. ¶¶ 2, 29. Optum did not create or send those EOBs, and it had no say in their content. It never communicated with Peters at all, much less in a misleading way. Peters alleges no facts suggesting otherwise. On the contrary, she alleges that Optum communicated only with her medical providers and did so "accurately." Compl. ¶ 29.

Yet despite all that, Peters claims that Aetna and Optum (1) violated RICO by forming a criminal enterprise to send the purportedly false EOBs and (2) breached fiduciary duties under ERISA by colluding to characterize the administrative fees as medical expenses. But Peters pleads no facts—*none*—suggesting that Optum did anything wrong. The Complaint describes the alleged misconduct as "collect[ing] administrative fees from Aetna insureds and plans by improperly characterizing them as payment for covered medical expenses." Compl. ¶ 74. Optum does not collect payments from Aetna insureds or characterize fees to Aetna insureds. For several independent reasons, the Complaint fails to state a claim against Optum.[1]

1. The RICO claims against Optum (Counts I and II) falter at every point in the analysis. Peters alleges no facts suggesting that Optum did anything wrong,

_____

[1] Today, Aetna filed a separate motion to dismiss raising other arguments against Peters's complaint. Instead of duplicating those arguments, Optum incorporates them by reference.

let alone carried on a criminal enterprise through a pattern of mail and wire fraud. She lumps Optum and Aetna together and alleges generically that "Defendants" committed fraud, but she fails to identify a specific Optum misstatement or misrepresentation.

Element by element, the RICO claims fail:

***No particularized allegations of fraud.*** Peters fails to plead mail or wire fraud with the particularity that Rule 9(b) requires. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)*; Am. Dental Ass'n v. CIGNA Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). She does not allege that Optum made an untrue statement to anyone. Instead, she lumps Optum and Aetna together and alleges in conclusory fashion that they committed mail and wire fraud. Rule 9(b) demands more. *See, e.g.*, *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, No. 95-cv-405, 1995 WL 931702, at *19 (S.D. Fla. Sept. 22, 1995) (rejecting RICO allegations because "Plaintiffs . . . simply 'lumped together' all of the Defendants in their allegations of fraud"), *aff'd* 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam).

***No RICO "enterprise."*** Peters alleges no facts plausibly suggesting that Optum carried on a criminal enterprise with Aetna that had a structure independent of their normal (and legitimate) business dealings. Peters pins an "enterprise" label on a routine business arrangement, but "labels and conclusions" do not state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

***No operation or management of any "enterprise."*** Neither has Peters alleged facts plausibly suggesting that Optum "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). Instead, she parrots the RICO statutory language, generically alleging that the "Defendants" (again, without differentiating between Aetna and Optum) "conducted and participated in the affairs of the enterprise." Compl. ¶¶ 76, 82. But merely reciting the statutory language does not sufficiently allege how Optum "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Reves*, 507 US. at 185 (emphasis in original). Stripped of RICO buzz words ("enterprise," "racketeering activity"), what remains are allegations that Optum served a "purely administrative role in claims processing and network management." Compl. ¶ 33. "[S]imply performing services for an enterprise, *even with knowledge of the enterprise's illicit nature*, is not enough to subject an individual to RICO liability under § 1962(c)." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (emphasis added).

***No particularized allegations of fraudulent intent.*** Peters also fails to "allege facts that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (emphasis in original, internal quotation marks and citation omitted). By Peters's own allegations, Optum served a "purely administrative role" (Compl. ¶ 33) and did not prepare or mail the EOBs that she claims were misleading. No factual allegations in the Complaint suggest that Optum had a motive to commit fraud. For good reason: It didn't. As the Complaint acknowledges, Aetna was required to pay Optum for its

services regardless of how Aetna characterized those fees in EOBs. *See* Compl. ¶ 26 (acknowledging that Optum is "entitled to an administrative fee from Aetna to cover its cost of processing the claim and administering the network on behalf of Aetna").

**No particularized allegations of a RICO "pattern."** Peters has not alleged predicate acts with Rule 9(b) particularity, so she necessarily has failed to allege the requisite "pattern" of racketeering activity. *See* 18 U.S.C. § 1962(c). This is a dispute between one insured and her plan, not the revelation of a sustained pattern of wide-ranging criminality. The Fourth Circuit is "cautious about basing a RICO claim on predicate acts of mail and wire fraud" and has "reserved RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (internal quotation marks and citations omitted). A benefits dispute does not pose a special threat to social well-being. *See Flip Mortg. Corp. v. McElhone,* 841 F.2d 531, 538 (4th Cir. 1988) (rejecting "pattern" allegations: "[T]his circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims.").

**No RICO conspiracy.** Peters's conspiracy claim under 18 U.S.C. § 1962(d) fails both because she has failed to allege a substantive RICO violation (*see Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012)) and because she has not alleged facts plausibly suggesting an illicit agreement. *See Twombly*, 550 U.S. at 556-57; *CIGNA Corp.*, 605 F.3d at 1293-95.

2. The ERISA claim against Optum is equally meritless. It hinges on Optum's owing Peters a fiduciary duty (Compl. ¶¶ 92-98), but Peters concedes that Optum

"serves a purely administrative role in claims processing and network management."
*Id.* at ¶ 33. Under Department of Labor regulations, "a person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a[n ERISA] fiduciary." 29 C.F.R. § 2509.75-8 D-2. That is the rule in the Fourth Circuit. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) ("Given Aetna's limited role in processing claims under the Plan and reading a computer screen to determine who is and who is not covered, it is clear that Aetna is not a fiduciary under the Plan.").

## BACKGROUND

1. Peters receives health benefits through an employee benefit plan established and funded by her husband's former employer Mars, Inc. Compl. ¶¶ 1, 4. Aetna is the "claims administrator" for that plan, responsible "for processing and adjudicating claims." *Id.* at ¶ 13.

Aetna subcontracted with Optum to manage a network of chiropractors and physical therapists who treat Aetna members on an in-network basis. Compl. ¶¶ 22-23. Providers who join the network enter into contracts with Optum under which they agree to provide health care services to Aetna members at the rates established in the contracts' fee schedules. *Id.* at ¶¶ 24-25. As Peters acknowledges, Optum "serves a purely administrative role in claims processing and network management." *Id.* at ¶ 33. There are no allegations that Optum has a contractual relationship with Peters or her plan or that Optum exercises discretion over the plan.

2. When an Aetna plan member receives treatment from a provider in the Optum network, the provider submits a claim to Optum, Optum processes the claim and pays it under the agreed-to fee schedule (if covered under the rules established by the plan), and sends the provider a Remittance Advice along with the payment. Compl. ¶¶ 25, 29. Peters concedes that information in the Remittance Advices is "accurate[]." *Id.* at ¶ 29. She does not allege that Optum misrepresented anything to her providers.

After a claim is processed, Aetna communicates with the plan member about the claim and sends the member an Explanation of Benefits (EOB), explaining the provider's charge and the amount covered on the claim and calculating the member's financial responsibility. Compl. ¶ 20. Aetna created and sent the EOBs that Peters challenges. *Id.* at ¶ 27. Peters does not allege otherwise. And there are no allegations that Optum decided whether or how much Peters's plan paid on her claims. Nor are there any allegations that Optum communicated with Peters or collected any payments from her.

According to Peters, Aetna pays Optum a fee in exchange for Optum's establishing and managing the network of chiropractors and physical therapists. Compl. ¶ 23. Aetna also reimburses Optum for the claims that it pays to providers. *Id*. Peters does not allege that the fees that Aetna pays Optum are improper, does not challenge Aetna's reimbursement of Optum for payments made to providers, and does not contend that Optum underpaid providers.

3. The crux of Peters's Complaint is that Aetna sent her allegedly false EOBs characterizing as medical expenses the administrative fees that Aetna paid Optum.

Compl.¶¶ 27, 44, 49, 50, 54. There are no allegations that Optum communicated with Peters in any way or played any role in determining her financial responsibility on the challenged claims.

Although Peters alleges that the Remittance Advices that Optum sent her providers "accurately report[ed] the provider's usual and customary charge, the allowed amount based on the in-network fee schedule, and the amount that [Optum] was going to pay the provider"(Compl.¶ 29), Peters also alleges that on September 29, 2014, one of her providers received a Remittance Advice from Optum that "did not disclose that Defendants had actually added $87.72 to the provider's ordinary charges for the services, including their administrative fee." *Id.* at ¶ 55. But Peters does not allege that she (as opposed to her provider) received or was even aware of the Remittance Advice sent to her provider, that the Remittance Advice misled her, or that she or her provider relied on the Remittance Advice in any way. And again, Aetna, not Optum, created and sent the EOB that Peters challenges. Compl. ¶ 27.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 558). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In addition, Rule 9(b) requires a plaintiff to plead fraud with particularity, detailing "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."

*Kellogg Brown & Root, Inc.*, 525 F.3d at 379 (internal quotation marks omitted). Because the RICO conspiracy claim is predicated on fraud, it is also subject to Rule 9(b)'s heightened pleading requirements. *See, e.g.*, *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) ("[In] actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met.").

## ARGUMENT

## I. THE RICO CLAIMS FAIL AT EVERY POINT IN THE ANALYSIS.

Congress enacted RICO to "seek the eradication of organized crime in the United States" (*United States v. Turkette*, 452 U.S. 576, 589 (1981)), not to criminalize benefits disputes. Although courts have extended RICO beyond the organized-crime context, the statute continues to bar "garden-variety" disputes dressed up in racketeering clothing. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992).

That bar applies here. To recover under RICO, a plaintiff must plead and prove (1) the conduct (2) of a criminal enterprise (3) through a pattern (4) of racketeering activity. *See* 18 U.S.C. § 1962(c); *Turkette*, 452 U.S. at 586-87. The plaintiff must also allege and prove that the defendant's racketeering activity was both the but-for cause and the proximate cause of the plaintiff's claimed financial injury. 18 U.S.C. § 1964(c); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Peters has not pleaded any of those elements against Optum. She generically alleges a pattern of mail and wire fraud, but she cannot identify an alleged Optum

misstatement or anything that Optum did wrong. This case is about EOBs that Optum did not create or send.

### A. Peters has not pleaded fraud with Rule 9(b) particularity.

Peters alleges that Defendants conducted a criminal enterprise through a pattern of mail and wire fraud (Compl. ¶¶ 77-78), but she has not pleaded fraud with Rule 9(b) particularity. Instead, without distinguishing between Aetna and Optum (*id.* at ¶ 26 ("Defendants' fraud . . .")), Peters mixes fraud buzz words ("scheme," "conceal") with innocent allegations about Defendants' business practices. Rule 9(b) prohibits that kind of pleading. *See, e.g.*, *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014) ("The second amended complaint also contains certain undifferentiated allegations against 'the [supplier] defendants' as a group. But because Rule 9(b) requires a relator to plead FCA claims with *particularity*—including by identifying the 'who' of the alleged fraud—we consider only the [defendant]-specific allegations here.") (emphasis in original); *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) ("[In] a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (citation and internal quotation omitted); *Davis v. Wilmington Fin., Inc.*, No. 09-1505, 2010 WL 1375363, at *3 (D. Md. Mar. 26, 2010) (dismissing RICO claim and explaining that the "[t]he Rule 9(b) problem is exacerbated . . . where multiple Defendants are involved and the pleading alleges some type of fraudulent scheme without clearly identifying which Defendant played which role").

Regardless, Peters does not identify a single statement that Optum made to

her, let alone an alleged misstatement. Optum did not create or send the EOBs in question. *See, e.g.*, Compl. ¶¶ 2, 20, 26, 42, 47, 50, 52, 79(a). The only communications that Peters attributes to Optum—Remittance Advices sent to providers—were admittedly "accurate." *Id.* at ¶ 29. True, Peters contends that the Remittance Advices "do not . . . include or disclose the Subcontractor's administrative fees" (*id.* at ¶ 29), but that is unremarkable because those documents (again, admittedly "accurate") are about the provider's charges. *Id.* "If . . . specific misrepresentations do not exist, it follows that the complaint has not alleged a right to relief that is plausible on its face." *CIGNA Corp.*, 605 F.3d at 1292 (internal quotation marks and citation omitted).[2]

---

[2] Because Peters has failed to allege fraud with particularity, it follows that she has also failed to allege particularized facts showing "that a RICO predicate offense 'not only was a 'but for' cause of [her] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Protection Corp.*, 503 U.S. 258, 261 (1992)); *see also* 18 U.S.C. § 1964(c) (civil RICO plaintiff must prove injury "by reason of" the pattern of racketeering activity). Peters cannot link her claimed harm to anything that Optum said or did. She has not identified an Optum misstatement—Optum did not communicate with Peters and admittedly communicated accurately with her providers—much less explained how she or anyone else relied on anything that Optum said. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (concluding that first-party reliance is not an element of mail fraud but explaining that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations") (emphasis in original); *accord Traber v. Mortg. Elec. Registration Sys., Inc.*, No. 1:11-cv-126, 2012 WL 4088865, at *5 (W.D.N.C. Aug. 6, 2012) (RICO claim failed because plaintiffs did not allege that they "detrimentally relied on the fraudulent mailings, and that such mailings were the proximate cause of the alleged injury"), *aff'd* No. 1:11-cv-126, 2012 WL 4089282 (W.D.N.C. Sept. 17, 2012), *aff'd* 510 F. App'x 307 (4th Cir. 2013).

**B.    Peters has not plausibly alleged a criminal enterprise.**

The RICO claims also fail because Peters has alleged no facts plausibly suggesting that Aetna and Optum carried on a criminal enterprise that had a structure independent of their routine (and completely legitimate) business dealings.

An association-in-fact enterprise "must have at least three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). What Peters alleges does not fit that description. She makes undifferentiated allegations about Aetna and Optum ("Defendants . . .") and affixes an "enterprise" label to their business relationship, but a business relationship dressed up in RICO "labels and conclusions" is insufficient. *See Twombly*, 550 U.S. at 558. There must be factual allegations plausibly suggesting that the defendants "functioned as a unit" (*Continental Petroleum Corp. v. Corporation Funding Partners, LLC*, No. 11-cv-7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012)) and "act[ed] together for a common purpose or course of conduct." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009).

There is nothing like that here. Instead, there are allegations about distinct companies with a contractual relationship carrying on business separately. *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009) (rejecting "enterprise" allegations because the plaintiff had "done no more than describe the ordinary operation of a garden-variety marketing arrangement"); *Vuyyuru v. Jadhav*, No. 3:10-cv-173, 2011 WL 1483725, at *17 (E.D. Va. Apr. 19, 2011) (rejecting

"enterprise" allegations because "simply identifying the allegedly associated components does not serve to put defendants on notice of the RICO claim alleged against them.") (internal quotation marks omitted), *aff'd* 501 F. App'x 294 (4th Cir. 2012).[3]

### C. Peters has not plausibly alleged Optum's operation or management of a criminal enterprise.

Even if Peters had plausibly alleged a criminal enterprise, that is only one step in pleading a RICO claim. She must also plead facts plausibly suggesting that (among other things) Optum "participate[d] in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 179. Under that test, "not even action involving some degree of decisionmaking constitutes participation in the affairs of an enterprise." *Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538-39 (3d Cir. 1993). The defendant must "knowingly engage in '*directing* the enterprise's affairs' through a pattern of racketeering activity." *Id.* at 1539 (emphasis in original) (quoting *Reves*, 507 U.S. at 179).

---

[3] Peters's RICO claims also fail because a corporation cannot be part of an association-in-fact enterprise. RICO defines "enterprise" to include "[1] any *individual*, partnership, *corporation*, association, or other legal entity, and [2] any union or *group of individuals* associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (emphases added). The definition distinguishes between individuals and corporations and limits associations in fact to "groups of individuals," which excludes corporations. *See Benard v. Hoff*, 727 F. Supp. 211, 215 (D. Md. 1989) (Niemeyer, J.) ("Corporations cannot under RICO associate in fact to constitute an enterprise.") (citing 18 U.S.C. § 1961(4)); *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1364-65 (M.D. Fla. 2005) (same).

There is nothing approaching that here. Peters alleges generically (and without distinguishing between Aetna and Optum) that "Defendants conducted and participated in the affairs of the enterprise" (Compl. ¶ 76), but that undifferentiated allegation fails to satisfy *Twombly*. Indeed, Peters acknowledges that Optum served a "purely administrative" function (*id.* at ¶ 33), which is a far cry from explaining how Optum "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Reves*, 507 U.S. at 185 (emphasis in original). "[S]imply performing services for an enterprise, *even with knowledge of the enterprise's illicit nature*, is not enough to subject an individual to RICO liability under 1962(c)." *Goren*, 156 F.3d at 728 (emphasis added); *Peat, Marwick, Main & Co.*, 996 F.2d at 1539 (dismissing RICO claims: "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

### D.   There are no particularized allegations giving rise to a strong inference of fraudulent intent.

Peters also fails to plead facts "that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Mgmt.*, 385 F.3d at 178-79 (emphasis in original). Peters affixes fraud labels and descriptors to the challenged conduct, but she alleges no facts backing up her conclusory statements that Defendants "intentionally and knowingly" deceived her. Compl. ¶¶ 77-78. Without those labels, all that remains are allegations that Optum acted in a "purely administrative" role and an acknowledgement that Optum did not prepare or send the challenged EOBs. *Id.* at ¶ 33. Those allegations raise *no* inference of fraudulent intent, much less a strong

one. As Peters acknowledges, Aetna is obligated to pay Optum fees for the services that Optum performs. *See* Compl. ¶ 26. Aetna's payment of those fees is not at issue in this case; Peters challenges how Aetna characterizes those fees in its EOBs. The Complaint does not suggest that Optum received any benefit other than those contractually guaranteed fees. *Cf. Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 1000 (9th Cir. 2014) (rejecting RICO claims because "the complaint's factual allegations do not support a plausible inference that Defendants had the required specific intent to defraud").

### E. There are no plausible allegations of a RICO "pattern."

Peters has not pleaded mail or wire fraud with the requisite particularity, so she has necessarily failed to plead the required "pattern" of racketeering activity. *See* 18 U.S.C. § 1962(c); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989) (RICO requires a "pattern" of predicate acts). Regardless, this is not a "pattern" case.

The Fourth Circuit has interpreted RICO's pattern requirement restrictively and is particularly scrutinizing when the alleged predicate acts are mail or wire fraud:

> [W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity. We have reserved RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.

*Al-Abood*, 217 F.3d at 238 (internal quotation marks and citations omitted). Although the Fourth Circuit has announced no hard-and-fast rule, it has consistently held that allegations of a scheme confined to a single (purportedly) fraudulent goal

do not satisfy RICO's pattern requirement. *See id.* at 238-39 (rejecting pattern allegations of a scheme with a "narrow focus" and "spanning several years"); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (rejecting pattern allegations of a scheme "directed toward a single fraudulent goal" that "took place over approximately one year"); *Flip Mortg. Corp.,* 841 F.2d at 538 ("Given the unity and narrow focus of the scheme, the fact that the planned injury was inflicted and suffered over a period of years cannot convert this single scheme into a pattern within the meaning of RICO.").

Here, Peters has not properly alleged that Optum committed *any* predicate act, and her generic allegations of fraud do not come close to describing "ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." *Al-Abood*, 217 F.3d at 238 (internal quotation marks and citation omitted). She describes an ordinary business relationship between Aetna and Optum. Ordinary business relationships do not violate RICO. *See U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (rejecting "pattern" allegations and explaining that courts should "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions") (internal quotation marks and citation omitted).[4]

---

[4] There are no factual allegations supporting Peters's speculation that "Aetna and the Subcontractors have committed wire fraud and mail fraud thousands or tens of thousands of times over the past four years." Compl. ¶ 81. The Complaint focuses on a handful of EOBs that Aetna sent Peters. Peters's guesswork about Defendants' interactions with putative class members adds nothing to the analysis. *See, e.g.*, *Bailey v. Atl. Auto. Corp.*, 992 F. Supp. 2d 560, 584 (D. Md. 2014) (dismissing putative RICO class action and rejecting speculation about the defendants' conduct

**F.      There are no plausible allegations of a RICO conspiracy.**

Plaintiff's separate claim for RICO conspiracy under 18 U.S.C. § 1962(d) fails for two reasons. First, because the substantive RICO claim against Optum fails, the conspiracy count fails as well. *Walters*, 684 F.3d 435 at 445 ("[P]laintiffs have not alleged a plausible violation of either RICO predicate act. Thus, as a matter of law, the plaintiffs have failed to establish a claim supporting their allegation under [§ 1962(d)] of a conspiracy to violate [§ 1962(c)]."); *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well.").

Second, in any event, Peters has not alleged facts plausibly suggesting that Optum agreed to join a criminal conspiracy. Peters infuses her Complaint with words like "conspiracy" and "agree[ment]" (Compl. ¶¶ 87-88), but "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 555. At most, Peters alleges that Optum provided administrative services to Aetna and that Aetna sent her EOBs. Compl. ¶ 33. The "obvious alternative explanation" for what Peters labels "conspiracy" is of course a normal business relationship. *CIGNA Corp.*, 605 F.3d at 1295 (internal quotation marks omitted).

─────────────────

vis-à-vis putative class members: "[I]n the absence of any specific allegation of fraudulent conduct beyond that directed to Plaintiff, the [complaint] fails to allege a plausible pattern of racketeering activity.").

## II. THE ERISA CLAIMS FAIL BECAUSE OPTUM IS NOT AN ERISA FIDUCIARY.

Peters's ERISA claim against Optum hinges on Optum's qualifying as an ERISA fiduciary. *See* Compl. ¶¶ 92-98. But Peters's own allegations confirm that Optum served a "purely administrative role in claims processing and network management." *Id.* at ¶ 33. Under Department of Labor regulations and Fourth Circuit precedent, that is not enough for fiduciary status.

Discretion is the *sine qua non* of ERISA fiduciary status: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i), (iii). Interpreting that definition, the Department of Labor—the federal agency tasked with administering ERISA—has explained that ministerial tasks, like applying "rules determining eligibility for . . . benefits," "calculat[ing] . . . benefits," and "processing . . . claims," do not make a person an ERISA fiduciary. 29 C.F.R. § 2509.75-8 D-2. "[A] person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan." *Id.*; *see also Hansen v. N. Trident Reg'l Hosp., Inc.*, 60 F. Supp. 2d 523, 527 (D.S.C. 1999) (citing 29 C.F.R. § 2509.75-8 and explaining that "merely handl[ing] the processing of benefit applications, claims, and related paperwork" does not confer fiduciary status).

The Fourth Circuit reached the same conclusion in *HealthSouth Rehabilitation Hospital v. American National Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996). There, a hospital claimed that a self-insured plan's claims administrator (Aetna) qualified as an ERISA fiduciary. *Id.* at 1008. The Court of Appeals rejected that argument: "Given Aetna's limited role in processing claims under the Plan and reading a computer screen to determine who is and is not covered, it is clear that Aetna is not a fiduciary under the plan." *Id.* at 1009. Indeed, the United States Courts of Appeals are unanimous in holding that "[a]n insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer." *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989); *see also Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir. 1991) ("claims processor" was not an ERISA fiduciary).[5]

---

[5] *See also Joseph P. Cunningham Pension Plan v. Mathieu*, No. 97-2230, 1998 WL 403324, at *3 (4th Cir. July 6, 1998) ("Calculation of benefits is not a fiduciary duty within the meaning of 1002(21)(A)."); *Givens v. Am. Ben. Corp.*, No. 92-2005, 1993 WL 165002, at *3 (4th Cir. May 17, 1993) ("third-party administrative services" were not fiduciary acts); *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 38-39 (3d Cir. 1991) ("Since discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles."); *Wilson v. Aetna Life Ins. Co.*, 497 F. Supp. 2d 710, 714 (M.D.N.C. 2007) ("'[P]erforming administrative acts such as . . . processing claim forms does not amount to discretionary functions, which would qualify a person as a fiduciary under ERISA.'") (quoting *Adams v. The Brink's Co.*, 420 F. Supp. 2d 523, 551-52 (W.D. Va. 2006)).

Here, Peters alleges that Optum "serves a purely administrative role in claims processing and network management." Compl. at ¶ 33; *see also id.* at ¶ 34 (Optum "processes . . . benefits claims"). Optum has no discretion over the plan. There's no need to belabor the point: Optum is not an ERISA fiduciary for Peters's plan. The ERISA claim against Optum must be dismissed. Even if Optum's serving a "purely administrative" role in network management and claims processing could make it a fiduciary, Peters has not alleged facts suggesting that Optum violated the law in carrying out those ministerial tasks.

\* \* \*

The ERISA claim against Optum appears in Count III. *See* Compl. ¶¶ 91-98. In Count IV, Peters alleges that she "and the ERISA Insured Class may pursue breach of fiduciary duty claims against Aetna under 29 U.S.C. §§ 1132(a)(1) [and] [1132](a)(3)." *Id.* at ¶ 100. The Count does not mention Optum by name; there is only a single mention of "Defendants" (plural). *Id.* at ¶ 101. Optum interprets that to mean that Count IV applies only to Aetna. But even if Peters intends to press the "fiduciary duty" claim in Count IV against Optum, the claim fails because Optum is not an ERISA fiduciary.

The ERISA claims also fail for other reasons. First, Peters fails to plead exhaustion of administrative remedies. "The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013); *see also Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872

F.2d 80, 82 (4th Cir. 1989) ("[A]n ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132."). Peters's failure to allege exhaustion is reason alone to dismiss the ERISA claims.[6]

Second, Peters cannot sue for breach of fiduciary duty under ERISA § 502(a)(2) because her claim is really one for benefits. With ERISA, labels give way to substance. *See Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996) (rejecting attempt to recast an ERISA benefits claims as a fiduciary claim: "To permit the suit to proceed as a breach of fiduciary duty would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading; indeed, *every* wrongful denial of benefits could be characterized as a breach of fiduciary duty under [plaintiff's] theory."). Although Peters invokes the language of "fiduciary duty" and pays lip service to the notion that she seeks recovery for her plan as a whole (*see* Compl. ¶¶ 62, 101), what she really seeks are individual benefits. *See, e.g., id.* at Prayer for Relief "G" (seeking as "equitable and injunctive relief" the "restor[ation] of monetary losses"). That precludes relief under § 502(a)(2) because Peters's "fiduciary" claims are ERISA benefits claims by another name.

---

[6] Courts have dismissed complaints alleging very similar EOB "misrepresentations" for failure to plead exhaustion of administrative remedies. *See, e.g., Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 14 F. Supp. 3d 619, 623 (E.D. Pa. 2014); *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*, No. 13-cv-60051, 2013 WL 1899689, at *7-8 (S.D. Fla. May 7, 2013).

Third, Peters's fiduciary claims also fail because § 502(a)(2) does not authorize recovery for individual injuries (as opposed to injuries to the plan itself). *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("recovery [under ERISA § 502(a)(2)] inures to the benefit of the plan as a whole"); *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) ("502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries").

Fourth, along the same lines, Peters is not entitled to equitable relief under ERISA § 502(a)(3)—ERISA's catchall provision—because she can get full relief (if at all) through a claim for benefits under ERISA § 502(a)(1)(B). *See Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (joining "the great majority of circuit courts that have interpreted *Varity* [*Corp. v. Howe*, 516 U.S. 489 (1996)] to hold that a claimant whose injury creates a cause of action under [ERISA § 502(a)(1)(B)] may not proceed with a claim under [ERISA § 502(a)(3)]").[7]

## CONCLUSION

This Court should dismiss the Complaint against Optum with prejudice. No amount of creative pleading can make Optum a party to a criminal enterprise or an ERISA fiduciary.

---

[7] Peters could not sue Optum for benefits under ERISA § 502(a)(1)(B) because the only proper defendant in a suit to recover benefits is the plan itself or the "plan administrator" (as defined by ERISA). *See Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 922-23 (10th Cir. 2006). Optum is neither. Indeed, it is not even the "claims administrator" for the plan.

Respectfully submitted this 2nd day of September, 2015.

/s/ Mark T. Calloway
Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Brian D. Boone (NC Bar No. 38910)
Alston & Bird LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
mark.calloway@alston.com
michael.hoernlein@alston.com
brian.boone@alston.com

*Attorneys for Defendant OptumHealth Care Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 2, 2015, I filed and served a copy of this Motion and Memorandum using the CM/ECF system and through U.S. Mail on all counsel of record.

/s/ Michael R. Hoernlein
Michael R. Hoernlein
(NC Bar No. 40419)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
michael.hoernlein@alston.com

*Counsel for Defendant OptumHealth Care Solutions, Inc.*