UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated,<br><br>PLAINTIFF,<br><br>V.<br><br>AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC.,<br><br>DEFENDANTS. | Case No. 1:15-cv-00109-MR |

**BRIEF IN SUPPORT OF AETNA'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .........................................................................................1

II.   LEGAL STANDARD .................................................................................5

III.  ARGUMENT...............................................................................................7

  A.  Plaintiff Lacks Article III Standing To Bring Any Of Her
      Claims (Counts I-IV)..........................................................................7

    1.  Plaintiff Fails To Allege A Concrete Injury From The
        Aetna-Optum Relationship. ........................................................8

    2.  Plaintiff Lacks Standing To Seek Injunctive Relief. ...............11

    3.  Plaintiff Lacks Standing To Challenge Aetna's
        Agreements With "Subcontractors" Other Than Optum. .........12

  B.  Plaintiff Fails To State A RICO Claim (Counts I & II) ....................14

    1.  Plaintiff Lacks Statutory Standing Under RICO. ....................15

    2.  Plaintiff Has Not Adequately Alleged A RICO
        Enterprise. ................................................................................20

        a)  The Alleged Multilateral RICO Enterprise ...................20

        b)  Alleged Bilateral Enterprise Between Aetna And
            Optum ...........................................................................24

        c)  "Multiple Bilateral" Enterprises With Other
            "Subcontractors"............................................................26

    3.  Plaintiff Has Not Alleged A RICO Conspiracy (Count
        II)...............................................................................................28

  C.  Plaintiff Fails To State A Claim Under ERISA (Counts III &
      IV)....................................................................................................28

i

# TABLE OF CONTENTS

(continued)

Page

    1.    Plaintiff Cannot Circumvent The Exhaustion Requirement. ...........................................................28

    2.    Plaintiff Fails To Allege A Breach Of Fiduciary Duty............34

IV.    CONCLUSION..............................................................................40

# TABLE OF AUTHORITIES

Page

**Cases**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004)........................................................................30

*Al-Abood* ex rel. *Al-Abood v. El-Shamari*,
217 F.3d 225 (4th Cir. 2000) ...........................................................15

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*,
14 F. Supp. 3d 619 (E.D. Pa. 2014), *appeal docketed* (No. 14-1832, 3d
Cir. Apr. 9, 2014).............................................................................33

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) .............................................................2

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ........................................................17

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006).................................................................. 16, 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................... 5, 6, 20, 39, 40

*Bast v. Cohen, Dunn & Sinclair, PC*,
59 F.3d 492 (4th Cir. 1995) .............................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................5, 6

*Blum v. Yaretsky*,
457 U.S. 991 (1982)........................................................................13

*Bollig v. Christian Cmty. Homes & Servs., Inc.*,
No. 02-C-532-C, 2003 WL 23200362 (W.D. Wis. July 10, 2003) ....................10

Case 1:15-cv-00109-MR   Document 42   Filed 09/02/15   Page 4 of 53

*Boyle v. United States*,
  556 U.S. 938 (2009)........................................................................ 22, 23, 25, 27

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008) ............................................................................18

*Cavallo v. Utica-Watertown Health Ins. Co.*,
  191 F.R.D. 342 (N.D.N.Y. 2000) ........................................................11

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...............................................................................12

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
  102 F.3d 712 (4th Cir. 1996) ................................................... 31, 33, 35

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)..............................................................................7

*Dash v. FirstPlus Home Loan Trust 1996-2*,
  248 F. Supp. 2d 489 (M.D.N.C. 2003) ........................................ 13, 14

*David v. Alphin*,
  704 F.3d 327 (4th Cir. 2013) ..............................................................6, 8

*Davis v. Bowman Apple Prods. Co.*,
  No. Civ.A 5:00CV00033, 2002 WL 535068 (W.D. Va. Mar. 29, 2002)..... 36, 37

*Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*,
  50 F.3d 1478 (9th Cir. 1995) ........................................................ 31, 32

*Dickerson v. TLC Lasik Ctrs.*,
  No. 6:10-CV-00685 JMC, 2011 WL 382443 (D.S.C. Feb. 3, 2011),
  *aff'd*, 493 F. App'x 390 (4th Cir. 2012) .............................................19

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ........................................................ 22, 23

Case 1:15-cv-00109-MR   Document 42   Filed 09/02/15   Page 5 of 53

# TABLE OF AUTHORITIES
### (continued)

*DiFelice v. Fiduciary Counselors, Inc.*,
398 F. Supp. 2d 453 (E.D. Va. 2005) .................................................... 36, 37, 38

*DiFelice v. US Airways, Inc.*,
397 F. Supp. 2d 758 (E.D. Va. 2005) .................................................................38

*Flip Mortg. Corp. v. McElhone*,
841 F.2d 531 (4th Cir. 1988) ....................................................................... 15, 25

*Ford v. Hartford Life & Accident Ins. Co.*,
No. 3:08CV281, 2009 WL 963594 (W.D.N.C. Apr. 8, 2009)
(Reidinger, J.)........................................................................................................31

*Fuller v. Liberty Life Assurance of Bos.*,
302 F. Supp. 2d 525 (W.D.N.C. 2004) (Thornburg, J.) ................................. 5, 32

*GE Inv. Private Placement Partners II v. Parker*,
247 F.3d 543 (4th Cir. 2001) ................................................................................28

*Giarratano v. Johnson*,
521 F.3d 298 (4th Cir. 2008) ..................................................................................6

*Griggs v. E.I. DuPont de Nemours & Co.*,
237 F.3d 371 (4th Cir. 2001) ...................................................................... 36, 37, 38

*Hall v. Aetna Life Ins. Co.*,
759 F. Supp. 2d 1321 (N.D. Fla. 2010) ..................................................................9

*Hall v. Nat'l R.R. Passenger Corp.*,
No. Civ.A. 03-1764 GK, 2005 WL 3276353 (D.D.C. Aug. 5, 2005) ................34

*Harrow v. Prudential Ins. Co. of Am.*,
279 F.3d 244 (3d Cir. 2002) ................................................................................32

*Hecker v. Deere & Co.*,
No. 06-C-719-S, 2007 WL 3270401 (W.D. Wis. Oct. 19, 2007)........................38

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010)...........................................................................15, 19

*Holmes v. Sec. Investor Prot. Corp.*,
  503 U.S. 258 (1992)........................................................................15, 19

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ...............................................21, 22, 23, 24

*In re Wachovia Corp. ERISA Litig.*,
  No. 3:09cv262, 2010 WL 3081359 (W.D.N.C. Aug.6, 2010)
  (Reidinger, J.)......................................................................................35

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
  865 F. Supp. 2d 1002 (C.D. Cal. 2011) ..............................................18

*Jackson v. Resolution GGF Oy*,
  136 F.3d 1130 (7th Cir. 1998) ...........................................................14

*Johnson v. J.P. Morgan Chase Nat'l Corp. Servs.*,
  No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023 (W.D.N.C. Aug. 5,
  2014) (Cayer, J.) *report and recommendation adopted*, No. 3:13-CV-
  00678-MOC-DS, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014)
  (Cogburn, Jr., J.) ................................................................................17

*Jordan* ex rel. *Jordan v. Jackson*,
  15 F.3d 333 (4th Cir. 1994) ...............................................................13

*Kaiser-Flores v. Lowe's Home Ctrs., Inc.*,
  No. CIV. 5:08-CV45-V, 2009 WL 762198 (W.D.N.C. Mar. 19, 2009)
  (Voorhees, J.)......................................................................................12

*Korotynska v. Met. Life Ins. Co.*,
  474 F.3d 101 (4th Cir. 2006) .........................................................31, 34

*Lewis v. Casey*,
  518 U.S. 343 (1996).............................................................................13

# TABLE OF AUTHORITIES
## (continued)

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)............................................................................39

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................. 7, 8, 13

*Makar v. Health Care Corp.*,
   872 F.2d 80 (4th Cir. 1989) ...............................................................29

*McDonough v. First Am. Title Ins. Co.*,
   No. 10-CV-106-SM, 2011 WL 285685 (D.N.H. Jan. 28, 2011) .........................23

*Menasco, Inc. v. Wasserman*,
   886 F.2d 681 (4th Cir. 1989) ....................................................... 17, 25

*Mercer v. Arc of Prince Georges Cnty., Inc.*,
   532 F. App'x 392 (4th Cir. 2013) .........................................................6

*MRI Scan Center, LLC v. Nat'l Imaging Assocs., Inc.*,
   No. 13-60051-CIV, 2013 WL 1899689 (S.D. Fla. May 7, 2013) ............... 32, 33

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) ...............................................................10

*N.C. Life & Accident & Health Ins. Guar. Ass'n v. Alcatel*,
   876 F. Supp. 748 (E.D.N.C. 1995) ................................................8, 9

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)............................................................................11

*Owen v. Regence Bluecross Blueshield of Utah*,
   388 F. Supp. 2d 1318 (D. Utah 2005)................................................10

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) ....................................................... 4, 13

# TABLE OF AUTHORITIES
### (continued)

*Payne v. Chapel Hill N. Props., LLC*,
  947 F. Supp. 2d 567 (M.D.N.C. 2013) ................................................ 6, 7, 11, 12

*Phelps v. CT Enters.*,
  194 F. App'x 120 (4th Cir. 2006) (per curiam) ................................................... 37

*Pilot Life Ins. Co. v. Dedeaux*,
  481 U.S. 41 (1987) ................................................................................................ 28

*Pitt Cnty. v. Hotels.com, L.P.*,
  553 F.3d 308 (4th Cir. 2009) ................................................................................. 7

*Rao v. BP Prods. N. Am., Inc.*,
  589 F.3d 389 (7th Cir. 2009) ............................................................................... 23

*Reed v. Citigroup, Inc.*,
  No. 12-2934(MAS)(DEA), 2015 WL 1517791 (D.N.J. Apr. 1, 2015) .............. 34

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .............................................................................................. 26

*Rhodes v. E.I. du Pont de Nemours & Co.*,
  636 F.3d 88 (4th Cir. 2011) ................................................................................... 3

*Richardson v. Mayor & City Council of Balt.*,
  No. RDB-13-1924, 2014 WL 60211 (D. Md. Jan. 7, 2014) ................................. 6

*Roman v. Guapos III, Inc.*,
  970 F. Supp. 2d 407 (D. Md. 2013) ..................................................................... 14

*Salinas v. United States*,
  522 U.S. 52 (1997) ................................................................................................ 28

*Short v. Janssen Pharm., Inc.*,
  No. 1:14-CV-1025, 2015 WL 2201713 (W.D. Mich. May 11, 2015) ................. 16

*Smith v. Sydnor*,
184 F.3d 356 (4th Cir. 1999) ...................................................... 29, 31, 32, 33, 34

*Target Corp. v. LCH Pavement Consultants, LLC*,
No. CIV. 12-1912 JNE/JJK, 2013 WL 2470148 (D. Minn. June 7,
2013) ......................................................................................................... 22, 23

*Traber v. Mortg. Elec. Registration Sys., Inc.*,
No. 1:11cv126, 2012 WL 4088865 (W.D.N.C. Aug. 6, 2012) (Howell,
J.), *aff'd*, No. 1:11-CV-126, 2012 WL 4089282 (W.D.N.C. Sept. 17,
2012) (Mullen, J.), *aff'd sub nom. Traber v. Mortg. Elec. Registration
Sys., Inc.*, 510 F. App'x 307 (4th Cir. 2013)........................................................18

*United Food & Commercial Workers Unions & Emp'rs Midwest Health
Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ................................................................ 24, 26, 28

*US Airline Pilots Ass'n v. Awappa, LLC*,
615 F.3d 312 (4th Cir. 2010) ...................................................................... 15, 25

*Valcom, Inc. v. Vellardita*,
No. 2:13-cv-3025-WHW-CLW, 2014 WL 1628431 (D.N.J. Apr. 23,
2014) .....................................................................................................................21

*Varity Corp. v. Howe*,
516 U.S. 489 (1996).............................................................................................29

*Vuyyuru v. Jadhav*,
No. 3:10-CV-173, 2011 WL 1483725 (E.D. Va. Apr. 19, 2011), *aff'd*,
501 F. App'x 294 (4th Cir. 2012) ........................................................... 21, 22, 23

*Walters v. McMahen*,
684 F.3d 435 (4th Cir. 2012) ...................................................................... 19, 28

*Warth v. Seldin*,
422 U.S. 490 (1975)...............................................................................................7

Case 1:15-cv-00109-MR   Document 42   Filed 09/02/15   Page 10 of 53

*Wiseman v. First Citizens Bank & Trust Co.*,
    215 F.R.D. 507 (W.D.N.C. 2003) (Thornburg, J.) ..............................................35

*Wong v. Wells Fargo Bank N.A.*,
    789 F.3d 889 (8th Cir. 2015) ..............................................14

**Statutes**

18 U.S.C. § 1961(4) ..............................................20

18 U.S.C. § 1962(c) .............................................. 14, 20, 25, 28

18 U.S.C. § 1962(d) .............................................. 14, 28

18 U.S.C. § 1964(c) .............................................. 14, 15

29 U.S.C. § 1132 ..............................................29

29 U.S.C. § 1132(a) ..............................................28

29 U.S.C. § 1132(a)(1)(B) .............................................. 30, 31, 32, 33

29 U.S.C. § 1132(a)(2) .............................................. 30, 35

29 U.S.C. § 1132(a)(3) .............................................. 30, 31,33, 35

29 U.S.C. § 1106(a)(1) ..............................................39

29 U.S.C. § 1106(a)(1)(D) ..............................................39

29 U.S.C. § 1106(b)(1) ..............................................39

**Regulations**

29 C.F.R. § 2560.503-1(g)(i) ..............................................36

**Rules**

Federal Rule of Civil Procedure 8 ..............................................14

# TABLE OF AUTHORITIES
(continued)

Federal Rule of Civil Procedure 9(b)...........................................................15, 17, 27

Federal Rule of Civil Procedure 12(b)(1)................................................3, 6, 11, 40

Federal Rule of Civil Procedure 12(b)(6)...........................................4, 5, 6, 14, 40

**Other Sources**

Gregory P. Joseph, Civil RICO: A Definitive Guide 106 (3d ed. 2010).................22

# I.    INTRODUCTION

Plaintiff, Sandra M. Peters, is a member of the health benefits plan offered through her husband's former employer, Mars, Inc.  Compl. ¶ 4 (Doc. #1).  Aetna Life Insurance Company is the claim administrator for the Mars plan.  *Id.* ¶ 37. Through Plaintiff's Complaint, she asserts several claims against Aetna, brought under two federal statutes—the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Employee Retirement Income Security Act of 1974 ("ERISA"), the federal statutory scheme governing employer-sponsored health plans—challenging Aetna's relationship with a "Subcontractor," OptumHealth Care Solutions, Inc. ("Optum").  Optum, a separate company from Aetna, is also a defendant.  *Id.* ¶ 7.

As alleged in the Complaint, Optum maintains and manages a network of chiropractors and physical therapists, who have agreed—through contracts between these providers and Optum—to be part of Optum's network.  *Id.* ¶¶ 7, 24-35.  Optum, in turn, has a separate agreement with Aetna, through which members of plans administered by Aetna, like Plaintiff, can obtain treatment from the Optum-contracted providers on an *in-network* basis.  *Id.* ¶ 34.  As Plaintiff's allegations and Explanations of Benefits ("EOBs") show, this means that these plan members pay only limited amounts (in-network deductibles and

1

coinsurance)—or in some cases nothing—for treatment by Optum-contracted providers. *See*, *e.g.*, *id.* ¶¶ 20, 22, 39.[1]

As Plaintiff's allegations and EOBs also show, under Optum's agreement with Aetna, Optum receives a "flat rate" payment whenever an Aetna plan member is treated by an Optum-contracted provider. *Id.* ¶ 57.[2] Optum receives the same flat rate payment regardless of the number of services by an Optum-contracted provider, and regardless of what amount that Optum-contracted provider normally would charge for those services. *See id.* Optum, in turn, compensates its contracted providers for the services that they perform, according to "discounted" rates that Optum has negotiated through its separate agreements with these providers. *Id.* ¶ 34. The rates paid by Optum to its contracted providers are, according to Plaintiff, lower than the flat rate that Optum receives through its

---

[1] Plaintiff's Complaint refers to and relies on four EOBs from Aetna regarding services she received from Optum-contracted providers as well as the Summary Plan Description ("SPD") for her plan. Although Plaintiff did not attach these documents to her Complaint, because she refers to and relies on them, they are properly considered by the Court in connection with the motion to dismiss and this brief. *See*, *e.g.*, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). The documents are attached as exhibits to an authenticating declaration (Doc. # 40-41) and are referred to herein by their Exhibit designation in that declaration. For example, "Ex. A" herein means Ex. A to the declaration.

[2] *See* Compl. ¶¶ 43, 48, 50, 52 (Plaintiff's allegations about her own claims, showing that Optum received a flat rate of $70.89 for chiropractic services and $87.72 for physical therapy, even though some Optum-contracted providers rendered multiple services and submitted higher billed amounts for these services); *see also* Exs. A-D (EOBs).

agreement with Aetna. *Id.* Plaintiff alleges that Aetna and Optum "conceal" that the flat rate received by Optum not only covers the costs of care, but also incorporates an "administrative fee," to compensate Optum for the costs of managing its network and processing claims that Optum receives from its contracted providers. *Id.* ¶ 26.

In addition to Aetna's relationship with Optum, Plaintiff also purports to challenge Aetna's separate agreements with other "Subcontractors," though Plaintiff does not allege that any of these other entities had anything to do with her own claims. *Id.* ¶¶ 58-60.

Plaintiff's Complaint should be dismissed on multiple grounds. *First*, although Plaintiff makes a series of vague assertions about how the flat rate payments to Optum supposedly caused plan members to owe "inflated" coinsurance and deductibles (*e.g.*, *id.* ¶¶ 44, 49), she fails to allege facts showing a concrete injury—*i.e.*, that she personally paid any inflated amounts. Plaintiff also fails to allege any immediate threat of future harm, as needed to seek injunctive relief. Plaintiff therefore lacks Article III standing, and her complaint should be dismissed under Federal Rule 12(b)(1). *See*, *e.g.*, *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 99 (4th Cir. 2011) (where the plaintiff lacks "the personal stake necessary to maintain Article III standing[,] . . . the district court or appellate court must dismiss the case for lack of subject-matter jurisdiction").

Further, even if Plaintiff had standing to challenge Aetna's relationship with Optum, she lacks standing to challenge Aetna's separate relationships with other "Subcontractors," which had nothing to do with Plaintiff's claims and did not injure her in any way. Compl. ¶¶ 58-60. Under well-established authorities, Plaintiff cannot skirt Article III standing requirements by sweeping these other unrelated contractual relationships into the case—and thereby open a fishing expedition into practices that had nothing to do with her own claims—merely by bringing the case as a putative class action. *See*, *e.g.*, *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013).

*Second*, even if Plaintiff had Article III standing, her RICO claims (Counts I and II) should be dismissed under Rule 12(b)(6) for failure to state a claim. Plaintiff fails to allege that RICO predicate acts caused her injury to property, even though this is an essential element of RICO statutory standing. She also fails to allege a plausible RICO enterprise. In a single paragraph of the Complaint, Plaintiff asserts the existence of a sprawling multilateral enterprise comprised of Aetna, Optum, and various other "Subcontractors" throughout the United States. Compl. ¶ 74. But these conclusory assertions fail under numerous authorities rejecting similar attempts to conjure up criminal conspiracies out of a series of contractual relationships. Her alternative theory, of numerous, separate "bilateral" enterprises, too, is unsupported.

*Third*, Plaintiff also fails to state a claim under ERISA (Counts III and IV). She attempts to avoid the well-established requirement to exhaust her administrative appeals before filing an ERISA lawsuit—a requirement that already has led several previous lawsuits involving similar theories to be dismissed—by asserting a statutory breach of fiduciary duty claim. But the relief she seeks ultimately depends on the terms of her plan, and precedent in this district and elsewhere forbids her attempted end-run around the exhaustion requirement. *E.g.*, *Fuller v. Liberty Life Assurance of Bos.*, 302 F. Supp. 2d 525, 533 (W.D.N.C. 2004) (Thornburg, J.). Plaintiff also fails to allege any facts to support a breach of fiduciary duty, as she does not plausibly allege that Aetna made any affirmative misrepresentations about its relationship with Optum, or that Aetna had any duty to disclose the information she says Aetna "concealed."

Plaintiff's Complaint therefore should be dismissed in its entirety, based on lack of standing and failure to state a claim.[3]

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

---

[3] Optum has filed its own motion to dismiss Plaintiff's Complaint, along with a supporting brief. In the interest of efficiency, Aetna will not repeat all of Optum's arguments here; Aetna instead incorporates them by reference.

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For a claim to be "plausible on its face," Plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  This Court may disregard "pleadings that . . . are no more than conclusions" and "are not entitled to the assumption of truth."  *Id.* at 679; *see also Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).  The same is true of "legal conclusions" that are not "supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), Plaintiff bears the same pleading burden.  Although "the court accepts facts alleged in the complaint as true just as it would under Rule 12(b)(6)," *Payne v. Chapel Hill N. Props., LLC*, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013), the Court should disregard allegations "that constitute nothing more than 'legal conclusions' or 'naked assertions,'" *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013), and evaluate whether the well-pleaded allegations "are sufficient to establish standing under the plausibility standard of Rule 12(b)(6) and *Iqbal/Twombly*."  *Richardson v. Mayor & City Council of Balt.*, No. RDB-13-1924, 2014 WL 60211, at *3 (D. Md. Jan. 7, 2014); *see also Mercer v. Arc of Prince Georges Cnty., Inc.*, 532 F. App'x 392, 395 n.3 (4th Cir. 2013).  "Ultimately, the plaintiff bears the burden of 'clearly . . . alleg[ing] facts

demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute.'" *Payne*, 947 F. Supp. 2d at 572 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

## III.   ARGUMENT

### A.   Plaintiff Lacks Article III Standing To Bring Any Of Her Claims (Counts I-IV)

Plaintiff fails to satisfy the threshold standing requirement in Article III of the United States Constitution.  Although Plaintiff challenges various aspects of Aetna's relationship with Optum, she fails to allege how "(1) [she] has suffered an injury in fact, (2) the injury is fairly traceable to the defendants' actions, and (3) it is likely, and not merely speculative, that the injury will be redressed by a favorable decision."  *Pitt Cnty. v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009) (internal quotation marks omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  She likewise fails to allege an imminent risk of future harm, as is required to bring a claim for injunctive relief.  And, even if Plaintiff had standing to challenge Aetna's relationship with Optum, she fails to allege any facts whatsoever to support a claim challenging Aetna's separate relationships with other "Subcontractors" that had nothing to do with her own claims.

These constitutional standing requirements apply equally to all of Plaintiff's claims.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he

seeks to press."). And under controlling precedent this constitutional requirement is not relaxed or excused even when Plaintiff purports to seek relief "on behalf of" the plan, in Count III of her Complaint. Compl. ¶¶ 62, 91-98; *see David*, 704 F.3d at 333-36, 338-39. For this count, Plaintiff is required to allege not just that the plan as a whole has suffered some loss from the alleged breach; Plaintiff must also allege her own concrete injury. *See David*, 704 F.3d at 334-36. As these cases also hold, "deprivation of [a] statutory right to have the [plan] operated in accordance with ERISA's fiduciary requirements" does not suffice to establish injury in fact to Plaintiff under Article III. *Id.* at 338-39. Accordingly, Plaintiff's failure to satisfy constitutional standing requirements dooms all of her claims, under RICO and ERISA.

### 1. Plaintiff Fails To Allege A Concrete Injury From The Aetna-Optum Relationship.

"Injury in fact" requires Plaintiff to allege specific injury that is "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife,* 504 U.S. at 560 (internal citations and quotation marks omitted). Here, Plaintiff makes a number of vague, generalized assertions that she was "responsible" for "inflated" coinsurance amounts because of the Aetna-Optum relationship, but she fails to allege facts showing that she actually paid inflated amounts out of her own pocket. "Without any payment by plaintiffs, they have not suffered any injury." *N.C. Life & Accident & Health Ins. Guar. Ass'n v. Alcatel,*

876 F. Supp. 748, 756 (E.D.N.C. 1995); *accord Hall v. Aetna Life Ins. Co.*, 759 F. Supp. 2d 1321, 1326 (N.D. Fla. 2010) ("[H]aving no financial responsibility for [the challenged procedure], the named plaintiffs have not been injured by Aetna's alleged actions and thus lack standing . . . .").

Plaintiff's Complaint refers to four EOBs that she received from Aetna relating to services she received from Optum-contracted providers. For one of these EOBs, the Complaint makes passing reference to "the $14.18 that Ms. Peters paid as her 20% coinsurance requirement," which she contends was "inflated by Optum's administrative fee charge. . . ." Compl. ¶ 44. She does not allege, however, any facts to support her assertion that this $14.18 coinsurance amount was "inflated." As her allegations show, the $14.18 paid by Plaintiff represented only 20% of the flat rate ($70.89) owed to Optum through its contract with Aetna. *Id.* ¶ 43. That flat rate was already 25% lower than the treating chiropractor's "ordinary charge" for the services that Plaintiff received ($95.00). *Id.* ¶ 40. And, furthermore, Plaintiff owed only 20% coinsurance of the lower, flat rate, because this Optum-contracted provider was in-network through Aetna's agreement with Optum; Plaintiff did not need to pay 50% coinsurance, as she would have owed if these services had been out-of-network. *See* Ex. E, at 17 (Mars, Inc. SPD). Plaintiff therefore fails to allege how her $14.18 payment was "inflated," or how Aetna's relationship with Optum caused her any concrete injury.

9

Also, even if Plaintiff's allegation regarding this supposedly "inflated" $14.18 coinsurance amount were sufficient to establish standing on this one claim, the rest of her claims should be dismissed. For the other three claims in the Complaint, Plaintiff does not allege that she made any payments at all. She alleges only that her EOB told her she "would be responsible for paying . . . $14.18 under her 20% co-insurance responsibility" (*see*, *e.g.*, *id.* ¶ 48). But while she may have had "responsibility" for paying coinsurance under the terms of her plan (*id.*), this does not mean that she actually did so. It is by now well-known that some treating providers waive or forgive a patient's coinsurance liability in order to curry favor with repeat customers. *See*, *e.g.*, *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 188 (5th Cir. 2015). If Plaintiff actually paid any of these amounts, she needs to allege this, and if she cannot do so, these claims should be dismissed. *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1318, 1326 (D. Utah 2005) (holding that subscriber lacked standing to sue for unreimbursed medical expenses because providers never attempted to collect the alleged debts); *see also*, *e.g.*, *Bollig v. Christian Cmty. Homes & Servs., Inc.*, No. 02-C-532-C, 2003 WL 23200362, at *4 (W.D. Wis. July 10, 2003) ("If plaintiffs have no obligation to pay any bills, they have suffered no injury.").

Finally, for at least one of the four claims, Plaintiff's EOB shows that she was not even "responsible" for paying coinsurance, because she had already met

the annual coinsurance maximum contained in her plan.  *See* Compl. ¶ 50; Ex. C, at 2 (October 3, 2013 EOB showing that Plaintiff owed no coinsurance for services received on September 12, 2013); *see also* Ex. E, at 15 (explaining coinsurance maximum).  She therefore lacks standing with respect to this claim, because she owes nothing and even if she were right that the payment to Optum was "inflated" she still would owe nothing for these services.  *See Cavallo v. Utica-Watertown Health Ins. Co.*, 191 F.R.D. 342, 345 (N.D.N.Y. 2000).[4]

### 2. Plaintiff Lacks Standing To Seek Injunctive Relief.

Plaintiff's Complaint purports to seek not just monetary relief, but also "injunctive" relief.  Compl. at 26.  Plaintiff does not allege, however, any facts to support an immediate threat of future harm, as is necessary to seek injunctive relief.  *See Payne*, 947 F. Supp. 2d at 577-78 (dismissing complaint seeking injunctive relief, for lack of standing, under Federal Rule 12(b)(1)); *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974) (claim for injunctive relief properly dismissed because "[t]he complaint failed to satisfy the threshold [standing] requirement imposed by Art. III of the Constitution").

---

[4] Plaintiff also alleges that Aetna's "cost-shifting scheme" has resulted in payments by other "insureds" through deductibles, health spending accounts, and annual caps (Compl. ¶ 2), but Plaintiff does not allege that she personally made any of these types of payments.  These allegations thus fail to support standing.

Plaintiff's allegations challenge "inflated" coinsurance amounts for services that she received from Optum-contracted providers in 2013 and 2014 (*see* Compl. ¶¶ 40-54). She does not allege any services or payments in 2015, let alone any that would support an "imminent" threat of *future* harm. Under well-established authorities, "'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy.'" *Payne*, 947 F. Supp. 2d at 571-72 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Kaiser-Flores v. Lowe's Home Ctrs., Inc.*, No. CIV. 5:08-CV45-V, 2009 WL 762198, at *7 (W.D.N.C. Mar. 19, 2009) (Voorhees, J.). Plaintiff's claims seeking injunctive relief therefore should be dismissed.

### 3. Plaintiff Lacks Standing To Challenge Aetna's Agreements With "Subcontractors" Other Than Optum.

In addition to Optum, Plaintiff also purports to challenge Aetna's separate relationships with two other "Subcontractors" that are not defendants in this case and had nothing to do with her claims: American Specialty Health Group, Inc. ("ASH") and Columbine Health Plan ("Columbine"). *See* Compl. ¶¶ 58-60. Plaintiff also makes several vague, open-ended references to a "collection of Subcontractors" suggesting that she intends to conduct a fishing expedition into other, unidentified "Subcontractors" even beyond the three mentioned in the Complaint. *Id.* ¶¶ 1, 22, 73-75.

Plaintiff does not have standing to challenge any of Aetna's relationships with these other entities, because she does not allege they caused her any injury; indeed, these other "Subcontractors" had nothing to do with Plaintiff's treatments, claims, or payments. Nor does Plaintiff allege any imminent future injury to her from any of these other entities. All of Plaintiff's allegations about her own claims relate to services she received from Optum-contracted providers. *Id.* ¶¶ 40-54.

"Standing is not dispensed in gross" and "'a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'" *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982)); *see also Defenders of Wildlife,* 504 U.S. at 560.

Further, Plaintiff cannot sidestep Article III requirements—and assert claims or seek discovery about "Subcontractors" that had no impact on her own claims— merely by bringing this case as a class action. Plaintiff, as the named class representative, "'must allege and show that [she] personally [has] been injured, not that injury has been suffered by other, unidentified members of the class to which [she claims to] belong.'" *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (quoting *Blum*, 457 U.S. at 1001 n.13); *see also Jordan* ex rel. *Jordan v. Jackson*, 15 F.3d 333, 341 n.7 (4th Cir. 1994) (same); *Dash v. FirstPlus Home Loan Trust*

*1996-2*, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) (granting motions to dismiss for lack of standing on claims regarding loans where "Plaintiffs do not allege any contractual relationship whatsoever with Defendants"); *cf. Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013) (granting motion to dismiss for lack of standing on an FLSA collective action claim as to entities that did not employ plaintiff but may have employed some of the putative collective action plaintiffs).[5] This Court therefore should dismiss any claims against Aetna regarding ASH, Columbine, or other unnamed "Subcontractors" for lack of standing.

**B.      Plaintiff Fails To State A RICO Claim (Counts I & II)**

Plaintiff's RICO claims also should be dismissed under Rule 12(b)(6), because she fails to plead facts to support the essential elements of a RICO cause of action.  She fails to allege facts showing:  (i) that she suffered injury to business or property caused by RICO predicate acts of mail or wire fraud; (ii) a RICO "enterprise" or that Aetna "conduct[ed]" the affairs of an enterprise; or (iii) any conspiracy to violate RICO.  *See* 18 U.S.C. § 1962(c), (d); *id.* § 1964(c). Plaintiff's conclusory assertions of RICO violations fail to satisfy Federal Rule 8,

---

[5]  *See also Wong v. Wells Fargo Bank N.A.*, 789 F.3d 889, 895-97 (8th Cir. 2015) (affirming dismissal of class action claims for lack of standing against group of defendants where those "defendants never collected any impermissible fees" from the named plaintiffs); *Jackson v. Resolution GGF Oy*, 136 F.3d 1130, 1132 (7th Cir. 1998) (holding that a defendant "must be dismissed as a party" for lack of standing in putative class action because while "other borrowers may have claims against it, . . . none of these plaintiffs do[]").

let alone Rule 9(b), which she is required to satisfy because she alleges predicate acts of mail or wire fraud.

Plaintiff's attempt to graft RICO onto this ERISA benefits dispute is exactly the type of case that has caused numerous courts, including the Fourth Circuit, to observe the need to "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (internal quotation marks omitted); *accord Al-Abood* ex rel. *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *Flip Mortg. Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988).

### 1. Plaintiff Lacks Statutory Standing Under RICO.

Plaintiffs who sue under RICO must satisfy not just constitutional standing requirements, but also RICO's statutory standing requirements. To establish statutory standing under RICO, a plaintiff is required to allege facts showing that she is "injured in [her] business or property by reason of" RICO predicate acts. 18 U.S.C. § 1964(c). This means that Plaintiff must "show that a RICO predicate offense 'not only was a "but for" cause of [her] injury, but was the proximate cause as well.'" *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)).

Here, Plaintiff's RICO claims should be dismissed because she fails to allege that any RICO predicate acts caused her injury to business or property. As

an initial matter, Plaintiff's failure to allege that she actually made "inflated" payments out-of-pocket (*see* Section III.A.1, *supra*) dooms her RICO claims, because she cannot establish an injury to business or property. *E.g.*, *Short v. Janssen Pharm., Inc.*, No. 1:14-CV-1025, 2015 WL 2201713, at *3-5 (W.D. Mich. May 11, 2015) (dismissing RICO claim for lack of statutory standing where plaintiff "did not actually expend any personal funds" on the prescription at issue).

Moreover, it is not nearly enough under RICO merely to allege that the amounts Plaintiff paid were inflated. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). And here, Plaintiff alleges no facts showing that any inflated payments she made were caused by RICO predicate acts—*i.e.*, acts of mail or wire fraud.

Plaintiff alleges that the EOBs she received from Aetna were "false and misleading" and therefore amounted to mail or wire fraud (*e.g.*, Compl. ¶¶ 44, 49, 54).[6] Because Plaintiff "wishes to rely on mail fraud and wire fraud to support

---

[6] Plaintiff also refers to other types of communications that she contends were deceptive—to providers, plan sponsors, and other insureds (*see* Compl. ¶¶ 29, 31, 79(b)-(c))—but she does not allege that she personally saw, or relied on, any of these other communications. Nor does she allege that her plan, providers, or anyone else was deceived by these communications.

h[er] RICO claim[s], [s]he must plead the circumstances of the fraudulent acts . . . with sufficient specificity pursuant to Fed.R.Civ.P. 9(b)." *Johnson v. J.P. Morgan Chase Nat'l Corp. Servs.*, No. 3:13-CV-678-MOC-DSC, 2014 WL 4384023, at *4 (W.D.N.C. Aug. 5, 2014) (Cayer, J.) *report and recommendation adopted*, No. 3:13-CV-00678-MOC-DS, 2014 WL 4384024 (W.D.N.C. Sept. 3, 2014) (Cogburn, Jr., J.) (internal quotation marks omitted) (citing *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989)). She does not do so, however: she fails to identify any specific "false and misleading" statements in these EOBs. That she alleges other, irrelevant details about these EOBs—such as the dates they were sent—does not excuse her failure to identify the specific alleged misrepresentations on which her fraud allegations are based.

The EOBs themselves, which this Court may properly consider in connection with this motion to dismiss, also belie Plaintiff's unsupported assertions. Contrary to Plaintiff's suggestion in the Complaint (*e.g.*, Compl. ¶ 26), the EOBs do not make any representations about whether the flat rate paid to Optum is for "medical" expenses, "administrative" expenses, other expenses, or simply a markup by Optum for services provided by its network. *See*, *e.g.*, Ex. C (October 3, 2013 EOB). Plaintiff's failure to identify any specific misrepresentation by Aetna in these EOBs dooms her RICO claims. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291-93 (11th Cir. 2010) (rejecting

RICO claim against health insurers where plaintiffs failed to identify "specific misrepresentations" in the EOBs they challenged). Because Plaintiff "fails to specify a single predicate act of racketeering, [s]he certainly fails to articulate 'a *pattern* of racketeering activity,'" as is required under RICO. *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995).

Furthermore, Plaintiff fails to allege any facts to show that she—or anyone else—relied on these EOBs. A RICO plaintiff alleging predicate acts of wire or mail fraud cannot establish causation "without showing that *someone* relied" on the alleged misrepresentations. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008); *accord Traber v. Mortg. Elec. Registration Sys., Inc.*, No. 1:11cv126, 2012 WL 4088865, at *5 (W.D.N.C. Aug. 6, 2012) (Howell, J.) (dismissing RICO claim where "there are no allegations that Plaintiffs detrimentally relied on the fraudulent mailings, and that such mailings were the proximate cause of the alleged injury"), *aff'd*, No. 1:11-CV-126, 2012 WL 4089282 (W.D.N.C. Sept. 17, 2012) (Mullen, J.), *aff'd sub nom. Traber v. Mortg. Elec. Registration Sys., Inc.*, 510 F. App'x 307 (4th Cir. 2013). And the burden is on Plaintiff to plead facts regarding this element of RICO standing: it is not up to Aetna and this Court to "'infer' reliance . . . without some facts to support an inference." *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1038 (C.D. Cal. 2011).

Yet, Plaintiff's only attempt to satisfy this causation requirement is her generic assertion that Aetna's EOBs "caused [Aetna's] insureds and plans to pay the administrative fees."  Compl. ¶ 80; *see also id.* ¶ 84 (alleging that the "fraudulent scheme" caused payments by Plaintiff and insureds).  But these vague conclusory statements—regarding "administrative fees" paid by "insureds" due to unspecified statements in EOBs—are not sufficient to establish *Plaintiff's* standing under RICO.  *See Walters v. McMahen*, 684 F.3d 435, 444 (4th Cir. 2012) ("[T]he plaintiffs have not demonstrated that the false attestations themselves have had a direct negative impact on the plaintiffs' wages . . . .").

Nor are Plaintiff's allegations about remittance statements sent by Optum to Optum-contracted providers (*see* Compl. ¶ 29) sufficient to support her standing under RICO.  Plaintiff does not allege that the Optum-contracted providers who received these statements from Optum were deceived by them in any way, let alone that these statements to providers caused *Plaintiff* any injury to her business or property.  And in any event, any statements made by Optum to its contracted providers, even if relayed by the provider to Plaintiff, would not establish the requisite causal link to her injury.  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 271); *Dickerson v. TLC Lasik Ctrs.*, No. 6:10-CV-00685 JMC, 2011 WL 382443, at *10-11 (D.S.C. Feb. 3, 2011), *aff'd*, 493 F. App'x 390 (4th Cir. 2012).

Plaintiff therefore lacks statutory standing to sue under RICO, and these claims should be dismissed.

### 2. Plaintiff Has Not Adequately Alleged A RICO Enterprise.

#### a) The Alleged Multilateral RICO Enterprise

Plaintiff also fails to satisfy another required element of a RICO claim: the existence of a RICO enterprise. 18 U.S.C. § 1961(4); *id.* § 1962(c). Plaintiff's *only* assertion in support of the sprawling and largely undefined "associated-in-fact 'enterprise'" that she contends exists is in a single paragraph of the Complaint (Paragraph 74). Plaintiff alleges no facts, even in this paragraph, to support the existence of a multilateral RICO enterprise, such as how it supposedly functions or how all of its disparate pieces fit together. She says only that "Aetna and its Subcontractors, including Optum, have operated together in a coordinated manner in furtherance of a common purpose" to mask administrative fees as medical expenses. Compl. ¶ 74. This Court should reject as insufficient these conclusory fragments of a RICO claim. *See Iqbal*, 556 U.S. at 681 ("conclusory" allegations are "not entitled to be assumed true" in deciding whether complaint states a claim).

Plaintiff's allegations about the various other "Subcontractors" that are supposedly part of the same multilateral enterprise also underscore its implausibility. Plaintiff identifies two "Subcontractors" other than Optum—ASH and Columbine—and alleges only that they have entered into separate agreements

with Aetna, at different times, and with completely different contract terms. *See*, *e.g.*, Compl. ¶¶ 58-60 (alleging separate contracts by ASH and Columbine with Aetna); *see also id.* ¶ 22 (alleging only that "Aetna" has entered into contracts with "Optum and other Subcontractors, including American Specialty Health Group, Inc."). She does not allege that any of these Subcontractors interacts with any other Subcontractor, let alone that they all do so in the furtherance of a common goal or structure. Indeed, her allegation regarding Columbine is that Aetna's contract has not yet gone into effect, and she speculates that when it does its terms will involve a "processing fee" substantially different than the agreements with Optum or ASH. *Id.* ¶ 60. And she alleges nothing whatsoever about any of the other unidentified "Subcontractors" beyond Optum, ASH, and Columbine that supposedly are part of the same RICO enterprise.

Courts repeatedly have rejected similar attempts to plead a broad, ill-defined multilateral RICO enterprise consisting of various entities that merely contract with the same company—the so-called "rimless wheel" structure. *See*, *e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374-75 (3d Cir. 2010); *Vuyyuru v. Jadhav*, No. 3:10-CV-173, 2011 WL 1483725, at *17 (E.D. Va. Apr. 19, 2011), *aff'd*, 501 F. App'x 294 (4th Cir. 2012) (quoting *Ins. Brokerage*, 618 F.3d at 369); *Valcom, Inc. v. Vellardita*, No. 2:13-cv-3025-WHW-CLW, 2014 WL 1628431, at *6 (D.N.J. Apr. 23, 2014) (citing *Ins. Brokerage* and concluding that "[a] rimless

wheel *is not an enterprise*") (emphasis added); *Target Corp. v. LCH Pavement Consultants, LLC*, No. CIV. 12-1912 JNE/JJK, 2013 WL 2470148, at *4-6 (D. Minn. June 7, 2013) (recognizing that "the Third Circuit and several district courts have reasoned that a rimless hub-and-spokes organization does not qualify as an association-in-fact enterprise" and collecting cases and secondary sources); *see also Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002) (rejecting allegations of a "rimless wheel" structure as insufficient in an antitrust conspiracy case); Gregory P. Joseph, Civil RICO: A Definitive Guide 106 (3d ed. 2010) ("[T]he rimless hub-and-spoke configuration would not satisfy the 'relationships' prong of *Boyle*'s structure.").

The Third Circuit, for example, rejected allegations of a RICO enterprise where, as here, various entities contracted with the same company, because there were no allegations "plausibly suggesting collaboration" among the various contracting entities—just that they all had separate agreements with the same company. *Ins. Brokerage*, 618 F.3d at 374-75.[7] And in *Vuyyuru*, a district court in this Circuit followed the Third Circuit's reasoning, dismissing a RICO claim—and imposing Rule 11 sanctions—where "[i]n alleging his three associated-in-fact enterprises, the plaintiffs fail to disclose any relationship between the enterprises'

---

[7] The Third Circuit accepted an alternative theory, not presented here, by which the various entities acted together in a bid-rigging conspiracy. *See* 618 F.3d at 375.

members and fail to demonstrate their purposes with anything more than unsupported generalizations." 2011 WL 1483725, at *18, *25. Numerous other courts have rejected RICO claims involving similar deficiencies.[8]

As in these cases, Plaintiff's allegations here "do not plausibly imply anything more than parallel conduct by the [Subcontractors]," in entering into separate contracts with Aetna, and thus "they cannot support the inference that the [Subcontractors] 'associated together for a common purpose of engaging in a course of conduct.'" *Ins. Brokerage*, 618 F.3d at 374 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Rather, the Subcontractors merely "enter[ed] into separate agreements with a common defendant," but the organizations had "no connection with one another, other than the common defendant's involvement in each transaction." *Id.* at 327 (quoting *Dickson*, 309 F.3d at 203); *see id.* at 374

---

[8] *See*, *e.g.*, *Target Corp.*, 2013 WL 2470148, at *4-6 (dismissing RICO claim for failure to plausibly allege enterprise where complaint "allege[d] no rim" supporting a finding of "relationships among the Defendant paving contractors"); *McDonough v. First Am. Title Ins. Co.*, No. 10-CV-106-SM, 2011 WL 285685, at *6-7 (D.N.H. Jan. 28, 2011) (dismissing RICO claim where plaintiff's alleged "hub-and-spoke" enterprise alleged "only individual relationships between First American and its distinct title agents" and alleged "no relationships between the title agents—no connecting rim"); *accord Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) (affirming dismissal of RICO claims where plaintiff's allegations of an association-in-fact enterprise "do not indicate how the different actors are associated and do not suggest a group of persons acting together for a common purpose or course of conduct").

(relying on quoted analysis for purposes of RICO). Plaintiff's RICO claim based on an alleged multilateral RICO enterprise therefore should be dismissed.

### b) Alleged Bilateral Enterprise Between Aetna And Optum

Plaintiff also alleges, in the alternative, that "Aetna has conducted the affairs of multiple bilateral association-in-fact RICO enterprises through a pattern of racketeering activity." Compl. ¶ 75. But Plaintiff's fallback theory does not save her RICO claims.

Plaintiff's allegations of a bilateral enterprise involving Aetna and Optum fail because they show no more than a commercial relationship through which Aetna is pursuing its own, independent goal to control costs for its plan sponsors and members through negotiated rates. *See*, *e.g.*, *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (rejecting RICO enterprise based on agreement and related communications between two companies regarding a drug-switching program, because there was no reason to believe that "these communications or actions were undertaken on behalf of the *enterprise* as opposed to" the companies "in their individual capacities, to advance their individual self-interests").[9]

---

[9] Indeed, many of Plaintiff's allegations call it "Aetna's" alleged scheme, underscoring that the allegations are entirely consistent with Aetna's own goals—not a RICO enterprise. *E.g.*, Compl. ¶ 2 ("Aetna conceals its cost-shifting scheme

*(Cont'd on next page)*

Aside from Plaintiff's conclusory assertion that Aetna and Optum "operated together in a coordinated manner in furtherance of a common purpose" (*e.g.*, Compl. ¶ 74), Plaintiff fails to allege any "coordination" between Aetna and Optum to establish a RICO enterprise. *Boyle*, 556 U.S. at 947. A contractual arrangement through which a claims administrator contracts with a network of providers at a negotiated flat rate hardly suggests the existence of a RICO enterprise. As the Fourth Circuit has recognized, RICO (and the availability of treble damages to plaintiffs who assert it) is inherently subject to abuse, and therefore courts should "exercise caution 'to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions.'" *US Airline Pilots Ass'n*, 615 F.3d at 317 (quoting *Menasco*, 886 F.2d at 683); *accord Flip Mortg. Corp.*, 841 F.2d at 538.

For similar reasons, Plaintiff also fails to allege that Aetna has "conduct[ed] or participate[d]" in the affairs of any purported illegal enterprise. 18 U.S.C. § 1962(c). As the Supreme Court explained in *Reves v. Ernst & Young*, a defendant "is not liable" under Section 1962(c) "unless one has participated in the operation or management of the enterprise itself." 507 U.S. 170, 183 (1993). A

_____

*(Cont'd from previous page)*

by sending false Explanation of Benefits forms . . . ."); *id.* ¶ 28 ("Aetna's scheme forces the insured or plan to pay for more than covered medical expenses.").

plaintiff therefore is required to show "that the defendant[] conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Id.* at 185. Plaintiff alleges only that Aetna entered into the contract with Optum as a way to control healthcare costs for its plan members and customers—a goal entirely consistent with Aetna's own, independent interests. The interactions between Aetna and Optum "show[] only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes" of the allegedly wrongful activity. *United Food*, 719 F.3d at 855. Without an indication that "the cooperation in this case exceeded that inherent in every commercial transaction," the Complaint provides no basis "for inferring that [Aetna was] conducting the enterprise's affairs." *Id.* at 856. Plaintiff's fallback RICO theory, based on the alleged bilateral enterprise between Aetna and Optum, therefore should be dismissed.

### c) "Multiple Bilateral" Enterprises With Other "Subcontractors"

As part of Plaintiff's fallback RICO theory, she purports to allege not just a bilateral RICO enterprise between Aetna and Optum, but also "multiple bilateral" enterprises between Aetna and other "Subcontractors." Plaintiff pleads no facts to support the existence of any "bilateral" RICO enterprises with these other "Subcontractors." *See* Compl. ¶ 75.

With respect to ASH and Columbine, the only other "Subcontractors" mentioned by name in the Complaint, Plaintiff alleges only that Aetna has separate contracts with these companies for handling certain types of services (in unspecified markets for unspecified plans), and that the costs of the services are somehow misrepresented to the insureds and plans. *Id.* ¶¶ 22, 58-60, 79. Her allegations regarding Columbine are particularly spare: in a single paragraph of the Complaint, she speculates that when a contract becomes effective in the future, Aetna and Columbine "will use providers to improperly and deceptively collect Columbine's administrative fees." *Id.* ¶ 60. She does not allege any predicate acts or other elements of a RICO claim for ASH, Columbine, or any other "Subcontractors." And she comes nowhere close to satisfying Rule 9(b).

These bare-boned allegations are hardly sufficient to support the existence of RICO enterprises, involving "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946. And, even if Plaintiff could allege bilateral RICO enterprises involving any of these other "Subcontractors," she lacks standing to bring these claims, because these purported enterprises and unidentified predicate acts had nothing whatsoever to do with her own claims and therefore did not cause any injury to her business or property. *See Anza*, 547 U.S. at 461.

### 3. Plaintiff Has Not Alleged A RICO Conspiracy (Count II).

Separate from Plaintiff's allegation of a substantive RICO violation in Count I, she also asserts a separate RICO conspiracy claim, in Count II of the Complaint, under Section 1962(d). This claim fails for the same reasons set out above, because a RICO conspiracy claim must be dismissed if the complaint does not adequately allege "an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Because Plaintiff lacks standing and fails to allege a RICO enterprise, her follow-on Section 1962(d) claim fails. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 551 n.2 (4th Cir. 2001) ("Because the pleadings do not state a substantive RICO claim under § 1962(c), Plaintiffs' RICO conspiracy claim fails as well."); *see also Walters*, 684 F.3d at 445 ("[P]laintiffs have not alleged a plausible violation of either RICO predicate act. Thus, as a matter of law, the plaintiffs have failed to establish a claim supporting their allegation under 18 U.S.C. § 1962(d) of a conspiracy to violate 18 U.S.C. § 1962(c)."); *United Food*, 719 F.3d at 856-57.

### C. Plaintiff Fails To State A Claim Under ERISA (Counts III & IV)

### 1. Plaintiff Cannot Circumvent The Exhaustion Requirement.

Plaintiff asserts two counts under ERISA, under several subparts of 29 U.S.C. § 1132(a), which is ERISA's "comprehensive civil enforcement scheme." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (discussing structure of

ERISA's civil enforcement scheme); *see also Varity Corp. v. Howe*, 516 U.S. 489 (1996) (same).  Plaintiff seeks monetary relief, as well as other relief that she characterizes as "equitable" in nature, through these counts.  They are subject to dismissal for lack of standing for the same reason as Plaintiff's other claims, *see* Section III.A, *supra*.  These ERISA claims also should be dismissed for the additional reason that Plaintiff failed to exhaust administrative appeals.

"Although ERISA does not explicitly contain an exhaustion requirement, 'an ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132.'"  *Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999) (quoting *Makar v. Health Care Corp.*, 872 F.2d 80, 82 (4th Cir. 1989)).  "Requiring exhaustion of administrative remedies for such claims gives force to ERISA's explicit requirement that benefit plans covered by ERISA provide internal dispute resolution procedures for participants whose claims for benefits have been denied."  *Id.*  "Exhaustion also 'enables plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'"  *Id.* (quoting *Makar*, 872 F.2d at 83).

Plaintiff does not allege that she exhausted administrative appeals before filing suit; nor does she allege any facts to support an exception to the exhaustion

requirement, such as futility.  Rather, Plaintiff apparently seeks to avoid exhaustion altogether by attempting to frame her ERISA claims as statutory breach of fiduciary duty claims under Section 502(a)(2) and (a)(3), rather than as claims to enforce the terms of her plan under Section 502(a)(1)(B).  But regardless of which statutory subparts a plaintiff invokes, courts require exhaustion where, as here, the relief that Plaintiff seeks depends on the terms of her plan.  Here, Plaintiff's claim—and her sole possible basis to plead a concrete injury for standing—is that she paid "inflated" coinsurance amounts.  As Plaintiff alleges throughout her Complaint, the proper calculation of her benefits—and corresponding coinsurance requirements—is based on the terms of her plan.  *See*, *e.g.*, Compl. ¶¶ 30, 38-44.

Under ERISA's comprehensive civil enforcement provision, the exclusive avenue to pursue this relief is as a claim to "recover benefits due to h[er] under the terms of h[er] plan" or "to enforce h[er] rights under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 213-14 (2004) ("hold[ing] that" a claim "fall[s] within the scope of ERISA § 502(a)(1)(B)" where "interpretation of the terms of [a plaintiff's] benefit plan[] forms an essential part" of the claim (internal quotation marks omitted)).  Plaintiff expressly seeks relief under this statutory provision in Count IV of the Complaint, but because *both* ERISA counts depend on whether her claim was adjudicated properly under her plan's terms, they should be dismissed in their entirety for

failure to exhaust.  *See*, *e.g.*, *Ford v. Hartford Life & Accident Ins. Co*., No. 3:08CV281, 2009 WL 963594, at *7 (W.D.N.C. Apr. 8, 2009) (Reidinger, J.) ("Because Ford failed to exhaust [her] administrative remedies, the Court must dismiss this action.").

Plaintiff cannot avoid this result merely by invoking Aetna's statutory fiduciary duties under ERISA.  Under Fourth Circuit precedent, she is required to exhaust appeals before filing a "claim for breach of fiduciary duty," if it "is actually a claim for benefits where the resolution of the claim rests upon an interpretation and application of an *ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*."  *Smith*, 184 F.3d at 362.  In *Korotynska v. Met. Life Ins. Co.*, 474 F.3d 101 (4th Cir. 2006), the Fourth Circuit "join[ed] [its] sister circuits" and held that where "§ 1132(a)(1)(B) affords the plaintiff adequate relief for her benefits claim, . . . a cause of action under § 1132(a)(3) is . . . not appropriate."  *Id.* at 107.

The Fourth Circuit has explained that to hold otherwise would "encourage parties to avoid the implications of [Section 1132](a)(1)(B) by artful pleading; indeed *every* wrongful denial of benefits could be characterized as a breach of fiduciary duty under [Plaintiff's] theory."  *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996); *see also*, *e.g.*, *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir.

1995) ("To be sure, many employee claims for plan benefits may implicate statutory requirements imposed by ERISA . . . . But that prospect does not give a claimant the license to attach a 'statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue the congressionally mandated internal appeal procedures."); *accord Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 255 (3d Cir. 2002) (quoting *Diaz*). "In other words, when a plaintiff is merely claiming that a fiduciary misrepresented or misapplied an ERISA plan, the proper avenue for relief is a § 1132(a)(1)(B) claim for denial of benefits, not a claim for breach of fiduciary duty." *Fuller v. Liberty Life Assurance of Bos.*, 302 F. Supp. 2d 525, 533 (W.D.N.C. 2004) (Thornburg, J.) (citing *Smith*, 184 F.3d at 362).

Plaintiff's attempt to avoid exhaustion here, through artful pleading, is all the more apparent given that previous ERISA lawsuits involving similar theories—challenging "inflated" coinsurance amounts based on a claims administrator's use of subcontractors that allegedly charged hidden "administrative fees"—were dismissed for failure to exhaust administrative appeals. *See Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 14 F. Supp. 3d 619 (E.D. Pa. 2014), *appeal docketed* (No. 14-1832, 3d Cir. Apr. 9, 2014); *MRI Scan Center, LLC v. Nat'l Imaging Assocs., Inc.*, No. 13-60051-CIV, 2013 WL 1899689, at *7-8 (S.D. Fla. May 7, 2013). In *American Chiropractic*, a plan member claimed, under 29 U.S.C.

§ 1132(a)(1)(B), that Cigna and other defendants violated the terms of her plan by calculating her benefits based on the rate agreed to by Cigna and American Specialty Health.  Because the member "d[id] not dispute that she did not pursue administrative review of her claims," the court dismissed her ERISA claims "for failure to exhaust administrative remedies."  14 F. Supp. 3d at 626-27.  In *MRI Scan Center*, a provider challenged an insurer's relationship with a vendor under another provision of ERISA, 29 U.S.C. § 1132(a)(3).  The court dismissed for lack of standing, but noted that the case should be rejected because the plaintiff failed to plead exhaustion of administrative remedies.  2013 WL 1899689, at *7-8.

This Court should dismiss the ERISA claims here for failure to exhaust.  As in these other cases, Plaintiff's claims regarding proper calculation of her benefits and coinsurance—and Aetna's communications with her about her claims—require interpretation and application of her plan terms.  Plaintiff's "description of [her] claim as one for breach of [Aetna]'s fiduciary duty does not alter the fact that [she] is seeking medical benefits which [she] claims are owed to [her]."  *Coyne & Delany*, 102 F.3d at 714.  In addition, the administrative appeals process exists not just to correct any miscalculations, but also to address—or at least narrow—any disputes arising from communications or miscommunications about Plaintiff's claims.  In *Smith*, for example, the Fourth Circuit ruled that exhaustion was required where "the basis of the claim is a plan administrator's denial of benefits

*or an action by the defendant closely related to the plaintiff's claim for benefits,*

*such as withholding of information regarding the status of benefits*." *Smith*, 184

F.3d at 362 (emphasis added); *see also Reed v. Citigroup, Inc.*, No. 12-

2934(MAS)(DEA), 2015 WL 1517791, at *23 (D.N.J. Apr. 1, 2015) (plaintiff was

"clear[ly] . . . attempting to repackage his denial of benefits claim" as fiduciary-

duty breach where complaint included allegation that defendant "fail[ed] to

provide [plaintiff] with the proper information for perfecting his claim"); *Hall v.*

*Nat'l R.R. Passenger Corp.*, No. Civ.A. 03-1764 GK, 2005 WL 3276353, at *6-7

(D.D.C. Aug. 5, 2005) (fiduciary-duty claim actually unexhausted benefits claim

where defendant "misrepresent[ed] to participants that" the plan was validly

amended but plaintiff ultimately sought benefits under the plan).

Plaintiff is not entitled to circumvent ERISA's exhaustion requirements

simply because "the legal framework for obtaining [the appropriate] remedy is, to

the plaintiff's mind, undesirable." *Korotynska*, 474 F.3d at 108. Because Plaintiff

failed to exhaust her administrative remedies under the plan, the Court should

dismiss her ERISA claims (Counts III and IV).

### 2. Plaintiff Fails To Allege A Breach Of Fiduciary Duty.

As discussed above, Plaintiff impermissibly attempts to cast her ERISA

benefits claim as a statutory breach of fiduciary duty claim, in an attempt to

sidestep her failure to exhaust. That attempt also fails because Plaintiff fails to

allege a fiduciary-duty breach by Aetna, or any other basis to seek relief under Section 1132(a)(2) or (a)(3). *See Coyne & Delany*, 102 F.3d at 714-15.

Plaintiff alleges that Aetna breached fiduciary duties by "issuing EOBs that improperly characterize administrative fees as expenses for medical services," and by "failing to disclose to insureds and plans the charges for administrative fees." Compl. ¶ 95. But for all the reasons set out above, she fails to allege any specific misrepresentations by Aetna in its EOBs, let alone any that she relied on to her detriment. Both are critical elements in a "misrepresentation"-based fiduciary-duty claim. *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003) (Thornburg, J.); *see also In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2010 WL 3081359, at *15-17 (W.D.N.C. Aug. 6, 2010) (Reidinger, J.) (dismissing ERISA fiduciary-duty claims where plaintiffs "d[id] not identify any specific misrepresentations made in any of the Plan communications").

Plaintiff's remaining allegation that Aetna failed to disclose "charges for administrative fees" (Compl. ¶¶ 95-96) likewise fails to support any breach of fiduciary duty. Plaintiff does not identify any statutory or regulatory requirement for Aetna to disclose the type of information she apparently sought about Optum's flat rate payments in the absence of any request for it. Nor does Plaintiff provide any authority for her claim that Aetna should have provided additional details of

Optum's flat rate in an EOB.[10]

The Fourth Circuit also "has identified two situations in which an ERISA administrator has a fiduciary duty to advise beneficiaries" of certain information. "First, a fiduciary must give complete and accurate information to a beneficiary *if the beneficiary requests information*." *Phelps v. CT Enters.*, 194 F. App'x 120, 126 (4th Cir. 2006) (per curiam) (emphasis added) (citation omitted). Plaintiff's EOBs invited her to call with any questions she had about them (*see, e.g.*, Ex. D, at 7 (September 25, 2014 EOB)), but she does not allege that she ever did so, or that Aetna refused to provide any information that she requested. Moreover, when Plaintiff filed a complaint with North Carolina regulators, Aetna provided a written response, to the regulators and to Plaintiff, explaining its flat rate with Optum (Compl. ¶ 57); Plaintiff does not allege that this explanation was inaccurate or deceptive in any way. Plaintiff therefore cannot allege a violation of this duty.

Second, there is a "limited fiduciary duty" to "communicate to the beneficiary material facts affecting the interest of the beneficiary which [the fiduciary] knows the beneficiary does not know and which the beneficiary needs to know for his protection." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371,

---

[10]  ERISA regulations generally require that the EOB explain the reason for a denial (29 C.F.R. § 2560.503-1(g)(i)), but none of Plaintiff's services at issue in the Complaint were denied and she does not claim that any reasons for denial of coverage were concealed from her.

380, 381 (4th Cir. 2001) (internal quotation marks and citation omitted); *see*

*Phelps*, 194 F. App'x at 126. As multiple courts have recognized in applying

*Griggs*, this "affirmative duty to provide information . . . arises *only* when the

fiduciary has fostered the misunderstanding of facts material to participants'

. . . decisions." *DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453, 465

(E.D. Va. 2005) (emphasis added); *see also*, *e.g.*, *Davis v. Bowman Apple Prods.*

*Co.*, No. Civ.A 5:00CV00033, 2002 WL 535068, at *6 (W.D. Va. Mar. 29, 2002)

("The *Griggs* court considered it critical that the plaintiff's misunderstanding

. . . was fostered by the defendant's written explanation of benefits options."). As

the court in *DiFelice* stated, to read the obligation in *Griggs* "expansively" would

"require fiduciaries to disclose every piece of information that it is privy to which a

participant could later claim would have been material." 398 F. Supp. 2d at 464.

Such a requirement would "render meaningless the detailed disclosure

requirements of ERISA, and . . . subject fiduciaries to the onerous duty of

disclosing every piece of information which might conceivably be useful" to

participants. *Id.* at 464-65. "By including specific disclosure requirements in the

statute, Congress made clear that it did not intend such a result." *Id.* at 465.

    *Griggs* is also easily distinguishable. There, the plaintiff "opted for early

retirement" because the administrator provided written advice that the plaintiff

could roll over certain funds into another tax-advantaged account. 237 F.3d at 375.

The plaintiff made the election in reliance on this statement. The administrator then "learned that at least some portion" of the funds "could not be rolled over." *Id.* at 375-76, 382. The administrator did not disclose this information and instead made a distribution to the plaintiff, triggering tax liability that was directly contrary to the administrator's previous statements upon which the plaintiff's election was based. *Id.* at 373. The court agreed that "these facts establish a breach of fiduciary duty" because the administrator "should have informed Griggs about" the problem that it had fostered through its erroneous advice. *Id.* at 381-82. The court explained that this limited duty would arise only in similar circumstances, such as when a plan administrator learns that an ineligible person is contributing to a fund based on a mistaken impression that she is eligible for benefits. *See id.* at 381.

Plaintiff has not alleged any facts to trigger this duty here. *See*, *e.g.*, *DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 758, 769-71 (E.D. Va. 2005) (where there is no misunderstanding like in *Griggs*, "an ERISA fiduciary has no affirmative duty to provide information that is neither required by Part I of ERISA, nor specifically requested by a plan participant"); *see also Hecker v. Deere & Co.*, No. 06-C-719-S, 2007 WL 3270401, at *2 (W.D. Wis. Oct. 19, 2007) (disclosure cases "stand not for the proposition that fiduciaries must expand routine disclosures beyond what ERISA requires, but only that fiduciaries may breach their fiduciary duties by making . . . misleading affirmative statements to

participants and, having made such statements, may not hide behind the fact that they otherwise complied with regulatory requirements"). Plaintiff fails to allege a breach of fiduciary duty, and her ERISA claims should be dismissed on this basis.

Finally, Plaintiff's tacked-on claim that Aetna and Optum engaged in a "prohibited transaction" in violation of 29 U.S.C. § 1106(a)(1)(D) and (b)(1) also fails. The *entirety* of this theory consists of a bare assertion that "Defendants were and are subject to these prohibitions, which they have violated and are violating by deceptively using plan assets to pay administrative fees owed by Aetna to the Subcontractors." Compl. ¶ 97. These allegations fail to state a claim, as Plaintiff offers "no more than conclusions" that Aetna or anyone else has violated the statute. *Iqbal*, 556 U.S. at 679. For example, regarding Section 1106(a)(1)(D), Plaintiff offers no allegations to explain how Optum or any other "Subcontractor" was a "party in interest" or was involved in any "transaction" that "constitute[d] a . . . transfer . . . of any assets of the plan" besides receiving payments for the services they contracted to provide. Section 1106(a)(1) prohibits deals "struck with plan insiders, presumably not at arm's length," *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996), not contracts with *outsiders* like Optum to provide services, as Plaintiff alleges. Compl. ¶¶ 22, 34. Nor does Plaintiff allege that Aetna itself "deal[t] with . . . assets of the plan in [its] own interest or for [its] own account" (29 U.S.C. § 1106(b)(1)), as all of the alleged payments were made to Optum, not

Aetna. "[L]abels and conclusions . . . will not do," *Iqbal*, 556 U.S. at 678 (internal

quotation omitted), and Plaintiff's fiduciary-duty claims should be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Aetna respectfully requests that the Court dismiss

Plaintiff's Complaint under Rule 12(b)(1) for lack of standing or, alternatively,

under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted, this the 2nd day of September, 2015.

/s/ E. Thomison Holman

| | |
|---|---|
| E. Thomison Holman | Geoffrey M. Sigler* |
|   NC Bar No. 19380 | Jason Neal*† |
| Matthew S. Roberson | Gibson, Dunn & Crutcher LLP |
|   NC Bar No. 32901 | 1050 Connecticut Avenue, N.W. |
| Adams Hendon Carson Crow | Washington, DC 20036 |
| & Saenger, P.A. | GSigler@gibsondunn.com |
| 72 Patton Avenue | JENeal@gibsondunn.com |
| Asheville, NC 28801 | Tel: (202) 955-8500 |
| tholman@adamsfirm.com | Fax: (202) 530-9635 |
| mroberson@adamsfirm.com | |
| Tel: (828) 252-7381 | Richard J. Doren* |
| Fax: (828) 252-5018 | Gibson, Dunn & Crutcher LLP |
| | 333 South Grand Avenue |
| | Los Angeles, CA 90071 |
| | RDoren@gibsondunn.com |
| | Tel: (213) 229-7000 |
| | Fax: (213) 229-6038 |

\* *Admitted pro hac vice*
† *Admitted to practice only in California.  Practicing under supervision of principals of the Firm.*

*Counsel for Defendants Aetna Inc. and Aetna Life Insurance Company*

40

## CERTIFICATE OF SERVICE

I certify that I served the Brief in Support of Aetna's Motion to Dismiss Plaintiff's Complaint using the CM/ECF system on all counsel of record.

Larry McDevitt
David M. Wilkerson
Heather Whitaker Goldstein
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
Telephone: (828) 258-2991
Facsimile: (828) 257-2767
Email: lmcdevitt@vwlawfirm.com
dwilkerson@vwlawfirm.com
hgoldstein@vwlawfirm.com

OF COUNSEL:

D. Brian Hufford
Jason Cowart
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY 10022
(212) 897-3434
(212) 704-4256 (fax)
dbhufford@zuckerman.com
jcowart@zuckerman.com

Carl S. Kravitz
Jason M. Knott
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036
(202) 778-1800
(202) 822-8106 (fax)
ckravitz@zuckerman.com
jknott@zuckerman.com

*Counsel for Plaintiff Sandra M. Peters*,
on behalf of herself and all others similarly
situated

Mark T. Calloway
Michael R. Hoernlein
Brian D. Boone
Alston & Bird LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
mark.calloway@alston.com
michael.hoernlein@alston.com
brian.boone@alston.com

*Attorneys for Defendant OptumHealth Care Solutions, Inc.*

This the 2nd day of September, 2015.

/s/ E. Thomison Holman

41