UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

|  |  |  |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-cv-00109-MR |
| v. | ) ) | |
| AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY SUPPORTING OPTUMHEALTH CARE SOLUTIONS, INC.'S
MOTION TO DISMISS THE COMPLAINT**

Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Brian D. Boone (NC Bar No. 38910)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
mark.calloway@alston.com
michael.hoernlein@alston.com
brian.boone@alston.com

*Counsel for Defendant OptumHealth Care
Solutions, Inc.*

# **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ...............................................................................................1

STANDARD OF REVIEW ................................................................................1

   1.  Peters misstates the governing pleading standards ........................................1

RICO ...................................................................................................................3

   1.  Optum did not "falsify" the EOBs that Peters challenges .............................3

   2.  The Remittance Advices that Optum sent Peters's providers
were accurate ..................................................................................................4

   3.  There are no factual allegations plausibly suggesting that
Optum shared a common fraudulent purpose with Aetna .............................4

   4.  Peters misapprehends RICO's "conduct" element.........................................5

   5.  Peters failed to plead facts plausibly suggesting that Optum had
a motive to defraud her or anyone else .........................................................6

   6.  There was (is) no RICO "pattern" ..................................................................7

   7.  There was (is) no conspiratorial agreement ...................................................8

ERISA .................................................................................................................8

   1.  Peters has no answer for the regulations and cases showing that
Optum is not an ERISA fiduciary vis-à-vis Peter's plan...............................8

   2.  *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) does not allow Peters to pursue equitable
relief against Optum under ERISA § 502(a)(3) if Optum is not
an ERISA fiduciary.......................................................................................10

CONCLUSION ................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
   217 F.3d 225 (4th Cir. 2000)..................................................................................7

*Am. Dental Ass'n v. CIGNA Corp.*,
   605 F.3d 1283 (11th Cir. 2010)...........................................................................1, 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................... 2-3

*Baker v. Big Star Div. of the Grand Union Co.*,
   893 F.2d 288 (11th Cir. 1989)................................................................................9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................2, 8

*Benard v. Hoff*,
   727 F. Supp. 211 (D. Md. 1989) (Niemeyer, J.) ............................................... 4-5

*Boyle v. United States*,
   556 U.S. 938 (2009)................................................................................................4

*Brooks v. Blue Cross & Blue Shield of Fla., et al.*,
   No. 95-cv-405, 1995 WL 931702 (S.D. Fla. Sept. 22, 1995), *aff'd*
   116 F.3d 1364 (11th Cir. 1997) (per curiam)......................................................2

*Conley v. Gibson*,
   355 U.S. 41 (1957)..................................................................................................2

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)............................................................................... 6-7

*Goren v. New Vision Int'l, Inc.*,
   156 F.3d 721 (7th Cir. 1998)...............................................................................5, 6

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000).............................................................................................10

*Harrison v. Westinghouse Savannah River Co.*,
   176 F.3d 776 (4th Cir. 1999)............................................................................2

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012)............................................................................3

*McDannold v. Star Bank, N.A.*,
   261 F.3d 478 (6th Cir. 2001)..........................................................................10

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993).........................................................................................5

*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
   615 F.3d 312 (4th Cir. 2010)............................................................................7

*United States ex rel. Ahumada v. NISH*,
   756 F.3d 268 (4th Cir. 2014)............................................................................2

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
   525 F.3d 370 (4th Cir. 2008)............................................................................1

*United States v. Najjar*,
   300 F.3d 466 (4th Cir. 2002)............................................................................5

*Univ. of Md. at Baltimore v. Peat, Marwick, Main & Co.*,
   996 F.2d 1534 (3d Cir. 1993)....................................................................... 5-6

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012)............................................................................8

**Statutes & Rules**

18 U.S.C. § 1962(d) ...............................................................................................8

29 C.F.R. § 2509.75-8 D-2.....................................................................................9

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ......................................................10

Fed. R. Civ. P. 8.............................................................................................*passim*

Fed. R. Civ. P. 9.............................................................................................*passim*

# INTRODUCTION

Peters challenges EOBs that she admits Aetna (not Optum) sent her. By her own allegations, Optum never communicated with her. Peters also recognizes that Optum communicated accurately with her providers. Peters nevertheless attempts to conflate Aetna's EOBs with Optum's "accurate" communications with her providers. Peters's generic and undifferentiated allegations, however, do not satisfy Rule 9(b)'s heightened requirements for pleading fraud, nor can they sustain an ERISA claim. Indeed, Peters's claims against Optum are implausible on their face because Optum was contractually entitled to administrative fees from Aetna regardless of how Aetna characterized those fees in EOBs.

In keeping with this Court's rule that a reply should address only new matters raised in opposition (*see* Pretrial Order and Case Management Plan), Optum will not repeat its earlier arguments but will instead provide brief responses to certain points.

***Standard of Review***

   1. **Peters misstates the governing pleading standards.**

In the "LEGAL STANDARD" section of Peters's brief, Peters discusses only Rule 8(a). But Peters alleges fraud, so Rule 9(b)'s heightened pleading standard also applies. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)*; Am. Dental Ass'n v. CIGNA Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). In any case, the Complaint against Optum fails under both Rule 8(a) and Rule 9(b) because Peters can identify no Optum misstatement and has pleaded no facts suggesting that Optum did anything but provide administrative and other services to Aetna.

Instead of pleading the particularized facts required for a fraud claim, Peters lumps the Defendants together and sprinkles in words like "fraud," "conspiracy," and "enterprise." Rule 9(b) demands more. *See United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 281 n.9 (4th Cir. 2014) ("The second amended complaint also contains certain undifferentiated allegations against 'the [supplier] defendants' as a group. But because Rule 9(b) requires a relator to plead FCA claims with *particularity*—including by identifying the 'who[]' . . . of the alleged fraud—we consider only the [defendant]-specific allegations here."); *Brooks v. Blue Cross & Blue Shield of Fla., et al.*, No. 95-cv-405, 1995 WL 931702, at *19 (S.D. Fla. Sept. 22, 1995) *aff'd* 116 F.3d 1364, 1380-81 (11th Cir. 1997) (per curiam).

Peters eventually mentions Rule 9(b) later in her brief, arguing that "Rule 9(b) 'allows conclusory allegations of [the] defendant's knowledge as to the true facts and of [the] defendant's intent to deceive.'" Peters Opp. at 22 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)). But *Harrison* was decided in 1999, when the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41 (1957), still governed notice pleading under Rule 8(a) and informed how courts interpreted Rule 9(b)'s proviso that a defendant's state of mind may be alleged "generally." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court "retire[d]" *Conley*, explaining that Rule 8(a) requires "plausible" allegations, not "conclusory" ones. 550 U.S. 544, 555-56 (2007).

To be sure, under Rule 9(b), "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," but as the Supreme Court explained in *Ashcroft v. Iqbal*, "generally" does not mean "conclusorily":

2

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term ... Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.

556 U.S. 662, 686-87 (2009). Interpreting that passage from *Iqbal*, the Fourth Circuit has held that a plaintiff seeking to prove "conditions of the mind" must at least plead facts plausibly suggesting that the defendant possessed the requisite mental state. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). Peters's contention that she may allege intent in "conclusory" fashion is inconsistent with Supreme Court and Fourth Circuit precedent.

### *RICO*

#### 1. Optum did not "falsify" the EOBs that Peters challenges.

Peters contends that Aetna (the claims administrator for her plan) sent her misleading EOBs characterizing as medical expenses the fees that Optum charged Aetna. *E.g.*, Compl. ¶¶ 2, 29. Optum neither created nor sent those EOBs and had no say in their content. Peters does not allege to the contrary.

Yet in her opposition brief, Peters continues to rely on her threadbare, undifferentiated allegations that "Defendants . . . falsif[ied] the Explanation of Benefits that ERISA requires Aetna to give to insureds." Peters Opp. at 2. She pleaded no facts supporting those threadbare allegations because Optum had nothing to do with sending the EOBs; indeed, Peters has pleaded no facts suggesting that Optum helped create the EOBs that Aetna issued and sent to her.

3

### 2. The Remittance Advices that Optum sent Peters's providers were accurate.

Although Peters alleges that the Remittance Advices that Optum sent her providers "accurately report[ed] the provider's usual and customary charge, the allowed amount based on the in-network fee schedule, and the amount that [Optum] was going to pay the provider" (Compl.¶ 29), Peters tries to manufacture a misrepresentation out of those admittedly accurate communications by claiming that the Remittance Advices did not disclose the administrative fee that Optum charged Aetna. Peters Opp. at 24 n. 11 (citing Compl. ¶¶ 29, 55). But she never explains why such a disclosure would have been required or relevant. Optum did not charge the fee to Peters or to her providers. It charged the fee to Aetna—a fee that Optum received regardless of how Aetna characterized those fees to Peters. Aetna (not Optum) controlled how charges appeared on Peters's EOBs.

### 3. There are no factual allegations plausibly suggesting that Optum shared a common fraudulent purpose with Aetna.

Peters concedes that for an association-in-fact enterprise to exist, the parties must share a "common purpose." Peters Opp. at 19 (citing *Boyle v. United States*, 556 U.S. 938, 944 (2009)). But there are no factual allegations plausibly suggesting that Optum shared any purpose to misrepresent administrative fees as medical expenses. Optum had no reason to do so because Aetna was required to pay Optum those fees regardless of how Aetna characterized them to Peters.[1]

---

[1] Optum explained in its opening brief that Peters's RICO claims also fail because a corporation cannot be part of an association-in-fact enterprise. *See* Optum Br. at 12 n.3 (citing, among other things, *Benard v. Hoff*, 727 F. Supp. 211, 215 (D. Md. 1989) (Niemeyer, J.) ("Corporations cannot under RICO associate in fact to constitute an

4

### 4. Peters misapprehends RICO's "conduct" element.

In its opening brief, Optum explained that Peters failed to allege facts plausibly suggesting that Optum "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). On the contrary, she alleges that Optum served a "purely administrative role in claims processing and network management" (Compl. ¶ 33), which is a far cry from "participat[ing] in the conduct of the '*enterprise's* affairs'" as opposed to "its *own* affairs." *Reves*, 507 U.S. at 185 (emphasis in original).

Undeterred, Peters argues that she pleaded Optum's operation and management of a criminal enterprise by alleging that Optum charged Aetna administrative and other fees using CPT codes. Peters Opp. at 20 (citing Compl. ¶ 57). But Peters alleges that Aetna hired Optum to provide administrative and other services, and Peters acknowledges that Optum was entitled to charge a fee for those services. *See* Compl. ¶ 26 (acknowledging that Optum is "entitled to an administrative fee from Aetna to cover its cost of processing the claim and administering the network on behalf of Aetna"). Contrary to Peters's suggestion, "simply performing services for an enterprise, *even with knowledge of the enterprise's illicit nature*, is not enough to subject an individual to RICO liability under § 1962(c)." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) (emphasis added); *University of Md. at Baltimore v. Peat, Marwick, Main & Co.*,

---

enterprise.")). Peters contends that the Fourth Circuit rejected that argument in *United States v. Najjar*, 300 F.3d 466, 485 (4th Cir. 2002). Peters Opp. at 18 n.7. That is not true. The *Najjar* court did not address the argument.

996 F.2d 1534, 1538-39 (3d Cir. 1993) (same). At best, that is what Peters alleges about Optum.

Peters attempts to marginalize *Goren* and *Peat*, arguing that "Optum is not like the defendants in those cases, who were outsiders of the alleged single-entity enterprises." Peters Opp. at 21 n.8. She misses the point: The defendants in *Goren* and *Peat* were "outsiders" to the alleged criminal enterprises *because* they merely provided services to the alleged enterprises. The same is true of Optum here.

### 5. Peters failed to plead facts plausibly suggesting that Optum had a motive to defraud her or anyone else.

Peters also fails to allege facts that give rise to a "*strong* inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (emphasis in original, internal quotation marks and citation omitted). According to Peters, Optum served a "purely administrative role" (Compl. ¶ 33) and did not prepare or mail the EOBs that she claims were misleading. Optum had no motive to defraud Peters; again, Aetna was required to pay Optum for its services regardless of how Aetna characterized those fees in EOBs.

Peters responds by claiming that, outside of the securities-litigation context, the Fourth Circuit has never required a plaintiff to plead facts giving rise to a strong inference of fraudulent intent. Peters Opp. at 23 n.9. But it appears that the Fourth Circuit has not definitively specified what a civil RICO plaintiff pressing claims for mail or wire fraud must allege to raise an inference of fraudulent intent. The Second Circuit—which sees a substantial number of RICO cases—can offer guidance. It has held that a civil RICO plaintiff must plead facts giving rise to a strong inference of

6

fraudulent intent. *First Capital Asset Mgmt.*, 385 F.3d at 179. That approach makes sense; it is all too easy for a plaintiff to affix a RICO label to a run-of-the-mill business dispute. Requiring factual heft in scienter allegations maintains the distinction between run-of-the-mill business disputes and fraud.

Regardless, there is no need to debate whether a civil RICO plaintiff must allege facts giving rise to a strong inference of scienter or only a plausible one because Peters failed to allege facts plausibly suggesting that Optum intended to defraud her. Optum charged Aetna fees for services that Optum performed for Aetna. That does not suggest fraudulent intent.

### 6. There was (is) no RICO "pattern."

Of all the Circuit Courts of Appeals, the Fourth Circuit has interpreted RICO's pattern requirement the most restrictively, especially when the alleged predicate acts are mail or wire fraud:

> [W]e are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity. We have reserved RICO liability for ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (internal quotation marks and citations omitted); *see also U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (courts should "exercise caution to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions") (internal quotation marks and citation omitted). Peters brushes those

7

and other Fourth Circuit precedents aside, calling them "inapposite." Peters Opp. at 26. They are not inapposite; they are binding precedents that require dismissal of Peters's RICO claims against Optum, which rest on generic allegations of an implausible, narrowly focused "fraud." Indeed, if what Peters describes in her Complaint amounts to unlawful activity "whose scope and persistence pose a special threat to social well-being," then those limiting words have little meaning.

### 7. There was (is) no conspiratorial agreement.

Peters's conspiracy claim under 18 U.S.C. § 1962(d) fails because she failed to plead facts supporting a substantive RICO violation (*Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012)) or plausibly suggesting an illicit agreement. *See Twombly*, 550 U.S. at 556-57. Instead, Peters points to a handful of allegations in her Complaint that she claims show that Optum agreed with Aetna to defraud her. Peters Opp. at 29 (citing Compl. ¶¶ 24-27, 29, 55, 57, 80, 87-90). Most of those allegations do not mention Optum at all, and those that do describe standard business interactions, not a criminal conspiracy. The "obvious alternative explanation" for what Peters calls "conspiracy" is a normal business relationship. *Am. Dental Ass'n.*, 605 F.3d at 1295 (internal quotation marks omitted).

## *ERISA*

### 1. Peters has no answer for the regulations and cases showing that Optum is not an ERISA fiduciary vis-à-vis Peters's plan.

Peters's own allegations confirm that Optum served a "purely administrative role in claims processing and network management." Compl. ¶ 33. Under

8

Case 1:15-cv-00109-MR   Document 48   Filed 11/04/15   Page 12 of 16

and other Fourth Circuit precedents aside, calling them "inapposite." Peters Opp. at 26. They are not inapposite; they are binding precedents that require dismissal of Peters's RICO claims against Optum, which rest on generic allegations of an implausible, narrowly focused "fraud." Indeed, if what Peters describes in her Complaint amounts to unlawful activity "whose scope and persistence pose a special threat to social well-being," then those limiting words have little meaning.

### 7. There was (is) no conspiratorial agreement.

Peters's conspiracy claim under 18 U.S.C. § 1962(d) fails because she failed to plead facts supporting a substantive RICO violation (*Walters v. McMahen*, 684 F.3d 435, 445 (4th Cir. 2012)) or plausibly suggesting an illicit agreement. *See Twombly*, 550 U.S. at 556-57. Instead, Peters points to a handful of allegations in her Complaint that she claims show that Optum agreed with Aetna to defraud her. Peters Opp. at 29 (citing Compl. ¶¶ 24-27, 29, 55, 57, 80, 87-90). Most of those allegations do not mention Optum at all, and those that do describe standard business interactions, not a criminal conspiracy. The "obvious alternative explanation" for what Peters calls "conspiracy" is a normal business relationship. *Am. Dental Ass'n.*, 605 F.3d at 1295 (internal quotation marks omitted).

## *ERISA*

### 1. Peters has no answer for the regulations and cases showing that Optum is not an ERISA fiduciary vis-à-vis Peters's plan.

Peters's own allegations confirm that Optum served a "purely administrative role in claims processing and network management." Compl. ¶ 33. Under

Department of Labor regulations and Fourth Circuit precedent, that is not enough for fiduciary status. *See* Optum Br. at 17-18 and n.5.

Peters argues that Optum "cherry-pick[ed]" the one allegation from her Complaint to construct its argument, but that simply isn't true. Optum took Peters's allegations at face value; those allegations confirm that Optum is not an ERISA fiduciary. According to the Department of Labor, ministerial tasks, such as applying "rules determining eligibility for . . . benefits," "calculat[ing] . . . benefits," and "processing . . . claims," do not give rise to fiduciary status under ERISA. 29 C.F.R. § 2509.75-8 D-2. That is the sum of Peters's allegations against Optum. *See* Compl. ¶ 34 (alleging that Optum "receives, processes, and pays or denies benefits claims" for services provided by in-network chiropractors to Aetna insureds). The Circuit Courts are unanimous in holding that "[a]n insurance company does not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer." *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989).

There is no factual allegation in the Complaint that Optum established the coverage rules for Peters's plan because her employer created those eligibility rules, not Optum. Peters alleges that Aetna contracted with Optum for Optum to serve a "purely administrative role in claims processing and network management." Compl. ¶ 33. Those allegations do not suggest that Optum was a fiduciary vis-à-vis Peters's plan, so the ERISA claims against Optum fail.

9

## 2. *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), does not allow Peters to pursue equitable relief against Optum under ERISA § 502(a)(3) if Optum is not an ERISA fiduciary.

Finally, Peters argues that she "is not required to allege that Optum is a fiduciary in order to bring her section [502](a)(3) claim based on its participation in ERISA violations." Peters Opp. at 40 (citing *Harris Trust*). In their opening briefs, Optum and Aetna discussed other problems with Peters's § 502(a)(3) claim—not the least of which is that it fails to mention Optum by name (*see* Optum Br. at 19). On top of those problems, Peters now asks this Court to expand *Harris Trust* beyond anything that the Fourth Circuit has countenanced. There is no reason to do so here because Peters failed to allege facts remotely suggesting that Optum "knowing[ly] participat[ed] in a fiduciary's breach"—one of the prerequisites for recovery under ERISA § 502(a)(3) against a nonfiduciary—or that equitable relief running against Optum would be "appropriate" under the circumstances (another requirement for § 502(a)(3) relief). *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 487 (6th Cir. 2001). Optum charged Aetna a fee for services that it performed; that is not unlawful.

## CONCLUSION

This Court should dismiss the Complaint against Optum with prejudice.

Respectfully submitted this 4th day of November, 2015.

/s/ Mark T. Calloway
Mark T. Calloway (NC Bar No. 10822)
Michael R. Hoernlein (NC Bar No. 40419)
Brian D. Boone (NC Bar No. 38910)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000

10

101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
mark.calloway@alston.com
michael.hoernlein@alston.com
brian.boone@alston.com

*Counsel for Defendant OptumHealth Care Solutions, Inc.*

11

# CERTIFICATE OF SERVICE

I certify that on November 4, 2015, I filed and served a copy of this Reply on all counsel of record using the CM/ECF system.

/s/ Michael R. Hoernlein
Michael R. Hoernlein (NC Bar No. 40419)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
michael.hoernlein@alston.com

*Counsel for Defendant OptumHealth Care Solutions, Inc.*