UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| PLAINTIFF, | ) ) | |
| V. | ) ) | Case No. 1:15-cv-00109-MR |
| AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

**REPLY BRIEF IN SUPPORT OF AETNA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

I. PLAINTIFF STILL FAILS TO ALLEGE ARTICLE III INJURY. ...............2

    A. Plaintiff's Alleged $3.58 Overpayment. ...............................2

    B. Plaintiff's Claims For "Injunctive And Other Equitable Relief." .........4

    C. Plaintiff's Claims Challenging "Other" Subcontractors. ......................5

II. PLAINTIFF FAILS TO RESCUE HER RICO CLAIM. ...............................8

    A. RICO Statutory Standing. .....................................................8

    B. RICO's Enterprise Requirement. ...........................................9

        1. Alleged Multilateral Enterprise. ..................................9

        2. Alleged Bilateral Enterprises. ...................................11

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA. ....................12

    A. Plaintiff Cannot Circumvent Exhaustion. ...........................12

    B. Plaintiff Fails To Allege A Breach Of Fiduciary Duty. ......................17

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*,
No. 14-1832, 2015 WL 5313631 (3d Cir. Sept. 11, 2015) ........................... 13, 15

*Bible v. United Student Aid Funds, Inc.*,
799 F.3d 633 (7th Cir. 2015) ..............................................................11

*Borman v. Great Atl. & Pac. Tea Co.*,
64 F. App'x 524 (6th Cir. 2003) .........................................................16

*Byrd v. MacPapers, Inc.*,
961 F.2d 157 (11th Cir. 1992) ............................................................16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck Medco Managed Care, L.L.C.*,
433 F.3d 181 (2d Cir. 2005) .................................................................3

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................4

*Coleman v. Commonwealth Land Title Ins. Co.*,
No. 09-679, 2013 WL 4675713 (E.D. Pa. Aug. 30, 2013)................. 7, 10, 11, 12

*Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*,
102 F.3d 712 (4th Cir. 1996) ..............................................................15

*David v. Alphin*,
704 F.3d 327 (4th Cir. 2013) ................................................................5

*Deem v. BB&T Corp.*,
279 F. App'x 283 (4th Cir. 2008) .......................................................16

*Deem v. BB&T Corp.*,
No. 2:06-cv-00343, 2007 WL 1848033 (S.D. W. Va. June 25, 2007)...............16

Case 1:15-cv-00109-MR   Document 49   Filed 11/04/15   Page 3 of 25

*DeLuca v. Blue Cross Blue Shield of Mich.*,
   628 F.3d 743 (6th Cir. 2010) ...............................................................................18

*England v. Marriott Int'l, Inc.*,
   764 F. Supp. 2d 761 (D. Md. 2011)...................................................................15

*Ford v. Hartford Life & Acc. Ins. Co.*,
   No. 3:08CV281, 2009 WL 963594 (W.D.N.C. Apr. 8, 2009)
   (Reidinger, J.)......................................................................................................16

*Franco v. Conn. Gen. Life Ins. Co.*,
   No. 07-6039 (SRC), 2014 WL 2861428 (D.N.J. June 24, 2014) .......................14

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F. Supp. 2d 300 (S.D.N.Y. 2009) ...............................................................10

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   No. 05 Civ. 7896(SAS), 2009 WL 3334867 (S.D.N.Y. Oct. 14, 2009).............10

*Griggs v. E.I. DuPont de Nemours & Co.*,
   237 F.3d 371 (4th Cir. 2001) ..............................................................................17

*Hemi Grp., LLC v. City of New York, N.Y.*,
   559 U.S. 1 (2010)................................................................................................12

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
   751 F.3d 740 (6th Cir. 2014) ....................................................................... 17, 18

*In re WellNx Mktg. & Sales Pracs. Litig.*,
   673 F. Supp. 2d 43 (D. Mass. 2009)....................................................................6

*Lewis v. Casey*,
   518 U.S. 343 (1996)..............................................................................................6

*Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*,
   872 F.2d 80 (4th Cir. 1989) ................................................................................15

*N. Cypress Med. Ctr. Oper. Co. v. Cigna Healthcare*,
   781 F.3d 182 (5th Cir. 2015) ..........................................................................3, 13

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
   798 F.3d 125 (2d Cir. 2015) .................................................................15

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) .................................................................7

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) .................................................................5

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset*
   *Acceptance Corp.*,
   632 F.3d 762 (1st Cir. 2011) .................................................................6

*Prof'l Orthopedic Assocs., Pa., Cohen v. Horizon Blue Cross Blue Shield*
   *of N.J.*,
   No. 14-4731 (SRC), 2015 WL 5455820 (D.N.J. Sept. 16, 2015) ............. 3, 4, 13

*Roman v. Guapos III, Inc.*,
   970 F. Supp. 2d 407 (D. Md. 2013) ....................................................7

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) .........................................................................12

*Smith v. Sydnor*,
   184 F.3d 356 (4th Cir. 1999) .............................................................14

*Trotter v. Kennedy Krieger Inst., Inc.*,
   No. 11-3422-JKB, 2012 WL 3638778 (D. Md. Aug. 22, 2012) ........................16

Plaintiff's opposition brief confirms that her case centers on a single alleged coinsurance payment that she made for chiropractic services from an Optum-contracted provider in 2013. She contends that this $14.18 coinsurance payment was "inflated" by $3.58 because, in her view, Aetna should not have calculated her plan benefits for those services based on the flat rate that Aetna negotiated with Optum ($70.89). Opp. 13 (Doc. #46); Compl. ¶ 44 (Doc. #1).[1] She also challenges several other benefit determinations for services from Optum-contracted providers, which she also contends were inflated, though she did not pay anything or receive any bills for these services.

Plaintiff's case therefore is rooted in her contention that Aetna miscalculated her benefits for services by Optum-contracted chiropractors. She argues, however, that she is not asserting an ERISA benefits claim and therefore that she need not satisfy ERISA's pre-litigation exhaustion requirement. Plaintiff's claims and allegations show otherwise, however, and the Fourth Circuit has rejected attempts to avoid exhaustion through artful pleading.

Plaintiff also lacks any support for her attempt to expand this case beyond Optum into Aetna's separate contractual relationships with other companies that

---

[1]  Plaintiff asserts in her opposition brief that her coinsurance was inflated by $3.78, but her chart shows that the difference between the amount she allegedly paid and the amount she contends she should have paid is actually $3.58. Opp. 10.

1

had nothing to do with Plaintiff's claims, and about which she provides no supporting factual allegations. Likewise, her assertions of a sprawling RICO conspiracy (or a series of separate RICO enterprises) are unsupported and should be rejected due to numerous pleading deficiencies.

Plaintiff's Complaint should be dismissed in its entirety for all of the reasons set out in Aetna's opening brief, which will not be repeated here. In the alternative, Aetna respectfully submits that this case should be pared back to Plaintiff's core ERISA claim challenging Aetna's benefit calculations for services by Optum-contracted providers, and she should be required to exhaust her administrative appeals before pursuing that claim in this Court.

## I.    PLAINTIFF STILL FAILS TO ALLEGE ARTICLE III INJURY.

### A.    Plaintiff's Alleged $3.58 Overpayment.

Plaintiff alleges a single coinsurance payment that she contends was "inflated" by $3.58. Opp. 10; Compl. ¶ 44. But that contention is based on the demonstrably false premise that Aetna should have calculated her coinsurance based on a rate that *Optum* negotiated with and paid to the Optum-contracted chiropractor who treated her ($53). Plaintiff's own allegation is that this was *Optum's* rate, through Optum's downstream contract with the chiropractor. *E.g.*, Compl. ¶ 41. Aetna's contract was with Optum, and through that contract Aetna negotiated a flat rate of $70.89 for these services. Because *this* was the amount

2

Aetna (and its plans and plan members) owed for services by Optum-contacted chiropractors, it was the amount Aetna allowed on Plaintiff's claim—and the amount on which Plaintiff's coinsurance was calculated. *See also* Aetna Br. 8-11 (explaining how Plaintiff benefited from Aetna's negotiated flat rate with Optum).

Plaintiff's supposed overpayment therefore is illusory and fails to support an Article III injury. Further, even if this Court were to accept Plaintiff's allegation of a $3.58 overpayment as sufficient on this one claim, her other claims should be dismissed. Plaintiff argues that she has standing on these claims because "she is responsible for inflated coinsurance payments that she has not yet paid" (Opp. 14). But by her own allegations, she received these services in 2013 and 2014, never paid anything, never received a bill, and has no current intent to pay. Nor does she dispute that, on the face of one of her EOBs, she is not even arguably "responsible" for coinsurance. Ex. C, at 2; Compl. ¶ 50. These are not concrete injuries.

Plaintiff relies on *Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005), but that case merely shows that "plan participants who *paid* percentage coinsurance would incur injury if [the defendant inappropriately] favored . . . higher-cost drugs." *Id.* at 202 (emphasis added). Plaintiff also relies on two cases brought by out-of-network providers. *See N. Cypress Med. Ctr. Oper. Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015); *Prof'l Orthopedic Assocs., Pa.,*

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 14-4731 (SRC), 2015 WL 5455820 (D.N.J. Sept. 16, 2015). Unlike those cases, in which the providers sought payment for services rendered, here Plaintiff received the services that she wanted, without paying anything or receiving a bill. She lacks any concrete injury on these claims, and they should be dismissed.

### B. Plaintiff's Claims For "Injunctive And Other Equitable Relief."

Aetna demonstrated in its opening brief that Plaintiff lacks standing to seek injunctive relief because she fails to allege an immediate threat of future harm, as is required under controlling authorities. *See*, *e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); Aetna Br. 11-12. Plaintiff attempts to dismiss these cases on the basis that they did not involve ERISA claims (Opp. 15), but none of these authorities supports an exemption to Article III for ERISA cases.

Plaintiff also attempts to prop up these claims by speculating that "if" she "seeks treatment in the future from an Optum network provider" she may have to pay inflated coinsurance—or that she may at some point be asked to pay coinsurance for the services she received in 2013 and 2014. Opp. 15. The Supreme Court rejected that same speculative argument in *Lyons*, holding that a plaintiff needs to allege facts showing a "sufficient likelihood that [s]he will again be wronged in a similar way." 461 U.S. at 111. Plaintiff cannot do so here.

Lacking any support for injunctive relief, Plaintiff attempts to recast the

4

issue as whether she has standing to sue for "injunctive *and other equitable relief*." Opp. 15 (emphasis added). Plaintiff relies on *Pender v. Bank of America Corp.*, 788 F.3d 354 (4th Cir. 2015), in which the plaintiffs sought an accounting of profits from a 401(k) plan. Plaintiff argues that *Pender* shows a plaintiff "need only allege that Defendants breached their disclosure or other fiduciary obligations to her or her plan" to establish an Article III injury. Opp. 15. But in *Pender* the plaintiffs alleged more than a statutory violation: they alleged that the trustee refused to award them profits, earned on the assets of a 401(k) plan in which plaintiffs had a legally protected interest. 788 F.3d at 364, 367. This case involves a health plan, not a pension plan, and Plaintiff cannot identify any similar right to profits here. Moreover, Plaintiff's argument is directly contrary to *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013), in which the Fourth Circuit rejected the plaintiff's attempt to satisfy Article III merely by alleging a "deprivation of [a] statutory right to have [an ERISA plan] operated in accordance with ERISA's fiduciary requirements." *Id.* at 338. Plaintiff attempts to dismiss *David* in a footnote, but she cannot escape its holding that an alleged statutory violation, without more, does not satisfy Article III.

### C. Plaintiff's Claims Challenging "Other" Subcontractors.

Plaintiff offers only a single paragraph to support her extraordinary attempt to expand this case beyond Aetna's relationship with Optum to numerous other

"Subcontractors" that had nothing to do with her own claims or services.  Opp. 16.

She does not even attempt to rebut the numerous controlling authorities in Aetna's

opening brief, holding that "standing is not dispensed in gross" and that a plaintiff

alleging an injury from challenged conduct—here, Aetna's relationship with

Optum—does not "possess by virtue of that injury the necessary stake in litigating

conduct of another kind, although similar, to which [s]he has not been subject."

*Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (internal quotation omitted).

Plaintiff argues that because she has alleged injuries caused by Aetna and

Optum, she should be allowed to expand her case into other practices and

relationships of these defendants, even if they did not affect her.  She is wrong.

*See Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance

Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) ("Although Nomura Asset is a common

defendant with respect to all eight of the trusts [regarding which claims in a

putative class action were brought], claims against it . . . fail so far as they are

based on the six trusts whose certificates were purchased by no named plaintiff.

. . . [T]he named plaintiffs have no stake in establishing liability as to misconduct

involving the sales of those certificates."); *In re WellNx Mktg. & Sales Pracs.

Litig.*, 673 F. Supp. 2d 43 (D. Mass. 2009) (dismissing claims against defendant for

lack of standing because no named plaintiff bought that product, even though other

claim involving different product bought by plaintiffs could proceed).

6

Plaintiff ignores all of these authorities, instead relying on an unpublished out-of-circuit case, *Coleman v. Commonwealth Land Title Ins. Co.*, No. 09-679, 2013 WL 4675713 (E.D. Pa. Aug. 30, 2013). *Coleman*'s analysis and holding, however, concern *statutory standing* under RICO, not Article III standing. Plaintiff *also* lacks RICO statutory standing, *see infra*, but even before reaching this issue these claims fail for lack of Article III standing.

Plaintiff also argues that whether she can assert claims "based on similar harms . . . is an issue for class certification," suggesting that this Court should defer ruling on this issue—and thereby allow Plaintiff to conduct a fishing expedition in discovery. Opp. 16. That argument, too, is foreclosed by authorities in Aetna's opening brief, which Plaintiff again ignores. It is beyond dispute that it is Plaintiff's burden to plead facts supporting standing. Also, a named plaintiff in a class action "must allege and show that [she] personally ha[s] been injured, not that injury has been suffered by other, unidentified members of the class." *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (internal quotation omitted); *see also*, *e.g.*, Aetna Br. 13-14 & n.5 (collecting cases in accord).[2]

---

[2]  Plaintiff cites *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407 (D. Md. 2013), but that case does not help her. There, plaintiffs attempted to bring a collective action against five restaurants when the named plaintiffs had only worked at one of them. *Id.* at 409-10. The court dismissed all claims against the other restaurants, explaining that the named plaintiffs had not been injured by them and could not "use putative plaintiffs" to include them in the case. *Id.* at 416.

7

Finally, even if Plaintiff had standing, she fails to plead any facts to support a claim about these other "Subcontractors." Nor does she allege what services they provide, where they operate, how their services are billed, or what communications they make to plans or members about services. These numerous, obvious pleading deficiencies are an additional basis to dismiss these claims, and they underscore Plaintiff's lack of any personal stake under Article III.

## II. PLAINTIFF FAILS TO RESCUE HER RICO CLAIM.

### A. RICO Statutory Standing.

Plaintiff's opposition also confirms that she lacks RICO statutory standing. Even if Plaintiff's allegations were sufficient to support an "injury to business or property" (and they are not, for the reasons set out above), she fails to allege with particularity any predicate acts of mail or wire fraud that *caused* her to make the $3.58 payment. Plaintiff acknowledges "the high standard demanded by the Rule 9(b) particularity requirement" (Opp. 23), but she fails to identify any factual allegations that satisfy it.

Plaintiff argues that the EOBs "used false CPT codes, falsely claimed that Optum was the 'provider' of medical services, and falsely reported the amounts billed by the actual provider—the chiropractor or physical therapist." Opp. 24. But the EOBs merely show, accurately, that Optum was being paid for these services. And the CPT codes and amounts on her EOBs were not "fake" or

"false": they reflected, again accurately, the CPT codes and flat rates billed by and owed to Optum for these services. *See*, *e.g.*, Ex. A, at 3, 7.

Moreover, Plaintiff lacks any allegations that she *relied on*—or even that she saw—any of these alleged "false" statements in the EOBs. Plaintiff has no response to the authorities in Aetna's opening brief showing that, without any allegations of reliance, Plaintiff cannot establish the requisite causal link between the alleged RICO predicate acts of fraud (the EOB statements) and her alleged injury to business or property (her alleged $3.58 overpayment). Aetna Br. 15-20. Plaintiff *disagrees* with Aetna's coinsurance calculation, and that disputed calculation is reflected on the EOB, but that does not establish a causal link. If that were sufficient, virtually any ERISA benefits claim could be recast as a RICO claim merely by asserting that the EOB "falsely" states whatever benefits are being disputed. Plaintiff's RICO claims fail at the outset for lack of statutory standing.

### B. RICO's Enterprise Requirement.

#### 1. Alleged Multilateral Enterprise.

Plaintiff contends she has alleged a massive multilateral RICO enterprise involving not just Aetna and Optum, but also many other "Subcontractors" that supposedly have a "common purpose of collecting administrative fees under the guise that they are medical expenses." Opp. 17-18. But as Plaintiff's sole support, she cites parts of the Complaint (paragraphs 1-2, 26-31, 36, and 40-60) that

provide *no facts whatsoever* about any common purpose among the "Subcontractors."  Indeed, Plaintiff alleges virtually no facts at all about the many "Subcontractors" that supposedly joined with Aetna and Optum.  And she utterly fails to allege *any* cooperation, coordination, contact, or structure among them.

Under the authorities in Aetna's opening brief, this type of "rimless wheel"—a defendant with various separate contractual relationships—fails to satisfy *Boyle*'s "common purpose" requirement.  Aetna Br. 21-24.  The cases on which Plaintiff relies do not help her.  In *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F. Supp. 2d 300 (S.D.N.Y. 2009), the defendant who "was the heart of the enterprise" assembled "a collection of outside vendors, most of which were single-person entities owned and operated by [his] wife and friends."  *Id.* at 314.  That defendant "coordinate[d] the activities of the . . . defendants that made up the enterprise's outer edge" and "much of [the enterprise's] success . . . was attributable to the *extensive cooperation among the vendor defendants*," including one defendant's "bill[ing] Fuji for services purportedly provided by co-defendants . . . which [he] knew were never performed."  *Fuji Photo Film U.S.A., Inc. v. McNulty*, No. 05 Civ. 7896(SAS), 2009 WL 3334867, at *3 (S.D.N.Y. Oct. 14, 2009) (emphasis added).  In *Coleman*, the "outer edge" conspirators had "defined roles" and carried out "activities [that] had the same or similar purpose" with "an *expectation of reciprocity and cooperation among*" them.  2013 WL 4675713, at

10

*6 (emphasis added). The enterprise also had an "informal structure . . . for making decisions, and a mechanism for controlling and directing the affairs of the group." *Id.* at *7. Plaintiff provides no similar allegations here.

## 2.    Alleged Bilateral Enterprises.

Plaintiff's fallback theory of separate bilateral enterprises between Aetna and each of its Subcontractors also fails. As Plaintiff's own cases show, "run-of-the-mill commercial relationship[s]" are not RICO enterprises. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 655-56 (7th Cir. 2015). Even with respect to Aetna's contract with Optum, which is the focus of her Complaint, Plaintiff does not allege any "unusual degree of economic interdependence" or that the companies do not act "as completely separate entities." *Id.* at 656.

Plaintiff also fails to identify any factual allegations to support separate bilateral enterprises between Aetna and all of the "other" Subcontractors. Opp. 19. She points to paragraphs 21-31 and 58-60 of the Complaint, but taken together these paragraphs only allege that "they" (the various undifferentiated Subcontractors) have "contracts" with Aetna to provide "certain types of" services, pursuant to which Aetna has agreed to "reimburse" them by paying "fees." These vague descriptions could be applied to virtually any commercial relationship, and they fail to support the existence of one or more RICO enterprises.

Plaintiff also fails to allege any other elements of a RICO claim related to

11

these other bilateral enterprises.  She does not allege any predicate acts involving any of the "other" Subcontractors, and she simply asserts vaguely that various Subcontractors "work[]" with Aetna to "falsif[y] the EOBs that it sends" to unspecified "insureds."  Compl. ¶ 27.  Neither comes close to satisfying Rule 9(b).

She also lacks RICO statutory standing, because these other supposed enterprises concededly did not cause her injury to business or property.  She claims that she need not make this connection, but "the plaintiff only has standing if . . . he has been injured . . . by the conduct constituting the violation."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985); *see also Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 17-18 (2010) (civil RICO's "reach is limited by the requirement of a direct causal connection between the predicate wrong and the harm" suffered by plaintiff) (internal quotation omitted); Aetna Br. 15-20.[3]

## III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA.

### A.  Plaintiff Cannot Circumvent Exhaustion.

Plaintiff presents several arguments in an attempt to avoid the exhaustion requirement, all of which fail.  First, Plaintiff argues that exhaustion is required

---

[3]  Plaintiff again relies on *Coleman* (Opp. 19-20), but there the plaintiff alleged various facts to support the claimed RICO enterprises involving various title agents who worked together to advance a common purpose.  To the extent *Coleman* can be read to allow claims challenging single-entity or bilateral enterprises that did not injure a named plaintiff, that ruling should not be followed, because it cannot be squared with the controlling authorities discussed above and in Aetna's opening brief.

only for claims challenging a "denial of benefits," and because her claims are pleaded as statutory violations they need not be exhausted. Opp. 33-34. But under the authorities in Aetna's opening brief, all claims requiring interpretation or application of the plan—even if pleaded by the plaintiff as a breach of fiduciary duty—are subject to the exhaustion requirement. Aetna Br. 31-33.

Here, Plaintiff's allegations in her Complaint—and her arguments in her opposition brief—show that her claims depend on an application of her plan's terms: she contends that Aetna should not have treated its negotiated flat rate with Optum as the covered amount *under her plan* (in part because, she says, Optum did not satisfy the definition of a "provider" *under her plan*), and that in doing so Aetna inflated her coinsurance for these services. Compl. ¶¶ 38-39; Opp. 10, 13-14. Under Plaintiff's theory, both the covered amount *and* Plaintiff's coinsurance (20% of the covered amount) are controlled by *the terms of the plan*. Compl. ¶ 39. Plaintiff's standing cases, too, show that her claimed injury is derived entirely from her right to benefits *under her plan*. *See N. Cypress*, 781 F.3d at 192-93; *Prof'l Orthopedic Assocs.*, 2015 WL 5455820, at *1.[4]

---

[4] Plaintiff also ignores that two district courts have concluded that materially similar claims brought by her counsel required exhaustion before filing. *See* Aetna Br. 32-33. Although one of those decisions recently was vacated by the Third Circuit (*see Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, No. 14-1832, 2015 WL 5313631, at *2-3 & n.7 (3d Cir. Sept. 11, 2015)), that decision affected only the procedural posture in which to litigate the exhaustion issue in that case.

Plaintiff attempts to rely on *Smith v. Sydnor*, 184 F.3d 356 (4th Cir. 1999), but that case actually cuts against her. There, a participant in a 401(k) plan sued plan trustees who sold company stock at a "grossly undervalued price" to avoid paying plan members its full value. *Id.* at 359-60, 363. The Fourth Circuit reasoned that these breach-of-fiduciary-duty claims were not subject to the exhaustion requirement, because the plaintiff challenged the "*conduct* of [the trustees] that he claims has lowered the value of his and the other participants' 401(k) Plan accounts." *Id.* at 363. The court expressly distinguished cases like this one, involving a claim that "rests upon an interpretation and application of an *ERISA-regulated plan.*" *Id.* at 362. *Smith* also recognized that disputes arising from claim-related communications likewise require exhaustion. *Id.*[5]

Second, Plaintiff argues that she need not exhaust her administrative appeals because some of the statutory subparts invoked in the Complaint—Sections 502(a)(2) and (a)(3)—provide for equitable relief that is distinct from the monetary relief available under her plan through Section 502(a)(1)(B). Opp. 34-35. But

---

[5] Plaintiff suggests that she is not asserting a claim for benefits—or that Aetna has somehow conceded this—because her plan did not deny coverage for her services. Opp. 4, 33, 37. But it is well-established that claims for benefits are not limited to complete denials of coverage; they can also challenge alleged miscalculations of benefits. *See*, *e.g.*, *Franco v. Conn. Gen. Life Ins. Co.*, No. 07-6039 (SRC), 2014 WL 2861428, at *7 (D.N.J. June 24, 2014) (ERISA claims for benefits brought by plan participants, represented by Plaintiff's counsel here, challenging the allegedly flawed reimbursement rates paid by Cigna for covered out-of-network services).

Plaintiff cannot avoid exhaustion merely framing her claim as seeking "equitable" relief under other subparts. Plaintiff's reliance on *New York State Psychiatric Association, Inc. v. UnitedHealth Group*, 798 F.3d 125 (2d Cir. 2015), is misplaced, because that case did not address exhaustion at all, and involved claims under the Parity Act that are easily distinguishable.[6] In this Circuit, controlling authority specifically cautions against deferring to Plaintiff's framing of the claim, as "*every* wrongful denial of benefits" claim could conceivably be reframed as an alleged statutory violation. *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996).

Third, Plaintiff argues, based on the Third Circuit's decision in *American Chiropractic*, 2015 WL 5313631, that exhaustion is an affirmative defense that should not be litigated on the pleadings. Opp. 36. That argument is contrary to the law of this Circuit, which repeatedly has recognized that it is important for exhaustion to occur *before* the plaintiff's claims are litigated in federal court—and thus for the issue to be addressed at the outset. *See*, *e.g.*, *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 83 (4th Cir. 1989) (remanding the case to be dismissed so that the plaintiff could attempt to exhaust remedies if possible

---

[6] *England v. Marriott International, Inc.*, 764 F. Supp. 2d 761 (D. Md. 2011), is also distinguishable. In that case, the fiduciary-duty claims were for "failure to bring [stock option bonuses] into compliance with ERISA's vesting requirements." *Id.* at 780.

and then re-file the lawsuit).  Courts therefore have dismissed ERISA claims on the pleadings, for failure to allege exhaustion.  In *Deem v. BB&T Corp.*, 279 F. App'x 283, 284 (4th Cir. 2008) (per curiam), for example, the Fourth Circuit affirmed, based "on the reasoning of the district court," a decision granting a motion to dismiss the complaint for lack of exhaustion.  *See Deem v. BB&T Corp.*, No. 2:06-cv-00343, 2007 WL 1848033, at *5 (S.D. W. Va. June 25, 2007).  This Court has granted a motion for judgment on the pleadings due to lack of exhaustion, under the "same standard of review."  *Ford v. Hartford Life & Acc. Ins. Co.*, No. 3:08CV281, 2009 WL 963594, at *2, *6-7 (W.D.N.C. Apr. 8, 2009) (Reidinger, J.).[7]  Plaintiff relies on an unpublished Maryland district court decision denying a motion to dismiss, *Trotter v. Kennedy Krieger Institute, Inc.*, No. 11-3422-JKB, 2012 WL 3638778 (D. Md. Aug. 22, 2012), but that case did not fully address the above Fourth Circuit decisions or the purposes of the exhaustion requirement.

Finally, Peters argues she did not have meaningful access to administrative procedures and that exhaustion would have been futile.  Opp. 37-38.  She provides no factual allegations to support these assertions, and each of the EOBs from Aetna

---

[7]  *See also Borman v. Great Atl. & Pac. Tea Co.*, 64 F. App'x 524, 528-29 (6th Cir. 2003) (affirming dismissal where plaintiff "failed to adequately allege predicate exhaustion of available ERISA administrative remedies"); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160-61 (11th Cir. 1992) (affirming dismissal where "Plaintiff did not allege anything about" exhaustion).

provided clear information on appeal rights, through which she could have raised all of the issues she raises in this case.  *E.g.*, Ex. A, at 8.

### B.    Plaintiff Fails To Allege A Breach Of Fiduciary Duty.

Plaintiff also fails to identify factual allegations supporting a breach-of-fiduciary-duty claim against Aetna.  Opp. 30-32.  Plaintiff's allegations of misrepresentations in Aetna's EOBs are unsupported, as set out above, and she again fails to allege any reliance on these statements.  *See* Section II.A, *supra*.  Reliance is a required element of this claim, and her inability to allege it requires dismissal.  *See* Aetna Br. 35.

Plaintiff also argues that Aetna breached a duty to disclose information about Optum.  Opp. 30-31.  Plaintiff relies on *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001), in arguing that fiduciaries owe a general "duty to disclose material information" to plan participants.  Plaintiff overreads *Griggs*, however, and ignores the cases in Aetna's opening brief showing that *Griggs* imposes only a "limited" duty to disclose arising from facts that are not present here.  *See* Aetna Br. 36-39.  Except in the limited circumstances in *Griggs*, ERISA disclosure obligations are specifically defined by detailed statutes and regulations, and Plaintiff does not allege that Aetna violated any of those requirements here.

Plaintiff is able to muster only a single case regarding her conclusory "prohibited transaction" claims against Aetna.  That case, *Hi-Lex Controls, Inc. v.*

*Blue Cross Blue Shield of Michigan*, involved an administrator that added "mark-ups" to claim amounts from hospitals and then retained the difference for itself. 751 F.3d 740, 743 (6th Cir. 2014). Here, there are no allegations that Aetna added any mark-ups or retained any monies for itself: Aetna's EOBs accurately reflected the amount owed and paid to Optum for services by Optum-contracted providers. That amount was the product of a contract between Aetna and Optum designed to benefit Aetna's plans and members by allowing them access, at negotiated in-network rates, to Optum's network of providers. Plaintiff's suggestion that Aetna could or should have negotiated a different deal for these services is not a valid basis for a claim. *See DeLuca v. Blue Cross Blue Shield of Mich.*, 628 F.3d 743, 747-48 (6th Cir. 2010). Plaintiff fails to allege a breach of fiduciary duty.

\*     \*     \*

For the foregoing reasons, and for the reasons in Aetna's principal brief, Aetna respectfully requests that the Court dismiss Plaintiff's Complaint.


Respectfully submitted, this the 4th day of November, 2015.

/s/ E. Thomison Holman

E. Thomison Holman
  NC Bar No. 19380
Matthew S. Roberson
  NC Bar No. 32901
Adams Hendon Carson Crow
& Saenger, P.A.
72 Patton Avenue
Asheville, NC 28801
tholman@adamsfirm.com
mroberson@adamsfirm.com
Tel: (828) 252-7381
Fax: (828) 252-5018

Geoffrey M. Sigler*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
GSigler@gibsondunn.com
Tel: (202) 955-8500
Fax: (202) 530-9635

Richard J. Doren*
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
RDoren@gibsondunn.com
Tel: (213) 229-7000
Fax: (213) 229-6038
*Admitted pro hac vice*

*Counsel for Defendants Aetna Inc. and Aetna Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served the foregoing Reply Brief in Support of Aetna's Motion to Dismiss

Plaintiff's Complaint using the CM/ECF system on all counsel of record.

| | |
|---|---|
| Larry McDevitt<br>David M. Wilkerson<br>Heather Whitaker Goldstein<br>THE VAN WINKLE LAW FIRM<br>11 North Market Street<br>Asheville, NC 28801<br>Telephone: (828) 258-2991<br>Facsimile: (828) 257-2767<br>Email: lmcdevitt@vwlawfirm.com<br>dwilkerson@vwlawfirm.com<br>hgoldstein@vwlawfirm.com<br><br>OF COUNSEL:<br>D. Brian Hufford<br>Jason Cowart<br>ZUCKERMAN SPAEDER LLP<br>399 Park Avenue, 14th Floor<br>New York, NY 10022<br>(212) 897-3434<br>(212) 704-4256 (fax)<br>dbhufford@zuckerman.com<br>jcowart@zuckerman.com<br><br>Carl S. Kravitz<br>Jason M. Knott<br>ZUCKERMAN SPAEDER LLP<br>1800 M Street, N.W., Suite 1000<br>Washington, DC 20036<br>(202) 778-1800<br>(202) 822-8106 (fax)<br>ckravitz@zuckerman.com<br>jknott@zuckerman.com<br>*Counsel for Plaintiff Sandra M. Peters*, on behalf of<br>herself and all others similarly situated | Mark T. Calloway<br>Michael R. Hoernlein<br>Brian D. Boone<br>Alston & Bird LLP<br>Bank of America Plaza, Suite 4000<br>101 South Tryon Street<br>Charlotte, NC 28280<br>Tel: (704) 444-1000<br>Fax: (704) 444-1111<br>mark.calloway@alston.com<br>michael.hoernlein@alston.com<br>brian.boone@alston.com<br>*Attorneys for Defendant*<br>*OptumHealth Care Solutions, Inc.* |

This the 4th day of November, 2015.

/s/ E. Thomison Holman