## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## Case No. 1:15-cv-00109-MR

| | | |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLAINTIFF'S BRIEF IN** |
| | ) | **SUPPORT OF MOTION FOR** |
| AETNA INC., AETNA LIFE INSURANCE | ) | **CLASS CERTIFICATION** |
| COMPANY, and OPTUMHEALTH CARE | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................... 1

COMMON FACTS AND LAW ........................................................................... 2

    A. Aetna Administered Claims for the ERISA Plans. ............................................ 2

    B. Aetna Hired Optum and Adopted a Policy To Treat Optum's Administrative Fees as Medical Expenses and Force Members and Plans To Bear Them. ........................................................................................... 3

    C. At Aetna's Behest, Optum Buried Its Fees in Claims and Aetna Issued EOBs Characterizing Those Fees as Medical Expenses. ................................. 6

    D. The Class Definitions, Claims, and Relief ...................................................... 9

LEGAL STANDARD .......................................................................................... 10

ARGUMENT ....................................................................................................... 11

I.   THE PROPOSED CLASSES SATISFY RULE 23(a). ..................................... 11

    A. The Classes Are Sufficiently Numerous and Class Members Can Be Identified. ........................................................................................................ 11

    B. This Case Involves Central Common Questions. ........................................... 12

    C. Plaintiff's Claims Are Typical of Those of the Class. ................................... 14

    D. Plaintiff Satisfies the Adequacy Requirement. ............................................. 16

    E. Defendants' Illusory and Irrelevant Theories Do Not Defeat Class Certification. .................................................................................................... 17

II. THE CLASSES SHOULD BE CERTIFIED UNDER RULE 23(b)(1) AND (b)(3), OR, ALTERNATIVELY, UNDER RULE 23(c)(4). ............................... 19

    A. The Proposed Classes Should Be Certified Under Rule 23(b)(1). ............... 19

    B. The Proposed Classes May Also Be Certified Under Rule 23(b)(3). ........... 21

Case 1:15-cv-00109-MR   Document 144-1   Filed 08/03/18   Page 2 of 34

1. The Common Questions Will Predominate. .......................................21

2. This Class Action Is A Superior Method of Adjudication. ..................23

C.  An Issue Class Can Be Certified Under Rule 23(c)(4). ...............................25

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ...........................................................................................11

*Berry v. Schulman*,
   807 F.3d 600 (4th Cir. 2015) ...............................................................................11

*Brooks v. Educators Mut. Life Ins. Co.*,
   206 F.R.D. 96 (E.D. Pa. 2002) ............................................................................22

*Bussian v. DaimlerChrysler Corp.*,
   No. 1:04CV00387, 2007 WL 1752059 (M.D.N.C. June 18, 2007) .....................12

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*,
   6 F.3d 177 (4th Cir. 1993) ...................................................................................25

*CIGNA Corp. v. Amara*,
   563 U.S. 421 (2011) ...........................................................................................10

*Clark v. Duke Univ.*,
   No. 1:16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ....... 12, 18, 21

*DiFelice v. U.S. Airways*,
   235 F.R.D. 70 (E.D. Va. 2006)............................................................................20

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014)...................................................................... 12, 21

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ..............................................................................15

*Gunnells v. Healthplan Servs., Inc.*,
   348 F.3d 417 (4th Cir. 2003)...................................................................... *passim*

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
   530 U.S. 238 (2000) ...........................................................................................10

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010).........................................................................20

iv

*In re Schering Plough Co. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ..................................................................20

*In re Williams Companies ERISA Litig.*,
   231 F.R.D. 416 (N.D. Okla. 2005) .........................................................14

*Kennedy v. United Healthcare of Ohio, Inc.*,
   206 F.R.D. 191 (S.D. Ohio 2002) ..........................................................19

*Krakauer v. Dish Network L.L.C.*,
   311 F.R.D. 384 (M.D.N.C. 2015)............................................................12

*Laumann v. Nat'l Hockey League*,
   105 F. Supp. 3d 384 (S.D.N.Y. 2015)............................................. 18, 24

*N. Cypress Med. Ctr. Operating Co. Ltd. v. Aetna Life Ins. Co.*,
   No. 16-20674, 2018 WL 3635231 (5th Cir. July 31, 2018)....................3

*Owens v. Metro. Life Ins. Co.*,
   323 F.R.D. 411 (N.D. Ga. 2017) ............................................................22

*Pender v. Bank of Am. Corp.*,
   269 F.R.D. 589 (W.D.N.C. 2010) ..........................................................20

*Rozo v. Principal Life Ins. Co.*,
   No. 414CV000463JAJCFB, 2017 WL 2292834 (S.D. Iowa May 12, 2017) ......20

*Selby v. Principal Mut. Life Ins. Co.*,
   197 F.R.D. 48 (S.D.N.Y. 2000)..............................................................15

*Smith v. United HealthCare Servs., Inc.*,
   No. CIV 00-1163 ADM/AJB, 2002 WL 192565 (D. Minn. Feb. 5, 2002)..........15

*Stanford v. Foamex L.P.*,
   263 F.R.D. 156 (E.D. Pa. 2009) .............................................................19

*Tatum v. R.J. Reynolds Tobacco Co.*,
   254 F.R.D. 59 (M.D.N.C. 2008)..................................................... 14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................................13

*Ward v. Dixie Nat'l Life Ins. Co.*,
   595 F.3d 164 (4th Cir. 2010) ................................................................16

*West v. Cont'l Auto., Inc.*,
   No. 3:16-CV-502-FDW-DSC, 2017 WL 2470633 (W.D.N.C. June 7, 2017).....20

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. 2016) ..........................................................20

## STATUTES, REGULATIONS, AND RULES

29 U.S.C. § 1104 .......................................................................................9

29 U.S.C. § 1106 .....................................................................................10

29 U.S.C. § 1132(a)(1)(B) .........................................................................9

29 U.S.C. § 1132(a)(2) ..............................................................................9

29 U.S.C. § 1132(a)(3)...........................................................................9, 10

29 C.F.R. § 2560.503–1 .............................................................................1

Fed. R. Civ. P. 23(a)............................................................................ 10, 11

Fed. R. Civ. P. 23(a)(1)............................................................................11

Fed. R. Civ. P. 23(a)(2)....................................................................... 12, 14

Fed. R. Civ. P. 23(a)(3)............................................................................14

Fed. R. Civ. P. 23(a)(4)............................................................................16

Fed. R. Civ. P. 23(b) ...............................................................................11

Fed. R. Civ. P. 23(b)(1).................................................................. 19, 20, 21

Fed. R. Civ. P. 23(b)(1)(A) .............................................................. 19, 20

Fed. R. Civ. P. 23(b)(1)(B) ......................................................................20

Fed. R. Civ. P. 23(b)(3)................................................................... 19, 21, 23

Fed. R. Civ. P. 23(c)(4)................................................................ 11, 19, 20, 25

Fed. R. Civ. P. 23(g) ...............................................................17

Fed. R. Civ. P. 23(g)(1)..........................................................17

**MISCELLANEOUS**

Restatement (Third) of Trusts § 95 (2012) ..............................10

# INTRODUCTION

This case is appropriate for class certification because Plaintiff's claims challenge a common and systemic policy carried out by an ERISA claims administrator (Aetna[1]) and its subcontractor (Optum[2]). The claims depend on several core contentions that (1) Aetna was a fiduciary under ERISA, and Optum, even if not a fiduciary, is an ERISA party in interest; (2) Aetna adopted an enterprise-wide policy to treat Optum's administrative fees as covered medical expenses for purposes of its benefits determinations under its ERISA plans, so that Aetna could avoid paying those fees itself and instead shift them to members and plans; (3) Aetna issued ERISA-mandated[3] Explanations of Benefits ("EOBs") to members that consistently disguised the Optum fees; and (4) when it administered claims, Aetna forced the ERISA plans and their members to bear responsibility for the Optum fees, which Optum then collected.

This uniform conduct, and the issue of whether it violated ERISA, can be established using common evidence. This evidence includes the Aetna-Optum contracts that defined their respective roles and the method by which Optum would be paid for its work as Aetna's subcontractor; the related correspondence between

---

[1] Defendants Aetna Inc. and Aetna Life Insurance Company.

[2] Defendant Optum HealthCare Solutions, Inc.

[3] *See* 29 C.F.R. § 2560.503–1.

Aetna and Optum; Aetna's admission to the Department of Labor (DOL) that the plans did not permit it to charge plans and members for Optum's administrative fees; and claim-by-claim data and sample EOBs showing that Aetna forced thousands of class members and their plans to bear responsibility for Optum's fees and lied about it.

Based on this common proof, the Court will be able to resolve the issues that are central to Plaintiff's claims. The Court will be able to determine whether Aetna served in a fiduciary role when it implemented the challenged scheme in its benefits determinations, whether Aetna breached its fiduciary obligations when it adopted and carried out the scheme, whether Optum benefited from the scheme, and the amount of the improper gains that Defendants obtained from the scheme.

Because this case involves a common practice, common evidence, and common legal requirements imposed by ERISA, it is ideal for class certification.

## COMMON FACTS AND LAW

### A. Aetna Administered Claims for the ERISA Plans.

Aetna insures, underwrites, and administers health benefits plans. Aetna Answer (ECF No. 56) ¶ 5. Aetna's responsibilities under its plans include "process[ing] claims, adjudicat[ing] claims, and enter[ing] into network

participation agreements with providers." *Id.* ¶ 21.[4] Aetna "typically receives compensation from plan sponsors of self-funded plans" in exchange for providing these services (and others); those fees are set forth in its "administrative services agreements." *Id.* ¶ 14.[5]

### B. Aetna Hired Optum and Adopted a Policy To Treat Optum's Administrative Fees as Medical Expenses and Force Members and Plans To Bear Them.

In 2011, Aetna sought to hire Optum to contract with physical therapy providers on its behalf and process claims for member benefits submitted by those providers. *See* Ex.[6] 1, Feb. 28, 2011 email. ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

---

[4] *See also N. Cypress Med. Ctr. Operating Co. Ltd. v. Aetna Life Ins. Co.*, No. 16-20674, 2018 WL 3635231, at *1 (5th Cir. July 31, 2018) ("Aetna plays a key role in its plans. Aetna administers the plans by processing and adjudicating claims … Ultimately, Aetna maintains discretion to construe the plan terms and determine available benefits.").

[5] Self-funded, or self-insured, plans are plans for which employers are "financially responsible for payment of benefits owed under the terms of the plan." *Id.* ¶ 4.

[6] "Ex." refers to the exhibits to the Declaration of Jason M. Knott in support of this motion.



To carry out its objective of "burying" Optum's fee in claims, Aetna agreed that Optum would be paid using a "per-visit" or "case rate" for each claim (the "Optum Rate"). Ex. 11, Network Reference Tool at AETNA-PETERS-00003057-58; Ex. 26, Aetna 30(b)(6) Dep. Tr. 101:19-102:7. ███████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████

Aetna adopted a policy that it would treat Optum as the "provider" and the Optum Rate (including Optum's administrative fees) as the "negotiated charge" and a "covered expense" under all of its plans. Ex. 26, Aetna 30(b)(6) Dep. 39:1-42:23, 150:9-154:22. When a plan was responsible to pay for some or all of a claim, Aetna would determine both the plan's and the member's financial responsibility using the Optum Rate, rather than the amount the medical provider

4

had agreed to receive for the treatment rendered. *Id.* at 170:10-22.[7] By this practice, Optum was able to collect an administrative fee from the payments made by the plans as compensation for its services to Aetna. ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████

Yet Aetna falsely told the plans that they would "not be charged any fees" for Optum's work. Ex. 13 at AETNA-PETERS-00006734 (script for use with plan sponsors). Aetna also decided that the written terms of the plans were irrelevant to its policy: its corporate designee could not say that anyone actually reviewed the plans before adopting the policy, and Aetna has said—in opposing Plaintiff's motion to compel—that it received no legal advice on whether the plans permitted this practice. *See* Ex. 26, Aetna 30(b)(6) Dep. 89:7-93:11; Aetna's Mem. in Opp'n to Mot. to Compel at 13 (ECF No. 101).

Aetna has now admitted that its plans did not require plans or members to

---

[7] According to Defendants, when a claim was subject to a member's deductible—such that the plan did not have to pay for the claim—Defendants did not instruct the provider to collect the Optum Rate, and Optum itself did not seek to collect it, such that the member was only responsible to pay the actual provider's agreed charge. *See* Ex. 26, Aetna 30(b)(6) Dep. 167:7-168:12.

pay for Optum's administrative fees. Specifically, after this litigation began, in response to an inquiry from the Department of Labor, Aetna proposed to amend the term "Negotiated Charge" in its plans to mean the "amount Aetna has agreed to pay "directly to the … network provider *or to a third party vendor (including any administrative fee that may be included in the amount paid) … ."). See* Ex. 14, Aetna "OPTUM/DOL" submission, at AETNA-PETERS-00065834 (emphasis added). Aetna proposed to add this italicized language because its plans did not actually require plans or members to pay Optum's administrative fees.[8]

### C. At Aetna's Behest, Optum Buried Its Fees in Claims and Aetna Issued EOBs Characterizing Those Fees as Medical Expenses.



Ex. 11, Network Reference Tool at AETNA-PETERS-00003057

---

[8] In discovery, Aetna produced the Mars Plan and a sample of its other plans. The plans are similar in what they require members and plans to pay. For the class claims in the sample, Plaintiff has prepared a summary of the language of the Aetna sample plans. *See* Ex. 15. Plaintiff can submit the plans themselves to the Court upon request.

6

("All other codes on the claim are what was billed to Optum Health from the actual Provider of Service."). ████████████████████████████████████████

████████████████████████████████████████████ CPT codes are supposed to be used to represent medical services that were actually performed, not a subcontractor's administrative fee. ████████████████████████████

████████████████████████████████████████████████████

████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

████████████████████████████████████████████

7

Defendants repeated this identical conduct as to other claims for Ms. Peters and the putative class members, as their claim-by-claim data shows. *See* Ex. 24, Expert Report of Constantijn Panis, Ph.D. ("Panis Rpt."), ¶¶ 37, 39; *see also* Ex.

20-22 (Aetna EOB and Optum files for other members reflecting the same practice).

**D.    The Class Definitions, Claims, and Relief**

Plaintiff seeks relief for Defendants' misconduct under ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3). *See* Compl. ¶¶ 91-101. She seeks to represent the following class for purposes of her claims under 29 U.S.C. § 1132(a)(2) and (a)(3):

> Plan Claim Class
> All participants or beneficiaries of self-insured ERISA health insurance plans administered by Aetna for which plan responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

Plaintiff also seeks to represent the following class for purposes of her claims under 29 U.S.C. § 1132(a)(1)(B) and (a)(3):

> Member Claim Class
> All participants or beneficiaries of ERISA health insurance plans insured or administered by Aetna for whom coinsurance responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

Ms. Peters seeks the following class-wide relief under ERISA. First, she seeks a declaration that Aetna (1) breached its fiduciary duties of care and loyalty under 29 U.S.C. § 1104 when it (a) caused members and plans to bear responsibility for Optum's administrative fees and (b) misrepresented Optum's

9

fees in EOBs; and (ii) engaged in prohibited transactions under 29 U.S.C. § 1106 by using plan assets to pay Optum's administrative fees. Second, she seeks a declaration that Optum is liable under 29 U.S.C. § 1132(a)(3) for its role in aiding Aetna's fiduciary violations.[9] Third, Ms. Peters seeks equitable relief[10] for Defendants' misconduct. Fourth, she seeks an order requiring Aetna to send corrected EOBs.

## LEGAL STANDARD

"[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and ... promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal quotation marks and citation omitted).

"Under Rule 23(a) of the Federal Rules of Civil Procedure, a party seeking class certification … first must demonstrate" (1) numerosity; (2) common

---

[9] Optum can be held liable under this provision even if it is not a fiduciary. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245 (2000) (permitting 502(a)(3) claim against "nonfiduciary party in interest" to prohibited transaction).

[10] Equitable relief available under ERISA includes "relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011); *see also* Restatement (Third) of Trusts § 95 (2012)Clar (describing equitable remedies available to beneficiary for breaches of trust, including an accounting, restitution, and surcharge).

10

questions of law or fact; (3) typicality of the class claims or defenses; and (4) adequacy of the class representatives and their counsel to fairly and adequately protect the interests of the class. *Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). "[I]f the requirements of Rule 23(a) are met, then the proposed class must fit within one of the three types of classes listed in Rule 23(b)." *Id.* In addition, Rule 23(c)(4) permits an action to be "maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

While "a court's class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, … Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (citations and other marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

## ARGUMENT

## I.   THE PROPOSED CLASSES SATISFY RULE 23(a).

### A.   The Classes Are Sufficiently Numerous and Class Members Can Be Identified.

The proposed classes meet the numerosity requirements of Rule 23(a)(1). Defendants' own data shows tens of thousands of members of Aetna ERISA plans who, like Ms. Peters, were subjected to Defendants' challenged conduct. *See* Ex.

24, Panis Rpt. ¶¶ 34, 41, 47. The data shows, for each claim, the precise amount of the administrative fee that Defendants forced the member and plan to bear—*i.e.*, the amount by which the member's and the plan's financial responsibility exceeded the actual provider's negotiated charge. *See* Ex. 24, Panis Rpt. ¶¶ 30-31 (describing methodology for identifying overcharges using Optum data); ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ This same evidence shows that proposed classes are also "readily identifiable or ascertainable," using "objective criteria." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 390 (M.D.N.C. 2015) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)).

### B.    This Case Involves Central Common Questions.

Rule 23(a)(2)'s commonality test "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Bussian v. DaimlerChrysler Corp.*, No. 1:04CV00387, 2007 WL 1752059, at *5 (M.D.N.C. June 18, 2007). Thus, even a single common question can suffice to satisfy the commonality requirement. *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018) (internal quotation marks and citation omitted).

12

Here, the classes' claims depend on a number of "common contention[s]." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). These contentions are "of such a nature that [they are] capable of classwide resolution—which means that determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

Specifically, the classes' claims will rise or fall on four common contentions, each supported by one law—ERISA. First, Plaintiff contends that Aetna acted as a fiduciary under ERISA, as shown by the evidence that it adjudicated class members' claims, sent EOBs, and collected Optum's administrative fees from plans, and that Optum was a party in interest under ERISA.[11]

Second, Plaintiff contends that Aetna breached its fiduciary duties of care and loyalty, based on the evidence that it adopted and carried out a policy forcing plans and members to bear financial responsibility for Optum's administrative fees so that it could avoid paying those fees, without regard for what its plans actually permitted.

Third, Plaintiff contends that Aetna engaged in prohibited transactions and that Optum participated in those transactions, based on the evidence of the Aetna-

---

[11] Indeed, the Court's recent discovery ruling that Optum was not "functioning as a fiduciary" as to Aetna's plans, ECF No. 141 at 14, shows that fiduciary and party in interest status can be addressed with common proof.

13

Optum contracts and the claim data reflecting payments from the plans that were used to pay Optum's administrative fees.

Fourth, Plaintiff contends that Aetna made misrepresentations and omissions about Optum's fees in EOBs, based on the evidence of Aetna's policy of charging for Optum's administrative fees, the standardized descriptions of member and plan responsibility in the EOBs, and the claim-by-claim data used to generate them.

Regardless of how the Court ultimately resolves these common contentions, each of them is sufficient to satisfy Rule 23(a)(2). *See Gunnells*, 348 F.3d at 428 (whether defendant "owed a fiduciary duty of care to Plaintiffs, … breached that duty, … [and] mismanaged claims" were "issues common to all potential class members"); *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (common questions of whether defendants were fiduciaries, breached fiduciary duties, and damaged an ERISA plan were each "independently sufficient to satisfy the commonality requirement"); *In re Williams Companies ERISA Litig.*, 231 F.R.D. 416, 421-22 (N.D. Okla. 2005) ("Here, multiple common issues exist, including but not limited to: whether Defendants acted as fiduciaries; what duties, if any, were violated by Defendants with respect to the Plan; and whether Defendants improperly withheld information from Plan participants.").

### C. Plaintiff's Claims Are Typical of Those of the Class.

Under Rule 23(a)(3), "[t]he typicality requirement is met where the claims

asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum*, 254 F.R.D at 65. For the reasons described above, the claims of Ms. Peters and the putative classes are based on the same alleged facts and legal theory—that Aetna had a policy of forcing plans and members to bear financial responsibility for Optum's administrative fees and that this policy violated ERISA. Thus, her claims meet the typicality requirement. *See Smith v. United HealthCare Servs., Inc.*, No. CIV 00-1163 ADM/AJB, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002) (holding that plaintiffs satisfied typicality requirement by alleging that they were charged co-pays in excess of what plans required, and rejecting argument that "existence of thousands of different employer-sponsored health care benefits plans in 29 states" rendered claims atypical).

This is true even for those class members who were members of other plans. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998) (once an ERISA plaintiff has established standing, "there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong"); *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 58 n. 14 (S.D.N.Y. 2000) ("When the named plaintiff in an ERISA class action challenges an insurer's practice that the insurer engages in with respect to all of its plans, the court will allow the plaintiff to represent persons

in the insurer's other insurance plans.").

### D. Plaintiff Satisfies the Adequacy Requirement.

Ms. Peters also meets Rule 23(a)(4)'s requirement that she "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). First, Ms. Peters's interests are aligned with the interests of other class members, all of whom have the same interest in identifying and correcting fiduciary breaches, remedying the improper charges for Optum's administrative fees, and requiring Defendants to provide correct and complete information about benefits. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (no conflict between class members when "all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants"). [12]

Second, Ms. Peters has a sufficient understanding of her claims and is committed to pursuing this action. *See* Ex. 29, Peters Dep. 14:21-16:11, 25:6-8, 28:10-20. She has reviewed court documents, monitored the progress of the litigation and participated in decisions about it, responded to discovery, and sat for a deposition. *See id.* 21:21-22:8; 23:18-25, 24:24-25:5, 30:14-31:6.

---

[12] Moreover, even if Defendants could identify "potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class," those potential conflicts "will not bar a finding of adequacy." *Gunnells*, 348 F.3d at 431 n.7.

Third, Ms. Peters is represented by qualified and competent counsel at The Van Winkle Law Firm and Zuckerman Spaeder LLP, who should be appointed as class counsel under Fed. R. Civ. P. 23(g).[13] These firms have invested significant time and resources in this matter and are committed to doing so in the future to represent the classes and vigorously prosecute the claims. Ms. Peters's counsel are also qualified and experienced in actions like these. *See* Ex. 30 (biographical information regarding firms and counsel)

### E. Defendants' Illusory and Irrelevant Theories Do Not Defeat Class Certification.

Defendants argue, through their expert, that the classes should not be certified because for deductible claims, Aetna and Optum did not instruct providers to collect the Optum Rate yet still credited member deductibles for those amounts and, for other coinsurance claims, the Optum Rate was lower than the provider's agreed charge. They also suggest that Aetna's agreement with Optum was economically beneficial to members because the pre-agreement rates that Aetna paid to the actual providers were generally higher than the Optum Rate. These

---

[13] Fed. R. Civ. P. 23(g)(1) states that a "court that certifies a class must appoint class counsel," and "[i]n appointing class counsel, the court … must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class …"

17

arguments ignore the thrust of Plaintiff's claims.

Plaintiff is seeking a remedy for the particular claims as to which Aetna inflated the amounts that it told members and plans to pay and actively sought to force members and plans to bear those amounts. She is not seeking to invalidate the Aetna-Optum agreement in its entirety, prohibit the subcontracting of claims administration services, or revisit the handling of other claims. If Aetna did not seek to force members and plans to bear Optum's administrative fees—as in the case of deductible claims or claims where the Optum Rate was lower than the provider's agreed charge—then those are not class claims. If anything, Defendants' practice of *not* imposing the full Optum Rate on members for deductible claims further underscores that Aetna acted improperly when it did so.

Moreover, any purported economic "benefit" from Defendants' unlawful actions does not, as a matter of law, create a conflict among the class members. *See Clark*, 2018 WL 1801946, at *8 (rejecting argument that class members' profits from imprudent investments would create conflicts, and stating "no class member is entitled to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants as a whole, even if those breaches may have provided an individual benefit"); *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 406 (S.D.N.Y. 2015) (rejecting theory that collateral benefits to class members from illegal restraints created an intra-class conflict, and stating that "even if it has

18

positive effects, illegal conduct remains illegal").

## II. THE CLASSES SHOULD BE CERTIFIED UNDER RULE 23(b)(1) AND (b)(3), OR, ALTERNATIVELY, UNDER RULE 23(c)(4).

Plaintiff seeks class certification under Fed. R. Civ. P. 23(b)(1) and/or 23(b)(3) to pursue declaratory and equitable monetary relief. In the alternative, to promote judicial economy and address the reality that it makes little economic sense for most class members to individually litigate these claims (because the cost of doing so will exceed the value of the claims), Plaintiff seeks certification of each of the proffered common questions as an issue class under Fed. R. Civ. P. 23(c)(4).

### A. The Proposed Classes Should Be Certified Under Rule 23(b)(1).

Ms. Peters's claims should be certified under Rule 23(b)(1)(A) because the "prosecut[ion of] separate actions by … individual class members would create a risk of … inconsistent or varying adjudications ... that would establish incompatible standards of conduct for [Defendants]." *See* Fed. R. Civ. P. 23(b)(1)(A). "Simply stated, one court could determine that [D]efendant[s'] practice violated ERISA, while another court could conclude that it did not." *Kennedy v. United Healthcare of Ohio, Inc.*, 206 F.R.D. 191, 198 (S.D. Ohio 2002); *see also Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009) ("the risk of inconsistent orders … satisfies Rule 23(b)(1)(A)").

Congress created a private right of action under ERISA and imposed fiduciary duties so that those who exercise discretion for ERISA plans will be

19

subject to uniform standards; for this reason, claims like those asserted here are "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held." *In re Schering Plough Co. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009).[14] Moreover, because the classes' claims "implicate misconduct" in the administration of the plans, "disparate lawsuits by individual participants would raise the specter of 'varying adjudications.'" *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010).[15]

Ms. Peters's claims also meet the test for certification under Rule 23(b)(1)(B), because adjudications as to individual class members, "as a practical

---

[14] *See also Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 598 (W.D.N.C. 2010) ("ERISA cases in which plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A)."); *DiFelice v. U.S. Airways*, 235 F.R.D. 70, 80 (E.D. Va. 2006) ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1) ...."); Fed. R. Civ. P. 23(c)(4) advisory committee's note to 1966 amendment (same).

[15] *See also West v. Cont'l Auto., Inc.*, No. 3:16-CV-502-FDW-DSC, 2017 WL 2470633, at *3 (W.D.N.C. June 7, 2017) ("there is a risk that class members would seek relief in other courts, leading to conflicting interpretations of the Plan and conflicting remedies"); *Rozo v. Principal Life Ins. Co.*, No. 414CV000463JAJCFB, 2017 WL 2292834, at *5 (S.D. Iowa May 12, 2017) (certifying class of participants in ERISA plans who invested with Principal, because of "very real risk of inconsistent judgments regarding Principal's fiduciary status and its compliance with ERISA standards, as well as the amount of money to which plan participants are entitled"); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 133 (N.D. Cal. 2016) (certifying class of members of health insurance plans administered by United, because "challenges to the Guidelines by multiple class members could subject UBH to inconsistent legal obligations with respect to the use of its Guidelines, making certification under Rule 23(b)(1) appropriate").

20

matter, would be dispositive of the interests of the other members not parties … or would substantially impair or impede their ability to protect their interests." *See* Fed. R. Civ. P. 23(b)(1); *Clark*, 2018 WL 1801946, at \*9.[16]

**B.    The Proposed Classes May Also Be Certified Under Rule 23(b)(3).**

The Court should also certify the proposed classes under Rule 23(b)(3). That rule permits class certification where common questions "predominate" over individual questions and where a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." The Rule 23(b)(3) inquiry is meant to "ensure that class certification … achieve[s] economies of time, effort, and expense, and promote[s] … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Gunnells*, 348 F.3d at 424.

**1.    The Common Questions Will Predominate.**

"The predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation." *EQT Prod. Co.*, 764 F.3d at 366. In other words, common issues will predominate where the defendants' common conduct is important to their ultimate liability. *See id.*

---

[16] Ms. Peters's requests for equitable monetary relief do not preclude certification under Rule 23(b)(1). *See Clark*, 2018 WL 1801946, at \*10.

That is clearly so here. What matters is that all class members were insured by ERISA plans and that ERISA provides common definitions for the type of conduct that renders one a fiduciary or a party in interest and the type of conduct that violates fiduciary duties or constitutes prohibited transactions. These common legal standards, coupled with the common evidence showing that Aetna engaged in a policy of forcing members and plans to bear responsibility for Optum's fees and sent misleading EOBs, easily satisfies the predominance requirement. *See Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 423 (N.D. Ga. 2017) ("common issues predominate[d] over individualized issues" where plaintiff alleged that claim administrator obtained unjust enrichment from practice of investing life insurance benefits); *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96, 104 (E.D. Pa. 2002) (certifying ERISA class based on insurer's common scheme of applying cap on payments). Although Defendants will almost certainly present a laundry list of purportedly "individualized issues"—such as non-material variations in the language of the plans (which Aetna didn't even consider when it adopted the practice), or differences in the dates of service or particular treatment class members received (which are largely irrelevant)—these issues do not overbear the central common questions.

Similarly, the issue of the classes' entitlement to equitable monetary relief also predominates over the insignificant issues that Defendants may raise, such as

speculation about providers' billing or forgiveness of member obligations. Defendants' own data details precisely the amount of the financial responsibility that members and plans were assessed for Optum's fees, and how much Optum paid to the actual providers and kept for itself. Plaintiff's expert has described formulaic class-wide approaches to calculating Defendants' unjust enrichment, using their own data. *See* Ex. 24, Panis Rpt. ¶¶ 35-38, 41-44. Thus, the data alone can be used to determine how much Defendants owe.[17]

### 2. This Class Action Is A Superior Method of Adjudication.

A class action is also vastly superior to other means of litigating these claims. Rule 23(b)(3) describes various factors that the Court should consider in evaluating whether a class action is suitable, all of which favor certification here. There is no evidence that individual class members would rather control their own actions rather than have Ms. Peters serve as their representative. There is only one other case of which we are aware that involves these same issues; it was filed merely three months ago. *See Goss v. Aetna, Inc.*, No. 1:18-cv-02298-SCJ (N.D. Ga.) (complaint filed April 16, 2018). Indeed, there is little incentive for individual plaintiffs to bring their cases independently because the cost of doing so far exceeds the value of their individual claims. For example, the amount of the

---

[17] Indeed, using its claims data, Optum has calculated its "net cash flow" from the challenged practice and disclosed it in an interrogatory response. Ex. 23, Optum's Supp'l Interrog. Resp. to Plaintiff's Interrog. No. 2.

Optum administrative fee that Ms. Peters was forced to bear as part of her coinsurance responsibility was $151.42—a relatively small amount far exceeded by the costs of litigation. *See* Ex. 25, Pl.'s 2d Supp'l Interrog. Resp., Ex. A.

Ms. Peters has already spent over three years prosecuting her claims in this Court. All evidence indicates that this is an appropriate and desirable forum in which to resolve Ms. Peters's and the class's claims.

Any manageability issues that Defendants may present will not outweigh the significant benefits of class-wide adjudication. "Class certification … promotes consistency of results, giving defendants the benefit of finality and repose." *Gunnells*, 348 F.3d at 427. Moreover, if this case does not proceed as a class action and Ms. Peters prevails on her individual claims, class members subjected to the exact same conduct will be left without any relief. *See id.* at 426 ("class certification will provide access to the courts for those with claims that would be uneconomical if brought in an individual action"). It is unrealistic to expect that each of these members will file individual lawsuits over the relatively small amounts of administrative fee that Defendants buried in each medical claim— amounts that added up to millions in gains for Defendants. *See Laumann*, 105 F. Supp. 3d at 407 (…"[I]t is this asymmetry—that the very same conduct can reap enormous gain for the perpetrators, while simultaneously causing every individual consumer a small amount of harm—that makes class actions such an important

24

enforcement device.").

## C. An Issue Class Can Be Certified Under Rule 23(c)(4).

Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." The Fourth Circuit has "admonished district courts to 'take full advantage of the provision in [Rule 23(c)(4)] permitting class treatment of separate issues' in order 'to promote the use of the class device and to reduce the range of disputed issues' in complex litigation." *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir. 1993). This is particularly appropriate here, where the asymmetrical impact of Defendants' conduct makes individual litigation economically irrational for most class members. Although certification of one or more of the common issues will not completely address this reality, it will at least reduce the time, effort, and expense that putative class members will have to exert to resolve their individual claims. It will also promote judicial efficiency by ensuring that those common issues are decided once and for all.

## CONCLUSION

Plaintiff hereby requests that the Court enter an order granting her motion for class certification, appointing her as class representative and the Van Winkle Law Firm and Zuckerman Spaeder LLP as class counsel, and requiring the parties to confer and submit a proposed class notice within 14 days of its order.

25

Dated: August 3, 2018

/s/ Larry McDevitt

D. Brian Hufford*                    Larry McDevitt
Jason S. Cowart*                     David M. Wilkerson
Nell Z. Peyser*                      THE VAN WINKLE LAW FIRM
ZUCKERMAN SPAEDER LLP                11 North Market Street
485 Madison Avenue, 10th Floor       Asheville, NC 28801
New York, NY 10022                   (828) 258-2991
(212) 704-9600                       lmcdevitt@vwlawfirm.com
(212) 704-4256 (fax)
dbhufford@zuckerman.com              Carl S. Kravitz*
                                     Jason M. Knott*
                                     ZUCKERMAN SPAEDER LLP
                                     1800 M Street, N.W., Suite 1000
                                     Washington, DC 20036
                                     (202) 778-1800
                                     (202) 822-8106 (fax)
                                     jknott@zuckerman.com

                                     *Attorneys for Plaintiff Sandra M. Peters,
                                     on behalf of herself and all others
                                     similarly situated*

                                     *\* pro hac vice*

26

## CERTIFICATE OF SERVICE

I hereby certify that, on the 3rd day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification via electronic means to the attorneys of record at that time.

*/s/ Larry McDevitt*
Larry McDevitt

27