# EXHIBIT 26

1          UNITED STATES DISTRICT COURT

      FOR THE WESTERN DISTRICT OF NORTH CAROLINA

2               ASHEVILLE DIVISION

3                    -   -   -

4   SANDRA M. PETERS, on      : Case No.

    behalf of herself and     :

5   all others similarly      : 1:15-cv-00109-MR

    situated,                 :

6        Plaintiff,           :

                              :

7        vs.                  :

                              :

8   AETNA INC., AETNA LIFE    :

    INSURANCE COMPANY, and    :

9   OPTUMHEALTH CARE          :

    SOLUTIONS INC.,           :

10       Defendants.          :

11                   -   -   -

12               March 1, 2018

13      CONFIDENTIAL - ATTORNEYS' EYES ONLY

14                   -   -   -

15

16           Videotape 30(b)(6) deposition of

17   Aetna, through JENNIFER ALLISON CROSS

18   HENNIGAN, held at the offices of Elliott

19   Greenleaf, 925 Harvest Drive, Suite 300,

20   Blue Bell, Pennsylvania 19422, beginning at

21   9:11 a.m., before LINDA ROSSI-RIOS, a

22   Federally Approved RPR, CCR and Notary

23   Public.

24                   -   -   -

Case 1:15-cv-00109-MR ~ Document 144-28 ~ Filed 08/03/18 ~ Page 2 of 22

Page 39



8          MR. SIGLER:  Objection to form.

9      Go ahead.

20     BY MR. KNOTT:

Case 1:15-cv-00109-MR ~ Document 144-28 ~ Filed 08/03/18 ~ Page 3 of 22

4           MR. SIGLER:  We're going to

5      object to that as calling for

6      privileged information and direct the

7      witness not to answer.

8  BY MR. KNOTT:

9      Q.     Are you going to follow your

10 counsel's instruction?

11          A.     I am.



10          Q.     How many different types of
11    plans does Aetna have?
12                MR. SIGLER:  Objection to form.
13          Foundation.  Beyond the scope of the
14          notice.
15                THE WITNESS:  Just in context
16          of this, I reviewed a number of
17          different types of plan -- you know,
18          plans and plan documents.
19    BY MR. KNOTT:

Case 1:15-cv-00109-MR   Document 144-28   Filed 08/03/18   Page 5 of 22

Page 42



8          MR. SIGLER:  Objection.  Form.

14   BY MR. KNOTT:

24          Q.    Let's talk a little more about

Case 1:15-cv-00109-MR ~ Document 144-28 ~ Filed 08/03/18 ~ Page 6 of 22



Case 1:15-cv-00109-MR ~ Document 144-28 ~ Filed 08/03/18 ~ Page 7 of 22



Case 1:15-cv-00109-MR ~ Document 144-28 ~ Filed 08/03/18 ~ Page 8 of 22



24          MR. SIGLER:  Objection to form.



17        BY MR. KNOTT:

22                    MR. SIGLER:  Objection.  Form.

23              Foundation.  Outside the scope of the

24              notice.

Case 1:15-cv-00109-MR  Document 144-28  Filed 08/03/18  Page 10 of 22



```
12                    -   -   -

13              (Exhibit 6, Provider Agreement,

14         AETNA-PETERS-00001648 - 00001749, was

15         previously marked for identification.)

16                    -   -   -

17    BY MR. KNOTT:

18              Q.    I'm going to hand you what's

19    previously been marked as Exhibit 6.

20                    MR. KNOTT:  And we'll have

21         Exhibits 122, 123 and 124.

22                    -   -   -

23              (Exhibit 122, Contract Oversight

24         Claims Management Agreement,
```

Case 1:15-cv-00109-MR Document 144-28 Filed 08/03/18 Page 11 of 22

1          therapist as part of OptumHealth Care

2          Solutions.  It's listed as -- you

3          know, Optum Healthcare is listed as

4          well.

5     BY MR. KNOTT:

6          Q.     And then it goes on to say,

7     "Additionally, each contracted provider is

8     listed under the OptumHealth POIN of 55132

9     for the purposes of claims billed by

10    OptumHealth for payment."

11               Did I read that correctly?

12         A.     Correct.

13         Q.     What is a POIN?

14         A.     We at Aetna refer to it as a

15    POIN.  It's really basically a hierarchy of

16    identifying providers in an organization

17    such as Optum and giving it -- and tying it

18    to an identifiable number like 55132.

19         Q.     Under the header

20    "Reimburse/Contract Methodology" it says,

21    "Case rate reimbursement to OptumHealth."

22               Did I read that correctly?

23         A.     Yes.

24         Q.     The case rate reimbursement is

Case 1:15-cv-00109-MR   Document 144-28   Filed 08/03/18   Page 12 of 22

1    the per visit rate we've talked about.

2    Correct?

3            A.      Yes.

4            Q.      There's not a different

5    methodology described here for different

6    plans.  Is that correct?

7            A.      Correct.

8            Q.      Exhibit 125 relates to physical

9    and occupational therapy.  Correct?

10           A.      Yes.

11                          -   -   -

12                   (Exhibit 126, Network Reference

13           Tool, AETNA-PETERS-00003096 - 00003099,

14           was marked for identification.)

15                          -   -   -

16   BY MR. KNOTT:

17           Q.      The court reporter has handed

18   you what's been marked as Exhibit 126,

19   AETNA-PETERS-00003096.  Just let me know

20   when you're ready.

21           A.      Okay.

22           Q.      What is Exhibit 126?

23           A.      This is the NRT page for the

24   Optum chiropractic arrangement for North

1    Responses to Plaintiff's First Set of

2    Interrogatories Numbers 3 and 9.  Do you see

3    that?

4           A.     Yes.

5           Q.     And looking at the page

6    number 11 with the certification, is that

7    your signature there?

8           A.     Yes, it is.

9           Q.     Is it Aetna's position that it

10   was permitted under the terms of its plans

11   to treat Optum's per visit rate as a covered

12   expense?

13          A.     I think as we outlined here,

14   all of the various provisions that Aetna has

15   among other varying plan summary documents

16   and Administrative Services Agreements that

17   speaks to Aetna's network and what's a

18   network provided and what's a negotiated

19   charge, that, yes, we're able to enter into

20   a project with Optum.

21          Q.     And treat Optum's per visit

22   rate as a covered expense.  Right?

23          A.     It's the negotiated charge.

24   And depending on, again, the plan summary

Case 1:15-cv-00109-MR  Document 144-28  Filed 08/03/18  Page 14 of 22

1    document or language, how that would be back

2    to being a covered expense.

3              Q.    Is there any other language in

4    the summary plan description for Ms. Peters'

5    plans that Aetna believes allows it to treat

6    Optum's per visit rate as a covered expense?

7              A.    I don't believe we went through

8    the plan summary document today. I'd have

9    to go through it, you know, end to end, read

10   end to end thoroughly to explain that. But

11   my general understanding is, you know, these

12   are the provisions that speak to that.

13                        -  -  -

14              (Exhibit 133, Health Care Plan

15         Summary Plan Description,

16         AETNA-PETERS-00002946 - 00003017, was

17         marked for identification.)

18                        -  -  -

19   BY MR. KNOTT:

20              Q.    I've handed you what's been

21   marked as Exhibit 133, Bates-numbered

22   AETNA-PETERS-00002946 on the first page.

23   Just let me know when you're ready.

24              A.    Okay.

1          Q.     Do you recognize Exhibit 133?

2          A.     I do.

3          Q.     What is it?

4          A.     This is the Mars plan summary

5     document that they share with their employees.

6          Q.     Is there anything else in this

7     document that Aetna relies on for its

8     position that it was able to treat Optum's

9     per visit rate as a covered expense aside

10    from what's listed in the Interrogatory

11    response that we looked at?

12                MR. SIGLER:  Objection to form.

13                THE WITNESS:  I would say for

14          this specific document, that these

15          are the specific glossary items that

16          support the Optum arrangement, yes.

17    BY MR. KNOTT:

18          Q.     And you're not aware of any

19    other provisions in here upon which Aetna

20    relies to support that arrangement.  Is that

21    correct?

22          A.     Well, I'm not a lawyer, but,

23    no, I mean, these are the two -- three

24    primary, I would say, glossary definitions.

1    They explain it.

2         Q.     Looking at page 3013 there's

3    the definition of negotiated charge.  Do you

4    see that?

5         A.     Uh-huh.

6         Q.     It's defined one way "As to

7    health expense coverage, other than

8    Prescription Drug expense coverage," and

9    it's defined another way "As to Prescription

10   Drug expense coverage."

11             Do you see that?

12        A.     Yes, I see that.

13        Q.     And then the discussion of

14   prescription drug expense coverage there's

15   mention of a third-party vendor.  Do you see

16   that?

17        A.     Yes, I see that.

18        Q.     There's no reference to

19   third-party vendors in that definition for

20   other than prescription drug expense

21   coverage.  Do you see that?

22        A.     Yes, I see that.

23        Q.     Is that -- is Optum a

24   third-party vendor?

1          A.      No, I think we've established

2    that Optum is a network provider and that's

3    what is listed here under the negotiated

4    charge.

5          Q.      So it's Optum -- it's Aetna's

6    position that Optum is a network provider as

7    defined in this summary plan description.

8    Is that correct?

9          A.      Yes.  Optum is the network

10   provider.

11         Q.      And that's why Aetna takes the

12   position that it can treat Optum's per visit

13   rate as a covered expense under this plan.

14   Is that right?

15              MR. SIGLER:  Objection to form.

16              THE WITNESS:  Again, I think I

17         answered that that Aetna -- Optum is

18         a network provider, a participating

19         network provider and the negotiated

20         charge Aetna has with Optum, the per

21         visit rate, per diem rate, is a

22         covered expense.

23   BY MR. KNOTT:

24         Q.      This plan covers healthcare

1    deductibles?

2                    MR. SIGLER:  Objection to form.

3                    MR. BOONE:  Same objection.

4                    THE WITNESS:  Can you repeat

5          that question?

6    BY MR. KNOTT:

7          Q.     Let's say, for example, in this

8    circumstance Aetna describes its contracted

9    charge with Optum as $70.89.  Correct?

10         A.     Yes.

11         Q.     And it says that Optum has a

12   contracted rate with the service provider of

13   $36.  Right?

14         A.     Yes.

15         Q.     Is it Aetna's position that

16   Optum would not be entitled to collect the

17   full $70.89 charge from members who owe

18   deductibles?

19                    MR. SIGLER:  Objection to form.

20                    MR. BOONE:  Same objection.

21                    THE WITNESS:  You know what, I

22         can't -- I mean, I think this -- I

23         would have to look at, you know,

24         claim by claim to explain or

Case 1:15-cv-00109-MR  Document 144-28  Filed 08/03/18  Page 19 of 22

1          understand how it was adjudicated and

2          communicated back to -- back to the

3          member as well as Optum.  But, you

4          know, I think as I explained earlier

5          in the day, that there could be a

6          number of reasons why, you know, the

7          rate paid to Optum would not have a

8          component that Optum retains before

9          paying their downstream provider.

10          And a deductible example, a full

11          deductible example is one of those

12          scenarios.

13     BY MR. KNOTT:

14          Q.     So in the deductible scenario,

15     Optum has a contracted rate with a service

16     provider of $36, and its -- Optum's

17     contracted charge with Aetna is $70.89.  Is

18     Optum entitled to collect the difference,

19     the $70.89 minus the $36?

20               MR. BOONE:  Objection to the

21          form.

22               MR. SIGLER:  Same objection.

23          Asked and answered.

24               THE WITNESS:  Again, if the

1          member -- Optum as a general

2          practice, my understanding, does not

3          collect copayments or deductibles

4          from members.  The treating

5          provider -- they communicate to the

6          treating provider what to collect.

7          So in this scenario, in this claim

8          example, they clearly had

9          communicated the $36 that the

10          treating provider would collect.

11          It's -- you know, in this example, no

12          money was paid by Aetna.  The member

13          was fully responsible.  And we have

14          no -- even if Optum tells the

15          treating provider what they can

16          collect, we have no idea, you know,

17          confirmation on what the treating

18          provider collects.  If they collect

19          $36, if they collect less, we

20          wouldn't know that.

21     BY MR. KNOTT:

22          Q.     Looking at the paragraph two

23     down from that, the first sentence says,

24     "Ms. Peters is correct that the $14.18

1    cost-share in this situation is more than

2    20 percent of the actual charge for the

3    services."

4              Did I read that correctly?

5        A.     Yes.

6        Q.     Is that a correct statement?

7              MR. SIGLER:  Objection to form.

8        Foundation.

9              MR. BOONE:  Same objections.

10             THE WITNESS:  Well, Aetna

11       considers the Optum per the diem rate

12       as a negotiated rate.  And Aetna

13       calculates coinsurance off of

14       negotiated rates.  So this 14 -- I

15       don't have a calculator, but this

16       14.18 appears to be the 20 percent of

17       the $70.89 which is the Optum/Aetna

18       negotiated rate.  And Optum is our

19       network provider, so it was -- the

20       coinsurance was applied off of the

21       contracted rate with our network

22       provider.

23   BY MR. KNOTT:

24       Q.     So if I'm understanding you