UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated,<br><br>PLAINTIFF,<br>v.<br><br>AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC.,<br><br>DEFENDANTS. | Case No. 1:15-cv-00109-MR |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO STRIKE REPORT AND
<u>EXCLUDE TESTIMONY OF CONSTANTIJN PANIS, PhD</u>**

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................1

BACKGROUND ..........................................................................................3

ARGUMENT ...............................................................................................7

    I.    DR. PANIS'S CALCULATIONS ARE NOT EXPERT OPINIONS AND WILL NOT HELP THE COURT DECIDE WHETHER TO CERTIFY ANY CLASS ................................8

    II.    THE COURT SHOULD REJECT PETER'S METHODOLOGY BECAUSE IT IS FLAWED AND UNRELIABLE ......................................................................................10

CONCLUSION ..........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex. rel. Bunk v. Birkart Globistics GmbH & Co.*,
   89 F. Supp. 3d 778 (E.D. Va. 2014), *rev'd on other grounds*, 842
   F.3d 261 (4th Cir. 2016) .................................................................................12

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004)....................................................................7

*DSU Med. Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003).............................................................11

*Hall v. Boston Sci. Corp.*,
   No. 2:12-cv-08186, 2015 WL 868907 (S.D. W. Va. Feb. 27, 2015) .................10

*Henderson v. Corelogic Nat. Background Data, LLC*,
   No. 3:12-cv-97, 2016 WL 354751 (E.D. Va. Jan. 27, 2016) ..............................7

*Indianapolis Minority Contractions Ass'n, Inc. v. Wiley*,
   No. 94-cv-1175, 1998 WL 1988826 (S.D. Ind. May 13, 1998) .....................8, 9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)............................................................................................3

*Lowry's Reports, Inc. v. Legg Mason, Inc.*,
   No. WDQ 01-3898, 2003 WL 25774655 (D. Md. July 14, 2003) ..................7, 8

*LSQ Funding Grp. v. EDS Field Servs.*,
   879 F. Supp. 2d 1320 (M.D. Fla. 2012)..............................................................8

*Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*,
   877 F.2d 1333 (7th Cir. 1989) ............................................................................7

*Petrogradsky Mejdunarodny Kommerchesky Bank v. Nat'l City Bank
   of N.Y.*,
   253 N.Y. 23, 170 N.E. 479 (1930)......................................................................7

*Smithers v. C & G Custom Module Hauling*,
   172 F. Supp. 2d 765 (E.D. Va. 2000) ..................................................... 10, 11-12

*Cook ex. rel. Tessier v. Sheriff Monroe Cty.*,
  402 F.3d 1092 (11th Cir. 2005) ..............................................................................7

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) .................................................................................7

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ............................................................................7

*United States v. Johnson*,
  54 F.3d 1150 (4th Cir. 1995) .......................................................................2, 7, 8

# **INTRODUCTION**

Peters has offered purported expert testimony from an economist—Dr. Constantijn Panis. But Dr. Panis has not applied any economic analysis to the case. Instead, he offers models and conclusions that Peters's counsel supplied to him—along with some basic arithmetic. That is not expert testimony in the Rule 702 sense. On the contrary, it is Peters's *counsel*'s opinion—filtered through an economist. The Court should exclude counsel's opinions (offered by Dr. Panis) and Dr. Panis's supporting arithmetic.

According to Dr. Panis, Peters's counsel engaged him "to provide an opinion on certain aspects related to potential class certification in her litigation . . . ." ECF No. 144-26, Panis Report ¶ 1. But he didn't do that. At his deposition, Dr. Panis confirmed that he is *not* offering an opinion on

(1)  "whether a class should be certified" (Ex. 1, Panis Tr. 47:1–3);

(2)  whether Peters's "allegation that participants' beneficiaries plans were overcharged for benefit claims as a result of charges by Optum" is correct (*Id.* at 51:16–22);

(3)  whether "the Optum downstream rate was required to be used to calculate member and plan responsibility" (*Id.* at 96:25–97:4);

(4)  whether "any particular health plan was overcharged" (*Id.* at 76:14–20);

(5)  whether the "overcharges" that he calculated were improper charges in any sense (*Id.* at 52:8–14);

(6)  whether any member or plan suffered injury (*Id.* at 97:5–16); or

(7)  the amount of alleged damages that any member or plan might have suffered (*Id.* at 66:3–7) ("Again, I'm not offering an opinion on damages even.").

Which leaves: math. Dr. Panis agreed that he is "just providing an opinion and calculation on the difference between one set of numbers and another set of numbers, not providing an opinion on which set of numbers is correct." *Id.* at 67:23–68:4. Instead of applying a reliable economic method to analyze the Aetna-Optum relationship's impact, Dr. Panis pulled out his calculator and, following counsel's directions, compared the downstream Optum rates to the Optum-Aetna contract rate. The resulting calculations reflect counsel's opinions, not reliable expert testimony.

Likewise, when Peters's counsel instructed Dr. Panis to exclude roughly 30 percent of the claims from his calculations, Dr. Panis did so with no further analysis. Dr. Panis conceded at his deposition that he did not follow a reliable economic methodology in performing this calculation; he acknowledged that he (as an economist) would want to look at the complete claims experience to determine the impact of the Aetna-Optum relationship on class members. *Id.* at 174:24–175:9.

There is no reliable methodology to be found in Dr. Panis's opinions. He parroted back the model that counsel instructed him to apply. Worse, Peters's counsel directed Dr. Panis to run calculations that Panis admits are contrary to what an economist would normally do. *Id.* at 174:24–175:9. When asked why he stopped short of a proper economic analysis, Dr. Panis explained that Peters's counsel limited his engagement in that way. *Id.* at 116:24–117:10 (acknowledging that he was "instructed by plaintiff's counsel" on how to perform his calculations). That is not admissible expert testimony. *See, e.g.*, *United States v. Johnson*, 54 F.3d 1150, 1162 (4th Cir. 1995) ("the adding of the figures did not require any specialized knowledge as required under Rule 702").

2

Rule 702 ensures "that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Dr. Panis has conceded that he did not employ that level of rigor: The standard of practice in any field (including economics) requires more than blindly following lawyers' instructions in constructing models. Just as clearly, Rule 702 and *Daubert* foreclose lawyers from laundering their advocacy through "experts."

## BACKGROUND

Peters's counsel retained Dr. Panis ostensibly "to provide an opinion on certain aspects related to potential class certification in her litigation against" Aetna and Optum. Panis Rep. ¶ 1. But Dr. Panis has not opined on "whether a class should be certified." Panis Tr. 47:1–3. His "opinions"—summarized in the last three paragraphs of his fourteen-page report—are much narrower. *See* Panis Rep. ¶¶ 54–56; Panis Tr. 45:19–46:4 (identifying three paragraphs as his opinions).

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

3

███████████████████████████████████████
███████████████████████████████████████

Dr. Panis did not perform any economic or other analysis about those exclusions. In fact, he acknowledged at his deposition that as an economist he would want to look at the complete claims experience to determine the impact of Aetna-Optum contracts on a particular plan or member. Panis Tr. 174:24–175:9. But he did not do so because Peters's counsel did not ask him to do so. *Id.* at 176:2–13. Instead, Dr. Panis tallied up how many self-insured plans and members met the criteria that counsel dictated to him. *Id.* at 67:23–68:4 (agreeing that he was "just providing an opinion and calculation on the difference between one set of numbers and another set of numbers, not providing an opinion on which set of numbers is correct"); ███

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████

████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████ But at his

deposition, Dr. Panis conceded that the "gain" to Optum—as calculated based on directions from Peters's counsel—is not Optum's actual profit because it does not account for Optum's costs and expenses. Panis Tr. 118:10–14 ("I have no insight into Optum's costs, but I would imagine that they're positive and that there is—that the bottom line profit is less than the gain as defined here."). Indeed, neither Dr. Panis nor Peters ever requested information about Optum's costs even though (as Dr. Panis acknowledged) it is essential to calculating any profits that Optum earned. Like Dr. Panis's other calculations, his "gain" calculation also ignores the impact of all excluded claims—including those that resulted in a loss for Optum because the downstream rate was higher than the Aetna-Optum rate. Panis Tr. 116:24–117:10.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ Dr. Panis refers to that difference as the "overcharge," but he acknowledged at his deposition that he was using the term "overcharge" because Peters's counsel told him to. Panis Tr. 69:8–16. Dr. Panis proposes to allocate the total "overcharge" between plans and members based on the following assumptions: (1) "If the member was responsible for a copayment and the plan for the remainder, the entire overcharge was borne by the plan" and (2) "Otherwise . . . the plan and the members were overcharged in proportion to their responsibility for the Aetna-allowed amount." Panis Rep. ¶ 42. But again, as with Dr. Panis's other "opinions," he did not perform any economic or

5

other analysis to justify those assumptions; he simply did what Peters's counsel told him to do. Panis Tr. 67:23–68:4; 116:24–117:10. ███████████████

████████████████████████████████████████

████████████████████████████████

Dr. Panis also confirmed at his deposition that he is not offering any expert opinions on damages: "I'm not offering an opinion on damages even. I'm offering an opinion about overcharges." Panis Tr. 66:3–5. And he is not offering an opinion on whether the "overcharges" that he calculates were improper charges in any sense. *Id.* at 67:18–22. Dr. Panis conceded that he is "just providing an opinion and calculation on the difference between one set of numbers and another set of numbers, not providing an opinion on which set of numbers is correct." *Id.* at 67:23–68:4.

At his deposition, Dr. Panis confirmed multiple times that Peters's counsel told him what to calculate (*id.* at 171: 21–22 ("I was asked to calculate overcharges as defined by counsel.")) and how to calculate it:

> Q. Were you instructed by plaintiff's counsel how to calculate the Optum gain model that you have reflected here in your report?
> A. Yes.
> Q. And is the same true with respect to the overcharge model, you were instructed by plaintiff's counsel how to do that?
> A. Yes.
> Q. And you carried out those calculations on both models based on the instructions from plaintiff's counsel, correct?
> A. Correct.

*Id.* at 116:24–117:10.

## ARGUMENT

An "opinion has a significance proportioned to the sources that sustain it." *Petrogradsky Mejdunarodny Kommerchesky Bank v. Nat'l City Bank of N.Y.*, 253 N.Y. 23, 35, 170 N.E. 479, 483 (1930) (Cardozo, J.). Accordingly, "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989) (Easterbrook, J.). Along the same lines, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook ex. rel. Tessier v. Sheriff Monroe Cty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004)); *In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999) (holding that district court properly excluded expert testimony whose sole basis was summaries prepared by a party's counsel); *Crowley v. Chait*, 322 F. Supp. 2d 530, 547 (D.N.J. 2004) (excluding expert testimony that "rel[ied] on evidence hand-selected and even edited by counsel" because the conclusions were based on a "highly filtered version of events").

Likewise, courts have held that simple arithmetic is not admissible under Rule 702 as expert testimony. *Johnson*, 54 F.3d at 1162; *Henderson v. Corelogic Nat. Background Data, LLC*, No. 3:12-cv-97, 2016 WL 354751, at *3 (E.D. Va. Jan. 27, 2016) (a witness who "conduct[s] no analysis, statistical or otherwise, beyond simple percentage calculations" is not an expert witness); *Lowry's Reports, Inc. v. Legg Mason, Inc.*, No. WDQ 01-3898, 2003 WL 25774655, at *1 (D. Md. July 14, 2003) (excluding testimony "amount[ing] to no more than simple arithmetical

7

calculations"); *LSQ Funding Grp. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) (calculation involving three undisputed figures and simple arithmetic was not beyond the understanding of the average lay person); *Indianapolis Minority Contractions Ass'n, Inc. v. Wiley*, No. 94-cv-1175, 1998 WL 1988826, at *14 (S.D. Ind. May 13, 1998) (excluding statistical conclusions "based on no more than simple mathematics").

The Court should disregard Dr. Panis's report and exclude his testimony because he has not offered expert opinions. He has offered mathematical calculations based on instructions from counsel. As a result (and as one might expect), the calculations are biased and unreliable.

## I. DR. PANIS'S CALCULATIONS ARE NOT EXPERT OPINIONS AND WILL NOT HELP THE COURT DECIDE WHETHER TO CERTIFY ANY CLASS.

Peters tries to give her liability theory some credibility by funneling it through an economist. But Dr. Panis acknowledges that his opinions amount to calculating "the difference between one set of numbers and another set of numbers, not providing an opinion on which set of numbers is correct." Panis Tr. 67:23–68:4. Arithmetic is "reasonably familiar to an average [person]," so it would not help the Court understand the evidence or decide any issue. *See Lowry's Reports*, 2003 WL 25774655, at *1 ("[I]f the facts being discussed by an 'expert' are reasonably familiar to an average juror, then the expert testimony is not helpful."); *LSQ Funding Group,* 879 F. Supp. 2d. at 1336 (same). Peters's counsel could present that math in an argument or brief. It does not become expert testimony simply because an economist operates the calculator. *Johnson*, 54 F.3d at 1162 ("[T]he adding of . . .

8

figures [does] not require any specialized knowledge") (citation omitted); *Indianapolis Minority Contractions Ass'n*, No. IP 94-1175-C-T/G, 1998 WL 1988826, at *14 (S.D. Ind. May 13, 1998) (excluding testimony because expert was "no more expert than the jury in determining percentages paid and making comparisons of the amounts paid to certain groups").

Dr. Panis did not bring his economics expertise to bear in carrying out those calculations. Instead, he set his expertise aside and calculated "overcharges as defined by counsel" (Panis Tr. 171:21–22) even though "[a]s an economist" he would have to "look at [a] member's complete claims experience and the evolution of claims over the course of [a] year" to determine the impact of any "overcharge" on that member. Panis Tr. 174:24–175:9. He limited the universe of claims included in his calculations not because his expertise counseled that approach but because Peters's counsel told him to. Panis Rep. ¶¶ 39, 41.

Dr. Panis also did not consider the evidence showing the Aetna-Optum contracts produced millions of dollars in savings by reducing the costs of physical therapy and chiropractic services when compared to Aetna's pre-Optum rates for those services. Dr. Panis agreed that cost savings would be "beneficial to health plans and plan members" but said that he had not seen the evidence of savings and did not consider it because "my charge was to calculate the things I calculated." Panis Tr. 124:5–125:15.

The bottom line: Dr. Panis has not offered expert testimony. He has offered math. The Court should exclude his report and testimony.

9

## II. THE COURT SHOULD REJECT PETERS'S METHODOLOGY BECAUSE IT IS FLAWED AND UNRELIABLE.

In any case, the calculations that Peters asked Dr. Panis to perform are unreliable. The arithmetic might be accurate, but the calculations rest on two conceptual errors, so they are not "the product of reliable principles and methods" as Rule 702 requires. *Smithers v. C & G Custom Module Hauling*, 172 F. Supp. 2d 765, 771 (E.D. Va. 2000) ("A valid scientific theory misapplied because of the lack of sufficient factual foundation cannot be admitted because it does not assist and, indeed, may ultimately confuse the fact finder."); *Hall v. Boston Sci. Corp.*, No. 2:12-cv-08186, 2015 WL 868907, at *27 (S.D. W. Va. Feb. 27, 2015) (expert methodology was "unreliable" because of "errors" and "haphazard application" of tests).

First, the calculations assume a "but-for" world in which Aetna plan sponsors and members would enjoy the savings generated from the Aetna-Optum contracts without paying for those benefits. Panis Tr. 218:13–22 (Q: "Is a potential but-for world in this case one where members and plan sponsors' shares of allowed amounts are calculated using the Optum downstream rate? . . ." A: "I believe that's the but-for world that I've been assuming."). Dr. Panis chose that but-for world, *not* because of his knowledge or experience as an economist, but because Peters's counsel told him to. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ As Defendants' expert (Dr. Kessler) explains in

his responding report, Dr. Panis's assumption on that score is "inconsistent with basic economics." Ex. 2, Kessler Rep. ¶¶ 47–55.[1] *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1158 (N.D. Cal. 2003) (excluding expert testimony not based on "sound economic data").

Second, even in Dr. Panis's incorrect but-for world, many putative class members benefited from the challenged conduct—including Peters—paying less (both on a per-claim basis and a total basis) than they would have but for the challenged conduct. Panis Tr. 141: 2–12 (acknowledging that the group of patients "that meets the deductible but not the maximum out-of-pocket amount . . . may have benefited"). Dr. Panis does not reliably assess the challenged conduct's impact on plans or members because, at counsel's direction, he did not analyze any plan's or member's complete claims experience and did not account for the interplay between a particular class member's benefits claims. When asked whether he would want to look at a member's "complete claims experience" to assess the impact of the Aetna-Optum relationship on that member, he answered yes: "As an economist, I believe you're correct." *See id.* 174:24–175:9. That Dr. Panis did not do so for even a single plan member highlights the problem: He did not analyze the Aetna-Optum relationship "as an economist."

Expert testimony that "discount[s] . . . important factors for the proper application of the scientific principles" is inadmissible under Rule 702. *See Smithers*,

---

[1] Contrast Dr. Panis's lawyer-directed math with Dr. Kessler's report. In his report, Dr. Kessler offers multiple expert opinions and detailed analyses of class-certification issues based on his experience as a healthcare economist at Stanford and applying economic principles to the evidentiary record and claim data.

11

172 F. Supp. 2d at 773; *United States ex. rel. Bunk v. Birkart Globistics GmbH & Co.*, 89 F. Supp. 3d 778, 801 (E.D. Va. 2014), *rev'd on other grounds*, 842 F.3d 261 (4th Cir. 2016) (excluding expert testimony that did not "account for certain major factors" as unreliable). More to the point: Rule 702 demands more than a gerrymandered dataset and simple arithmetic.

## CONCLUSION

This Court should strike Dr. Panis's report and exclude his testimony because it is not expert in any sense and at any rate is unreliable.

Respectfully submitted September 7, 2018,

| | |
|---|---|
| /s/ *E. Thomison Holman* | /s/ *Brian D. Boone* |
| E. Thomison Holman<br>  NC Bar No. 19380<br>HOLMAN LAW, PLLC<br>56 College Street, Suite 302<br>Asheville, NC 28801<br>tom@holmanlawwnc.com<br>Tel: (828) 252-7381<br>Fax: (828) 252-5018<br><br>Geoffrey M. Sigler (*pro hac vice*)<br>Jason N. Kleinwaks (*pro hac vice*)<br>Gibson, Dunn & Crutcher LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036<br>GSigler@gibsondunn.com<br>JKleinwaks@gibsondunn.com<br>Tel: (202) 955-3500<br>Fax: (202) 530-9635 | Mark T. Calloway<br>  NC Bar No. 10822<br>Michael R. Hoernlein<br>  NC Bar No. 40419<br>Brian D. Boone<br>  NC Bar No. 38910<br>Alston & Bird LLP<br>Bank of America Plaza, Suite 4000<br>101 South Tyron Street<br>Charlotte, NC 28280<br>Tel: (704) 444-1000<br>Fax: (704) 444-1111<br>mark.calloway@alston.com<br>michael.hoernlein@alston.com<br>brian.boone@alston.com<br><br>*Counsel for OptumHealth Care Solutions, Inc.* |

Richard J. Doren (*pro hac vice*)
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
RDoren@gibsondunn.com
Tel: (213) 229-7000
Fax: (213) 229-6038

*Counsel for Aetna Inc. and Aetna Life Insurance Company*

13

# CERTIFICATE OF SERVICE

I certify that on September 7, 2018, I filed and served a copy of Defendants' Brief in Support of Defendants' Motion to Strike Report and Exclude Testimony of Constantijn Panis, Ph.D. using the CM/ECF system, which will give notice to counsel of record.

*/s/ E. Thomison Holman*

E. Thomison Holman
 NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
Tel: (828) 252-7381
Fax: (828) 252-5018

*Counsel for Defendants Aetna Inc. and Aetna Life Insurance Company*