UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:15-cv-00109-MR

|  |  |  |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **PLAINTIFF'S REPLY IN** |
| AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., | ) ) ) ) | **SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| Defendants. | ) ) | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................1

    A.     Defendants Misread Plaintiff's Claims, the Relief Sought, and the
        Requirements of Rule 23 ........................................................................1

    B.     Defendants Cannot Dispute the Core Common Evidence ...................4

ARGUMENT ........................................................................................................6

    I.     PLAINTIFF SATISFIES RULE 23(a)(2) BECAUSE HER
       CONTENTIONS ARE COMMON TO THE CLASSES AND
       CAN BE RESOLVED USING COMMON PROOF ..........................6

        A.     Common Contention: Aetna Acted As a Fiduciary ...................6

        B.     Common Contention: Aetna Breached Its Fiduciary
            Duties ........................................................................................8

            1.     Common evidence shows that Aetna unreasonably
                interpreted the written plan terms .....................................9

            2.     Common evidence shows that Aetna engaged in the
                challenged misconduct to advance its own interests ......14

            3.     Common evidence shows that Defendants engaged
                in transactions prohibited by ERISA .............................15

            4.     Common evidence shows that Aetna made
                knowing misrepresentations or omissions about
                plan benefits ...................................................................16

        C.     Common Contention: The Appropriate Remedy for
            Defendants' Violations Can Be Decided on a Common
            Basis ........................................................................................17

    II.     DEFENDANTS' ARGUMENTS THAT THERE IS NO
       COMMON PROOF OF "INJURY" HAVE NO BASIS IN LAW
       OR FACT ..........................................................................................21

i

III.   MS. PETERS IS A TYPICAL AND ADEQUATE CLASS
       REPRESENTATIVE ..........................................................................26

       A.    The Classes Share An Interest In Remedying Defendants'
             Misconduct ...............................................................................26

       B.    Ms. Peters Can Represent the Plan Claim Class .......................27

IV.    THE PROPOSED CLASSES SATISFY RULES 23(b)(1) AND
       (b)(3), OR, IN THE ALTERNATIVE, RULE 23(c)(4) ....................29

CONCLUSION ......................................................................................................30

Case 1:15-cv-00109-MR   Document 180   Filed 10/09/18   Page 3 of 39

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Life Ins. Co. v. Bayona*,
  223 F.3d 1030 (9th Cir. 2000) ...............................................................................6

*Aetna Life Ins. Co. v. Hager*,
  930 F. Supp. 343 (E.D. Wisc. 1996) ....................................................................7

*Amara v. Cigna Corp.*,
  775 F.3d 510 (2d Cir. 2014) ................................................................................27

*Band v. Paul Revere Life Ins. Co.*,
  14 F. App'x 210 (4th Cir. 2001) ..........................................................................14

*Berry v. Wells Fargo & Co.*,
  No. CV 3:17-304-JFA, 2017 WL 7411165 (D.S.C. July 31, 2017) ...................28

*Blades v. Monsanto Co.*,
  400 F.3d 562 (8th Cir. 2005) ...............................................................................23

*Boyd v. Metro. Life Ins. Co.*,
  636 F.3d 138 (4th Cir. 2011) ...............................................................................12

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ............................................................................3, 9

*Brown v. Nucor Corp.*,
  785 F.3d 895 (4th Cir. 2015) .................................................................................8

*Chorosevic v. MetLife Choices*,
  No. 4:05-CV-2394 CAS, 2007 WL 2159475 (E.D. Mo. Jul. 26, 2007) .............10

*Cigna Corp. v. Amara*,
  563 U.S. 421 (2011) ......................................................................................17, 20

*Clark v. Duke Univ.*,
  No. 1:16-CV-1044, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ....................29

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) .............................................................................28

*Custer v. Sweeney*,
  89 F.3d 1156 (4th Cir. 1996) ................................................................................6

*David P. Coldesina, DDS v. Estate of Simper*,
  407 F.3d 1126 (10th Cir. 2005) ............................................................................6

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
  725 F.3d 406 (3d Cir. 2013) ................................................................................20

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) ................................................................................7

*Eubanks v. Billington*,
  110 F.3d 87 (D.C. Cir. 1997) ..............................................................................27

*F.T.C. v. Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011) ...............................................................................20

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998) ..............................................................................28

*Forbush v. J.C. Penney Co., Inc.*,
  994 F.2d 1101 (5th Cir. 1993) ............................................................................28

*Fritcher v. Health Care Serv. Corp.*,
  301 F.3d 811 (7th Cir. 2002) ..............................................................................13

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004) ................................................................................7

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................................21

*Griggs v. E.I. DuPont de Nemours & Co.*,
  237 F.3d 371 (4th Cir. 2001) ..............................................................................16

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ........................................................................21, 30

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000) ............................................................................................15

iv

*Harris v. Amgen, Inc.*,
   573 F.3d 728 (9th Cir. 2009) ...............................................................19

*HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*,
   101 F.3d 1005 (4th Cir. 1996) ..............................................................14

*Henry v. Champlain Enterprises, Inc.*,
   445 F.3d 610 (2d Cir. 2006) .................................................................23

*In re Aetna UCR Litig.*,
   No. 07-cv-03541, ECF No. 1156 (D.N.J. June 30, 2018) ....................10

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) ........................................................25

*In re Nassau Cty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) .................................................................30

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
   555 U.S. 285 (2009) .......................................................................12, 13

*Laumann v. Nat'l Hockey League*,
   105 F. Supp. 3d 384 (S.D.N.Y. 2015) ..................................................25

*LeBlanc v. Cahill*,
   153 F.3d 134 (4th Cir. 1998) ...............................................................20

*Leister v. Dovetail, Inc.*,
   546 F.3d 875 (7th Cir. 2008) ...............................................................23

*McConocha v. Blue Cross & Blue Shield of Ohio*,
   898 F. Supp. 545 (N.D. Ohio 1995) .....................................................16

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) .........................................................................6, 20

*Mid Atl. Med. Servs., LLC v. Sereboff*,
   407 F.3d 212 (4th Cir. 2005) ...............................................................12

*Moyle v. Liberty Mut. Ret. Ben. Plan*,
   823 F.3d 948 (9th Cir. 2016) ...............................................................17

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012) ................................................................27

*Noah U. v. Tribune Co. Med. Plan*,
    138 F. Supp. 3d 1134 (C.D. Cal. 2015) ..............................................13

*Osberg v. Foot Locker, Inc.*,
    138 F. Supp. 3d 517 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir. 2017) ...14, 17

*Pender v. Bank of Am. Corp.*,
    269 F.R.D. 589 (W.D.N.C. 2010) .......................................................18

*Pender v. Bank of Am. Corp.*,
    788 F.3d 354 (4th Cir. 2015)..........................................................19, 20

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
    654 F.3d 618 (6th Cir. 2011) ...............................................................8

*Sereboff v. Mid Atl. Med. Servs., Inc.*,
    547 U.S. 356 (2006) ............................................................................12

*Sims v. BB&T Corp.*,
    No. 1:15-cv-732, 2018 WL 3128996 (M.D.N.C. June 26, 2018) .......................24

*Smith v. United HealthCare Servs., Inc.*,
    No. CIV 00-1163 ADM/AJB, 2002 WL 192565 (D. Minn. Feb. 5, 2002)..........11

*Smith v. United HealthCare Servs., Inc.*,
    No. Civ. 00-1163 ADM AJB, 2003 WL 22047861 (D. Minn. Aug. 28,
    2003) ....................................................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) .......................................................................29

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .........................................................................2, 3

*Ward v. Dixie Nat'l Life Ins. Co.*,
    595 F.3d 164 (4th Cir. 2010) ..............................................................18

## STATUTES

29 U.S.C. § 1022 ...................................................................................13

29 U.S.C. § 1106 ..................................................................................15

29 U.S.C. § 1106(a)(1)(D) ....................................................................15

29 U.S.C. § 1106(b)(1) .........................................................................15

29 U.S.C. § 1109 ..................................................................................23

29 U.S.C. § 1109(a) ..............................................................................19

29 U.S.C. § 1132(a) ..............................................................................23

29 U.S.C. § 1132(a)(1)(B) ...............................................................17, 18

29 U.S.C. § 1132(a)(2) ............................................................18, 27, 28, 29

29 U.S.C. § 1132(a)(3) ......................................................................19, 27

**RULES**

Fed. R. Civ. P. 23(b)(1)......................................................................27, 29

Fed. R. Civ. P. 23(b)(2)...........................................................................27

Fed. R. Civ. P. 23(b)(3)......................................................................27, 29

Fed. R. Civ. P. 23(c)...............................................................................27

Fed. R. Civ. P. 23(c)(4)...........................................................................29

Case 1:15-cv-00109-MR   Document 180   Filed 10/09/18   Page 8 of 39

## PRELIMINARY STATEMENT

### A.    Defendants Misread Plaintiff's Claims, the Relief Sought, and the Requirements of Rule 23.

Defendants' opposition makes clear that they apparently do not understand, or have misconstrued, Plaintiff's claims. Relying on that misunderstanding, Defendants argue that "common proof" of "injury" is lacking, and that other issues in this litigation turn on "individualized" evidence. These arguments fail because Ms. Peters is the master of her own complaint. Moreover, the arguments disregard controlling ERISA and Rule 23 law.

Ms. Peters is not, as Defendants contend, broadly seeking to invalidate the "Aetna-Optum contracts" or "Aetna-Optum relationship." *See, e.g.*, Opp'n[1] 1, 3. Aetna is free to delegate its network contracting and claims processing work to Optum if it chooses. What Ms. Peters is challenging is Aetna's handling of particular insurance claims: those claims for which Aetna decided that members and plans were required to pay Optum's administrative fees as covered medical expenses. *See* Compl. ¶¶ 1-2. Ms. Peters further alleges that Aetna made these determinations to avoid having to pay Optum's fees itself, in violation of its duty of loyalty. *Id.* ¶ 30. Defendants cannot dispute that their own data identifies the claims on which Optum's fees were charged. Nor can they dispute that members

---

[1]    Defendants' Brief in Opposition to Plaintiff's Motion for Class Certification (ECF No. 172).

and plans were injured by having to pay for Optum's administrative fees in violation of their plans and ERISA.

For this reason, Defendants misconstrue Ms. Peters's ERISA claims, and then use that incorrect characterization as the basis for their flawed argument that she and other class members and their plans cannot show a common injury. Treating this case like an antitrust case, they assert that the Court must engage in a complicated and wide-ranging economic balancing of various factors before it can find injury to any one class member from having to pay Optum's administrative fees. For example, they assert that the Court must take into account the "benefit" from the "Aetna-Optum relationship" or review class members' entire "claims history." Opp'n 23-26. Defendants cite no authority for the proposition that, under ERISA, injury flowing from a defendant's self-serving breach of fiduciary duty in improperly collecting administrative fees on one claim can be eliminated if the defendant's handling of another claim, or the entire "relationship," somehow benefited the plaintiff. There is no such authority. Even in antitrust cases, economics-based arguments about "net benefits" or "offsets" do not establish a lack of common injury or defeat class certification; at most, these arguments go to damages.

Defendants also flout the Rule 23 authority upon which they purport to rely. Contrast this case with *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), which

Defendants cite throughout their brief. In *Dukes*, the 1.5 million plaintiffs could not show that Wal-Mart had adopted a company-wide policy causing discrimination; rather, Wal-Mart allowed local supervisors to exercise discretion over employment matters. 564 U.S. at 354-55. For that reason, the plaintiffs could not show that a specific employment practice "tie[d] all their 1.5 million claims together." *Id.* at 357. Here, Defendants do not dispute that Aetna adopted a uniform policy—which it carried out in at least one insurance claim for all class members—to treat Optum's fees as covered expenses and require plans and members to pay them, which allowed it to avoid having to pay Optum itself. This case deserves class certification for all the reasons it was denied in *Dukes*.

Defendants similarly cite numerous cases for the proposition that a court must engage in a rigorous analysis of "the evidence" to determine the materiality of allegedly individualized issues, yet Defendants' analysis is anything but rigorous. In *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998), for example, the defendant proved that there were material variations in franchising agreements that made large numbers of class members' claims weaker or stronger than those of the class representative. *See id.* at 340. Here, in stark contrast, Defendants simply assert that such differences exist; they never offer a plausible theory as to why the allegedly "individualized" evidence they rely upon (such as alleged differences in the written terms of the plans) is so materially

3

different that it overcomes Ms. Peters's common evidence.

Similarly, although Defendants acknowledge that the Court should only engage with the merits if they overlap with Rule 23's requirements, they repeatedly ask the Court to address merits questions that are unnecessary for class certification. For example, Aetna asks the Court to reject Ms. Peters's evidence of its improper motives in favor of self-serving deposition testimony and lawyer argument. *See, e.g.*, Opp'n 8 (arguing that emails in which Defendants described "burying" Optum's administrative fees were "offhanded[]" remarks); Opp'n 14 (disputing Aetna's admission to Department of Labor that it needed to amend its plans to permit charges by a "third party vendor (including any administrative fee that may be included in the amount paid)" (Br. Ex. 14 at page -65834)[2]). Defendants make these merits arguments without realizing that they actually support Plaintiff's motion: all of them are based on common evidence.

### B.     Defendants Cannot Dispute the Core Common Evidence.

Once Defendants' confusion about the claims is put aside, they do not and cannot contest the essential facts that warrant class certification. Defendants admit that Aetna hired Optum as its "delegated … vendor" to contract with networks of providers and process the benefits claims they submitted. Opp'n 18. After Optum

---

[2] "Br." refers to Plaintiff's brief in support of her motion for class certification, ECF No. 146.

processed a claim, Aetna "determine[d] whether to cover the claim and (if covered) calculate[d] how much to pay as well as the member's responsibility based on the Aetna-Optum contract rate." Opp'n 9. Aetna then "sen[t] its determination back to Optum," which then told the actual provider how much to collect from the member. *See id.* On most claims—*i.e.*, the claims that are challenged in this case and for which the classes seek relief—"Aetna … pay[s] Optum more … than Optum pays the downstream provider." Opp'n 10. Undisputedly, these are the claims on which Optum collected its "administrative fee" for the services Aetna hired it to perform. *See* Opp'n 18.

As the Court has recognized, the terms of the plans do not materially vary as to whether Aetna was allowed to require payment of Optum's fees in insurance claims. *See* Sept. 6, 2018 Order (ECF No. 156) at 2. Aetna also admits that it uniformly "concluded that it did not need to change plan terms to implement" this practice. Opp'n 8 n.1. Aetna gained from requiring members and plans to pay Optum's fees on particular insurance claims because it did not have to pay Optum itself. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ In its Explanations of Benefits ("EOBs"), Aetna did not disclose Optum's administrative fee, and it used "dummy codes" for medical services that were never rendered. *See* Opp'n 9 n.2.

5

# ARGUMENT

## I.    PLAINTIFF SATISFIES RULE 23(a)(2) BECAUSE HER CONTENTIONS ARE COMMON TO THE CLASSES AND CAN BE RESOLVED USING COMMON PROOF.

### A.    Common Contention: Aetna Acted As a Fiduciary.

A fiduciary "includes not only those named as fiduciaries in the plan instrument ... but any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993).

Defendants do not dispute the common evidence that Aetna administered the insurance claims at issue, made the challenged benefits determinations, used plan assets to pay for those claims, and sent the EOBs related to those claims. *See* Br. 2-8.[3] These are heartland fiduciary acts, as Aetna itself has argued over and over again. *See, e.g.*, *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (Nov. 3, 2000) ("We agree with Aetna that the company qualifies as a fiduciary for purposes of [ERISA]."); *Aetna Life Ins. Co. v. Hager*, 930 F. Supp. 343, 344-45 (E.D. Wisc.

---

[3] Parties who have authority to control plan assets—as Aetna did here—are "*automatically* in a position of confidence by virtue of that control," and as such are fiduciaries even if they perform a "ministerial, check-writing service" as to the plan assets. *David P. Coldesina, DDS v. Estate of Simper*, 407 F.3d 1126, 1132, 1134 (10th Cir. 2005) (emphasis in original).

1996) ("Aetna ... claims jurisdiction under ERISA" because it "exercises at least some authority to grant or deny benefits").

Instead, Defendants offer smoke screens. For example, they rely on this Court's ruling, during discovery, that Aetna's contracting with Optum was not a fiduciary act and that Optum was not a fiduciary because it operated under Aetna's rules. Opp'n 12-13. But that ruling is irrelevant to whether Aetna was acting as a fiduciary when it made benefits determinations on particular insurance claims. Those determinations were undeniably fiduciary acts. Indeed, the fact that the Court reached its earlier conclusions based on common evidence shows that fiduciary status can be a common question, and it is so here.

Similarly misguided is Aetna's suggestion that language in its administrative services contracts ("ASCs") with each plan sponsor might be different and might lead the Court to conclude that Aetna was not a fiduciary for some plans or some insurance claims. Opp'n 18. Under the Rule 23 authority that Defendants cite, Aetna's speculation cannot refute Ms. Peters's common evidence. *See, e.g., EQT Prod. Co. v. Adair*, 764 F.3d 347, 366-67 (4th Cir. 2014) (holding that defendants had "submitted evidence" of "uncommon practices that might cause individual issues to predominate"); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004) (holding that district courts must look beyond allegations at class certification, so that parties do not "inject frivolous issues to bolster or undermine a

7

finding of predominance"); *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) (holding that district court had failed to analyze evidence to see whether fiduciary status could be resolved on a common basis).

Indeed, even when defendants actually submit individualized evidence in an effort to rebut the plaintiff's common evidence—which Aetna has not done here—the evidence must show that the issues cannot be addressed on a common basis. *See Brown v. Nucor Corp.*, 785 F.3d 895, 913 (4th Cir. 2015) (district court properly discounted affidavits from individual employees "disclaiming discrimination" and found commonality based on common evidence of racism at plant). █████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██

## B.      Common Contention: Aetna Breached Its Fiduciary Duties.

Ms. Peters contends Aetna breached its duties as an ERISA fiduciary when it adjudicated insurance claims to require payment of Optum's fees. She alleges that Aetna unreasonably interpreted the written terms of the plans, violated its duty to act "solely" in the interests of plan beneficiaries and participants, engaged in

8

prohibited transactions with Optum, and made omissions and misrepresentations to beneficiaries and participants in EOBs. Plaintiff has shown that common evidence supports each of these contentions, and Defendants' merits arguments further establish that the issues are common.

### 1. Common evidence shows that Aetna unreasonably interpreted the written plan terms.

Defendants argue that the Court must conduct an individualized inquiry into the language of every plan in order to resolve the question of whether Aetna's plan interpretation was unreasonable. Opp'n 13-15. No such inquiry is necessary. As the Court has already found, the plans do not contain "any meaningful variation" in their relevant terms. Sept. 6, 2018 Order (ECF No. 156) at 2.[4]

Defendants do not dispute that the relevant language of 17 of the 22 plans in Plaintiff's random sample (including her own plan) is basically identical. These plans define the charge that members and plans are responsible to pay as the "Negotiated Charge" or "Negotiated Rate," which is the "maximum charge" a "Network Provider [or preferred care provider or PPO provider] has agreed to make as to any service or supply." *See* Br. Ex. 15. A "Network Provider," in turn,

_____

[4] For this and many other reasons, this case is nothing like *Broussard*, in which a class of Meineke franchisees alleged breach of franchise agreements "containing materially different contract language," relied on "audiotapes of non-standard … review sessions" to establish misrepresentation claims, and pursued only damages even though half the class had released their damages claims. 155 F.3d 331 at 338, 340, 341.

is the "health care provider" that "has contracted to furnish services or supplies for this plan" and "is, with Aetna's consent, included in the directory as a network provider." *See id.*

Confronted with this uniformity, Defendants instead turn to four other plans that have been produced in discovery, arguing that they are materially distinct and "irreconcilable" with the others. Opp'n 15. Although Defendants quote language from these four plans, they never explain why the variations in them are so material that they could make a legal difference.[5] In fact, the written terms of these four plans say essentially the same thing as the other seventeen. Like the other seventeen, none of these four plans define a "provider" as a subcontractor, such as Optum, that Aetna hires to process claims and perform network contracting for it. Opp'n 15-16. And like the other seventeen, none of the four plans say that members and plans will be required to pay Optum's administrative fees as part of their insurance claims for the work Optum does on Aetna's behalf. *Id.*

The *only* thing different about these four plans is that they define the

---

[5] By contrast, in Defendants' cases (Opp'n 14 n.4), the plaintiffs either failed to identify similarities in the plans or the plans varied in a material way. *See, e.g.*, *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2007 WL 2159475, at *8 (E.D. Mo. Jul. 26, 2007) ("plaintiffs have identified no other plan with the same language as the MetLife Choices Plan"); *In re Aetna UCR Litig.*, No. 07-cv-03541, ECF No. 1156 (D.N.J. June 30, 2018) (plans included material variation as to whether Aetna was required to use prices from Ingenix database that plaintiffs were challenging; plaintiffs also failed to present evidence that Aetna treated all plans the same).

relevant charge to be the rate that the medical provider agreed "with Aetna" to accept, whereas the other seventeen plans do not explicitly reference who the provider has an agreement with. *Id.* But all of the plans define the relevant negotiated charge to be the one that the medical provider has agreed to receive.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ Thus, the outcome-determinative question under all of these plans is whether Optum could be treated as the medical provider and its administrative fee as an obligation that members and plans were required to pay. Defendants' purported distinctions are nothing more than "minor variations in the phrasing of the relevant plan language," which are "incidental to the shared legal theory and similar conduct" at issue and do not bar class certification even as to the four other plans they cite.[6] *See Smith v. United HealthCare Servs., Inc.*, No. CIV 00-1163 ADM/AJB, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2002). Bolstering this conclusion is Aetna's admission that it decided across the board that it could require members and plans to pay Optum's

---

[6] Even if the Court were to determine that the variation in these four plans could be material, the Court could handle that issue through a subclass for that category of plans. *See EQT Prod.*, 764 F.3d at 363 (plaintiffs who alleged ownership claims based on varying deeds could potentially "identify a finite number of variations in deed language, such that the ownership question is answerable on a subclass basis").

11

fees without studying any plan language or seeking legal advice. *See* Br. 5; Opp'n Ex. 25 at 2.

Aetna also contends that the Court must conduct an individualized inquiry into its communications and administrative services contracts ("ASCs") with employers (the plan sponsors) to resolve whether it interpreted the plans correctly. Opp'n 17-19. This argument turns ERISA on its head. In light of a history of employers refusing to pay promised benefits, a central purpose of ERISA was "to ensure the integrity of written, bargained-for benefit plans." *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 220 (4th Cir. 2005), *aff'd sub nom. Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006). "To achieve this objective, the plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Id.* For this reason, the Supreme Court has adopted the "plan documents rule," under which the "documents and instruments governing the plan" control, not side communications and secret agreements with plan sponsors or fellow fiduciaries. *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009); *see also Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 140 (4th Cir. 2011) ("[T]he need to follow plan documents" is a "core principle" of ERISA and "avoids the complications, delays, and costs inherent in requiring administrators to examine external documents in an attempt to piece together" the intent of the plan).

Because Aetna's ASCs (Opp'n 17) are not plan documents, they are legally

irrelevant to the question of what the plans mean. *See Kennedy*, 555 U.S. at 300;

*see also Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (an

ASA is "not a 'plan document' for purposes of holding its terms against a plan

participant or beneficiary").[7] Indeed, if the ASCs *were* plan documents, their terms

would have to be included in the Summary Plan Descriptions ("SPDs") given to

plan participants and beneficiaries. *See* 29 U.S.C. § 1022 (an SPD "shall be

sufficiently accurate and comprehensive to reasonably apprise such participants

and beneficiaries of their rights and obligations under the plan"). Aetna would have

no right to keep their terms under lock and key, as it has done here. *See* ECF No.

158 at 13-14 (ASCs "are not shared outside Aetna"). Yet it is precisely because the

SPDs do not say that Optum's administrative fees will be treated as covered

expenses that Defendants improperly turn to the ASCs.

Aetna also relies on letters that it sent to plan sponsors stating that the plans

would pay "an administrative fee for any delegated services by the vendor." Opp'n

18. Aetna does not dispute that it only sent those letters after this lawsuit was filed.

Nor can it dispute that the letters are completely inconsistent with Aetna's prior

---

[7] *Noah U. v. Tribune Co. Med. Plan*, 138 F. Supp. 3d 1134 (C.D. Cal. 2015), cited by Defendants (Opp'n 17), is not to the contrary. In *Noah U.*, the defendant administrator asserted that its ASC was *not* a plan document; the plaintiff agreed, but argued that the ASC was a means of interpreting the plan. *Id.* at 1145. The court only assumed for purposes of argument that the ASC could be used in that fashion. *Id.* at 1146.

assurance to plan sponsors that the plans "would not be charged any fees" for Optum's services. Br. Ex. 13. But more to the point, Aetna's belated disclosure to plan sponsors that Optum was not in fact a provider, but rather a "vendor" charging an "administrative fee" for "delegated services," cannot rewrite the plan terms to allow for those charges. *See Band v. Paul Revere Life Ins. Co.*, 14 F. App'x 210, 214 (4th Cir. 2001) (unpublished) (administrator's letters to beneficiary were not "formal plan amendments" and thus did not alter the plan); *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996) (plans must be amended through formal procedures and in writing).

### 2. Common evidence shows that Aetna engaged in the challenged misconduct to advance its own interests.

ERISA "impose[s] an unswerving 'duty of loyalty' that requires a fiduciary to 'discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'" *Osberg v. Foot Locker, Inc.*, 138 F. Supp. 3d 517, 551 (S.D.N.Y. 2015), *aff'd*, 862 F.3d 198 (2d Cir. 2017) (quoting 29 U.S.C. § 1104(a)). Aetna argues that it satisfied this duty because it acted to obtain "savings" for members, as well as for plans and plan sponsor employers (mostly by denying more claims). Opp'n 7. Whatever the merits of this factual contention, it addresses Aetna's rationale for hiring Optum, not why it chose to bury Optum's fees in medical claims and require members and plans to pay them as covered expenses on the insurance claims at issue. Moreover, it shows that Aetna's motives

can be assessed on a common basis; Aetna does not argue, much less prove, that its motives varied claim to claim or plan to plan. The opposite is true: ███████████

███████████████████████████████████████████

████████████████████████████

### 3. Common evidence shows that Defendants engaged in transactions prohibited by ERISA.

Ms. Peters claims that Aetna violated ERISA by causing the plans to engage in transactions constituting a "transfer" of "assets of the plan" to a "party in interest," 29 U.S.C. § 1106(a)(1)(D), and by dealing with the assets of the plans "in [its] own interest or for [its] own account," 29 U.S.C. § 1106(b)(1). She also alleges that Optum is liable for participating in the prohibited transactions because it "knew or should have known" that it was the recipient of ill-gotten assets. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000). All of these claims rely on common evidence of Aetna's motive for including Optum's fees in its benefits determinations and requiring members and plans to pay them; the process by which Optum received its fees from plan funds; and the tasks that Optum performed under its agreements with Aetna.

Defendants' opposition focuses on the merits of Ms. Peters's prohibited transaction claims. None of their arguments turn on claim- or plan-specific facts, thus reinforcing that whether Defendants violated 29 U.S.C. § 1106 is a question common to the classes.

15

### 4. Common evidence shows that Aetna made knowing misrepresentations or omissions about plan benefits.

ERISA administrators have a duty not to make "material misrepresentations to the beneficiary" or "misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures." Aug. 31, 2016 Order (ECF No. 54) at 29-30 (citing *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001)); *see also McConocha v. Blue Cross & Blue Shield of Ohio*, 898 F. Supp. 545, 551 (N.D. Ohio 1995) ("The presence of a discounting scheme which increases the copay percentage is a material fact about which plaintiffs should have been told.").

Aetna does not argue that there is no common evidence of misrepresentations and omissions. Instead, Aetna argues that class members must prove "detrimental reliance" and that such evidence is necessarily individualized. Opp'n 20.[8] Aetna is wrong for three reasons. First, even if it were true that the classes could not pursue a stand-alone misrepresentation claim without proving detrimental reliance, the common evidence of Aetna's uniform misrepresentations supports the classes' other breach of duty claims. Second, "where the defendant's

---

[8] When Aetna argues that members could call a phone number to get information, Opp'n 20, it misrepresents the facts. Aetna instructed that members should not be "relayed this information about wrap or administration fees as they are feeling they are absorbing costs, which in turn makes most of them unhappy." *See* Ex. 1 at page -14642.

representations were allegedly made on a uniform and classwide basis, individual issues of reliance do not preclude class certification." *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 964-65 (9th Cir. 2016) (holding that class was properly certified under ERISA), *as amended on denial of reh'g and reh'g en banc* (Aug. 18, 2016). Third, the Supreme Court has held that there is no "general principle that 'detrimental reliance' must be proved" to obtain ERISA remedies. *Cigna Corp. v. Amara*, 563 U.S. 421, 443 (2011). Rather, the need to prove detrimental reliance turns on "whether the specific remedy being contemplated imposes such a requirement." *Osberg*, 862 F.3d at 212. As discussed in the next section, Ms. Peters seeks a number of remedies that would not require such proof.

### C. Common Contention: The Appropriate Remedy for Defendants' Violations Can Be Decided on a Common Basis.

Defendants argue that Ms. Peters's remedial requests present individualized issues. Opp'n 33-37. But their interpretation of ERISA and the remedies sought here is flawed.

*First*, Ms. Peters seeks relief for the Member Claim Class under § 502(a)(1)(B).[9] This claim presents the common question of whether the Member Claim Class may "enforce [their] rights under the terms of" their plans through declaratory relief. *See* 29 U.S.C. § 1132(a)(1)(B). Defendants do not dispute that a

---

[9] This is not a claim for denied benefits, or as Section 502(a)(1)(B) describes it, a claim to "recover benefits due … under the terms of [the] plan."

declaration is a common and non-individualized remedy. *See Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 599 (W.D.N.C. 2010) (certifying class seeking declaration that a fiduciary violated ERISA). The class also seeks an order requiring Aetna to send corrected EOBs that comply with its obligations under ERISA. This remedy is also common.

In addition, the § 502(a)(1)(B) claim presents the common question of whether members can recover "legal restitution" for the amounts they were forced to pay for Optum's fees, and if so, the amount of the restitution. *Smith v. United HealthCare Servs., Inc.*, No. Civ. 00-1163 ADM AJB, 2003 WL 22047861, at *5 and n.9 (D. Minn. Aug. 28, 2003) (holding that plaintiffs were entitled to recover restitution of improperly-charged co-payments through a § 502(a)(1)(B) claim to "enforce … rights"). As controlling authority shows, the amount of the Optum fees charged to the members can be measured using the common evidence provided by Defendants' own data. *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (in breach of contract case, holding that a "damage calculation" was "not individualized" where the "formula for damages was identical for all class members" and the defendants' EOBs could be used to measure the amounts). To the extent that any adjustments are necessary, this measurement can easily be modified using that same data.

*Second*, Ms. Peters seeks relief for the Plan Claim Class under § 502(a)(2),

which allows participants and beneficiaries to sue for "appropriate relief" under ERISA § 409(a). Section 409(a) requires a breaching fiduciary to "make good to such plan any losses" and "restore to such plan any profits … made through use of assets of the plan." *See* 29 U.S.C. § 1109(a). Again, Defendants' data provides the common evidence from which the Court can calculate (especially with the aid of Plaintiff's expert testimony) precisely how much money the plans were required to pay for Optum's administrative fees, and how much Aetna avoided having to pay for Optum's services. Nothing about this calculation is individualized.

*Third*, even if the Court concluded that the above remedies were either unavailable or insufficient, it could order other common remedies. Section 409(a) authorizes any other "equitable or remedial relief" that the Court deems appropriate. *See* 29 U.S.C. § 1109(a). This relief can take various forms. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 734 n.4 (9th Cir. 2009) ("Section 502(a)(2) encompasses claims based on breach of fiduciary duty and allows for the more expansive recovery of 'appropriate relief,' including disgorgement of profits and equitable remedies."). The § 502(a)(3) claim that Ms. Peters asserts on behalf of the classes permits similar remedies. In arguing that these remedies do not present common issues (Opp'n 34-37), Defendants misinterpret and conflate them.

*Disgorgement.* The disgorgement remedy is designed to avoid "unjust enrichment."'" *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015). The

Fourth Circuit has held that disgorgement is available even when the plan or its participants "suffer no monetary loss." *Pender*, 788 F.3d at 365-366; *see also Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 415 (3d Cir. 2013) ("ERISA's duty of loyalty bars a fiduciary from profiting even if no loss to the plan occurs."). "[U]nlike an equitable lien or a constructive trust, [this remedy] does not require the district court to apply equitable tracing rules to identify specific funds in the defendant's possession that are subject to return." *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011). The measure and amount of disgorgement is a common issue.[10]

*Surcharge*. Under ERISA, courts have the power to impose a "surcharge," *i.e.*, "relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Amara*, 563 U.S. at 441. The surcharge remedy "extend[s] to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* at 442. The Supreme Court has held that to obtain relief by surcharge, a plan or member must show harm or causation, which may "come from the loss of a right

---

[10] Aetna does not propose a disgorgement measure. Optum contends that its disgorgement must be measured by its net profit, *i.e.*, after subtracting the costs of providing its services to Aetna from the plan assets it obtained. Opp'n 37 n.14. But disgorgement is not so limited: it allows for the return of "ill-gotten plan assets or profits." *Mertens*, 508 U.S. at 260; *see also LeBlanc v. Cahill*, 153 F.3d 134, 153 (4th Cir. 1998) (same). To the extent that Optum believes it is still entitled to some compensation for its services, it can seek that compensation from Aetna.

protected by ERISA or its trust-law antecedents." *Id.* at 444. A showing of detrimental reliance, and any individualized issues it might create, is unnecessary. *Id.* The availability and amount of surcharge is a common issue.

*Restitution (Constructive Trust or Equitable Lien).* Equitable restitution is available, "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff c[an] clearly be traced to particular funds or property in the defendant's possession." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). ███

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████

Finally, even if Defendants could successfully raise individualized questions as to the ultimate award of damages or equitable relief under ERISA, "the need for individualized proof of damages alone will not defeat class certification." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003).

## II.  DEFENDANTS' ARGUMENTS THAT THERE IS NO COMMON PROOF OF "INJURY" HAVE NO BASIS IN LAW OR FACT.

Defendants make various arguments that Ms. Peters was not "injured" and cannot provide common proof that the classes were "injured." Opp'n 23-29. All of these arguments depend on flawed characterizations. First, Defendants erroneously describe Ms. Peters's claims as a broad challenge to the entire "Aetna-Optum

relationship," when in fact the claims are focused on Defendants' improper charges of administrative fees on particular insurance claims. *See* Compl. ¶¶ 1-2.

Next, Defendants make the radical and unsupported argument that under Article III and ERISA, a concrete and demonstrable "injury" from improper charges can be eradicated by suggestions of other "economic benefits" to the members. At most, this argument goes to remedies, and does not affect whether Ms. Peters or the class members—each of whom were charged improper fees—can show an "injury."

Defendants' argument retreads old ground. In Aetna's motion to dismiss, it argued that Ms. Peters had not pleaded a plausible claim of "injury" because she could have paid even more for out-of-network services. The Court rejected this argument because Aetna offered "no legal support" for it. *See* Order (ECF No. 54) at 17 n.5. The Court then concluded that Ms. Peters had pleaded "injury" by alleging that she "paid at least one coinsurance requirement that included Optum's administrative fee charges, and … that she is financially responsible for other inflated co-insurance amounts." *See* ECF No. 54 at 17 and n.5. The evidence has now borne out this injury for Ms. Peters and all class members and their plans.

Nonetheless, Defendants argue as though this is an antitrust price-fixing conspiracy case, in which a showing of injury and impact can sometimes require an economics-based analysis of all transactions in the market. *See, e.g.*, *Blades v.*

*Monsanto Co.*, 400 F.3d 562, 570 (8th Cir. 2005) (cited at Opp'n 29). But this is not an antitrust case. It is an ERISA case challenging discrete fiduciary misappropriations. There are no provisions of ERISA that support Defendants' narrow vision of injury in such a case. *See, e.g.*, 29 U.S.C. §§ 1132(a)(1)-(3) (broadly authorizing claims to "enforce … rights" as to any benefits determination, challenge "any" breach of fiduciary duty, and redress "any act" that violates ERISA); § 1109 (broadly authorizing remedies in the event of a single fiduciary breach).

There is also no caselaw. If Defendants were correct, one would expect to find numerous cases articulating their position. Yet, Defendants' entire argument relies upon three decisions (Opp'n 24, 28) that address entirely different types of ERISA claims and do not even support Defendants' theory in that context. *See Leister v. Dovetail, Inc.*, 546 F.3d 875, 881 (7th Cir. 2008) (addressing defendants' failure to make contributions to pension plan, and holding that this required determination of what plan value would have been but for the failure to make contributions); *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610 (2d Cir. 2006) (addressing defendants' decision to cause the pension plan to purchase stock at above-market price, and holding that because same purchase agreement allowed plan to recover overpayment from seller, this might impact damage calculation); *Sims v. BB&T Corp.*, No. 1:15-cv-732, 2018 WL 3128996, at *8 (M.D.N.C. June

26, 2018) (addressing defendants' selection of pension plan's investment options and record keepers, and holding that plaintiffs merely had to show "some sort of loss to the plan").

So Defendants still have no legal support to offer, but they press ahead anyway. They argue that in evaluating "injury," the Court must take into account that Optum's services "saved plans and members millions of dollars" because Optum's rates were lower than Aetna had previously obtained and Optum controlled "unnecessary visits" (i.e., members received less care). Opp'n 7, 22-25. These purported "savings" are irrelevant. Ms. Peters's claims have nothing to do with whether Optum negotiated lower prices with providers or reduced approved visits. She is challenging Defendants' practice of requiring members and plans to pay for that work as part of their insurance claims.

Next, Defendants point to other insurance claims for Ms. Peters and the class members on which there were no charges for Optum's administrative fees. These include a small minority of other insurance claims where Optum agreed to pay the actual provider more than Aetna had agreed to pay it and thus did not collect a fee. Opp'n 28. But Plaintiff is not challenging those determinations or seeking relief as to them. Defendants still argue, through their expert Dr. Kessler, that these other determinations were a "benefit" that must be "offset" against the claims on which there were improper charges before determining "injury" to a particular member.

Opp'n Ex. 8 ¶ 67. This is yet another argument that goes to damages, not injury. Indeed, even in an antitrust case, such an "offset" does not establish a lack of injury or defeat class certification. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 404 (S.D.N.Y. 2015) (rejecting argument that class could not be certified because some members obtained a price-based benefit from illegal antitrust restraints); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 311 (E.D. Mich. 2001) (rejecting defendants' arguments that "offset" for "benefits … received as a result of … illegal [conduct]" could eliminate injury).

Defendants' misguided theory reaches its nadir when they argue that the Court must examine a member's entire "claims history" to determine whether the member was "injured." Opp'n 28-29. For example, they argue that a member who would have met her out-of-pocket maximum even without the improper charges in a particular year was not "injured" in that year. Opp'n 28. This is absurd: of course a member is harmed by having to pay an improper charge on an insurance claim. Dr. Kessler mistakenly believed (apparently based on Defendants' counsel's instructions) that he was not allowed to find "economic injury" based on such a charge. Ex. 2, Kessler Dep. 278:22-279:11.

Similarly, Aetna argues that it "credited" member deductibles for Optum fees that they did not actually owe, and that if it had not given this credit, Ms. Peters and the other class members would have been "worse off." Opp'n 30; *see*

*also* Opp'n Ex. 8 ¶¶ 113-127. Thus, Aetna says, Ms. Peters and these other members cannot show "injury" from having to pay Optum's fees on subsequent claims in certain years. *Id.* This damages/remedy argument is not only common to the class; it is spurious. If members did not owe Optum's administrative fees on deductible claims, they and their plans should not have owed them on other claims. Yet Defendants still required them to pay the fees—an obvious injury. Defendants cannot exonerate themselves from this injury by giving deceptive credits on other claims and then asserting that those credits were a "benefit."

## III. MS. PETERS IS A TYPICAL AND ADEQUATE CLASS REPRESENTATIVE.

### A. The Classes Share An Interest In Remedying Defendants' Misconduct.

Defendants argue that Ms. Peters has a "conflict of interest" with other class members (Opp'n 30), but the argument relies on their erroneous concept that she is broadly challenging the Aetna-Optum relationship. Defendants' purported concern about harm to class members from "[r]ecalculating benefits" (*id.*) is also baseless. Ms. Peters is not seeking to unwind Aetna's handling of every insurance claim ever submitted by members of the classes and have it redo all of its deductible and out-of-pocket maximum calculations. She simply seeks to hold Aetna and Optum accountable for the improper fees they required members and their plans to bear. All class members share this interest. Moreover, because ERISA is an equitable

Case 1:15-cv-00109-MR   Document 180   Filed 10/09/18   Page 34 of 39

statute, the Court has the discretion to tailor a remedy to prevent further harm to members. For example, it could prohibit Aetna from reprocessing claims to cause members or plans to pay more, or order Aetna to bear the costs resulting from any such reprocessing. *See Amara v. Cigna Corp.*, 775 F.3d 510, 521, 532 (2d Cir. 2014) (approving "structure of … remedy" that "prevent[ed] any class member … from being worse off" and avoided "a much greater degree of administrative difficulty").[11]

### B.     Ms. Peters Can Represent the Plan Claim Class.

Defendants argue that Ms. Peters lacks standing to represent participants and beneficiaries with § 502(a)(2) and § 502(a)(3) claims on behalf of other plans (the "Plan Claim Class"). Opp'n 31-33. But all Ms. Peters must show is that she has individual standing to bring her own claims. Once she has done so, she may represent a class of members with similar claims on behalf of their own plans. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 (2d Cir. 2012) (the ability to represent a class "does not turn on whether [a plaintiff] would have statutory or Article III standing" to assert absent class

---

[11] Even if the Court were to perceive a potential conflict, Rule 23(c) provides opt-out rights to members of a Rule 23(b)(3) class who do not wish to pursue their claims. The Court also has the discretion to provide an opt-out right for a class certified under Rule 23(b)(1). *See Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997) ("the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions").

members' claims); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("the standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 … , regardless of the representative's lack of participation in all the ERISA-governed plans involved").[12]

Defendants also argue that Ms. Peters cannot represent the Plan Claim Class because she does not "represent other plans' interests." Opp'n 32. But all class members have an interest in pursuing the improper fees that their plans paid and recovering Defendants' ill-gotten gains from their breaches. *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (finding "no basis for suspecting" that plaintiff would not "adequately represent the interests" of members of other plans).

Nor does the existence of arbitration provisions in certain ASCs present an individualized defense to certain class members' § 502(a)(2) claims. *See* Opp'n 33. Any such provisions in agreements that members never signed or saw cannot bind the members to arbitrate those statutory claims. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1103-04 (9th Cir. 2006) (holding, based on the "general rule that a nonsignatory is not bound by an arbitration clause," that a participant was not

---

[12] Defendants' only authority to the contrary is the unreported decision in *Berry v. Wells Fargo & Co.*, No. CV 3:17-304-JFA, 2017 WL 7411165 (D.S.C. July 31, 2017), which no other court has cited and is far less persuasive than the holdings of the Second, Fifth, and Sixth Circuits.

required to arbitrate his § 502(a)(2) claim).

## IV.   THE PROPOSED CLASSES SATISFY RULES 23(B)(1) AND (B)(3), OR, IN THE ALTERNATIVE, RULE 23(C)(4).

As an afterthought, Defendants argue that Ms. Peters has not satisfied Rule 23(b)(1), (b)(3), or (c)(4). Opp'n 38-40. Defendants argue that the class may not be certified under Rule 23(b)(1) because Ms. Peters is seeking "individualized monetary relief." Opp'n 39.[13] But the monetary relief sought by Ms. Peters is not "individualized." *See supra* 18. Regardless, a plaintiff may bring monetary claims in a Rule 23(b)(1) class. *See Clark v. Duke Univ.*, No. 1:16-CV-1044, 2018 WL 1801946, at *10 (M.D.N.C. Apr. 13, 2018).

In arguing that Rule 23(b)(3) is not satisfied, Defendants ignore that Ms. Peters's common contentions are "more prevalent or important" than any of Defendants' purported "individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

Finally, Ms. Peters's citation to Rule 23(c)(4) is not "passing." Opp'n 39. The Court should consider issue certification even if the action as a whole is not

---

[13] Defendants also cite *Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986), for the proposition that a class cannot be certified under Rule 23(b)(1)(A) where monetary relief is sought. But *Zimmerman* was a securities fraud case, not an ERISA case against a breaching fiduciary in which the relief could be measured using the fiduciary's own data. *Id.* at 390.

appropriately certified. *See Gunnells*, 348 F.3d at 442.[14]

## CONCLUSION

The Court should grant class certification and direct class notice within 14 days.

Dated: October 9, 2018

/s/ Larry McDevitt

Carl S. Kravitz*
Jason M. Knott*
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036
(202) 778-1800
(202) 822-8106 (fax)
jknott@zuckerman.com

Larry McDevitt
David M. Wilkerson
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
(828) 258-2991
lmcdevitt@vwlawfirm.com

D. Brian Hufford*
Jason S. Cowart*
Nell Z. Peyser*
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
(212) 704-9600
(212) 704-4256 (fax)
dbhufford@zuckerman.com

* *pro hac vice*

*Attorneys for Plaintiff Sandra M. Peters, on behalf of herself and all others similarly situated*

---

[14] Ms. Peters is not required to show predominance for an entire cause of action before issue certification can be granted. *See, e.g., In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006). Defendants are wrong when they suggest that *Gunnells* held to the contrary. *See* 348 F.3d at 444 (declining to "enter that fray").

30

## CERTIFICATE OF SERVICE

I hereby certify that, on the 9th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification via electronic means to the attorneys of record at that time.

*/s/ Larry McDevitt*
Larry McDevitt