# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

|  |  |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC.,<br><br>  Defendants. | Case No. 1:15-cv-00109-MR |

## OPTUMHEALTH CARE SOLUTIONS, INC.'S REPLY SUPPORTING ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

TABLE OF EXHIBITS ..................................................................... vi

INTRODUCTION ............................................................................ 1

ARGUMENT .................................................................................... 3

I.      PETERS SUFFERED NO INJURY. .................................... 3

II.     AETNA DID NOT CAUSE THE MARS PLAN TO ENGAGE IN
        PROHIBITED TRANSACTIONS, OPTUM IS NOT A PARTY
        IN INTEREST, AND OPTUM NEVER RECEIVED PLAN
        ASSETS................................................................................ 6

        A.      OPTUM IS NOT A PARTY IN INTEREST UNDER ERISA §
                406(A) AND IN ANY EVENT NEVER RECEIVED PLAN
                ASSETS....................................................................... 7

        B.      OPTUM NEVER RECEIVED PLAN ASSETS. ........................... 9

        C.      OPTUM CAN'T BE LIABLE FOR AETNA'S ALLEGED
                VIOLATION OF § 406(B)(1). ...................................... 11

III.    AETNA DID NOT BREACH ANY FIDUCIARY DUTY TO
        PETERS OR THE MARS PLAN. ........................................ 11

IV.     NONFIDUCIARY OPTUM DID NOT KNOWINGLY
        PARTICIPATE IN PROHIBITED TRANSACTIONS OR ANY
        FIDUCIARY BREACH. ...................................................... 14

V.      THE MONETARY RELIEF THAT PETERS SEEKS FROM
        NONFIDUCIARY OPTUM IS NOT AVAILABLE UNDER
        ERISA § 502(A)(3)............................................................ 17

VI.     IN ANY EVENT, OPTUM'S COMPENSATION WAS
        REASONABLE..................................................................... 22

CONCLUSION................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016) ...................................................................... 23

*Banyai v. Mazur*,
   No. 00-cv-9806, 2007 WL 959066 (S.D.N.Y. Mar. 29, 2007) ..................................... 10

*Campbell v. Boston Sci. Corp.*,
   882 F.3d 70 (4th Cir. 2018) ........................................................................ 16

*Central States, SE & SW Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*,
   840 F.3d 448 (7th Cir. 2016) ...................................................................... 19

*Conkright v. Frommert*,
   559 U.S. 506 (2010) ................................................................................ 14

*Cox v. Blue Cross Blue Shield of Michigan*,
   166 F. Supp. 3d 891, 896 (E.D. Mich. 2015) ................................................... 19

*Danza v. Fid. Mgmt. Trust Co.*,
   533 F. App'x 120 (3d Cir. 2013) ........................................................... 7, 8, 11

*Duke Energy Fla., Inc. v. Westinghouse Elec. Co. LLC*,
   No. 3:14-cv-00141, 2016 U.S. Dist. LEXIS 134453 (W.D.N.C. Sept. 29, 2016) ................................................................................... 8

*Duncan v. Walker*,
   533 U.S. 167 (2001) ................................................................................. 8

*Elmore v. Cone Mills Corp.*,
   23 F.3d 855 (4th Cir. 1994) (en banc) ........................................................ 23–24

*Firestone v. Bruch*,
   489 U.S. 101 (1989) ................................................................................ 14

*FTC v. Bronson Partners, LLC*,
   654 F.3d 359 (2d Cir. 2011) ....................................................................... 20

Case 1:15-cv-00109-MR   Document 206   Filed 03/29/19   Page 3 of 36

*Gordon v. CIGNA Corp.,*
890 F.3d 463 (4th Cir. 2018) ................................................................................ 11

*Great-West Life & Ann. Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ..................................................................................... *passim*

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,*
530 U.S. 238 (2000) .................................................................................... *passim*

*Hart v. Hanover Cnty. Sch. Bd.,*
495 F. App'x 314 (4th Cir. 2012) ....................................................................... 24

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,*
579 F.3d 220 (3d Cir. 2009) ............................................................................... 21

*LeBlanc v. Cahill,*
153 F.3d 134 (4th Cir. 1998) ........................................................................ 9, 11

*Mertens v. Hewitt Assocs.,*
508 U.S. 248 (1993) ............................................................................... 3, 17, 18

*Metropolitan Life Insurance Co. v. Glenn,*
554 U.S. 105 (2008) ........................................................................................... 14

*Mills Int'l, Inc. v. Holmes,*
570 B.R. 169 (Bankr. E.D.N.C. 2017) ............................................................... 24

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan,*
136 S. Ct. 651 (2016) ............................................................................. 19, 20, 21

*Pender v. Bank of Am. Corp.,*
736 F. App'x 359 (4th Cir. 2018) ................................................................ 18, 22

*Rozo v. Principal Life Ins. Co.,*
No. 4:14-cv-000463, 2015 U.S. Dist. LEXIS 175630 (S.D. Iowa Sept.
21, 2015) ............................................................................................................. 9

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life In. Co.,*
768 F.3d 284 (3d Cir. 2014) .............................................................................. 10

*Sellers v. Anthem Life Ins. Co.,*
316 F. Supp. 3d 25, 34 (D.D.C. 2018) .......................................................... 7, 20

Case 1:15-cv-00109-MR   Document 206   Filed 03/29/19   Page 4 of 36

*Sereboff v. Mid-Atlantic Med. Serv.,*
547 U.S. 356 (2006) ................................................................................ 19

*Smith v. Sydnor,*
184 F.3d 356 (4th Cir. 1999) ................................................................ 14

*Surgicore, Inc. v. Midwest Operating Eng'rs Health & Welfare Fund,*
No. 01C9138, 2002 U.S. Dist. LEXIS 24152 (N.D. Ill. Dec. 13, 2002) .................. 8

*Teets v. Great-West Life & Annuity Ins. Co.,*
--- F.3d ----, 2019 WL 1372319 (10th Cir. Mar. 27, 2019).................................*passim*

*Teets v. Great-West Life & Annuity Ins. Co.,*
106 F. Supp. 3d 1198, 1204 (D. Colo. 2015) ................................................ 9

*Thorn v. Jefferson-Pilot Life Ins. Co.,*
445 F.3d 311 (4th Cir. 2006) ...................................................... 17, 18, 19, 21

*Tussey v. ABB, Inc.,*
746 F.3d 327 (8th Cir. 2014) ................................................................ 14

*UFCW Local 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.,*
No. 05-2435 (JEI), 2005 U.S. Dist. LEXIS 25759 (D.N.J. Oct. 28,
2005) ............................................................................................ 7

*United States v. Agyepong,*
388 F. App'x 343 (4th Cir. 2010) ............................................................ 2

*United States v. Cartwright,*
411 U.S. 546 (1973) .............................................................................. 25

*United States v. Steele,*
897 F.3d 606 (4th Cir. 2018) .................................................................. 25

*Varity Corp. v. Howe,*
516 U.S. 489 (1996) .............................................................................. 9

*White v. Bank of Am., N.A.,*
2012 WL 1067657 (D. Md. Mar. 27, 2012) ............................................ 1

*Woodson v. Allstate Ins. Co.,*
855 F.3d 628 (4th Cir. 2017) .................................................................. 24

iv

**RULES**

Federal Rule of Civil Procedure 23 ...................................................................... 1

**STATUTES**

29 U.S.C. § 1106(a) (ERISA § 406(a)) ..........................................................*passim*

29 U.S.C. § 1106(b) (ERISA § 406(b)) ..........................................................*passim*

29 U.S.C. § 1108 (ERISA § 408) .........................................................10, 23, 24

29 U.S.C. § 1132 (ERISA § 502) ..................................................................*passim*

**OTHER AUTHORITIES**

*Fair Market Value*, Black's Law Dictionary (10th ed. 2014) ........................... 25

*Restatement (Third) of Restitution and Unjust Enrichment* § 51 (2011) .................................... 18

# TABLE OF EXHIBITS

**Exhibits to Principal Brief**

Exhibit      Description

| Exhibit | Description |
|---|---|
| 1 | Transcript excerpts from the deposition of Sandra M. Peters |
| 2 | Transcript excerpts from the Aetna 30(b)(6) deposition |
| 3 | Transcript excerpts from the deposition of Cyndy Kilpinen |
| 4 | Exhibit 213 to the deposition of Dr. Daniel P. Kessler |
| 5 | Exhibit 1 to the deposition of Dawn Waggoner |
| 6 | Transcript excerpts from the deposition of Shiron A. Hagens |
| 7 | Document AETNA-PETERS-00015341 |
| 8 | Transcript excerpts from the deposition of Theresa Eichten |
| 9 | Transcript excerpts from the deposition of Jennifer Cross Hennigan |
| 10 | Transcript excerpts from the deposition of Dawn Waggoner |
| 11 | Transcript excerpts from the Optum 30(b)(6) deposition |
| 12 | Excerpt from Exhibit 58 to Hagens deposition |
| 13 | Exhibit 9 to the deposition of Dawn Waggoner; *see also* Exhibit 126 to the Aetna 30(b)(6) deposition |
| 14 | Exhibit 45 to the Eichten deposition |
| 15 | Transcript excerpts from the deposition of David Elton |
| 16 | Theresa Eichten's September 7, 2018 Declaration |
| 17 | Exhibit 127 to the Aetna 30(b)(6) deposition |

| | |
|---|---|
| 18 | Summary Table based on Exhibit 16 (Eichten Declaration) and Exhibit 207 to the Panis deposition |
| 19 | Exhibit 133 to the Aetna 30(b)(6) deposition |
| 20 | Transcript excerpts from the deposition of Dr. Constantijn Panis |
| 21 | April 15, 2012 Provider Agreement, Exhibit 4 to the Waggoner deposition |
| 22 | June 1, 2013 Provider Agreement, Exhibit 6 to the Waggoner deposition |
| 23 | July 1, 2016 Amendment No. 4, Exhibit 63 to the Gallagher deposition |

**Exhibits to Reply Brief**

| | |
|---|---|
| 24 | Supplemental transcript excerpts from the deposition of Sandra M. Peters |
| 25 | Supplemental transcript excerpts from the Optum 30(b)(6) deposition |
| 26 | Supplemental transcript excerpts from the deposition of Dr. Constantijn Panis |
| 27 | Exhibit A to Plaintiff's Second Amended and Supplemental Responses to Aetna's First Set of Interrogatories |
| 28 | Document OPTUM-PETERS-000018385 |
| 29 | Document OPTUM-PETERS-000011057 |

## INTRODUCTION

With her case against Optum hanging by a single unpleaded claim, Peters tries to rewrite her liability theory, backtracking on certain arguments and contradicting others.[1] But as this Court has found, Peters suffered no injury: She benefited from the Aetna-Optum arrangement. Dkt. 203 at 22. That entitles Optum to summary judgment.

Peters also does not come forward with evidence (even a scintilla) disputing that Optum (1) has no relationship—contractual or otherwise—with the Mars Plan, (2) never saw the Mars Plan, (3) has no control over Aetna's benefits determinations, and (4) believed (correctly so) that the Aetna-Optum contracts saved Aetna plans and members money. Nor has she presented evidence challenging this Court's rulings that Optum "was not acting in a fiduciary capacity with respect to the actions complained of by [Peters]" (Court's July 27, 2018 Order [Dkt. 141] at 17); serves a "purely administrative role" under the Aetna-Optum contracts (*id.* at 18); "has no authority to decide whether a particular claim is covered under a particular plan and cannot pay itself, much less pay itself out of a particular plan's assets" (*id.* at 19); "negotiated at

---

[1] Contrary to Peters's assertion (Opp. 11 n.7), Optum did not ask this Court to grant it summary judgment before denying class certification. Optum moved for summary judgment months after class-certification briefing was complete and has not waived any right under Rule 23. Regardless, the Court has now denied class certification. Dkt. 203.

In any case, Peters misstates the law. Optum has not "waived procedural safeguards against interventions by class members after a favorable ruling on the merits." Opp. 11 n.7 (citing *White v. Bank of Am., N.A.*, 2012 WL 1067657, at *4 (D. Md. Mar. 27, 2012)). The *White* court explained only that Rule 23 does not prevent a court from ruling on the merits before class certification.

arm's length" with Aetna over its compensation (*id.* at 21); and "d[id] not control plan assets simply by charging for its services." *Id.; see also Teets v. Great-West Life & Annuity Ins. Co.,* --- F.3d ----, 2019 WL 1372319, at *8 (10th Cir. Mar. 27, 2019) ("When a service provider adheres to a specific contract term that is the product of arm's-length negotiation, courts have held that the service provider is not a fiduciary.").[2] Those findings foreclose Peters's argument that Optum was a party in interest that knowingly participated in supposedly prohibited transactions.

And although this Court already held that even Aetna did not serve a fiduciary function in negotiating and implementing the Aetna-Optum contracts (Dkt. 141 at 23), Peters nonetheless focuses on evidence related to those negotiations and efforts to implement the contracts. *See* Opp. Exs. 9–27, 32–33, 35–36, and 38. Those nonfiduciary acts cannot sustain a *Harris Trust* claim under ERISA § 502(a)(3). *See Harris Trust & Sav.*

---

[2] Peters argues in passing (Opp. 3 n.2) that Optum has not attempted to meet its summary-judgment burden on fiduciary status. That is wrong. Optum repeatedly cited this Court's earlier ruling that Optum does not serve a fiduciary function under the Mars Plan (or any other Aetna plan) and also relied on the same evidence underpinning the Court's earlier ruling. *See, e.g.,* Br. Ex. 8 at 111, 124–25; Br. Ex. 11 at 47, 62, 73–74, 117; Br. Ex. 21. Under the law-of-the-case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in later stages in the same case." *United States v. Agyepong,* 388 F. App'x 343, 347 (4th Cir. 2010). Absent extraordinary circumstances, "[t]he law of the case must be applied . . . in all subsequent proceedings in the same case in the trial court or on a later appeal." *Id.* Extraordinary circumstances might include, for instance, when "the prior decision was clearly erroneous and would work manifest injustice." *Id.* (citation omitted). Peters never moved for reconsideration of this Court's prior ruling and has not presented extraordinary circumstances justifying revisiting the ruling.

*Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (nonfiduciary liability under ERISA § 502(a)(3) requires, among other things, a "showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction").

Even if Peters could come forward with evidence suggesting that Aetna caused the Mars Plan to engage in prohibited transactions or that Optum was a party in interest that knowingly participated in those transactions—she did not—Optum would still be entitled to summary judgment because the relief that Peters seeks is not available against Optum under ERISA § 502(a)(3). At her deposition, Peters testified that she seeks "damages" (Br. Ex. 1, Peters 28:10–20; Ex. 24, Peters 20:17–19); damages are legal, not equitable, relief. *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). Peters now claims that she can recover disgorgement from Optum under § 502(a)(3)—both for herself and for the Mars Plan—but neither she nor the Mars Plan ever paid Optum, so they could not possibly trace any payment to Optum. And tracing aside, Optum's modest compensation was by any definition reasonable.

## ARGUMENT

## I.    PETERS SUFFERED NO INJURY.

Peters concedes that, of the 58[3] benefits claims that she identifies in her opposition, she suffered no financial loss (even by her view) on 26 of those claims.

---

[3] In her interrogatory responses, Peters claimed that 57 benefits claims are in question. Ex. 27. In her opposition, she claims that 58 are in question. Opp. 12; Opp. Ex. 1.

Opp. 11–12. For the other 32 benefits claims, Peters claims that she paid $129.78 more than she should have. But she calculates that number by applying the downstream provider rates to a self-selected subset of 32 claims. Applying the downstream rates to all 58 claims—and not just to certain claims—shows that Peters would have paid $114.71 *more* than she did in reality. Br. 10; Br. Ex. 4, App'x H. As this Court has now found, Peters "benefited from the Agreements, even using Dr. Panis's flawed definition of injury based on his economically unrealistic 'but-for world.'" Dkt. 203 at 22. She suffered no injury, so Optum is entitled to summary judgment.

Peters responds that she may recover from Optum (a nonfiduciary) under ERISA § 502(a)(3) even if she personally suffered no loss. Opp. 11. But she has claimed all along that she suffered financial loss and at her deposition described those losses as "damages." *See* Dkt. 46 at 13–14; Dkt. 146 at 18; Br. Ex. 1 at 28:10–20. As both Dr. Kessler and Dr. Panis explained, the only way to determine whether Peters or any other plan member suffered financial loss under the Aetna-Optum contracts is to "look at the[ir] complete claims experience and the evolution of claims over the course of [a] year." Ex. 26 Panis Tr. 174:24–175:9; *see also* Dkt. 203 at 19–23; Br. Ex. 4, ¶ 67. That is so because benefits claims do not exist in a vacuum; what a plan member pays on any particular benefits claim in a particular plan year depends on how that claim relates to all other benefits claims in the same year as well as the plan member's deductible, coinsurance, and copay obligations under their plan. Dkt. 203 at 19–23.

4

Besides that, under *Harris Trust*, a § 502(a)(3) claim against a nonfiduciary requires proof that the nonfiduciary was the "transferee of ill-gotten trust assets" (530 U.S. at 251) that in good conscience belong to the plaintiff. *Great-West Life & Ann. Ins. Co. v. Knudson*, 534 U.S. 204, 218 (2002). Optum never received plan assets from Peters or the Mars Plan, but in any case, *Harris Trust* requires this Court to look at Peters's entire claims mix to determine whether Optum holds something that in good conscience belongs to Peters. Looking at Peters's entire claims mix reveals two things: (1) she benefited from the Aetna-Optum contracts, and (2) Optum earned a modest, bargained-for profit for the services that it provided Aetna. Br. Ex. 4, ¶¶ 20, 38, 105.

Peters also misstates facts. She claims that the Aetna-Optum agreements authorized Optum to collect the Aetna-Optum rate from her on within-deductible claims (Opp. 15 n.10 (citing Br. Ex. 21 at § 4.3.1)), but the provision that she cites says nothing of the sort. On the contrary, it says that her providers (including her network) could bill her only if she did not pay her co-insurance, co-pay, or deductible requirement at the time of service—and even then, it does not specify the amount that her providers may bill her in those circumstances. Br. Ex. 21 at § 4.3.1; *see also* Dkt. 203 at 12 ("[I]f the claim is within the participant's deductible, Optum receives nothing . . ."). Peters mischaracterizes the evidence when she claims that "Optum has announced for the first time in this litigation that it has no intention of collecting . . . charges [on within-deductible claims], such that Ms. Peters has received the 'benefit' of 'deductible credits' on those claims." Opp. 2. That is false. The record is full of evidence proving that

Optum has understood all along that it did not get paid on within-deductible claims and could not collect payment from Aetna plan members. *E.g.*, Ex. 28, OPTUM-PETERS-000018385, -000018388 ("[W]e would not get paid [for deductible plans] until deductible is met."); Ex. 29, OPTUM-PETERS-000011058; Br. Ex. 21, -00000631.

## II. AETNA DID NOT CAUSE THE MARS PLAN TO ENGAGE IN PROHIBITED TRANSACTIONS, OPTUM IS NOT A PARTY IN INTEREST, AND OPTUM NEVER RECEIVED PLAN ASSETS.

In her class-certification briefing, Peters claimed that Optum is liable under ERISA § 502(a)(3) as a nonfiduciary "party in interest" that knowingly participated in transactions prohibited by ERISA § 406. Dkt. 146 at 13. Now that Optum has shown that it is not a party in interest (Br. 14–15), Peters contends that she "is not required to prove Optum's 'party in interest' status to hold it liable for the prohibited transactions." Opp. 17–18. According to Peters, Aetna qualifies under ERISA § 406(a)(1)(D) as both the "fiduciary" causing the prohibited transactions *and* the "party in interest" benefiting from the transactions (Opp. 17)—which by her view means that Optum can be liable for knowingly participating in prohibited transactions even if it is neither a fiduciary nor a party in interest. The few courts that have encountered Peters's argument have rejected it. In any case, Peters ignores that § 406(a) also does not apply because Optum never received plan assets and that § 406(b) does not apply because it covers only unilateral fiduciary conduct. Br. 15–17.

**A.** **Optum is not a party in interest under ERISA § 406(a) and in any event never received plan assets.**

ERISA § 406(a)(1)(D) prohibits a "fiduciary" from causing a plan to engage in a transaction that the fiduciary knows constitutes a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). Peters devotes four sentences to arguing that Optum was (is) a party in interest under § 406(a). Opp. 17–18. She cites a contract provision reflecting that Optum agreed to provide administrative services to Aetna for Aetna's "Plans" (plural). *See* Opp. Exs. 14 and 19 at § 2.1. But the fact that Optum performs administrative services "for [Aetna]" in accordance with the parties' separate "Provider Agreement" did not create a relationship between Optum and the Mars Plan or turn Optum into a party in interest. "Optum has no contractual relationship with the Mars Plan." Dkt. 141 at 15.

As important, to qualify as a "person providing services" to a plan, a party must "have a relationship with the . . . plan that *preexists, or is independent of*, the relationship created by the allegedly prohibited transaction." *UFCW Local 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.*, No. 05-2435 (JEI), 2005 U.S. Dist. LEXIS 25759, at *9 (D.N.J. Oct. 28, 2005) (emphasis added); Br. 14; *see also Harris Trust*, 530 U.S. at 242 (assuming that a party who sold interests directly to an ERISA plan was a party in interest because the party had a preexisting broker-dealer relationship with the plan); *Danza v. Fid. Mgmt. Trust Co.*, 533 F. App'x 120, 126 (3d Cir. 2013) (same reasoning); *Sellers v. Anthem Life Ins. Co.*, 316 F. Supp. 3d 25, 34 (D.D.C. 2018) (same reasoning).

7

Optum has never had a relationship with the Mars Plan—contractual or otherwise. Dkt. 141 at 15; *see also* Br. Ex. 1, 241:11–13.

Beyond that, Optum also does not qualify as a party in interest because it did not render services "directly to the plan itself." *Surgicore, Inc. v. Midwest Operating Eng'rs Health & Welfare Fund*, No. 01C9138, 2002 U.S. Dist. LEXIS 24152, at *9 (N.D. Ill. Dec. 13, 2002). Optum provides services to Aetna, not the Mars Plan. Dkt. 141 at 15. Its fees were "a product of arm's length negotiations" with Aetna. *Id.* at 20.

Faced with those undisputed facts, Peters ignores Optum's arguments and tries instead to shift her liability theory. Now she contends that Optum can be liable under ERISA § 502(a)(3) for knowingly participating in transactions prohibited by § 406(a) even if it is neither a fiduciary nor a party in interest because Aetna supposedly qualifies as *both* the "fiduciary" and "party in interest" under § 406(a). Opp. 17–18. But "new theories cannot be raised in a response to a summary judgment motion that would be tantamount to amending a complaint." *Duke Energy Fla., Inc. v. Westinghouse Elec. Co. LLC*, No. 3:14-cv-00141, 2016 U.S. Dist. LEXIS 134453, at *11 (W.D.N.C. Sept. 29, 2016) (citing cases).

In any event, Peters's new theory that Aetna can wear both hats under § 406(a) makes mincemeat of the statute. On its face, § 406(a) requires the fiduciary and the party in interest to be "two distinct parties." *Danza*, 533 F. App'x at 125 n.3. Otherwise, there would have been no need for Congress to enact ERISA § 406(b), which prohibits fiduciary self-dealing. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) (courts should

8

avoid interpreting a statute in a manner that would render part of it "superfluous, void, or insignificant"); *Rozo v. Principal Life Ins. Co.*, No. 4:14-cv-000463, 2015 U.S. Dist. LEXIS 175630, at *7–8 (S.D. Iowa Sept. 21, 2015) (applying § 406(a) when defendants are "both the fiduciaries and the interested parties . . . would make part (b) redundant"); *Teets v. Great-West Life & Annuity Ins. Co.*, 106 F. Supp. 3d 1198, 1204 (D. Colo. 2015) (courts must treat allegation that a defendant is "both a party in interest and a fiduciary" as an allegation of "self-dealing, which is a violation of ERISA § 406(b), not (a)").

The single case that Peters cites—*LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998)— proves Optum's point. There, the Fourth Circuit explained in dicta that ERISA § 406(a)(1)(D) "extends the scope of liability between fiduciaries and parties in interest by prohibiting a transaction between a plan and *a third party* when the transaction is for the benefit of the party in interest." 153 F.3d at 153 (emphasis added). Aetna cannot serve double duty as the fiduciary who caused the Mars Plan to engage in the challenged transaction *and* the "third party" who entered into the transaction with the Plan.

## B. Optum never received plan assets.

The § 502(a)(3) claim against Optum also fails because Optum never received plan assets. *See* 29 U.S.C. § 1106(a)(1)(D); *Harris Trust*, 530 U.S. at 251. Peters's payments to her treating providers were not plan assets. Br. 15. She does not argue otherwise.

Instead, she pivots to contend that she can seek relief from Optum under ERISA § 502(a)(3) on the Mars Plan's behalf. Opp. 24 (citing, among other cases, *Varity Corp. v. Howe*, 516 U.S. 489 (1996)). That is wrong—*Varity* did not hold that a plan member

may sue a nonfiduciary under ERISA § 502(a)(3) on her plan's behalf. It is also beside the point.[4] Under *Harris Trust*, Peters may recover only ill-gotten *plan assets* (and perhaps the profits derived from them). The Mars Plan never paid Optum anything, let alone plan assets. Under the Aetna-Optum contracts, Aetna paid Optum. "Optum (as a third-party service provider) and Aetna (as claims administrator) 'negotiate[d] at arm's length over the terms of their agreement.'" Dkt. 141 at 21 (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life In. Co.*, 768 F.3d 284, 293 (3d Cir. 2014)). Optum "does not control plan assets simply by charging for its services." *Id.*

Contrast those facts with those alleged in *Harris Trust*. There, the Supreme Court assumed that the ERISA plan and Salomon Smith Barney (a nonfiduciary) "entered into a transaction prohibited by § 406(a) and not exempted by § 408." 530 U.S. at 242. One of the plan's fiduciaries arranged the transaction between Salomon and the plan. *Id.* The Court assumed that Salomon qualified as a party in interest because, separate from the alleged prohibited transaction, Salomon "provided broker-dealer services to [the plan]." *Id.* The alleged prohibited transaction also involved plan assets because the plan itself contracted with Salomon and paid Salomon directly out of plan assets. Here, by contrast, Optum has no contract with the Mars Plan, and the Mars Plan never paid

---

[4] Peters also cites *Banyai v. Mazur*, No. 00-cv-9806, 2007 WL 959066, at *3 (S.D.N.Y. Mar. 29, 2007), but in concluding that a plan member may sue a nonfiduciary under ERISA § 502(a)(3) on her plan's behalf, the *Banyai* court ignored the distinctions among § 502's different subparts. Of § 502's various provisions, only § 502(a)(2) contemplates a plan member's suing on her plan's behalf.

Optum any amount. Aetna paid Optum for services that Optum rendered to Aetna. Dkt. 141 at 20.

### C. Optum can't be liable for Aetna's alleged violation of § 406(b)(1).

Peters continues to argue without supporting authority that Optum can be liable under ERISA § 502(a)(3) for knowingly participating in Aetna's alleged violations of ERISA § 406(b)(1). Opp. 17. The statute and the cases say otherwise. Section 406(b)(1) addresses unilateral fiduciary conduct: It prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b). In recognizing the possibility of nonfiduciary liability under ERISA § 502(a)(3) for knowingly participating in a fiduciary's violations of §§ 406(b)(2) and (3), the Fourth Circuit in *LeBlanc* explained that (b)(2) and (b)(3) "expressly prohibit[] a transaction involving a nonfiduciary third party." 153 F.3d at 153. Section 406(b)(1) does not.

In any event, "[a] service provider"—even one that (unlike Optum) qualifies as a party in interest—"cannot be held liable [under § 406(b)] for merely accepting previously bargained-for fixed compensation that was not prohibited at the time of the bargain." *Danza*, 533 F. App'x at 126.

## III. AETNA DID NOT BREACH ANY FIDUCIARY DUTY TO PETERS OR THE MARS PLAN.

The Fourth Circuit "has never formally recognized" a cause of action against a nonfiduciary under ERISA § 502(a)(3) for "knowingly participating in a breach of trust by a fiduciary." *Gordon v. CIGNA Corp.*, 890 F.3d 463, 476 (4th Cir. 2018). But Peters

nevertheless argues that Optum can be liable under ERISA § 502(a)(3) as a nonfiduciary who knowingly participated in Aetna's alleged fiduciary breaches. Opp. 17, 23–24.

But Aetna did not breach any fiduciary duty.[5] As this Court already ruled, Aetna did not serve a fiduciary function in establishing and maintaining the Aetna-Optum relationship (Dkt. 141 at 23), so inasmuch as Peters's *Harris Trust* claim against Optum hinges on a challenge to the contracts or their implementation, the claim fails at the threshold. Besides that, the Aetna-Optum relationship has lowered physical-therapy and chiropractic costs for Aetna plan sponsors and members—including Peters and the Mars Plan. Dkt. 203 at 25; Br. Ex. 2, 47:12–16, 48:13–20; Br. Ex. 7; Br. Ex. 4, ¶¶ 59–64; Br. Ex. 8, 207:1–3.

In any case, Aetna complied with the Mars Plan. Br. 18. ██████████████

████████████████████████████████████████████████████████████████

██████████ Br. Ex. 17, -00002809. There was no agreement that Aetna would change its network contracts (which already included the Aetna-Optum contracts) or that Aetna would serve a fiduciary role when negotiating or implementing its network contracts.

---

[5] Because Aetna complied with the Mars Plan, it necessarily did not mislead Peters or the Mars Plan in the way that Peters alleged in her Complaint. *See* Dkt. 1 at 2. And Optum did not (indeed could not) knowingly participate in Aetna's disclosures to its plans and members.

Beyond that, Aetna calculated Peters's financial responsibility in accordance with the Mars Plan. Br. 8–10, 18–20. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████ Optum's downstream rates were not in any "Aetna contract."

Peters disagrees, arguing that her plan required Aetna to interpret "Negotiated Charge" to mean Optum's downstream rate with her treating providers. Opp. 19–21. But Aetna's determination that Optum is the "Network Provider" for purposes of calculating the "Negotiated Charge" is consistent with the Mars Plan's definitions of those terms. Br. Ex. 19, -00003013. And Peters's argument that her treating providers qualify as "Network Providers" conflicts with the Aetna-Mars contract, ████████

████████████████████████████████████

████████████. Aetna has no contract with Optum's downstream providers.

Even if the Mars Plan admitted of some ambiguity, Peters has not shown that Aetna's interpretation was arbitrary and capricious—███████████████████

████████████████████████████████████ Br. Ex.

13

17 at 00002790; *Firestone v. Bruch*, 489 U.S. 101, 111 (1989); *Conkright v. Frommert*, 559 U.S. 506, 512 (2010); *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014) (joining numerous circuits in applying *Firestone* deference to fiduciary claims). Peters argues that Aetna's interpretation is not entitled to *Firestone* deference because Aetna's decisions bore on its own "financial interests." Opp. 21. But the case that Peters cites—*Smith v. Sydnor*, 184 F.3d 356, 365 n.9 (4th Cir. 1999)—did not survive the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008). In *Glenn*, the Supreme Court held that a potential conflict of interest does not strip a fiduciary of deference—even if it is a factor to consider in evaluating a fiduciary's interpretation of the plan. *Id.* at 115–16.

## IV. NONFIDUCIARY OPTUM DID NOT KNOWINGLY PARTICIPATE IN PROHIBITED TRANSACTIONS OR ANY FIDUCIARY BREACH.

Even if Peters had come forward with evidence suggesting that Aetna caused the Mars Plan to engage in a prohibited transaction or breached a fiduciary duty—she did not—Optum did not knowingly participate in any violation. To establish Optum's knowing participation, Peters had to show that, for the Mars Plan, Optum knew of Aetna's status as a fiduciary and knew that Aetna caused the Plan to engage in a prohibited transaction (or perhaps that Aetna contravened a fiduciary duty). Br. 20; *see also Harris Trust*, 530 U.S. at 251 (liability under ERISA § 502(a)(3) extends beyond the "principal wrongdoer" only to "a transferee of ill-gotten" assets who had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful").

Peters has not—and cannot—make either showing: First, Aetna was not serving a fiduciary function when it contracted with Optum. Dkt. 141 at 23. Second, Optum never saw the Mars Plan documents (Br. Ex. 11, 191:11–24), so Optum did not know (a) whether Aetna was serving a fiduciary role when it took the actions that Peters challenges, (b) whether the Plan prohibited any given payment arrangement, or (c) whether any particular claim determination violated plan terms. Third, Optum could not have knowingly participated in Aetna's benefits determinations under the Mars Plan. Aetna (not Optum) "retain[ed] all discretionary authority to pay or deny benefit claims." Dkt. 141 at 18; *see also id.* at 19 ("Optum has no authority to decide whether a particular claim is covered under a particular Aetna plan . . . .); Br. Ex. 2, 109:12–17, 170:12–14. Fourth, Optum always believed (correctly so) that the Aetna-Optum contracts saved Aetna plans and members money. Br. 21; Dkt. 203 at 25.

Peters cannot dispute that evidence—and in fact concedes that Optum never saw the Mars Plan (Opp. 23 n.14)—so she cherry-picks and mischaracterizes other evidence. Most of Peters's favorite emails are from David Elton, one of Optum's clinical officers. According to Peters, those emails show that "Optum knew that Aetna's benefits administration was dishonest and inconsistent with Aetna's plans." Opp. 1 (citing Br. Exs. 22, 23); *see also* Opp. 7 (citing Br. Exs. 22–26). Not so. As Dr. Elton explained at his deposition, the emails reflect his efforts to address confusion about the Aetna-Optum relationship. *See* Br. Ex. 15 at 31–32, 57; Br. 6–7. Like other Optum employees, Elton believed that the Aetna-Optum contracts saved Aetna plans and

members money. Opp. Ex. 23.[6] Regardless, raising questions about potential confusion is not the same thing as knowing that Aetna was serving a fiduciary function and causing the Mars Plan to engage in prohibited transactions.

Which brings us to the nub of it: Optum could not have knowingly participated in prohibited transactions when it did not know Aetna's fiduciary status under the Mars Plan, had no control over Aetna's benefits determinations, and correctly believed that the Aetna-Optum contracts benefited Aetna plans and their members.[7] Dkt. 203 at 17 ("It is undisputed that Optum's role was crucial in lowering the amounts charged by the downstream providers.").

---

[6] Peters also miscasts an email from another Optum employee as confirming that the "admin fee" was "improper." Opp. 6–7 (citing Opp. Ex. 33). But that email says nothing about the administrative fees' propriety and does not mention any plans or plan terms. The record shows that Optum originally proposed a contract under which Aetna would pay Optum on a per-member-per-month basis as opposed to paying Optum an administrative fee (Opp. Ex. 2 at 34), but Aetna couldn't agree to Optum's proposal because of "system limitations." (Br. Ex. 11, 29:2–15; Ex. 25, Optum 30(b)(6), 40:10–16).

[7] Peters argues that "Optum cannot rely on Dr. Joe Siragusa's out-of-court statement that the N.C. Department of Insurance (which does not enforce ERISA) supposedly deemed [Aetna's and Optum's] practice 'legal.'" Opp. 10 n.6. Wrong: The statement is not hearsay for showing what Peters understood before filing suit. Br. 7; *Campbell v. Boston Sci. Corp.*, 882 F.3d 70, 78 (4th Cir. 2018) (statement properly admitted as non-hearsay because it showed that one of the parties was aware of the statement and "[o]ne need not assume that the [statement] is true to find it relevant to [the party's] state of mind at various times."). In any case, Dr. Siragusa's statement is not critical to Optum's motion.

## V. THE MONETARY RELIEF THAT PETERS SEEKS FROM NONFIDUCIARY OPTUM IS NOT AVAILABLE UNDER ERISA § 502(A)(3).

Peters is at best unclear when discussing the relief that she seeks. Outside of confirming that she is "not asking this Court or Aetna to reverse every benefit decision" or "to reprocess all of her Optum and non-Optum claims from scratch" (Opp. 12), her statements are all over the place. For instance, she backtracks from her earlier testimony that she seeks "damages" (Br. Ex. 1 at 28:10-20; Ex. 24 at 20:17–19) to now claim that she seeks disgorgement of Optum's "assets and profits" (Opp. 24) (citing *Mertens*) and a "constructive trust or equitable lien." *Id.* at 25.[8] Not only that, Peters contends that the tracing rules that normally apply to equitable remedies under § 502(a)(3) do not apply to the monetary relief that she seeks. Opp. 24. The flaws in Peters's arguments are manifest.

First, the Supreme Court has rejected the notion that a plan member may sue a nonfiduciary under ERISA § 502(a)(3) for money damages dressed up as equitable relief. *Mertens*, 508 U.S. at 255; *Great-West*, 534 U.S. at 212; *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 332 (4th Cir. 2006) (same). In *Mertens,* "[a]lthough [petitioners] often dance[d] around the word, what petitioners in fact [sought was] nothing more than compensatory damages, . . . the classic form of *legal* relief." *Id.* (emphasis in original). At her deposition, Peters did not dance around the word; she

---

[8] Peters concedes that surcharge is not available against nonfiduciary Optum. Opp. 24 n.15. And Peters does not seek an accounting of profits. *Id.* at 24–25.

confirmed that she seeks "damages" and "penalties"—never once mentioning "restitution," "disgorgement," an "accounting of profits," a "constructive trust," or an "equitable lien." *Compare Great-West*, 534 U.S. at 214 ("for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession"). The relief that Peters seeks is not available under ERISA § 502(a)(3). *Mertens*, 508 U.S. at 256; *see also Thorn*, 445 F.3d at 332 (same).[9]

Second, *Harris Trust*, not the inapposite cases that Peters cites, governs nonfiduciary relief under ERISA § 502(a)(3): "Only a transferee of ill-gotten assets may be liable," and only when the transferee "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251. That "in turn" requires a "showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." *Id.* For all the reasons set out in Optum's opening brief and this reply, Peters cannot prove any of those things.

_____

[9] *Mertens* did not hold that "a service provider must 'disgorge assets *and* profits,' not just *net* profit." Opp. 24 (quoting *Mertens*, 508 U.S. at 262). In the passage that Peters quotes, the Supreme Court explained that a *party in interest* may be required to "disgorge assets and profits obtained through participation . . . in transactions prohibited by § 406." 508 U.S. at 262. Optum is not a party in interest, and the standard for equitable disgorgement is not gross profit but rather "the net profit attributable to the underlying wrong." *Pender v. Bank of Am. Corp.*, 736 F. App'x 359, 371 (4th Cir. 2018) (quoting *Restatement (Third) of Restitution and Unjust Enrichment* § 51 (2011)).

Fourth, every equitable monetary remedy under § 502(a)(3)—whether denominated "restitution," "disgorgement," or an "accounting"—requires tracing. *See, e.g., Great-West*, 534 U.S. at 215 (*Harris Trust* claim requires a "claim to specific property (or its proceeds)"). The plaintiff must show that "money or property . . . belonging in good conscience to [her] could clearly be traced to particular funds or property in the defendant's possession." *Great-West*, 534 U.S. at 213; *see also Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan*, 136 S. Ct. 651, 659 (2016) (equitable remedies cannot attach to general assets); *Thorn*, 445 F.3d at 332 (same). That tracing requirement, the Supreme Court has explained, requires the plaintiff to seek "specifically identifiable funds" and "not recovery from the [defendants'] assets generally." *Sereboff v. Mid-Atlantic Med. Serv.,* 547 U.S. 356, 362–63 (2006); *see also Cox v. Blue Cross Blue Shield of Michigan*, 166 F. Supp. 3d 891, 896 (E.D. Mich. 2015) (plaintiffs failed to sufficiently allege a "specifically identifiable fund").

Peters cannot trace any payment to Optum because neither she nor the Mars Plan ever made a payment to Optum. Br. 24; Br. Ex. 16 ¶ 9; *see also* Opp. 25 (acknowledging that all payments to Optum came from Aetna). When the Supreme Court has concluded that relief was equitable, the defendant held the money "in segregated accounts or funds," and the plaintiff sought "an equitable lien against the specifically identified account or fund." *Central States, SE & SW Areas Health & Welfare Fund v. Am. Int'l Grp., Inc.*, 840 F.3d 448, 452–53 (7th Cir. 2016); *see also Great-West*, 534 U.S. at 216 (equitable restitution "limit[ed] . . . to the return of identifiable funds (or

19

property) belonging to the plaintiff and held by the defendant"); *Montanile*, 136 S. Ct. at 658–59 (same); *Sellers*, 316 F. Supp. 3d at 41 (same). Optum did not receive payments from Peters or her plan, so it never had a segregated account for those nonexistent payments. Aetna's payments go into a general Optum bank account that receives payments of all sorts, including for unrelated relationships. Br. 7. Tracing is impossible.

Rather than grapple with the ERISA cases, Peters cites *FTC v. Bronson Partners, LLC*, 654 F.3d 359 (2d Cir. 2011), for the proposition that equitable disgorgement does not require tracing. Opp. 24. But in holding that the FTC could seek restitution and disgorgement under the FTC Act, the Second Circuit explained that the remedies available to the *regulator* under the FTC Act are different than those available to a plaintiff pressing a "private, equitable claim" under ERISA. *Id.* at 370–72; *see also id.* at 373 ("a regulatory agency seeking disgorgement need not identify specific victims to whom payment is due 'in good conscience,' as it would be required to do if seeking to impose a constructive trust") (quoting *Great-West*, 534 U.S. at 213).

Indeed, just two days ago, the Tenth Circuit in *Teets* rejected Peters's precise argument. 2019 WL 1372319, at *18. The *Teets* court held that the "tracing requirement . . . for equitable restitution also applies to accounting and disgorgement of profits"— both of which "are forms of restitution." *Id.* With accounting and disgorgement, the court explained, "the tracing requirement may be modified in limited circumstances"— "if, for example, a plaintiff is entitled to a constructive trust on a particular property held by the defendant, he may also recover profits produced by the defendant's use of

20

that property, even if he cannot identify a particular *res* containing the profits sought to be recovered." *Id.* (quoting *Great West*, 534 U.S. at 214 n.2). But even for accounting and disgorgement, the plaintiff "must still show entitlement "to a constructive trust on particular property held by the defendant that the defendant used to generate the profits." *Teets*, 2019 WL 1372319, at *18; *see also In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 238 (3d Cir. 2009) ("[P]laintiffs cannot recover under [a theory of disgorgement] without first identifying the profit generating property or money wrongly held by [the defendant].").  Peters has not even tried to identify particular property in Optum's possession. Pointing to Optum's general bank account doesn't work: Relying on "commingled profits" in a "general account" without first identifying a specific fund or property over which Peters can "assert title or right to possession" is "fatal" to a disgorgement claim. 2019 WL 1372319, at *18.

Unlike with disgorgement, Peters does not dispute that a constructive trust or equitable lien likewise requires tracing. Opp. 25; *see also Montanile*, 136 S. Ct. at 657. Instead, Peters argues that she can trace based on an Optum employee's stray remark about the "slush." Opp. 25. Peters mischaracterizes that remark: Optum does not have a "slush" account for payments from Aetna under the contracts at issue. The Optum employee used the term "slush" to describe the difference between revenue and costs, not to describe a particular fund or account—let alone holding segregated funds relating to the Mars Plan. Br. Ex. 8, 211:11–25; *see also Thorn*, 445 F.3d at 332 (remedy drawn from a general account or general assets "is a legal one").

21

Peters also argues that "Optum does not dispute that the funds are in its bank account." Opp. 25. That of course is wrong. Optum put on evidence that Aetna's payments go into a general bank account that Optum uses for its business, not into a trust-like account unique to her plan or any Aetna plan. Br. 7–8.

## VI. IN ANY EVENT, OPTUM'S COMPENSATION WAS REASONABLE.

Applying the downstream rates to all 58 of Peters's benefits claims—and not just to certain claims—shows that Peters would have paid $114.71 *more* than she did in reality. Br. 10; Br. Ex. 4, App'x H. Optum made only $22 on those benefits claims—a modest sum. That compensation—negotiated at arm's length with Aetna (Dkt. 141 at 21)—was by any definition reasonable. Dkt. 203 at 18 n.4 ("It is undisputed that Optum invested significant resources in developing and maintaining its Network and providing services."). It was certainly not ill-gotten in any sense. *See Harris Trust*, 530 U.S. at 251; *see also Pender*, 736 F. App'x at 368–69 ("[E]ven if a form of equitable relief is available under Section 502(a)(3), a district court has discretion to deny such relief if the court deems such relief inappropriate under the particular facts of the case."). Accordingly, even if Peters had put forth evidence showing that (1) Optum is a party in interest, (2) Optum provided services to the Mars Plan, (3) Optum received plan assets, (4) Optum knowingly participated in a prohibited transaction or breach of fiduciary duty, *and* (5) the difference between Aetna's payments to Optum and Optum's payments to downstream providers could somehow form the basis for equitable restitution, it would

still be inequitable to force Optum to return its reasonable compensation. Br. Ex. 16, Ex. A; Br. Ex. 20, 116:2–118:14.

Unable to argue that Optum's compensation was unreasonable, Peters peddles the notion that Optum waived ERISA § 408's "affirmative defense" of reasonable compensation. Opp. 18. Not so. "Section 406(a) imposes a duty only on the fiduciary that caused the plan to engage in the transaction" (*Harris Trust*, 530 U.S. at 245), so even assuming (against Fourth Circuit precedent) that § 408 sets forth an affirmative defense, it would function as an affirmative defense only as to plan fiduciaries—the only proper defendants under ERISA § 406. In the one case that Peters cites—*Allen v. GreatBanc Tr. Co.*, 835 F.3d 670 (7th Cir. 2016)—the defendant arguing reasonable compensation under § 408 was the fiduciary who caused the challenged transaction. Peters's claim against nonfiduciary Optum is under ERISA § 502(a)(3), not under § 406. *See Harris Trust*, 530 U.S. at 251–52. No court has ever held that a nonfiduciary facing a claim for equitable relief under ERISA § 502(a)(3) must plead reasonable compensation as an affirmative defense. *Compare Teets*, 2019 WL 1372319, at *3 ("Fiduciaries can avoid liability for a prohibited transaction if they qualify for certain exemptions under § 408 of ERISA.").

At any rate, in the Fourth Circuit, reasonable compensation is not an affirmative defense—even for fiduciaries. In *Elmore v. Cone Mills Corp.*, 23 F.3d 855 (4th Cir. 1994) (en banc), the Fourth Circuit held only that the fiduciary who caused the plan to engage

in the challenged transaction bears the burden under § 408 of proving reasonable compensation.[10] *Elmore*, 23 F.3d at 864.

Peters also ignores that she never pleaded nonfiduciary liability against Optum. *See* Br. 1. Indeed, Peters did not articulate her theory of nonfiduciary liability until *after* this Court ruled that Optum served no fiduciary function under the Mars Plan or any other Aetna plan. *See* Dkt. 146 at 10 n.9; *Mills Int'l, Inc. v. Holmes*, 570 B.R. 169 (Bankr. E.D.N.C. 2017) (ruling against a plaintiff who circumvented "any opportunity for the Defendant to assert affirmative defenses to the Plaintiff's claims"). If anyone has been "severely prejudice[d]" (Opp. 18) by pleading failures, it is Optum, not Peters.

Peters also argues that she never had an opportunity to develop evidence about the reasonableness of Optum's compensation. Opp. 18. It is hard to take that argument seriously. This case has been around for almost four years; Peters has had plenty of time to develop whatever evidence she thought relevant. It is also a damning admission: Under *Harris Trust*, it was always Peters's burden to show that Optum holds particular *ill-gotten* plan assets (or profits derived from them) that in good conscience belong to

---

[10] If the Court concluded that Optum (a nonfiduciary) needed to plead reasonable compensation as an affirmative defense under ERISA § 408, Optum would request leave to amend its answer, and as the Court knows, leave should be freely given as fairness or justice requires. *See Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 635 (4th Cir. 2017) (party may amend answer to add affirmative defenses); *Hart v. Hanover Cnty. Sch. Bd.*, 495 F. App'x 314, 315 (4th Cir. 2012) ("Rule 15(a) requires that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.") (citation and internal quotation marks omitted).

her (530 U.S. at 251); the reasonableness of Optum's compensation was always relevant to *that* question. Peters has now admitted that she did not develop evidence on that part of her liability theory. *Compare Teets*, 2019 WL 1372319, at *21 ("Mr. Teets did not attempt to identify the funds in Great-West's possession that rightfully belonged to him . . . . Instead, he made a legal argument that 'disgorgement of profits does not require the recovered funds to be traceable to a *res* or particular funds.' . . . As explained below, his legal argument is wrong.").

Even if Peters had tried to show that Optum's compensation was unreasonable, she would have failed. Reasonable compensation is tested against fair market value—"'[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction.'" *United States v. Steele*, 897 F.3d 606, 610 (4th Cir. 2018) (quoting *Fair Market Value*, Black's Law Dictionary (10th ed. 2014)); *see also United States v. Cartwright*, 411 U.S. 546, 552 (1973) (same definition). As the Court has found, Aetna and Optum negotiated at arm's length (Dkt. 141 at 20–21), and the other evidence in the record proves that Optum's compensation was reasonable.

## **CONCLUSION**

This Court should grant Optum summary judgment.

Respectfully submitted March 29th, 2019.

<div style="margin-left: 40%;">

/s/ *Brian D. Boone*
Brian D. Boone (NC Bar No. 38910)
Michael R. Hoernlein (NC Bar No. 40419)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000

</div>

25

101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com
michael.hoernlein@alston.com

*Counsel for OptumHealth Care Solutions, Inc.*

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S RULES

I certify that this Brief complies with Local Rule 7.1 and this Court's Pretrial Order and Case Management Plan: It uses Microsoft Word double-spacing and one-inch margins, is in Garamond 14-point font (including the footnotes), and does not exceed 25 pages.

March 29, 2019

<div align="right">

/s/ Brian D. Boone
Brian D. Boone (NC Bar No. 38910)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

Counsel for OptumHealth Care Solutions, Inc.

</div>

## CERTIFICATE OF SERVICE

I certify that on March 29, 2019, I filed and served a copy of this Brief on all counsel of record using the CM/ECF system.

/s/ *Brian D. Boone*
Brian D. Boone (NC Bar No. 38910)
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
Tel: (704) 444-1000
Fax: (704) 444-1111
brian.boone@alston.com

*Counsel for OptumHealth Care Solutions, Inc.*