UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

SANDRA M. PETERS, on behalf of
herself and all others similarly
situated,

    Plaintiff,

 v.

AETNA INC., AETNA LIFE
INSURANCE COMPANY, and
OPTUMHEALTH CARE SOLUTIONS,
INC.,

    Defendants.

Case No. 1:15-cv-00109-MR

# AETNA'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... ii

TABLE OF EXHIBITS ........................................................................................... iii

I. INTRODUCTION ..........................................................................................1

II. ARGUMENT .................................................................................................2

    A. Aetna Is Entitled to Summary Judgment on Plaintiff's Derivate Claim Under ERISA (Count III). .........................................................................3

    B. Aetna Is Entitled to Summary Judgment on Plaintiff's Individual Claim Under ERISA (Count IV). .........................................................................7

    C. Plaintiff Is Not Entitled to Injunctive or Other Equitable Relief (Counts III, IV). ......................................................................................8

III. CONCLUSION ............................................................................................10

# **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Estate of Spinner v. Anthem Health Plans of Virginia, Inc.*,
  388 F. App'x 275 (4th Cir. 2010) ................................................................... 5

*FTC v. Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011) .......................................................................... 9

*Harley v. Minnesota Mining & Mfg. Co.*,
  284 F.3d 901 (8th Cir. 2002) ......................................................................... 5

*Hensley v. P.H. Glatfelter Co.*,
  No. CIV. 1:04-CV-200,
  2005 WL 3158033 (W.D.N.C. Nov. 28, 2005) (Thornburg, J.) ..................... 6

*Ince v. Aetna Health Mgmt., Inc.*,
  173 F.3d 672 (8th Cir. 1999) ......................................................................... 6

*Kenseth v. Dean Health Plan, Inc.*,
  722 F.3d 869 (7th Cir. 2013) ..................................................................... 5, 8

*Roth v. Sawyer-Cleator Lumber Co.*,
  61 F.3d 599 (8th Cir. 1995) ........................................................................... 6

*Teets v. Great-West Life & Annuity Ins. Co.*,
  921 F.3d 1200 (10th Cir. Mar. 27, 2019) ...................................................... 9

**STATUTES**

29 U.S.C. § 1132(a)(1) (ERISA § 502(a)(1)) ................................................... 6, 7

29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) ................................................ 3, 5, 6

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ....................................................... 8

# TABLE OF EXHIBITS

**Exhibits to Opening Brief**

| | |
|---|---|
| 1 | Transcript excerpts from Aetna 30(b)(6) deposition |
| 2 | Transcript excerpts from deposition of Cyndy Kilpinen |
| 3 | Exhibit 213 to deposition of Dr. Daniel Kessler |
| 4 | Exhibit 1 to deposition of Dawn Waggoner |
| 5 | Transcript excerpts from deposition of Shiron Hagens |
| 6 | Transcript excerpts from deposition of Dawn Waggoner |
| 7 | Document AETNA-PETERS-00015341-43 |
| 8 | April 15, 2012 Provider Agreement (Exhibit 4 to D. Waggoner Deposition) |
| 9 | June 1, 2013 Provider Agreement (Exhibit 6 to D. Waggoner Deposition) |
| 10 | July 1, 2016 Amendment No. 4 (Exhibit 63 to E. Gallagher Deposition) |
| 11 | Transcript excerpts from deposition of Theresa Eichten |
| 12 | Transcript excerpts from Optum 30(b)(6) deposition |
| 13 | Exhibit 9 to deposition of D. Waggoner (also Exhibit 126 to Aetna 30(b)(6) deposition) |
| 14 | Exhibit 45 to deposition of T. Eichten |
| 15 | Document AETNA-PETERS-00000203-04 |
| 16 | Declaration of Theresa Eichten (Sept. 7, 2018) |
| 17 | Transcript excerpts from the deposition of Dr. Constantijn Panis |
| 18 | Exhibit 58 to deposition of S. Hagens |

| | |
|---|---|
| 19 | Exhibit 127 to Aetna 30(b)(6) deposition |
| 20 | Transcript excerpts from deposition of Sandra Peters |
| 21 | Plaintiff's Second Supplemental & Amended Responses to Aetna's First Set of Interrogatories and Exhibit A thereto |
| 22 | Exhibit 133 to Aetna 30(b)(6) deposition |

**Exhibits to Reply Brief**

| | |
|---|---|
| 23 | Transcript excerpts from deposition of Sandra Peters |

# I.
# INTRODUCTION

The essence of Plaintiff's argument—and its inherent fallacy—is succinctly captured in her opposition: "This case is *not* about whether the 'Aetna-Optum relationship' is good or bad, or whether that 'relationship' saved members and plans money and why. It is therefore irrelevant whether or not the entire 'relationship' was economically beneficial, as Aetna argues." Dkt. 233 ("Opp. Br.") at 10. But that is precisely what this case is about.

Plaintiff alleges in her Complaint that Aetna violated its fiduciary duties to the Mars Plan (Count III) and to her individually (Count IV) by means of a "fraudulent scheme" that "misappropriates millions of dollars every year from Aetna insureds and employers who sponsor Aetna-administered self-insured health insurance plans." Complaint ("Compl."), Dkt. 1, at ¶ 1. As this Court has already correctly recognized, however, the evidence shows both that "Plaintiff benefited from the [Aetna-Optum] Agreements" and that, "in the aggregate, the Aetna-Optum contracts *saved* plans and their participants millions of dollars." Dkt. 203 at 22, 25. Moreover, even aside from the simple economics, the Aetna-Optum agreements provided Mars Plan participants, including Plaintiff, access to Optum's network of healthcare providers that otherwise would not have been available to Aetna insureds. *Id.* at 17-19.

The summary judgment record is clear that the Aetna-Optum agreements benefited both the Mars Plan generally and Plaintiff herself individually. By attempting to recast her case—to insist now that the benefits of the arrangement are irrelevant—Plaintiff effectively concedes as much.

## II.
## ARGUMENT

Plaintiff's attempt to divert attention from the undisputed benefits of the Aetna-Optum agreements only underscores that she has no evidence of actual injury, either to herself or to the Mars Plan. In her opposition, Plaintiff continues to cling to an entirely fictional damage model that assumes she would have been able to avail herself of the rates negotiated between Optum and its downstream providers even if Aetna had not entered into the contested agreements with Optum. As the Court already has recognized, however, Plaintiff's hypothetical scenario that assumes "Aetna was able to contract with the downstream providers at the same rate as what Optum was able to arrange with its own Network members . . . is not based on recognized economic principles." Dkt. 203 at 17. Indeed, Plaintiff's cherry-picked fictional assumptions are belied by the undisputed evidence that the Aetna-Optum relationship resulted in millions of dollars in savings for Aetna plans and members—including Plaintiff herself. Ex. 3 at ¶¶ 59-64; Ex. 1 at 48:13-20; Ex. 18; *see also* Dkt. 203 at 11.

### A. Aetna Is Entitled to Summary Judgment on Plaintiff's Derivate Claim Under ERISA (Count III).

In Count III of her Complaint, Plaintiff asserts a derivative claim under ERISA § 502(a)(2) to recover damages allegedly caused to the Mars Plan as a result of the Aetna-Optum agreements. Compl. at ¶¶ 92-98. Plaintiff's calculations of "losses" allegedly suffered by the Mars Plan, however, all are based upon the same flawed hypothetical damage model the Court has already rejected; in the charts attached to her opposition, the "actual provider's negotiated charge"—the figure upon which she contends her co-insurance should have been based—assumes that Aetna could have negotiated rates with the downstream providers that were as favorable as the Optum-negotiated rates. *See* Opp. Br. at 8-10, Ex. 1. That assumption has no basis in fact, economics or common sense and cannot support a claim for damages under ERISA § 502(a)(2).

Equally specious is Plaintiff's assertion that Aetna had some sort of legal obligation to the Mars Plan—indeed, a fiduciary obligation, in Plaintiff's hypothetical—to somehow manage to contract with Optum's provider network while bypassing Optum. Plaintiff's theory seems to be that whatever the benefits of the Aetna-Optum agreements in terms of expanded access to health care and reduced costs, Aetna had a fiduciary obligation to somehow achieve those benefits without the participation of Optum. Not surprisingly, Plaintiff offers no legal authority for this novel theory. Nor can she square it with the undisputed facts. As

3

the Court previously held, in "negotiat[ing] with Optum to establish and maintain a provider network that benefited a broad range of health-care consumers . . . and implementing th[e] system-wide contractual relationship" with Optum, Aetna was not acting as a fiduciary vis-à-vis Plaintiff or her health benefits plan. Dkt 141 at 23-24. In short, Aetna capably discharged its obligations to the Mars Plan (and to Plaintiff herself) by providing access to quality health care providers on economically favorable terms; Aetna had no legal obligation whatsoever, much less a fiduciary duty, to bypass Optum—to, in effect, do the economically impossible.

The summary judgment evidence firmly establishes that Aetna administered the Mars Plan in accordance with its contractual obligations to Mars. Under the terms of their Administrative Services Agreement ("ASA"), ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ By offering Plaintiff and other Mars Plan participants expanded health care access through the Optum network, and by using the cost-saving per diem

4

rates Aetna negotiated with Optum, Aetna administered the Mars Plan precisely as the ASA contemplated.[1]

By contracting with Optum, Aetna provided Mars Plan participants (including Plaintiff) access to a health care network that otherwise would not have been available to them, and by negotiating a per diem payment model with Optum, Aetna achieved real and substantial cost savings for the Mars Plan and its participants (including Plaintiff). Aetna discharged its obligations to the Mars Plan properly and effectively; Aetna violated no obligation, fiduciary or otherwise, to the Mars Plan. And because Plaintiff cannot show any injury to the Mars Plan, she lacks standing to assert an ERISA § 502(a)(2) claim on its behalf. *See, e.g.*, *Estate of Spinner v. Anthem Health Plans of Virginia, Inc.*, 388 F. App'x 275, 281 (4th Cir. 2010); *Harley v. Minnesota Mining & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002).

Plaintiff attempts to concoct a non-economic injury through an alleged fiduciary duty breach, claiming that Aetna issued "misleading EOBs." Opp. Br. at 19. But all of Plaintiff's ERISA claims, both individually and on behalf of the Mars Plan, require a showing of actual damages. *See, e.g.*, *Kenseth v. Dean Health*

---

[1] Plaintiff's suggestion that the ASA was somehow "secret," Opp. Br. at 18, is frivolous. The ASA was an agreement between Aetna and Mars and set forth, among other things, how Aetna would discharge its obligations to Mars in the administration of the Mars Plan. The ASA certainly was no "secret" as between Aetna and Mars, and Aetna cannot be said to have breached its obligations to Mars by complying with the parties' express agreement.

*Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995) (in deciding a claim for breach of fiduciary duty under ERISA, the court must first determine "whether the events underlying this action have resulted in a 'loss'"). Plaintiff has shown no damages here.

Moreover, this Court has held that to prove breach of an ERISA fiduciary duty via an alleged misrepresentation, "a plaintiff must show that . . . the information misrepresented was material, and the misrepresentation was relied upon to plaintiff's detriment." *Hensley v. P.H. Glatfelter Co.*, No. CIV. 1:04-CV-200, 2005 WL 3158033, at *2 (W.D.N.C. Nov. 28, 2005) (Thornburg, J.). *See also Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 676 (8th Cir. 1999) (rejecting claim for breach of fiduciary duty where "plaintiffs have no evidence of materiality, detrimental reliance, or damage to support such a claim"). Plaintiff has not explained how she could possibly have suffered any injury from EOBs reporting health care transactions that, on balance, saved her money. Absent an injury showing, any misrepresentation Plaintiff has alleged is immaterial and any reliance she has alleged thereon is, definitionally, non-detrimental.[2]

Aetna is entitled to summary judgment on Plaintiff's Count III.

---

[2] Plaintiff confusingly refers to the EOBs in Counts III and IV of her Complaint. Compl. at ¶¶ 95, 96, 101. For the same reasons that the EOBs do not support a derivative claim under ERISA § 502(a)(2)—i.e., because Plaintiff has not shown any actual damages or that the EOBs contained a material misrepresentation upon which she detrimentally relied—they also fail to support Plaintiff's individual claim under ERISA § 502(a)(1).

## B. Aetna Is Entitled to Summary Judgment on Plaintiff's Individual Claim Under ERISA (Count IV).

In her Count IV, Plaintiff asserts a claim under ERISA § 502(a)(1), which permits a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). It should be noted, however, that Plaintiff, by this Count, does *not* challenge any denial of benefits by Aetna. Indeed, Plaintiff testified in her deposition that she does not seek damages in this case for any benefit claims that Aetna denied; rather, her claim here is limited to "up-charging" she alleges resulted from the Aetna-Optum agreements. Ex. 23 at 248:16-21. And, as discussed above, Aetna was not acting as a fiduciary, either to the Mars Plan or to Plaintiff, when it contracted for access to Optum's network.[3]

Plaintiff's attempt to locate support in trust law for her own, incurably flawed injury analysis is unavailing. *See* Opp. Br. at 12. She struggles to cast Aetna's economic analysis as impermissibly offsetting her alleged injury with "profit resulting from *other misconduct*." *Id.* (emphasis added) (internal citation omitted). But that is at odds with the undisputed facts of this case: Each of

---

[3] Aetna's fiduciary role was solely as administrator of the Mars Plan and was limited to the administration of benefits claims of plan members. The alleged "up-charges" Plaintiff contests here, and which are the sole subject of this lawsuit, arise not from Aetna's actions as claims administrator, but rather from the Aetna-Optum agreements, as to which Aetna was not acting as a fiduciary.

Plaintiff's claims is inextricably linked to, and stems from, the creation of the Aetna-Optum relationship. Any injury she alleges due to Aetna contracting with Optum rather than directly with downstream providers is properly measured only against the position she would occupy had Aetna not contracted with Optum.

As set forth in Aetna's opening brief, and as this Court has already correctly recognized, Plaintiff cannot show that she suffered any loss as a result of the Aetna-Optum agreements. The summary judgment record on this point is clear: Applying the downstream provider rates to *all* of Plaintiff's claims—and not just to a cherry-picked sample selected by Plaintiff's expert—establishes that Plaintiff actually paid less under the Aetna-Optum arrangement than she would have paid under her proposed methodology. Ex. 3. Plaintiff suffered no economic loss. But Plaintiff's ERISA claims require her to show that loss. *Kenseth*, 722 F.3d at 882 ("[Plaintiff] may seek make-whole money damages as an equitable remedy under section 1132(a)(3) if she can in fact demonstrate that [defendant plan administrator] breached its fiduciary duty to her and that the breach caused her damages.").

Aetna is entitled to summary judgment on Plaintiff's Count IV.

## C. Plaintiff Is Not Entitled to Injunctive or Other Equitable Relief (Counts III, IV).

Plaintiff is not entitled to injunctive relief for the simple reason that she has not established the existence of any misconduct or harm to be enjoined. Nor, for

8

the same reason, is she entitled to equitable relief in the form of a "surcharge," which even Plaintiff concedes requires a showing of breach of duty or unjust enrichment. *See* Opp. Br. at 25. Having established neither wrongdoing nor damages, Plaintiff cannot sustain a claim for equitable relief.

Plaintiff's reference to the rules of equitable tracing, Opp. Br. at 25—her suggestion that, even without proving damages to herself or to the Mars Plan, she can recover unspecified damages allegedly suffered by some other unnamed person—avails her naught. Despite her contention to the contrary, the rules of equitable tracing *do apply* to her claim. *See, e.g.*, Teets v. Great-West Life & Annuity Ins. Co., 921 F.3d 1200, 1229 (10th Cir. Mar. 27, 2019) ("Mr. Teets did not attempt to identify the funds in Great-West's possession that rightfully belonged to him . . . . Instead, he made a legal argument that 'disgorgement of profits does not require the recovered funds to be traceable to a res or particular funds.' . . . As explained below, his legal argument is wrong.").[4]

Aetna is entitled to summary judgment as to the equitable relief Plaintiff seeks in Counts III and IV of her Complaint.

---

[4] Plaintiff's reference to *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) is misplaced. That case involved a claim by the FTC, and the court held that the FTC, in its capacity as a regulator, need not adhere to the tracing requirement of identifying specific victims and the amounts they are due in seeking disgorgement. The court observed, however, that private plaintiffs seeking such equitable remedies as a constructive trust must satisfy the tracing requirements. *Id.* at 374.

# III.
# CONCLUSION

Plaintiff's response offers nothing new. She offers no evidence that either the Mars Plan generally or she personally suffered any damages as a result of the Aetna-Optum agreements. Nor does she establish that Aetna violated any obligation, fiduciary or otherwise, to the Mars Plan or to her. To the contrary, the evidence is undisputed that Aetna, through its agreements with Optum, expanded the health care services available to Mars Plan participants, including Plaintiff, in a manner that also saved the Plan and the Plaintiff money.

Aetna requests that the Court grant summary judgment in its favor on all claims and causes of action asserted by Plaintiff in this action.

Dated: June 26, 2019

10

Case 1:15-cv-00109-MR   Document 239   Filed 06/26/19   Page 15 of 18

Respectfully submitted,

*/s/ E. Thomison Holman*
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

Earl B. Austin (*pro hac vice*)
Jessica F. Rosenbaum (*pro hac vice*)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
earl.austin@bakerbotts.com
jessica.rosenbaum@bakerbotts.com
(212) 408-2500
(212) 408-2501 (fax)

*Counsel for Defendants Aetna Inc. and Aetna Life Insurance Company*

11

# CERTIFICATE OF COMPLIANCE WITH THE COURT'S RULES

I certify that this brief complies with Local Rule 7.1 and this Court's Pretrial Order and Case Management Plan. It uses Microsoft Word double-spacing and one-inch margins, is in Times New Roman 14-point font (including footnotes), and does not exceed 25 pages.

Dated: June 26, 2019

*/s/ E. Thomison Holman*
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

*Attorneys for Defendants Aetna Inc.
and Aetna Life Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of June 2019, a copy of the foregoing was electronically filed with the clerk of the court of the United States District Court, Western District of North Carolina, Asheville Division, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ E. Thomison Holman
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

*Attorneys for Defendants Aetna Inc. and Aetna Life Insurance Company*