UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
Case No. 1:15-cv-00109-MR

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC.,<br><br>Defendants. | **PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION** |

Plaintiff respectfully submits this supplemental brief in further support of her motion for class certification (Dkt. No. 146), in light of the Fourth Circuit's decision vacating and remanding this Court's denial of class certification and reversing its grant of summary judgment to Defendants. *See Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021).

## INTRODUCTION

This case is about Defendants' uniform practice of secretly requiring plans and plan members to pay Optum's administrative fees by improperly mischaracterizing those fees as medical expenses. In the prior class certification briefing, Defendants erred in their characterizations of Plaintiff's claims, the relevant

facts, and controlling law. They asserted that Plaintiff was challenging the entire Aetna-Optum relationship, that this relationship had generated aggregate savings for plans and members, and that determining "injury" and "damages" required an individualized assessment of the entire claims history of each class member and plan. With these erroneous mischaracterizations in mind, this Court denied class certification on the ground that the class was not ascertainable and that there were no common issues. It also granted Defendants summary judgment on Plaintiff's individual claims for related reasons.

The Fourth Circuit squarely rejected all of Defendants' arguments. In particular, the Fourth Circuit found that: (1) Plaintiff did not challenge the entire Aetna-Optum relationship, but only Defendants' practice of improperly shifting Optum's administrative fees to the plans and their insureds; (2) being overcharged on a single benefit claim was sufficient to establish injury, and that this "underlying harm derives from the same common contention—that [Defendants'] fee-shifting scheme breached the terms of the applicable Plan and constituted a breach of fiduciary duty"; and that (3) this harm can be remedied through a disgorgement or surcharge remedy, for both Plaintiff and her Plan, which can be determined from Defendants' own data and which does not require proof of individual injury result from Aetna's fiduciary duty violations.

2

In light of these holdings, the Fourth Circuit concluded that the denial of class certification and granting of summary judgment were erroneous. It held that Plaintiff had proven that the classes were ascertainable and that her claims presented at least three important common questions that could be resolved through common evidence. Although the Fourth Circuit remanded the class certification question back to this Court for further consideration, it strongly implied that certification should be granted since class members were subjected to identical conduct which impacted them in an identical way, and that they are entitled to the same remedy (the disgorgement of the amount by which Aetna had been unjustly enriched from the overcharges) that can be calculated from Defendants' own data. Any other result would run afoul of the Fourth Circuit's decision.

## **PROCEDURAL HISTORY AND BACKGROUND**

On March 29, 2019, this Court denied class certification on two grounds. First, it held that Plaintiff failed to satisfy the Rule 23(a) "commonality" requirement, given the Court's acceptance of Defendants' argument that, "in the aggregate, the Aetna-Optum contracts *saved* plans and their participants millions of dollars" and that "many proposed class members would be worse off if their claims were reassessed using the Plaintiff's methodology of using only the Optum Downstream Rates." Dkt. No. 203 at 25 (emphasis in original). Second, and relatedly, the Court held that Plaintiff failed to meet her burden of demonstrating that the proposed

3

classes can be "readily identifiable" or "ascertainable," because the Court would have to engage in "a highly individualized inquiry of *every* plan, *every* participant and *every* claim in those participants' claims histories, taking into account each participant's deductible, copayments, coinsurance, and out-of-pocket maximum." *Id*. at 24-25 (emphasis in original). Thus, the Court denied class certification based solely on its conclusion that the impact of Defendants' scheme had to be calculated on an individual basis, and that the only available remedy for Plaintiffs was a reprocessing of the claims.

On June 22, 2021, the Fourth Circuit vacated and remanded this Court's denial of class certification. *Peters*, 2 F.4th. at 244-45. The Fourth Circuit also reversed this Court's subsequent grant of summary judgment to Defendants. The Fourth Circuit directed the Court to conduct a full reevaluation of Rule 23 in conformity with its opinion. *Id*. Thus, an overview of the Fourth Circuit's opinion is a natural place to start.

As the Fourth Circuit explained, Plaintiff was a member of a self-funded health care plan (the "Plan") operated by Mars, Inc. ("Mars"). *Id*. at 210. Mars hired Aetna to be the Plan's claims administrator and to provide a network of medical providers. *Id*. In exchange for performing these tasks, Aetna was paid an administrative fee by the Plan. *Id*. Aetna subsequently elected to hire Optum as a subcontractor to fulfill part of Aetna's obligations to the Plan and other Aetna plans,

4

by providing a network of chiropractic and physical therapy providers and processing claims from Optum's so-called "downstream providers" to all Aetna plan members. *Id*.

In exchange for providing these services to Aetna, Optum was of course entitled to be paid a fee. *Id*. But since it hired Optum to perform some (but not all) of the same tasks that Aetna had already been paid by the plans to perform, Aetna should have been responsible for paying Optum's fee. *Id*. But Aetna did not want to pay Optum's fee out of its own pocket, so it requested that Optum "bury" its fee within the claims submitted by Optum's downstream providers. *Id*. Optum agreed, although some employees exhibited concern. *Id*. at 211. Through this scheme, the plans and their members, including Plaintiff and her Plan, paid Optum's administrative fee, on top of the administrative fee they had already paid Aetna. *Id*. at 210.

In order to carry out this objective, Defendants added "dummy codes" to the explanation of benefits ("EOBs") issued to Plaintiff and other class members. *Id*. The "dummy codes" were Current Procedural Terminology ("CPT") codes that were improperly inserted into the EOBS. *Id*. at 234–35. The EOBs mischaracterized Optum's administrative fees as medical expenses in order to conceal the scheme from plans and members. *Id*. at 210–11; 234–35. Defendants internally admitted that

they were trying to "bury" these fees and that their conduct would not be looked upon favorably if revealed. *Id*. at 210–11.

The Fourth Circuit emphatically rejected Defendants' mischaracterization of Plaintiff's claims as challenging the entire Aetna-Optum relationship. *Id*. at 230. ("[T]hose actions are not the action subject to complaint."). Rather, "Aetna's questionable construct to pay Optum's administrative fee through the bundled rate using the dummy CPT code to implement a fee-shifting scheme is the action subject to complaint." *Id*. at 230 (internal quotations and citations omitted).

With this as a jumping off point, the Fourth Circuit systematically dismantled Defendants' remaining arguments, which this Court relied upon and adopted in denying class certification. The Fourth Circuit rejected Defendants' argument that in determining injury, Plaintiff's entire claims history had to be evaluated. It held that Plaintiff "suffered a financial injury sufficient to establish an injury-in-fact for the purpose of Article III standing," because "the financial loss analysis must be conducted at the individual claims level rather than at the aggregate claims level." *Id.* at 219. As the Fourth Circuit explained, Plaintiff proved that "combining Optum's administrative fee with the provider's Negotiated Charge via the bundled rate caused her to pay more on certain individual claims than she otherwise would have had to pay under the Plan's terms, therefore causing a financial injury," and therefore she sufficiently established Article III standing. *Id*. The Fourth Circuit

made clear that an overcharge on a single benefit claim was enough. The Fourth Circuit further held that even without financial injury, Plaintiff's "allegations revolving around breach of fiduciary duty would separately provide her standing to pursue claims for surcharge, disgorgement, and declaratory and injunctive relief." *Id*.

The Fourth Circuit also held that a reasonable factfinder could conclude that Aetna was a fiduciary under ERISA, that Aetna breached its fiduciary duties under ERISA by surreptitiously forcing Optum's charges on members and plans, and that Optum aided and abetted Aetna's breach by acting as a party-in-interest. *Id*. at 231–240.

In addition, the Fourth Circuit unequivocally found that Plaintiff's Plan did not allow Optum's administrative fees to be characterized as medical expenses. *Id*. at 211–12 (the SPD "did not authorize the Plan or its participants to be charged Optum's administrative fee"); 232–33 ("the Plan prohibited non-medical charges, including Optum's administrative fee, from being charged back to the Plan and its participants"). This conclusion was based largely on the fact that Plaintiff's Plan only covered medically necessary services offered by health care "providers." *Id*. at 211. For in-network providers (such as Optum's so-called "downstream providers"), the plan did not cover amounts in excess of the negotiated charge that the network provider had agreed to accept for its services. *Id*. Critically, as the Fourth Circuit

held, Optum is ***not*** a network provider. *Id*. at 212 ("Optum is not a health care provider or pharmacy").

With respect to remedy, the Fourth Circuit held that Plaintiff and her Plan were entitled to the equitable remedy of disgorgement or surcharge and that these remedies did not require reprocessing of claims or examination of her entire claims history. *Id*. at 219–21, 238. Instead, all that was required was an order requiring Aetna to disgorge the amount it saved by forcing Plaintiff and her plan to pay Optum's administrative fees. *Id*. at 220 (stating that Plaintiff seeks to remedy the improper charges to her and her Plan by disgorging the "benefit accrued [by Defendants], which Peters sufficiently demonstrates based on her claim that Aetna bypassed its obligation to pay Optum's administrative fee"). The Fourth Circuit further held that the amount of such disgorgement could be easily calculated from Defendants' data, and that other equitable injunctive and declaratory relief might also appropriate remedies. *Id*. at 217, 238, 242–43.

Based upon these determinations, the Fourth Circuit reversed and remanded this Court's denial of class certification. As for commonality, the Fourth Circuit held that there are at least three common issues of law and fact:

1) Whether Aetna was a fiduciary;
2) Whether it breached its duties to plans and plan participants by directing Optum to bury its administrative fee in the claims process; and

3) Whether its breach amounted to a harm as to the particular plan and plan participants.

*Id*. at 243. As for ascertainability, the Fourth Circuit held that:

1) Even without personal financial injury, Peters has standing on behalf of herself and her Plan to seek a disgorgement or surcharge remedy under ERISA based on Aetna's unjust enrichment derived from not having to pay Optum's fees;

2) The putative class members experienced the same harms that support Peters' entitlement to a disgorgement or surcharge remedy; and

3) The putative class members who experienced the same harms as Peters, where they or their plan were improperly charged Optum's administrative fees, are identifiable from Defendants' own data.

*Id*. at 219–21, 242–43.

# ARGUMENT

## I. THE FOURTH CIRCUIT'S DECISION STRONGLY SUGGESTS THAT THE CLASSES SHOULD BE CERTIFIED.

### a. Under the Fourth Circuit's reasoning, Plaintiff satisfied Rule 23(a)'s commonality requirement.

In finding that Plaintiff failed to satisfy the commonality requirement of Rule 23, this Court relied on Defendants' injury analysis that the Fourth Circuit expressly rejected, namely, that when looking at the aggregate results of Aetna contracting with Optum, the challenged conduct purportedly "did not harm – and in fact benefited – some proposed class members." Dkt. No. 203 at 25. The Fourth Circuit held that such an "aggregate" evaluation was erroneous. *See Peters*, 2 F.4th at 243.

The Fourth Circuit further rejected Defendants' contention that the common questions "cannot be answered with common evidence because of varying EOBs,

9

Case 1:15-cv-00109-MR   Document 256   Filed 09/01/21   Page 9 of 19

plans, and damages." As the Fourth Circuit explained, "[w]hile these distinctions among proposed class members may affect the dollar amount or scope of the available remedies, they do not reflexively defeat class certification when the underlying harm derives from the same common contention—that Appellees' fee-shifting scheme breached the terms of the applicable Plan and constituted a breach of fiduciary duty." *Id.*

As to any purported variance in plan terms, this Court previously recognized that "[t]here does not appear to be any meaningful variation of these terms among the plans." *See* Sept. 6, 2018 Order (Dkt. No. 156) at 2 (referencing Plaintiff's summary exhibit of sample plans, which can be found at Dkt. No. 146-13). Moreover, in the prior class certification briefing, Aetna failed to identify ***any*** variations in written plan language that are material. *See* Dkt. No. 179 at 9-10.[1] This is largely because the plans define the "negotiated charge" to be the rate charged by a "healthcare provider." *See* Dkt. No. 146-13. Most importantly, the Fourth Circuit agreed with Plaintiff that no reasonable person would understand Optum to be a "healthcare provider." *Peters*, 2 F.4th at 212 ("Optum is not a health care provider …"); *see also id.* at 233–34 (plans are required "to be written in a manner calculated

---

[1] Aetna has already admitted that it uniformly "concluded that it did not need to change plan terms to implement" the administrative fee scheme. Dkt. No. 172 at 8 n.1. Such a uniform conclusion would be unreasonable if there was significant variance among the plans.

10

to be understood by the average plan participant" and citing in support the amicus brief of the American Medical Association and several state associations that it is not reasonable to conclude that a subcontractor, such as Optum, is a medical provider).

As a result, although the Fourth Circuit remanded the commonality question back to this Court, it affirmatively held that Plaintiff had proven that there are at least three important common questions of law and fact that can be proven with common evidence: (1) Whether Aetna was a fiduciary; (2) Whether it breached its duties to plans and plan participants by directing Optum to bury its administrative fee in the claims process; and (3) Whether its breach amounted to a harm as to the particular plan and plan participants. *Id*. at 243.

### b. Under the Fourth Circuit's reasoning, Plaintiff satisfied Rule 23(a)'s implicit ascertainability requirement.

Just as was true for commonality, this Court's ruling on ascertainability was based entirely on Defendants' misguided injury theory, which was rejected by the Fourth Circuit. *See id.* at 242 (because "[t]he district court analyzed ascertainability and commonality too rigidly" by "hing[ing] its lack-of-ascertainability determination on its perception of Peters' theory of financial injury, . . . the district court's basis for denying class certification as to surcharge, disgorgement, and declaratory and injunctive relief was erroneous"). Indeed, the Fourth Circuit held that "the proposed class members appeared to be objectively identifiable based on

11

[Defendants]' own data, as Peters identified 87,754 members who experienced a scenario such as hers, where they (or their plan) were charged Optum's administrative fee. . . . . The district court's narrow focus on ascertainability (i.e., only through the lens of Peters' financial injury theory) constituted an abuse of discretion . . ." *Id.* at 243–44. In other words, the Fourth Circuit's analysis is dispositive in its finding that ascertainability (and commonality) have already been established.

### c. Under the Fourth Circuit's reasoning, Plaintiff satisfied Rule 23(a)'s typicality and adequacy requirements.

In the prior briefing concerning typicality and adequacy, Defendants contended that Plaintiff has a "conflict of interest" because some of the class members and their plans could be injured from "[r]ecalculating benefits" based on the complete claims history of class members and their plans. Dkt No. 172 at 30. Thus, the basis for Defendants' challenge was, once again, its theory that the Court had to engage in an aggregate analysis of class members' potential injury resulting from Defendants' actions, and that the only available remedy was reprocessing. Although the Court did not previously reach this issue, it adopted Defendants' theory that entire claims histories were relevant and appeared to agree that this created a possible conflict. *See* Dkt. No. 203 at 24 n. 5. The Fourth Circuit, however, categorically rejected this entire notion.

The Fourth Circuit held that Plaintiff had standing to pursue her claims for disgorgement or surcharge, and that reprocessing of claims and examination of her entire claims history was not required:[2]

> Next, Peters asks that [Defendants] be made to disgorge any improper gains obtained from their breach of fiduciary duties. Unlike restitution's focus on making the victim whole, "[d]isgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts[.]" *S.E.C. v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) (internal citations omitted). And looking to trust law, which provides valuable context to the ERISA scheme, disgorgement may be proper even if the breach of fiduciary duty is inadvertent or caused no loss to the trust beneficiary. *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 416 n.5 (3d Cir. 2013); George G. Bogert et al., *The Law of Trusts and Trustees* § 862 (rev. 2d ed. June 2020 update) ("[A] rule of damages provides that a trustee is liable for any profit he has made through his breach of trust even though the trust has suffered no loss.").

*Peters*, 2 F.4th at 217. *See also id.* at 220 ("[A] claim for surcharge under an unjust enrichment theory requires no showing of financial injury, but rather a benefit accrued by one or both of the [Defendants], which Peters sufficiently demonstrates based on her claim that Aetna bypassed its obligation to pay Optum's administrative fee.").

---

[2] For avoidance of doubt, in light of the Fourth Circuit's decision, Plaintiff seeks equitable relief solely ***in the form of disgorgement or surcharge*** for Defendants' misconduct in the amount of Aetna's unjust enrichment, as well as declaratory and injunctive relief. Plaintiff does not seek a restitution remedy on a class-wide basis.

13

The Fourth Circuit also held that Plaintiff had standing to sue on behalf of her Plan and to obtain those same equitable remedies for it:

> [E]ven without a personal financial injury, Peters has standing to maintain her claims for surcharge, disgorgement, and declaratory and injunctive relief based on her allegations of breach of fiduciary duty.
>
> That Peters is not only suing as an individual participant, but also on behalf of the Plan under § 502(a)(2) does not alter this conclusion. "Courts have recognized that a plaintiff with Article III standing may proceed under § [502](a)(2) on behalf of the plan or other participants." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). And "[s]ince [Peters] has standing under Article III, we conclude that § [502](a)(2) provides h[er] a cause of action to seek relief for the entire Plan." *Id*. Peters "has alleged injury in fact that is causally related to the conduct [s]he seeks to challenge on behalf of the Plan." *Id*. In other words, Peters "has a personal stake in the litigation" because her requested relief "will stand or fall with that of the Plan." *Id.; see Wilmington Shipping Co*., 496 F.3d at 335 ("[The plaintiff's] injury is no less concrete because the benefit to him from a favorable outcome in this litigation would derive from the restored financial health of the Plan.").

*Id.* at 221.

Against this backdrop, the Fourth Circuit strongly implied that Plaintiff is both typical and adequate for purposes of pursuing her claims for other plan members. Like all other class members, Plaintiff was forced to pay at least one overcharge as a result of Defendants' scheme. The same is true of Plaintiff's Plan as compared to class members' plans. Moreover, the amount of these overcharges can be easily calculated from Defendants' own data, which proves the exact amount that Aetna was unjustly enriched. *See* Dkt. No. 146-22 at 9–10.

14

Case 1:15-cv-00109-MR   Document 256   Filed 09/01/21   Page 14 of 19

### d. Under the Fourth Circuit's reasoning, the proposed classes should be certified under Rule 23(b).

Plaintiff sought certification under Rule 23(b)(1) and/or (b)(3). The Fourth Circuit's decision strongly suggests that this request should have been granted.

Under Rule 23(b)(3), class certification is appropriate where common questions "predominate" over individual questions and where a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." In the earlier briefing, Defendants only argued in a single paragraph that these requirements had not been met, asserting simply that "resolving the absent class members' claims would require individualized inquiries into (at the very least) each class member's applicable plan language and complete claims experience." Dkt. No. 172 at 39. The Fourth Circuit's decision demonstrates why this is wrong, and why predominance and superiority are easily satisfied.

As explained above, the Fourth Circuit categorically rejected Defendants' argument that the "complete claims experience" of class members and plans needed to be evaluated to determine injury or the amount of any surcharge or unjust enrichment remedy. *Peters*, 2 F.4th at 219. It held that there were at least three important common questions capable of resolution based on common evidence. *Id.* at 243. It did not identify any individualized issues. *Id.* at 241–43. Certification under (b)(3) is entirely appropriate.

If for some reason the Court disagrees, however, it should still certify under (b)(1)(A). Predominance is not required under this subsection of Rule 23(b) and it would be entirely appropriate given that "prosecuting separate actions by or against individual class members" in this case "would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

The Fourth Circuit held that there was powerful evidence that Defendants cannot pass Optum's administrative fees on to Plaintiff or her Plan, and that she may be entitled to injunctive and equitable relief. It did so based on facts and considerations that are shared by all other class members.[3] It would clearly be untenable if some courts held that Aetna could not pass on the Optum administrative fees to some plans and/or insureds, while others held that it could. Such conflicting rulings would actually lead an ERISA violation by treating ERISA beneficiaries in an inconsistent manner. *See* 29 CFR § 2560.503-1(b)(5) ("The claims procedures for a plan will be deemed to be reasonable only if – (5) The claims procedures contain

---

[3] Defendants argued in their original opposition brief that the classes may not be certified under Rule 23(b)(1) because Plaintiff is seeking "individualized monetary relief," Dkt No. 172 at 39. That argument is, yet again, based on the assumption that Plaintiff seeks reprocessing in which the claims will be individually recalculated without imposing excessive administrative fees. Instead, as the Fourth Circuit made clear, the appropriate remedy that Plaintiff is seeking not individualized at all, but class-wide equitable relief in the form of disgorgement or surcharge of the amount by which Aetna was unjustly enriched by passing along the Optum administrative fees it should have paid.

16

administrative processes and safeguards designed to ensure and to verify that . . . the plan provisions have been applied consistently with respect to similarly situated claimants.").

## CONCLUSION

For the reasons set forth herein, and incorporating the reasons set forth in: Plaintiff's Motion for Class Certification (Dkt. No. 146) and the exhibits attached thereto, Plaintiff's Reply Brief in Support of her Motion for Class Certification (Dkt. No. 179) and the exhibits attached thereto, and the Fourth Circuit's decision styled *Peters v. Aetna*, 2 F.4th 199 (4th Cir. 2021) vacating and remanding this Court's denial of class certification, the Court should grant class certification and direct class notice within 14 days.

Dated: September 1, 2021

| | |
|---|---|
| | s/ Larry McDevitt |
| D. Brian Hufford* | Larry McDevitt |
| Jason S. Cowart* | David M. Wilkerson |
| Nell Z. Peyser* | THE VAN WINKLE LAW FIRM |
| ZUCKERMAN SPAEDER LLP | 11 North Market Street |
| 485 Madison Avenue, 10th Floor | Asheville, NC 28801 |
| New York, NY 10022 | (828) 258-2991 |
| (212) 704-9600 | lmcdevitt@vwlawfirm.com |
| (212) 704-4256 (fax) | |
| dbhufford@zuckerman.com | |
| | |
| * *pro hac vice* | *Attorneys for Plaintiff Sandra M. Peters, on behalf of herself and all others similarly situated* |

## CERTIFICATE OF SERVICE

I hereby certify that, on the 1st day of September, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification via electronic means to the attorneys of record at that time.

*s/ Larry McDevitt*
Larry McDevitt