**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., <br><br> Defendants. | Case No. 1:15-cv-00109-MR |

## DEFENDANTS' SUPPLEMENTAL OPPOSITION TO PETERS'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 3

    I.    Because Peters suffered no injury, she lacks Article III standing and is not a proper class representative under Rule 23. ............................ 3

        A.    Peters lacks Article III standing. ........................................... 4

        B.    Peters is an inadequate class representative with atypical claims. ................................................................................. 8

    II.    The proposed classes fail Rule 23(a)'s commonality, typicality, and adequacy requirements. ................................................................. 12

        A.    Peters cannot establish "unjust" profits on a classwide basis. ................................................................................. 13

        B.    Peters's claims for disgorgement and surcharge defy classwide proof. ................................................................. 15

    III.    The proposed classes fail Rule 23(b)'s requirements. ............................. 18

        A.    The proposed classes fail Rule 23(b)(3)'s requirements. ............... 18

        B.    The proposed classes fail Rule 23(b)(1)(A)'s requirements. ......... 21

    IV.    There is only one remaining claim against Optum, and neither proposed class can pursue it because neither satisfies Rule 23. ............... 24

        A.    ERISA § 406(a) doesn't apply to Aetna's payments to Optum. ................................................................................. 25

        B.    Peters cannot show through classwide evidence that Optum knowingly participated in prohibited transactions. .......... 26

        C.    There is no classwide proof showing that putative class members are entitled to disgorgement from Optum. ................... 28

Case 1:15-cv-00109-MR   Document 259   Filed 10/01/21   Page 2 of 42

CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Pastides,*
900 F.3d 160 (4th Cir. 2018) ................................................................ 4

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) .............................................................. 12, 18

*Blum v. Yaretsky,*
457 U.S. 991 (1982) ................................................................... 9

*Bond v. Marriott Int'l, Inc.,*
296 F.R.D. 403 (D. Md. 2014) ................................................ 11, 21, 22, 23

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998) ........................................... 8, 11, 12, 13

*California v. Texas,*
141 S. Ct. 2104 (2021) ........................................................... 5, 7

*CIGNA Corp. v. Amara,*
563 U.S. 421 (2011) ................................................................. 24

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) .................................................................... 4

*Comcast Corp. v. Behrend,*
569 U.S. 27 (2013) ............................................................... 18, 21

*In re Comput. Scis. Corp.,*
No. CV 08-02398, 2008 U.S. Dist. LEXIS 109027 (C.D. Cal. Sept. 2, 2008)......... 21

*Deiter v. Microsoft Corp.,*
436 F.3d 461 (4th Cir. 2006) ................................................... 12

*Deluca v. Blue Cross Blue Shield of Mich.,*
No. 06-12552, 2007 U.S. Dist. LEXIS 37448 (E.D. Mich. May 23, 2007)............. 26

*In re Dennis Greenman Sec. Litig.,*
829 F.2d 1539 (11th Cir. 1987) ............................................... 22

*Donovan v. Bierwirth,*
    754 F.2d 1049 (2nd Cir. 1985) ............................................................... 14, 15

*Dreher v. Experian Info. Sols., Inc.,*
    856 F.3d 337 (4th Cir. 2017) ....................................................................... 4

*Dzinglski v. Weirton Steel Corp.,*
    875 F.2d 1075 (4th Cir. 1989) .................................................................... 13

*E. Tex. Motor Freight Sys, Inc. v. Rodriguez,*
    431 U.S. 395 (1977) .........................................................................8, 9, 10–11

*In re EpiPen ERISA Litig.,*
    No. 17-1884, 2020 U.S. Dist. LEXIS 139066 (D. Minn. Aug. 5, 2020) ................ 20

*EQT Prod. Co. v. Adair,*
    764 F.3d 347 (4th Cir. 2014) ...................................................................... 19

*In re Express Scripts, Inc. PBM Litig.,*
    No. 4:05MD01672HEA, 2015 U.S. Dist. LEXIS 1854 (E.D. Mo. Jan.
    8, 2015) ...................................................................................... 20

*Gariety v. Grant Thornton, LLP,*
    368 F.3d 356 (4th Cir. 2004) ...................................................................... 19

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ................................................................................... 8

*Graden v. Conexant Sys. Inc.*
    496 F.3d 291 (3d Cir. 2007) ...................................................................... 14

*Great-W. Life & Annuity Ins. Co. v. Knudson,*
    534 U.S. 204 (2002) ......................................................................2, 15, 16, 30

*Hansberry v. Lee,*
    311 U.S. 32 (1940) .................................................................................... 11

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,*
    530 U.S. 238 (2000) ...........................................................................*passim*

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305 (3d Cir. 2008) ...................................................................... 19

*Kendall v. Pharm. Prod. Dev., LLC*,
    No. 7:20-CV-71-D, 2021 U.S. Dist. LEXIS 61671 (E.D.N.C. Mar. 31, 2021).....4–5

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ................................................................ 20

*Knieriem v. Grp. Health Plan, Inc.*,
    434 F.3d 1058 (8th Cir. 2006) ................................................................. 15

*Leber v. Citigroup, Inc.*,
    No. 07-cv-9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) .................................. 26

*Lienhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ................................................................... 8

*Lux v. Judd*,
    651 F.3d 396 (4th Cir. 2011) ................................................................. 5–6

*McClain v. S.C. Nat'l Bank*,
    105 F.3d 898 (4th Cir. 1997) ................................................................... 9

*McNair v. Synapse Group, Inc.*,
    672 F.3d 213 (3d Cir. 2012) .................................................................... 8

*Mertens, v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ....................................................................... 17, 24

*Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*,
    577 U.S. 136 (2016) ....................................................................... 17, 29

*Newman v. RCN Telecom Services, Inc.*,
    238 F.R.D. 57 (S.D.N.Y. July 27, 2006) ...................................................... 8–9

*Peabody v. Davis*,
    636 F.3d 368 (7th Cir. 2011) ............................................................... 14–15

*Pender v. Bank of Am. Corp.*,
    736 F. App'x 359 (4th Cir. 2018) ............................................................. 10

*Pender v. Bank of Am. Corp.*,
    788 F.3d 354 (4th Cir. 2015) ................................................................. 15

*Perelman v. Perelman*,
    793 F.3d 368 (3d Cir. 2015) .................................................................. 16

*Peters v. Aetna Inc.,*
   2 F.4th 199 (4th Cir. 2021) .......................................................................*passim*

*Piotrowski v. Wells Fargo Bank, NA,*
   No. DKC 11-3758, 2015 U.S. Dist. LEXIS 98688 (D. Md. July 29, 2015).......21–22

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.,*
   654 F.3d 618 (6th Cir. 2011) .................................................................. 28

*In re Rail Freight Fuel Surcharge Antitrust Litig.,*
   725 F.3d 244 (D.C. Cir. 2013) ................................................................. 9

*Ramos v. Banner Health,*
   1 F.4th 769 (10th Cir. 2021) ................................................................. 25

*Rose v. SLM Fin. Corp.,*
   254 F.R.D. 269 (W.D.N.C. 2008) ........................................................20–21

*Roth v. Sawyer-Cleator Lumber Co.,*
   61 F.3d 599 (8th Cir. 1995).................................................................. 14

*Ruppert v. Principal Life Ins. Co.,*
   252 F.R.D. 488 (S.D. Iowa 2008) .......................................................... 28

*Scott v. Aon Hewitt Fin. Advisors, LLC,*
   No. 17 C 679, 2018 U.S. Dist. LEXIS 44606 (N.D. Ill. Mar. 19, 2018) ................. 28

*Sellers v. Anthem Life Ins. Co.,*
   316 F. Supp. 3d 25 (D.D.C. 2018)........................................................... 25

*Spano v. Boeing Co.,*
   633 F.3d 574 (7th Cir. 2011) ............................................................... 12

*Std. Fire Ins. Co. v. Knowles,*
   568 U.S. 588 (2013) ........................................................................ 29

*Teets v. Great-W. Life & Annuity Ins. Co.,*
   919 F.3d 1232 (10th Cir. 2019) .......................................... 10, 13, 16, 29 30

*Thole v. U.S. Bank N.A.,*
   140 S. Ct. 1615 (2020) ................................................................... 5, 6

*Thorn v. Jefferson Pilot Life Ins. Co.,*
   445 F.3d 311 (4th Cir. 2006) ...................................................... 15, 16, 17, 29

Case 1:15-cv-00109-MR   Document 259   Filed 10/01/21   Page 7 of 42

*TransUnion LLC v. Ramirez,*
 141 S. Ct. 2190 (2021) ........................................................................... 5, 6, 7

*UFCW Loc. 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.,*
 No. 05-2435 (JEI), 2005 U.S. Dist. LEXIS 25759 (D.N.J. Oct. 28, 2005) ............. 25

*United States v. Cartwright,*
 411 U.S. 546 (1973) .................................................................................. 29

*United States v. Johnson,*
 648 F. Supp. 2d 764 (D.S.C. 2009) ........................................................... 6

*United States v. Steele,*
 897 F.3d 606 (4th Cir. 2018) ..................................................................... 29

*Valley Drug Co. v. Geneva Pharms., Inc.,*
 350 F.3d 1181 (11th Cir. 2003) ................................................................ 12

*Varity Corp. v. Howe,*
 516 U.S. 489 (1996) ................................................................................. 17

*Wal-Mart Stores, Inc. v. Dukes,*
 564 U.S. 338 (2011) ............................................................................ 13, 18

*Windham v. Am. Brands, Inc.,*
 565 F.2d 59 (4th Cir. 1977) ...................................................................... 28

*Zimmerman v. Bell,*
 800 F.2d 386 (4th Cir. 1986) ..................................................................... 22

*Zinser v. Accufix Rsch. Inst., Inc.,*
 253 F.3d 1180 (9th Cir. 2001) ................................................................... 22

## Statutes

29 U.S.C. § 1106(a), ERISA § 406(a) ........................................................... 25

29 U.S.C. § 1108(b)(2), ERISA § 408(b)(2) ................................................... 29

29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2) ................................................. 6, 16

29 U.S.C. § 1132(a)(3), ERISA § 502(a)(3) .............................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 23(a)................................................................2, 8, 12, 18

Federal Rule of Civil Procedure 23(b)(1)........................................................ 18, 21, 22, 23

Federal Rule of Civil Procedure 23(b)(3)....................................................................... 2, 18

Case 1:15-cv-00109-MR   Document 259   Filed 10/01/21   Page 9 of 42

## INTRODUCTION

As Peters tells it, the Fourth Circuit "squarely rejected" all of Aetna's and Optum's arguments. Peters's Supp. Br. (Dkt. 256) at 2, 6. That of course is false. In reality, the Fourth Circuit rejected only certain defense arguments while adopting some and not addressing many others. And though the Fourth Circuit's opinion is not on every point a picture of clarity, the opinion's implications for this case are clear: There is no path to class certification for Peters.

The Fourth Circuit held that because Peters suffered no direct financial injury, she has no restitution claim and cannot serve as a representative for any class seeking restitution. *Peters v. Aetna Inc.*, 2 F.4th 199, 242 n.23 (4th Cir. 2021). Given that holding, Peters has retreated from her certification motion and now "does not seek a restitution remedy on a class-wide basis." Dkt. 256 at 13 n.2. She instead seeks to represent proposed classes seeking disgorgement, surcharge, and declaratory and injunctive relief. *Id.* On those claims, the appellate court "express[ed] no opinion on Peters' ability to meet the full criteria of Rule 23 on remand." *Peters*, 2 F.4th at 244. It left those issues for this Court—framing several questions for this Court to address on remand.

*First,* the appellate court recognized that Peters is no longer a participant in the Mars Plan and questioned whether she has Article III standing to pursue declaratory or injunctive relief. *Id.* at 221 n.11. The court also expressed no opinion about whether Peters can serve as a class representative for her claims for equitable and injunctive relief, including her derivative claim on the Mars Plan's behalf. *Id.* at 242 n.23. The

panel remanded for this Court to resolve those issues "in the first instance." *Id.* at 221 n. 11, 242 n.23. But the appellate court agreed with this Court that Peters "suffered no direct financial injury" from the challenged conduct. *Id.* at 223. Her status as a former plan member and lack of any direct injury mean that she lacks Article III standing for each of her claims and is an inadequate class representative.

*Second,* the appellate court directed this Court to "consider anew" whether Peters's proposed classes satisfy Rule 23(a)'s requirements as well as Rule 23(b)(3)'s "far more demanding standard." *Id.* at 244. They do not. Peters has not shown—and cannot show—that "money or property identified as belonging in good conscience to [her] *could clearly be traced to particular funds or property in the defendant's possession.*" *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (emphasis added). She certainly couldn't make that showing on a classwide basis. Nor does she present evidence countermanding the reality that each of the 1,600 plans in the proposed class is unique, as are Aetna's contracts, communications, and course of dealing with each plan sponsor. Without undertaking those plan-specific inquiries, there is no way to determine whether Aetna breached fiduciary duties—and whether there is any "unjust profit" to disgorge—to more than 1,600 self-funded plans.

*Third*, the appellate court agreed that "Optum was not a functional fiduciary" for the challenged conduct. *Peters*, 2 F.4th at 239. So far as Optum is concerned, that leaves only Peters's unpleaded claim for disgorgement under *Harris Trust* (surcharge is not available against a nonfiduciary). But Peters cannot demonstrate through classwide

evidence that Optum was a party in interest, received plan assets (for any plan), knowingly participated in any prohibited transaction (a plan-specific inquiry), or has anything to disgorge. Peters never once contends in her supplemental brief that Optum has been unjustly enriched.

The Court should deny Plaintiffs' motion for class certification. Defendants also incorporate their prior class-certification briefing and exhibits (Dkt. Nos. 171, 172).

## ARGUMENT

## I. BECAUSE PETERS SUFFERED NO INJURY, SHE LACKS ARTICLE III STANDING AND IS NOT A PROPER CLASS REPRESENTATIVE UNDER RULE 23.

This Court found—and the Fourth Circuit agreed—that Peters "suffered no direct financial injury" from the challenged conduct. *Peters*, 2 F.4th at 223. In light of that ruling, Peters "does not seek a restitution remedy on a class-wide basis." Dkt. 256 at 13 n.2.

But even as Peters recognizes the ruling's import for her restitution claims, she fails to grasp that the Fourth Circuit's ruling also dooms her bid to serve as a class representative on her surcharge and disgorgement claims. She also ignores Supreme Court and Fourth Circuit precedent confirming that as a former member of the Mars Plan, she lacks standing to sue for declaratory or injunctive relief and therefore cannot seek that relief for the proposed classes.

Contrary to Peters's suggestion, the Fourth Circuit did not decide whether she can serve as a class representative for *any* claim. *Peters*, 2 F.4th at 242 n.23 ("We express

3

no opinion on Peters' ability to operate as class representative as to the remaining claims, including those of the Plan."). The appellate panel remanded those issues for this Court to decide "in the first instance." *Id.* at 221 n.11, 242 n.23. The evidence compels the conclusion that Peters cannot represent either proposed class.

### A. Peters lacks Article III standing.

Peters lacks standing for any of her claims. *See Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (class representative must have Article III standing for each claim).

*First*, Peters lacks Article III standing to seek declaratory or injunctive relief because she is no longer a member of the Mars Plan. Dkt. 189-2; *Peters*, 2 F.4th at 221 n.11. A plaintiff seeking prospective relief cannot rely on past harm to establish Article III standing because "past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018).[1] Because Peters is not part of the Mars Plan or any other Aetna plan—and hasn't been for more than five years—she cannot show that she is "likely to suffer future injury" from the challenged conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *see also, e.g.*, *Kendall v. Pharm. Prod. Dev., LLC*, No. 7:20-CV-71-D, 2021 U.S. Dist. LEXIS

---

[1] Unless noted, internal citations, quotation marks, and alterations omitted.

61671, at *33–34 (E.D.N.C. Mar. 31, 2021) (dismissing former plan participant's claims for injunctive relief).

*Second*, Peters lacks Article III standing to seek surcharge or disgorgement on the proposed classes' behalf because she suffered no direct financial harm. Although the Fourth Circuit found that Peters has Article III standing for those claims, the panel based its analysis on three propositions: (i) standing to sue under ERISA does not require an injury other than an alleged statutory violation,[2] (ii) a court can assess standing divorced from the plaintiff's liability theory,[3] and (iii) Peters's allegation that she was overcharged on certain individual transactions was enough for Article III standing even if, on the merits, she suffered no monetary harm.[4]

In three recent decisions, the Supreme Court rejected each of those propositions. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021); *California v. Texas*, 141 S. Ct. 2104, 2115 (2021). The Fourth Circuit did not address those binding precedents.[5]

---

[2] *See Peters*, 2 F.4th at 221 ("[E]ven without a personal financial injury, Peters has standing to maintain her claims for surcharge, disgorgement, and declaratory and injunctive relief based on her allegations of breach of fiduciary duty.").

[3] *See, e.g., Peters*, 2 F.4th at 218 ("This is so because – *in the context of standing, as opposed to the merits* – the fact that Peters may have benefitted from the determination of certain claims does not offset the fact that she was harmed by others.") (emphasis added).

[4]*Peters*, 2 F.4th at 219.

[5] The Supreme Court decided *Thole* on June 1, 2020, after the parties submitted their appellate briefs. It decided *California v. Texas* on June 17, 2021 and *TransUnion* on June 25, 2021. When Circuit and Supreme Court precedent conflict, this Court must follow Supreme Court precedent. *See Lux v. Judd*, 651 F.3d 396, 398 (4th Cir. 2011) (reversing

In *Thole*, the Supreme Court held that "[t]here is no ERISA exception to Article III." 140 S. Ct. at 1622. The Court found that the plaintiffs—two retired participants in a bank's retirement plan—lacked standing to sue for a "plan fiduciary's breach of a trust-law duty of prudence or duty of loyalty" because the "participants themselves have not suffered (and will not suffer) any monetary losses." *Id.* at 1618–19. That was true for their individual claims for equitable, declaratory, and injunctive relief under ERISA § 502(a)(3): "[T]he cause of action does not affect the Article III standing analysis. . . . Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1620–21 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). It was also true for the plaintiffs' claims on the plan's behalf under ERISA § 502(a)(2): "[T]o claim the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving them a sufficiently concrete interest in the outcome of the issue in dispute." *Id.* at 1620.

In *TransUnion*, the Supreme Court reaffirmed that "[f]or standing purposes. . . an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law . . . . [U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been

decision because circuit rule had been "superseded by subsequent Supreme Court decisions"); *United States v. Johnson*, 648 F. Supp. 2d 764, 777–79 (D.S.C. 2009) (following Supreme Court over circuit precedent when it couldn't "reconcile the two opinions").

*concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." 141 S. Ct. at 2205 (emphasis original). The Court also held that "[e]very class member must have Article III standing in order to recover individual damages." 141 S. Ct. at 2208. The Court went on to explain that "standing is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *Id.* The *TransUnion* Court also confirmed that a federal court must test each class member's standing and dismiss (or decertify a previously certified class) for lack of standing even if the case has already been tried on the merits. *Id.* at 2214.

In *California*, the Supreme Court held that a court must analyze Article III standing by considering "the relationship between 'the judicial relief requested' and the 'injury' suffered." 141 S. Ct. at 2115 (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)). In that regard, the Supreme Court rejected the Fourth Circuit's conclusion that it could divorce the Article III standing analysis from the merits of Peters's claim. *Compare with Peters*, 2 F.4th at 217 ("[T]hese inquiries remain separate and distinct.").

Taken together, those Supreme Court decisions confirm that for Peters to have standing to assert a particular claim—whether on her own behalf, the Mars Plan's behalf, or a proposed class's behalf—she must herself have suffered a concrete injury apart from any alleged statutory violation. The decisions also confirm that this Court must assess Peters's standing (and the standing of any proposed class member) based on the entire record (not just allegations), taking into account Peters's liability theory.

Because Peters suffered no concrete financial injury, she lacks Article III standing to pursue derivative claims on the Mars Plan's behalf or equitable claims for disgorgement or surcharge. That makes her an inadequate class representative and her claims atypical. *See Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998) ("The Supreme Court has repeatedly held [that] a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."); *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) ("It should be obvious that there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class.").

### B. Peters is an inadequate class representative with atypical claims.

Beyond standing, Peters must also prove that the proposed classes satisfy Rule 23(a)'s typicality and adequacy requirements. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). She cannot do so, for at least three reasons.

*First*, Peters cannot serve as a class representative because she was not injured by the challenged conduct. To satisfy Rule 23, a class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *E. Tex. Motor Freight Sys, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Lienhart*, 255 F.3d at 146; *Broussard*, 155 F.3d at 338; *Newman v. RCN Telecom Services, Inc.*, 238 F.R.D. 57, 64 (S.D.N.Y. July 27, 2006) (plaintiff's claims were atypical because he "was not harmed by

misrepresentations/omissions he alleges to have injured the class."); *McClain v. S.C. Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997) (plaintiff's "claims [were] 'atypical' from the claims of the rest of the class" because she "did not suffer a cognizable injury similar to the injuries suffered by the other class members.").

Peters suffered no direct financial injury (*Peters*, 2 F.4th at 223) and is "therefore[] simply not eligible to represent a class of persons who did allegedly suffer injury." *Rodriguez*, 431 U.S. at 403–04; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) ("[W]e do expect the common evidence to show all class members suffered *some* injury."). "It is not enough that the conduct of which the plaintiff complains will injure someone. The complaining party must also show that he is within the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

*Second*, Peters is not personally entitled to disgorgement or surcharge. Contrary to Peters's assertion, the Fourth Circuit did not hold that "[Peters] and her Plan [are] entitled to the equitable remedy of disgorgement or surcharge and that these remedies [do] not require reprocessing of claims or examination of her entire claims history." Dkt. 256 at 8. The portions of the appellate opinion that Peters cites refer either to her standing to seek disgorgement and surcharge (*Peters*, 2 F.4th at 219–20) or whether a reasonable factfinder could conclude that Aetna breached a fiduciary duty. *Id.* at 238. The Fourth Circuit did not answer whether Peters herself could recover surcharge or disgorgement.

On that score, and putting aside that Peters seeks money damages under the guise of "equity" and does not even try to satisfy the tracing requirements for equitable monetary relief (*see* Section II.A below), the undisputed evidence shows that Peters would be unjustly enriched if she were allowed to recover on her individual claims. Because surcharge and disgorgement are forms of equitable restitution (*Teets v. Great-W. Life & Annuity Ins. Co.*, 919 F.3d 1232, 1257 (10th Cir. 2019)), calculating the purported unjust gain requires considering every claim in a given plan year. *See Pender v. Bank of Am. Corp.*, 736 F. App'x 359, 371 (4th Cir. 2018) ("[C]ourts and commentators have cautioned against awarding a plaintiff equitable relief, and disgorged profits in particular, to the extent doing so would amount to a windfall or penalize a defendant."). Even Peters argues that the Court must determine the "benefit accrued [by Defendants]" for her claims, which requires considering all of the claims, not just some of them. Dkt. 256 at 8.

On that question, Dr. Kessler established (and the Fourth Circuit agreed) that Peters experienced a "net financial benefit of $114.71" over three years from the Aetna-Optum relationship. Dkt. 172-8 (Ex. 8) ¶ 127. Accordingly, the only way that Peters can claim that Aetna was unjustly enriched is by ignoring almost half of her claims. Considering her entire claims history, awarding surcharge or disgorgement to Peters personally would result in a windfall for her.[6]

---

[6] As with Article III standing, the question whether Peters can serve as a class representative turns on the entire record. *See Rodriguez*, 431 U.S. at 406 n.12 ("Where no

Peters is also an atypical class representative because she herself cannot recover the relief that she seeks on the proposed classes' behalf. *See Broussard*, 155 F.3d at 338 ("a class representative must be part of the class and possess the same interest and suffer the same injury as the class members"); *Hansberry v. Lee*, 311 U.S. 32, 45 (1940) (class representative "whose substantial interests are not necessarily or even probably the same as those whom they are deemed to represent does not afford that protection to absent parties which due process requires").

*Third*, Peters has intractable conflicts with members of each proposed class. Contrary to Peters's assertions (Dkt. 256 at 12–13), the Fourth Circuit did not opine on that question. The record is clear that Peters does not share the same interests as the proposed class: (i) she suffered no direct financial injury, (ii) as a former participant, she has no interest in the Mars Plan (or any other Aetna plan) going forward, and (iii) she was not a participant or beneficiary of the 1,600 other plans that she attempts to represent whose health benefits are "subject to different terms under different plans." *See Bond v. Marriott Int'l, Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014).

It is undisputed that many Aetna plans knew about the Aetna-Optum relationship and benefited from it. *See* Dkt. 172 at 18–19, 31–33. The Aetna-Optum contracts generated millions of dollars in savings for Aetna plans and their members (Dkt. 172-1

_____

class has been certified, however, and the class claims remain to be tried, the decision whether the named plaintiffs should represent a class is appropriately made on the full record, including the facts developed at the trial of the plaintiffs' individual claims.").

(Ex. 1) 48:13–20; Dkt 172-7 (Ex. 7); Dkt. 172-8 (Ex. 8) ¶¶ 59–64; Dkt. 172-14 (Ex. 15) 207:2–3; Dkt. 171-18 (Ex. 17) 47:12–17), and there is no evidence in the record suggesting that those plans or members share Peters's desire to sue against their interests. If there is "a conflict of interest between different groups" of class members "with respect to the appropriate relief," there can be no class certification. *Broussard*, 155 F.3d at 337. Indeed, "no circuit has approved of class certification where some class members derive a net economic benefit from the very same conduct alleged to be wrongful by the named representative[] of the class." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003); *Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011) (vacating certification because "some members will actually be harmed by [the] relief").

## II. THE PROPOSED CLASSES FAIL RULE 23(A)'S COMMONALITY, TYPICALITY, AND ADEQUACY REQUIREMENTS.[7]

The proposed classes suffer from the same problems as before. Peters posits various purportedly "common" issues of law and fact that she contends emerge from the appellate court's opinion. *See* Dkt. 256 at 8–9. But she ignores the many issues, both factual and legal, at the heart of her disgorgement and surcharge claims that defy classwide resolution across thousands of plans and tens of thousands of members. "What matters . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate *common answers* apt to drive the

---

[7] "The typicality requirement . . . tends to merge with the commonality and adequacy-of-representation requirements." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)).

resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis added). A claim "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

### A. Peters cannot establish "unjust" profits on a classwide basis.

Peters cannot show entitlement to her so-called "equitable" relief for either proposed class under ERISA § 502(a)(3). As Peters characterizes her claims, she seeks disgorgement and surcharge based on the principle of unjust enrichment. Dkt. 256 at 12–13. When based on that principle, disgorgement and surcharge allow a plaintiff to "recover a judgment for the profits due from use of his property, and thus holds the defendant liable for his profits, not for damages." *Teets*, 919 F.3d at 1257; *see also Peters*, 2 F.4th at 220 (unjust enrichment surcharge theory requires showing of benefit accrued).

But there can be no ill-gotten profit if there was no breach in the first place. "To adhere to the plan is not a breach of fiduciary duty." *Dzinglski v. Weirton Steel Corp.*, 875 F.2d 1075, 1080 (4th Cir. 1989). Here, the relevant contracts and communications vary from plan to plan, precluding class certification. *See, e.g., Broussard*, 155 F.3d at 340 (rejecting class certification because the relevant contracts varied). Each self-funded plan is unique, as are Aetna's contracts, communications, and course of dealing with each plan sponsor, and the plan terms and sponsor contracts material to Peters's

arguments vary among plans.[8] It is impossible to determine whether Aetna breached fiduciary duties—and whether there is any "unjust profit" to disgorge—for more than 1,600 self-insured plans without examining the plans, contracts, and course of dealing.

There is more. Under the rule from *Donovan,* which the Fourth Circuit endeavored to apply, determining whether a particular plan or its participants suffered a loss, or whether Aetna enjoyed an "unjust profit" at their expense, requires analyzing the particular circumstances and alternatives available to the particular plan. Under the *Donovan* rule, "[t]he question of loss to the Plan . . . requires a comparison between the actual performance of the Plan and the performance that otherwise would have taken place." *Donovan v. Bierwirth*, 754 F.2d 1049, 1057 (2nd Cir. 1985); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 604 (8th Cir. 1995) ("*Donovan* thus stands squarely for the proposition that loss must be determined by examining the assets of the plan as a whole, not at an instant as was done by the district court, but over a period of time."); *Graden v. Conexant Systems Inc.,* 496 F.3d 291, 301 (3rd Cir. 2007) (under *Donovan* rule, court should look to prudent investment alternatives available to the plan); *Peabody v. Davis*,

---

[8] As detailed in Defendants' original opposition brief (*see* Dkt. 172 at 14–19, 31-33), the plan terms, administrative services contract provisions, and plan sponsor communications are all unique for each plan and sponsor.  For example, the various plans differ in their definition of such terms as "Network Provider" and "In-Network Provider" (*id.* at 15–16); most of the administrative services contracts require plans to arbitrate claims relating to Aetna's administrative services (*id.* at 32–33); and Aetna's communications with particular plan sponsors show that many knew about the Aetna-Optum relationship (*id.* at 18–19).

636 F.3d 368, 377–78 (7th Cir. 2011) (same). That would require analyzing each plan's terms, contracts, and communications as well as the claims history and coverage objectives for each particular plan.

The *Donovan* court also explained that "[i]n making this determination, it can scarcely be found to be 'irrelevant' that the securities in question were sold for more than their purchase price. The amount earned on the allegedly improper investment has a direct bearing on the amount of any loss ultimately sustained as determined by comparison with earning on other Plan investments." 754 F.2d at 1057–58. Evaluating the aggregate economic impact on the plan is consistent with "the intent expressed by Congress in providing for the recovery of 'losses,' and the absence of evidence of congressional intent to penalize." *Id.* at 1056. That the Aetna-Optum arrangement resulted in millions of dollars in savings for plans and their participants—a fact that Peters does not dispute—is no less "relevant" in applying the *Donovan* rule to this case. The only difference between *Donovan* and this case is that the stock profit in *Donovan* was fortuitous while the savings to Aetna plan sponsors and members were by design.

**B.    Peters's claims for disgorgement and surcharge defy classwide proof.**

Even if Peters could show on a classwide basis that Aetna breached fiduciary duties (she cannot), the proposed classes would still fail because Peters cannot show through common evidence that each putative class member has title or right to particular funds in Aetna's or Optum's possession.

Disgorgement and surcharge require a showing that "money or property identified as belonging in good conscience to the plaintiff *could clearly be traced to particular funds or property in the defendant's possession.*" *Knudson*, 534 U.S. at 213 (emphasis added); *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015) (any profits to be accounted must have "in equity and good conscience belonged to *the plaintiff*"); *see also Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 332 (4th Cir. 2006); *Knieriem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir. 2006) (for equitable surcharge, a plaintiff "must specifically identify the particular funds or property . . . it is not enough that the defendant merely owes the plaintiff some money."). When a plaintiff cannot claim entitlement to any particular property or profit in the defendant's possession (as opposed to funds from general assets), she cannot seek "equitable" monetary relief under ERISA § 502(a)(3). *See Perelman v. Perelman*, 793 F.3d 368, 374 (3d Cir. 2015) (when a plan participant has no "claim to any particular asset that composes a part of the plan's general asset pool," diminution of general assets, without more, does not establish a concrete injury) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999)). For either equitable disgorgement or surcharge, then, Peters "must still show an individual right to the defendant's profit." *Perelman*, 793 F.3d at 375.[9]

---

[9] *Equitable* disgorgement and surcharge are distinct from *legal* restitution, which is available when "the plaintiff could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him." *Knudson*, 534 U.S. at 213 (emphasis added); *see also Thorn v. Jefferson Pilot Life Ins. Co.*, 445 F.3d 311, 332 (4th Cir. 2006). Legal restitution is not available under ERISA § 502(a)(3).

Peters has never tried to trace money purportedly belonging to her to particular funds in Aetna's or Optum's possession. On the contrary, she has always sought recovery from general assets. *See* Dkt. 199 at 24 (arguing that "Optum's discussion about requiring tracing is irrelevant to disgorgement"). And she has never proposed a methodology by which she or this Court could satisfy that tracing requirement on a classwide basis. The proposed classes encompass more than 1,600 plans and 87,754 members, many of whom (like Peters herself) are no longer members of any Aetna plan and have healthcare claims dating back to at least 2013.

Peters must establish a title or right to possess particular funds clearly traceable to Aetna's and Optum's possession—a burden she cannot carry either individually or on behalf of anyone else. *See* Dkt. 172-55 (Ex. 79) ¶¶ 6–9 (Aetna makes payments to a general Optum account). But the fact is that Peters has never sought equitable relief; she seeks money damages (Ex. 82 to Springer Decl. (Peters Tr.) 20:17–19, 28:10–20), which are not available under ERISA § 502(a)(3). *See, e.g.*, *Mertens, v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory *damages*—monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties); *Thorn*, 445 F.3d

---

*Teets*, 919 F.3d at 1257; *see also Thorn*, 445 F.3d at 332. "[L]egal remedies—even legal remedies that a court of equity could sometimes award—are not 'equitable relief' under § 502(a)(3)." *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 149 (2016).

at 332 ("Appellants . . . have not submitted any evidence—nor have they even argued—that [defendant's] race-based premium over-charges are traceable."). Peters cannot avoid § 502(a)(3)'s bar on money damages by recasting legal claims as "equitable."

Finally, equitable relief is available only if there is no adequate remedy at law. *Varity Corp. v. Howe*, 516 U.S. 489, 511–12 (1996). Any proposed class member that has an adequate remedy at law—a claim for benefits under § 502(a)(1)(B), for example—cannot seek equitable remedies under *Varity*. This Court would need to examine every putative class member's individual claims experience and circumstances to determine if they had adequate legal relief before they could seek equitable relief.

## III. THE PROPOSED CLASSES FAIL RULE 23(B)'S REQUIREMENTS.

Peters seeks certification under Rule 23(b)(1) or (b)(3). Dkt. 256 at 15. The proposed classes fail both subsections' requirements.

### A. The proposed classes fail Rule 23(b)(3)'s requirements.

Even if the proposed classes could satisfy Rule 23(a) (they can't), they fail Rule 23(b)(3)'s predominance requirement. As demanding as Rule 23(a)'s commonality requirement is (*see* generally *Dukes*), "Rule 23(b)(3)'s predominance criterion is even more demanding." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods*, 521 U.S. at 623. To satisfy Rule 23(b)(3), Peters must do more than identify a common litigation-driving question that will generate a common answer. She must also show that other issues won't splinter the proposed

classes into thousands of individualized inquiries. *See Gariety v. Grant Thornton, LLP,* 368 F.3d 356, 362 (4th Cir. 2004); *EQT Prod. Co. v. Adair,* 764 F.3d 347, 366 (4th Cir. 2014). She cannot do so.

Although Peters now seeks only surcharge and disgorgement (Dkt. 256 at 13 n.2), she cannot avoid the individualized questions that would engulf the proposed classes. The Fourth Circuit recognized that "varying EOBs, plans, and damages" "may affect the dollar amount or scope of the available remedies," remarking only that "they do not *reflexively* defeat class certification when the underlying harm derives from the same common contention—that Appellees' fee-shifting scheme breached the terms of the applicable Plan and constituted a breach of fiduciary duty." *Peters,* 2 F.4th at 243. (emphasis added). But the Fourth Circuit didn't address whether Peters's proposed classes satisfy Rule 23(b), leaving that determination to this Court. *Id.* at 244.

To test the proposed classes against Rule 23's requirements, this Court "*must* formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *See In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008) (emphasis in original). The Fourth Circuit's 71-page opinion illustrates why the predominance requirement is an insurmountable hurdle for the proposed classes. The appeals court spent many pages analyzing the Mars Plan's language to determine whether a reasonable factfinder could conclude that Aetna breached it. *Peters,* 2 F.4th at 232–36. This Court would have to undertake that same exercise for each of the more than 1,600 Aetna plans at issue. *See,*

*e.g., Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("[E]ach defendant throughout this period utilized many different form contracts . . . . The sheer number of contracts involved is one factor that makes us hesitant to conclude that common issues of fact predominate."); *In re Express Scripts, Inc. PBM Litig.*, No. 4:05MD01672HEA, 2015 U.S. Dist. LEXIS 1854, at *25 (E.D. Mo. Jan. 8, 2015) ("[w]hether a fiduciary relationship exists" and "whether a breach of fiduciary duty has occurred" requires examining each relationship "on a case by case basis, thus precluding certification of the class").

The Fourth Circuit also spent pages analyzing Peters's individual claims history—claim by claim—to conclude that she suffered no direct financial harm from the challenged conduct. *Peters*, 2 F.4th at 225–27. Even if Peters were correct (she's not) that the class members would not need to prove individual financial harm to secure a surcharge or disgorgement remedy, that type of granular, claim-by-claim analysis would be required to identify and trace the flow of any alleged "ill-gotten" assets subject to disgorgement. *In re EpiPen ERISA Litig.*, No. 17-1884, 2020 U.S. Dist. LEXIS 139066, at *16–17 (D. Minn. Aug. 5, 2020) ("Equity does not allow disgorgements of all profits but only those profits inequitably retained. Whether it was inequitable for any Defendant to retain a portion of the [disputed payments] will require reference to the contracts between each [defendant] and each plan. . . . Indeed, what the plan contracts provided with respect to retention of [the disputed payments] is essential to determining the existence of injury, even before any determination of the amount of that injury.").

Those determinations go to the elements of each class member's claims, the available remedies, and the amount of any recovery. They will require individualized inquiries that generate thousands of different answers, foreclosing any class trial in this case. *See, e.g.*, *Comcast*, 569 U.S. at 34 (proposed class fails the predominance requirement if "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class"); *Bond*, 296 F.R.D. at 411 (predominance not met when "some members . . . were not adversely affected" by the alleged conduct); *Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 273–74 (W.D.N.C. 2008) (predominance not shown when resolution "may hinge on the individual transactions of class members").

## B.     The proposed classes fail Rule 23(b)(1)(A)'s requirements.

Peters also argues that the proposed classes satisfy Rule 23(b)(1)(A). Dkt. 256 at 16–17. Not so. Certification under Rule 23(b)(1)(A) is appropriate only when individual actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct" for the defendant. Rule 23(b)(1)(A) is designed to protect defendants. *See In re Comput. Scis. Corp.*, No. CV 08-02398, 2008 U.S. Dist. LEXIS 109027, at *5–6 (C.D. Cal. Sept. 2, 2008) (certification under Rule 23(b)(1)(A) is "primarily to prevent a defendant from being caught in a classic 'Catch 22' situation where one court orders a defendant to take certain action which another court orders the same defendant not to take"). Accordingly, courts in this Circuit have explained that certification under Rule 23(b)(1)(A) is inappropriate when the defendant opposes certification. *See Piotrowski v.*

*Wells Fargo Bank, NA*, No. DKC 11-3758, 2015 U.S. Dist. LEXIS 98688, at *50–51 (D. Md. July 29, 2015); *Bond*, 296 F.R.D. at 410. Aetna and Optum oppose certification under Rule 23(b)(1)(A), so this Court should not certify a class under the provision.

In any event, the proposed classes do not fit Rule 23(b)(1)(A)'s requirements. The Notes to the 1966 amendments provide two examples of when certification under Rule 23(b)(1)(A) might be appropriate: an action against a municipality to declare a bond issue invalid and litigation regarding a riparian owner's rights and duties. *See* Fed. R. Civ. P. 23, Adv. Comm. Note, 1966 Am. Both examples involve the risk of "incompatible adjudications"—for instance, one court could tell the riparian owner that they can take the water while another could say the opposite. But the Fourth Circuit and other circuits have held that the risk of paying damages to some class members but not others or of paying them different amounts is not enough to satisfy Rule 23(b)(1)(A). *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) ("The danger of imposing 'incompatible standards of conduct' on the party opposing the class is also not normally posed by a request for money damages."); *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) (similar reasoning: "Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages."); *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545 (11th Cir. 1987) (same).

Peters argues that "[i]t would clearly be untenable if some courts held that Aetna could not pass on the Optum administrative fees to some plans and/or insureds, while others held that it could" and that "[s]uch conflicting rulings would actually lead to

ERISA violation by treating ERISA beneficiaries in an inconsistent manner." Dkt. 256 at 16. But the differing terms of more than 1,600 plans and administrative services contracts, and Aetna's unique communications with each of those plan sponsors, defy Peters's effort to impose a one-size-fits-all class. Rather, it is Peters who seeks inconsistent treatment under the Aetna-Optum relationship. She asks the Court to exclude from the proposed classes nearly *thirty percent* of claims processed under the Aetna-Optum contracts—claims for which the Aetna-Optum rate was equal to or lower than Optum's downstream provider's rate. Dkt. 146-22 at ¶ 39; Dkt. 172-9 at ¶¶ 39–40. If Peters is correct that *all* plans required Aetna to calculate member responsibility based on the Optum downstream rate, then Aetna should have used that rate for *every* benefits claim—including for those that Peters tries to exclude from the proposed class. Her cherry-picked surcharge and disgorgement "classes" conflict with her liability theory and, if certified, would require Aetna to treat members of the same plan inconsistently.

The bottom line: Peters seeks individualized monetary relief for putative class members in the amounts of their alleged "overcharges" (*id.* at 14), so their claims are not certifiable under Rule 23(b)(1)(A). And the individualized relief that Peters seeks would not be available to wide swaths of the proposed classes who suffered no injury or damages (even as Peters conceives of those requirements). The proposed classes do not satisfy Rule 23(b)(1)(A)'s requirements. *See, e.g.*, *Bond*, 296 F.R.D. at 409–10.

## IV.   THERE IS ONLY ONE REMAINING CLAIM AGAINST OPTUM, AND NEITHER PROPOSED CLASS CAN PURSUE IT BECAUSE NEITHER SATISFIES RULE 23.

The Fourth Circuit affirmed what has been clear since this case began: "Optum was not a functional fiduciary" for the conduct that Peters challenges. *Peters*, 2 F.4th at 239. That leaves only one claim against Optum—an unpleaded claim for nonfiduciary liability under *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238 (2000). Peters cannot prove the elements of her own *Harris Trust* claim, much less prove the elements of each proposed class member's claim through classwide evidence.

In *Harris Trust*, the Supreme Court held that nonfiduciary liability under ERISA § 502(a)(3) extends beyond the "principal wrongdoer" only to "a transferee of ill-gotten" assets who had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." 530 U.S. at 251. Peters seems to have abandoned whatever sliver of her unpleaded *Harris Trust* claim might have survived the Fourth Circuit's decision, leaving no path to recovery from Optum—not for Peters, not for the Mars Plan, and not for any proposed class.

In her supplemental brief, Peters confirms that she "seeks equitable relief solely *in the form of disgorgement or surcharge* . . . in the amount of Aetna's unjust enrichment . . . ." Dkt. 256 at 13 n.2 (emphasis in original). But the Supreme Court has held that ERISA § 502(a)(3) does not authorize a surcharge remedy against a nonfiduciary. *Mertens*, 508 U.S. at 251-53 (1993); *CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) ("The surcharge remedy extended to a breach of trust committed by a

*fiduciary* encompassing any violation of a duty imposed upon that fiduciary.") (emphasis added). Peters may not seek a surcharge remedy from nonfiduciary Optum.

That leaves only disgorgement, but Peters has confirmed that she seeks to disgorge only "the amount of *Aetna's* unjust enrichment." Dkt. 256 at 13 n.2 (emphasis added). Peters never once says in her supplemental brief that she seeks (either for herself or for any proposed class) *any* disgorgement from Optum, which means that she has no remaining claim against Optum. The Court should dismiss Optum from the litigation.

Even if Peters has not abandoned her lone remaining claim against Optum,[10] the proposed classes cannot not be certified on that claim anyway.

## A.     ERISA § 406(a) doesn't apply to Aetna's payments to Optum.

Optum was not a party in interest vis-à-vis any Aetna plan because it did not have a relationship with any Aetna plan, let alone a relationship predating the Aetna-Optum contracts. *See Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021) (rejecting argument that a service provider was a party in interest by virtue of contracting with a plan fiduciary: "The class's interpretation leads to an absurd result: the initial agreement with a service provider would simultaneously transform that provider into a party in interest and make that same transaction prohibited under § 1106. . . . Instead, we

---

[10] At oral argument on her appeal, Peters's made the following concession about Optum: "[I]n reality, Aetna is the only one that really needs to be held liable.… We don't need Optum to be found liable. Aetna is the one who came up with this idea. It's the one who was unjustly enriched." Oral Argument at 13:26–31, 14:35–42, *Peters v. Aetna Inc.* (No. 19-2085) (4th Cir. Oct. 26, 2020), https://www.ca4.uscourts.gov/OAarchive/mp3/19-2085-20201026.mp3.

conclude that some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest under § 1106."); *Sellers v. Anthem Life Ins. Co.,* 316 F. Supp. 3d 25, 34 (D.D.C. 2018) (same); *UFCW Loc. 56 Health & Welfare Fund v. Brandywine Operating P'ship, L.P.,* No. 05-2435 (JEI), 2005 U.S. Dist. LEXIS 25759, at *9 (D.N.J. Oct. 28, 2005) (same).[11]

Beyond that, Optum didn't receive payments from Aetna plans or members. "Under the Aetna-Optum relationship, Optum receives payments only from Aetna itself, never from an Aetna member or plan sponsor." Dkt. 242 at 10. Peters concedes that her and other members' coinsurance and deductible payments were not plan assets (Peters App. Br. at 49–50; *see also Deluca v. Blue Cross Blue Shield of Mich.,* No. 06-12552, 2007 U.S. Dist. LEXIS 37448, at *9 (E.D. Mich. May 23, 2007)), and neither the Mars Plan nor any other Aetna plan ever paid Optum. Dkt. 242 at 10.

## B. Peters cannot show through classwide evidence that Optum knowingly participated in prohibited transactions.

Even if Peters could show that Aetna caused every plan to engage in a prohibited transaction, Peters cannot show through classwide evidence that Optum knowingly participated in each of those prohibited transactions.

To establish Optum's knowing participation, Peters would need to show, for each alleged prohibited transaction, that Optum (1) knew of Aetna's status as a fiduciary

---

[11] On this point, the Fourth Circuit's opinion is less than clear. In any case, Optum includes the argument to preserve it for appeal.

and (2) knew that Aetna caused the plan in question to engage in a prohibited transaction not exempted by ERISA § 408. *Leber v. Citigroup, Inc.*, No. 07-cv-9329, 2010 WL 935442, at *14 (S.D.N.Y. Mar. 16, 2010); *see also Harris Trust*, 530 U.S. at 251 (liability under ERISA § 502(a)(3) extends beyond the "principal wrongdoer" only to "a transferee of ill-gotten" assets who had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful"). Peters cannot show that Optum knew either of those things for the Mars Plan and certainly cannot show through classwide evidence that Optum knew both for each of the more-than 1,600 other plans.

Resolving each putative class member's claim against Optum would require an individualized inquiry into, among other things, whether Aetna violated the terms of the plan in question by calculating benefits based on the Aetna-Optum rate instead of on the downstream provider rate. The Fourth Circuit did not answer that question for the more-than 1,600 plans in the proposed class; in fact, the court did not even consider the record evidence showing that Aetna complied with various plans' terms. *See generally Peters*, 2 F.4th at 232–38 (discussing evidence related only to the Mars Plan); *see also* Dkt. 172 at 15–18 (describing varying plan terms).

The undisputed facts are that Optum never saw Aetna plan documents (Dkt. 171-18 (Ex. 17) 191:11–24)) and always believed (correctly) that the Aetna-Optum contracts saved Aetna plans and members money, so Optum did not know for any particular plan (a) whether Aetna was serving a fiduciary role for the challenged

27

conduct, (b) whether the plan permitted or prohibited any given payment arrangement, or (c) whether any particular claim determination violated plan terms. *See Harris Trust*, 530 U.S. at 251. There is no way to answer those questions without individualized, "plan-by-plan" inquiries. *Ruppert v. Principal Life Ins. Co.*, 252 F.R.D. 488, 499 (S.D. Iowa 2008); *see also Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011) (reversing class certification because the district court "ignor[ed] the critical, factual threshold issue specific to each and every class member of whether [the defendant] was acting as an ERISA fiduciary in each individual, contractual relationship with each plan member"); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 67, 72 (4th Cir. 1977) (affirming denial of class certification because "proof of the individual claims and . . . essential elements of individual injury and damage" would "swamp" the court with "an overwhelming deluge of mini-trials").

## C.   There is no classwide proof showing that putative class members are entitled to disgorgement from Optum.

To establish nonfiduciary liability under ERISA § 502(a)(3), Peters must also show that Optum is "a transferee of ill-gotten" assets. *Harris Trust*, 530 U.S. at 251. The undisputed evidence is that Optum was entitled to the fees that Aetna paid for its services. Optum's compensation—negotiated at arm's length (Dkt. 141 at 20–21)—was reasonable by any standard. "Reasonable compensation" is based on a "fair market standard." *Scott v. Aon Hewitt Fin. Advisors, LLC*, No. 17 C 679, 2018 U.S. Dist. LEXIS 44606, at *34 (N.D. Ill. Mar. 19, 2018). And "[f]air market value is '[t]he price that a

seller is willing to accept and a buyer is willing to pay on the open market and in an arm's length transaction.'" *United States v. Steele*, 897 F.3d 606, 610 (4th Cir. 2018); *see also United States v. Cartwright*, 411 U.S. 546, 552 (1973) (same definition).

Peters concedes that Optum was entitled to a fee for its services and has offered no evidence challenging the reasonableness of those fees. Dkt. 256 at 5 ("Optum was of course entitled to be paid a fee"). Peters's proposed expert Dr. Panis conceded that he did not account for Optum's cost of providing the contracted services or whether Optum lost money on claims. *See* Dkt. 172-22 (Ex. 27) 117:11–118:14, 149:23–150:19. Because Optum's compensation was reasonable, § 406(a)(1)(D) does not apply to Aetna's payments to Optum. 29 U.S.C. § 1108(b)(2).[12]

On top of that, to recover equitable disgorgement from Optum, each plaintiff would have to trace identifiable funds belonging to them to assets in Optum's possession (or to profits that Optum generated on that property). *See Thorn*, 445 F.3d at 332 (proposed class failed to show that alleged "premium overcharges [were]

---

[12] Peters's earlier arguments notwithstanding, we're not aware of any court in this Circuit holding that a nonfiduciary facing a claim for equitable relief under ERISA § 502(a)(3) bears the burden of proving that their compensation was reasonable. In any event, the only evidence in the record proves that Optum's fees were reasonable, and Peters has not come forward with countermanding evidence even though she bears the burden of proving her entitlement to equitable monetary relief under ERISA § 502(a)(3). Each putative class member would face the same hurdles if they ever had a live claim in this case. *See Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("A nonnamed class member is not a party to the class-action litigation before the class is certified.").

traceable"); *Teets*, 919 F.3d at 1257 ("The tracing requirement . . . for equitable restitution also applies to accounting and disgorgement of profits…."); *Montanile*, 136 S. Ct. at 658. Peters has not tried to make that showing for herself—she never tries, for instance, to isolate as ill-gotten any portion of the fee that Optum received on any claim—and the proposed classes could not do so through one-for-all evidence.

That explains why Peters seeks disgorgement only from *Aetna. See, e.g.*, Dkt. 256 at 3 (seeking "disgorgement of the amount by which Aetna had been unjustly enriched from the [alleged] overcharges"), 16 n.3 (seeking "disgorgement or surcharge of the amount by which Aetna was unjustly enriched by passing along the Optum administrative fees it should have paid."). Peters has abandoned her claims against Optum. The Court should dismiss Optum from the case.

## CONCLUSION

Peters suffered no injury and lacks standing to seek relief for herself or anyone else. Her proposed classes fail to satisfy Rule 23. The Court should deny Peters's motion for class certification.[13]

Dated: October 1, 2021

---

[13] And, as explained above, Peters cannot trace monies purportedly belonging to her to any particular funds in Aetna's possession, either. *See, e.g., Knudson*, 534 U.S. at 213; *Thorn*, 445 F.3d at 332. Nor has she attempted to identify any profits made by Aetna from its use of any particular funds that belong to Peters. *See, e.g., Teets*, 921 F.3d at 1225.

Respectfully submitted,

_/s/ E. Thomison Holman_
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

Earl B. Austin (_pro hac vice_)
BAKER BOTTS L.L.P.
30 Rockefeller Plaza
New York, NY 10112
earl.austin@bakerbotts.com
(212) 408-2500
(212) 408-2501 (fax)

_Counsel for Defendants Aetna Inc._
_and Aetna Life Insurance Company_

_/s/ Brian D. Boone_
Brian D. Boone
  NC Bar No. 38910
Michael R. Hoernlein
  NC Bar No. 40419
Brandon C.E. Springer
  NC Bar No. 54523
ALSTON & BIRD LLP
Bank of America Plaza, Suite 4000
101 South Tryon Street
Charlotte, NC 28280
(704) 444-1000
(704) 444-1111 (fax)
brian.boone@alston.com
michael.hoernlein@alston.com
brandon.springer@alston.com

_Counsel for Defendant_
_OptumHealth Care Solutions, Inc._

## <u>CERTIFICATE OF COMPLIANCE WITH THE COURT'S RULES</u>

I certify that this brief complies with Local Rule 7.1 and this Court's Pretrial Order and Case Management Plan, as modified by the Court's September 24, 2021 text order. It uses Microsoft Word double-spacing and one-inch margins, is in Garamond 14-point font (including footnotes), and does not exceed 30 pages.

Dated: October 1, 2021

*/s/ E. Thomison Holman*
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

*Attorney for Defendants Aetna Inc. and*
*Aetna Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of October 2021, a copy of the foregoing was electronically filed with the clerk of the court of the United States District Court, Western District of North Carolina, Asheville Division, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ E. Thomison Holman</u>
E. Thomison Holman
  NC Bar No. 19380
HOLMAN LAW, PLLC
56 College Street, Suite 302
Asheville, NC 28801
tom@holmanlawwnc.com
(828) 252-7381
(828) 252-5018 (fax)

*Attorney for Defendants Aetna Inc. and*
*Aetna Life Insurance Company*