# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
Case No. 1:15-cv-00109-MR

SANDRA M. PETERS, on behalf of herself
and all others similarly situated,

Plaintiff,

v.

AETNA INC., AETNA LIFE INSURANCE
COMPANY, and OPTUMHEALTH CARE
SOLUTIONS, INC.,

Defendants.

**PLAINTIFF'S
SUPPLEMENTAL REPLY
BRIEF IN SUPPORT OF HER
MOTION FOR CLASS
CERTIFICATION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................3

I.  THE FOURTH CIRCUIT ALREADY HELD THAT PLAINTIFF HAS
    ARTICLE III STANDING. ...................................................................3

    A.  The Fourth Circuit Twice Rejected Defendants' Argument That
        Recent Supreme Court Decisions Undermine Plaintiff's Article III
        Standing. .....................................................................................3

    B.  Plaintiff Does Not Need To Show Direct Financial Injury To Seek
        Surcharge And Disgorgement On A Class-Wide Basis. ....................8

II. UNDER CLEAR AND BINDING FOURTH CIRCUIT AUTHORITY,
    THE REMEDIES THAT PLAINTIFF IS PURSUING DO NOT REQUIRE
    TRACING. .......................................................................................11

    A.  The Fourth Circuit Has Held That Equitable Tracing Is Not Required
        For Disgorgement And Surcharge Claims. .................................11

    B.  Defendants Do Not Establish That Tracing Is Required for Forms Of
        Relief Expressly Allowed Under Section 502(a)(2) ....................14

    C.  Even If This Court Were To Impose A Tracing Requirement, Plaintiff
        Can Satisfy It Through Class-Wide Proof. ................................15

III. THE PUTATIVE CLASSES EASILY MEET THE RULE 23
     REQUIREMENTS. ...........................................................................16

    A.  The Fourth Circuit Already Held That There Are Common Questions. .16

    B.  It Follows From The Fourth Circuit's Opinion That Plaintiff Is a
        Typical And Adequate Class Representative. ..............................18

    C.  The Classes Should Be Certified Under Rule 23(b)(3). ..............19

    D.  The Classes Could Also Be Certified Under Rule 23(b)(1)(A). ..............21

i

IV. THE FOURTH CIRCUIT'S DECISION CONFIRMS THAT CLASS CLAIMS AGAINST OPTUM SHOULD BE CERTIFIED. .........................21

   A. The Fourth Circuit Held That Optum Is A Party in Interest. ...................23

   B. The Fourth Circuit Identified Class-Wide Evidence Demonstrating That Optum Knowingly Participated In Prohibited Transactions............23

   C. Class-Wide Proof Demonstrates Class Members' Entitlement To Disgorgement From Optum.....................................................................24

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*AirFacts, Inc. v. de Amezaga*,
  909 F.3d 84 (4th Cir. 2018) ................................................................................22

*Allen v. GreatBanc Tr. Co.*,
  835 F.3d 670 (7th Cir. 2016) ..............................................................................25

*Amazon.com, Inc. v. WDC Holdings LLC*,
  No. 20-1743, 2021 WL 3878403 (4th Cir. Aug. 31, 2021) ...................... 2, 11, 16

*California v. Texas*,
  141 S. Ct. 2104 (2021) ................................................................. 1, 6, 7

*Carpenters Pension and Annuity Plan of Phil. and Vicinity v. Grosso*,
  No. 07-5013, 2009 WL 2431340 (E.D. Pa. Aug. 6, 2009) ...................................15

*CIGNA Corp. v. Amara*,
  563 U.S. 421 (2011) .............................................................................................8

*Donovan v. Bierwirth*,
  754 F.2d 1049 (2d Cir. 1985) ..............................................................................17

*FTC v. Bronson Partners, LLC*,
  654 F.3d 359 (2d Cir. 2011) ........................................................................ 11, 15

*FTC v. Vylah Tec LLC*,
  328 F. Supp. 3d 1326 (M.D. Fla. 2018) ..............................................................11

*Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002) ............................................................................................11

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ..............................................................................10

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
  530 U.S. 238 (2000) ............................................................................................23

*In re Trans-Indus., Inc.*,
  609 B.R. 608 (Bankr. E.D. Mich. 2019) ..............................................................15

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*,
   579 F.3d 220 (3d Cir. 2009) ..................................................................13

*Knieriem v. Group Health Plan*,
   434 F.3d 1058 (8th Cir. 2006) ...............................................................13

*LeBlanc v. Cahill*,
   153 F.3d 134 (4th Cir. 1998) .................................................................10

*Loren v. Blue Cross & Blue Shield of Mich.*,
   505 F.3d 598 (6th Cir. 2007) .................................................................10

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ...............................................................................10

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ...............................................................................19

*Pender v. Bank of Am. Corp.*,
   736 F. App'x 359 (4th Cir. 2018); .........................................................10

*Pender v. Bank of Am. Corp.*,
   788 F.3d 354 (4th Cir. 2015) .......................................................... 10, 12

*Perelman v. Perelman*,
   793 F.3d 368 (3d Cir. 2015) ..................................................................13

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021) ........................................................... *passim*

*Resnick v. Schwartz*,
   No. 17 C 04944, 2018 WL 4191525 (N.D. Ill. Sept. 3, 2019) .............14

*SEC v. Banner Fund Int'l*,
   211 F.3d 602 (D.C. Cir. 2000) ..............................................................11

*Staudner v. Robinson Aviation, Inc.*,
   910 F.3d 141 (4th Cir. 2018) .................................................................25

*Sweda v. Univ. Pa.*,
   923 F.3d 320 (3d Cir. 2019) ..................................................................23

iv

*Teets v. Great-West Life & Annuity Ins. Co.,*
   921 F.3d 1200 (10th Cir. 2019) .......................................................12

*Thole v. U.S. Bank N.A.,*
   140 S. Ct. 1615 (2020) .............................................................1, 3

*Thorn v. Jefferson-Pilot Life Ins. Co*.,
   445 F.3d 311 (4th Cir. 2006) .......................................................12

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ...................................... 1, 5, 6

*Parke v. First Reliance Std. Life Ins. Co.*,
   368 F.3d 999 (8th Cir. 2004) .......................................................13

**Statutes**

29 U.S.C. § 1109 ...........................................................................15

29 U.S.C. § 1109(a) .......................................................................14

29 U.S.C. § 1132(a)(2) ....................................................................15

29 U.S.C. § 1132(a)(3) .....................................................................1

**Other Authorities**

1 D. Dobbs, Law of Remedies § 4.3(5) (2d ed.1993) ...........................................12

**Rules**

North Carolina Rules of Professional Conduct, Rule 3.3 ...........................................2

## INTRODUCTION

The Fourth Circuit unequivocally held that Plaintiff has Article III standing to secure a surcharge or disgorgement remedy because she was unlawfully overcharged on at least one benefit claim. It is undisputed that all putative class members were similarly overcharged on at least one benefit claim. Applying the evidentiary showing that Plaintiff made in her original class certification submissions to the legal conclusions of the Court of Appeals, Plaintiff has easily satisfied the standards for class certification under Rule 23. The Court should certify the two putative classes.

Undeterred by the Fourth Circuit's rejection of the arguments on which Defendants opposed class certification, Defendants' supplemental opposition ("Supp. Opp'n") asks the Court to ignore the Fourth Circuit's findings and conclusions, which are law of the case. First, Defendants pretend that the Fourth Circuit failed to consider recent Supreme Court cases on Article III standing—*Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), and *California v. Texas*, 141 S. Ct. 2104 (2021). In fact, the Fourth Circuit considered each of those decisions and rejected Defendants' strained reading of them.

Second, Defendants claim that the equitable remedies that Plaintiff seeks under 29 U.S.C. § 1132(a)(3) (surcharge, disgorgement) require "tracing," but the Fourth Circuit has rejected this argument as well. Defendants rely upon inapposite

authority concerning tracing in the context of "equitable restitution" (a class remedy Plaintiff no longer seeks under § 1132(a)(3)), not cases addressing surcharge or disgorgement, and they glaringly omit any discussion of a recent Fourth Circuit decision that explicitly rejects Defendants' position: "***[D]isgorgement does not require tracing of specific funds in a defendant's possession***." *See Amazon.com, Inc. v. WDC Holdings LLC*, No. 20-1743, 2021 WL 3878403, at *6 (4th Cir. Aug. 31, 2021) (emphasis added). Defendants' risky failure to cite this dispositive ruling is, at best, disappointing. *See* North Carolina Rules of Professional Conduct, Rule 3.3 ("A lawyer shall not knowingly . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

Third, Defendants otherwise mischaracterize, at best, the Fourth Circuit's opinion as it bears on class certification. Most egregiously, they challenge commonality without even mentioning the Fourth Circuit's holding that Plaintiff satisfied Rule 23(a)'s commonality requirement. *See Peters v. Aetna Inc.*, 2 F.4th 199, 243 (4th Cir. 2021) (listing three common questions that satisfy commonality). They also ignore the Fourth Circuit's holding that plan terms such as "Network Provider" or "In-Network Provider" cannot reasonably be interpreted to mean Optum, *id.* at 233–34, and that administrative service contracts are not plan terms, *id.* at 233. Finally, they ignore the Fourth Circuit's holding that Optum could be

liable as a party in interest based on common evidence of its knowledge of Defendants' class-wide practice of burying Optum's administrative fee in medical claims. *See id.* at 240.

Defendants' recycled, losing arguments should be rejected. The classes should be certified.

## ARGUMENT

### I. THE FOURTH CIRCUIT ALREADY HELD THAT PLAINTIFF HAS ARTICLE III STANDING.

#### A. The Fourth Circuit Twice Rejected Defendants' Argument That Recent Supreme Court Decisions Undermine Plaintiff's Article III Standing.

Defendants' primary argument—that Plaintiff lacks Article III standing to seek surcharge or disgorgement in light of recent Supreme Court cases that the Fourth Circuit supposedly "did not address"—is pure fiction; Supp. Opp'n at 5. Defendants brought these very cases to the Fourth Circuit's attention. Defendants first did so in a notice of supplemental authority concerning *Thole*. UCCA4 Appeal 19-2085, Dkt. No. 55-1. Then, in their petition for panel rehearing or rehearing en banc, UCCA4 Appeal 19-2085, Dkt. No. 94, Defendants discussed *Thole* and the other two cases. The Fourth Circuit denied their petition out of hand. Defendants now seek a third bite at the same apple. Their argument is just as weak as it was on the first two tries and should be disregarded.

3

For context, as a basis for their attack on the Fourth Circuit's opinion, Defendants misconstrue the Fourth Circuit as having found that Plaintiff has Article III standing because "standing to sue under ERISA does not require an injury other than an alleged statutory violation." Supp. Opp'n at 5. To the contrary, the Fourth Circuit rightly held that for purposes of Article III standing, an overcharge on a single benefit claim in violation of plan terms is a concrete injury, not simply a statutory violation. As such, "the financial loss analysis must be conducted at the individual claims level rather than at the aggregate claims level." *Peters*, 2 F.4th at 218. The Fourth Circuit's view of Article III injury is entirely consistent with the Article III decisions on which Defendants rely.

In *Thole*, for example, the Supreme Court found that the plaintiffs had not suffered a cognizable injury because they had not alleged that ***any*** benefit they sought had been wrongfully adjudicated. As members of a defined-benefit pension plan, the plaintiffs' benefits were fixed by the plan's written terms, and they received exactly what the plan entitled them to receive every month. The payments "d[id] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole*, 140 S. Ct. at 1618. The *Thole* plaintiffs did not allege that any of their past benefit claims had been wrongfully calculated in contravention of plan terms. Because they could not allege that the outcome of the case would have any impact on them whatsoever, they had no injury.

4

Here, in contrast, it is undisputed that every class member was overcharged on at least one benefit claim and that the challenged scheme caused those overcharges for every member of the class. *See Peters*, 2 F.4th at 243 ("the underlying harm derives from the same common contention—that Appellees' fee-shifting scheme breached the terms of the applicable Plan and constituted a breach of fiduciary duty"). Indeed, Plaintiff has proven precisely what the *Thole* plaintiffs could not—that the misconduct at issue led to an overcharge on at least one benefit claim that harmed her, just as it did for all class members.

In *TransUnion*, the Supreme Court considered whether two groups of class members had standing to challenge TransUnion's failure to follow reasonable procedures in violation of the Fair Credit Reporting Act. TransUnion flagged certain individuals as potential matches for names of terrorists on the U.S. Treasury Department's Office of Foreign Assets Control's list of "specially designated nationals" (the "OFAC list") without taking any further steps to assess whether the individuals were actually one of the names on the OFAC list. For the group of class members for whom TransUnion sent an alert to a third party that the individual was a potential match, the Supreme Court had "no trouble" concluding that they had been injured, even without any evidence that the class member had been denied credit or suffered any monetary harm related to the alert. *See TransUnion*, 141 S. Ct. at 2209. The concrete injury was the fact that the third party now had the information, and

this was precisely the type of harm that Congress intended to stop by requiring adequate procedures. For the other group of class members whose information simply sat on a TransUnion data server, never seeing the light of day, the Supreme Court found they had not been injured. *See id.* at 2212–13.

The putative classes in this case are like those for whom the *TransUnion* Court had "no trouble" finding Article III standing. All class members in this case were overcharged on benefit claims in violation of their plan terms, a harmful action that Congress plainly intended to curtail through ERISA's broad enforcement mechanisms. It is of no moment whether class members also suffered financial injury in the aggregate. The *TransUnion* Court's holding that the defendant's disclosure of the "potential match" information ***alone*** caused "a concrete harm that qualifies as an injury in fact"—without any showing of any additional adverse event (e.g., being refused credit, suffering monetary harm) that resulted from that disclosure, *see id.* at 2209—is entirely consistent with the Fourth Circuit's decision in this case.

In *California*, the Supreme Court reiterated the unremarkable proposition that the redressability requirement for Article III standing requires a court to consider the relationship between the injury suffered and the requested relief. 141 S. Ct. at 2115. That is precisely what the Fourth Circuit did. Defendants refer to the Fourth Circuit's statement that "these inquiries remain separate and distinct," but the Fourth Circuit

was making an entirely different point: that the question of whether Plaintiff has standing is separate from the question of whether she can prevail on the merits. *Peters*, 2 F.4th at 217. In *California*, the plaintiffs sought declaratory relief that the minimum essential coverage provision of the Affordable Care Act was unconstitutional because it set the penalty amount at zero dollars. The Supreme Court found that, in the absence of anything else, the plaintiffs lacked standing to sue because the declaration the plaintiffs sought would not impact them and would amount to nothing more than an advisory opinion. *California*, 141 S. Ct. at 2116.

Here, the opposite is true. The Fourth Circuit carefully examined each remedy potentially available to Plaintiff—surcharge, disgorgement, restitution, and injunctive relief—with an eye towards how each category of equitable relief would (or would not) redress Plaintiff's injury. *See Peters*, 2 F.4th at 217–21. With respect to the restitution remedy, which focuses on making a plaintiff whole, the Fourth Circuit found that personal financial harm in the aggregate was required. *Id*. at 221. But since surcharge and disgorgement focus on preventing a defendant's unjust enrichment, the Fourth Circuit explicitly found that those remedies did not require this type of analysis. All that is required to establish standing is proof that Defendants were unjustly enriched on discrete benefit claims. That evidence is undisputed.

In sum, Defendants' brazen request that this Court ignore the Fourth Circuit's view of Article III standing—a request based on the false premise that the Fourth

Circuit did not consider recent Supreme Court jurisprudence, and based on their own misapplication of those cases—should be rejected.

### B. Plaintiff Does Not Need To Show Direct Financial Injury To Seek Surcharge And Disgorgement On A Class-Wide Basis.

Defendants next try to undercut the Fourth Circuit's view of injury by insisting that Plaintiff must, but cannot, show a "direct financial injury" to bring her claims for equitable relief. But the Fourth Circuit held that Plaintiff suffered a legally cognizable injury-in-fact to establish Article III standing "even without a personal financial injury." *Peters*, 2 F.4th at 218–21.[1] Accordingly, Defendants' argument—that Plaintiff cannot represent a class of persons who suffered the same injury she did because she suffered no "***direct financial injury***," Supp. Opp'n at 9 (emphasis added)—fails from the outset.[2]

Moreover, in asserting that "surcharge and disgorgement are forms of equitable restitution," *see* Supp. Opp'n at 10, Defendants ask this Court to ignore the

---

[1] In any event, Plaintiff *can* show a direct financial injury because the Fourth Circuit instructed that for standing to seek surcharge or disgorgement, injury is determined on a claim-by-claim basis, not in the aggregate. *Peters*, 2 F.4th at 219.

[2] The Court must reject Defendants' tired claim that Plaintiff impermissibly seeks "money damages" for Defendants' fiduciary breaches. Supp. Opp'n at 10, 17–18. That claim is foreclosed by the Fourth Circuit's decision. Plaintiff seeks precisely the forms of § 1132(a)(3) relief that the Fourth Circuit confirmed are available to her in this case. *See Peters*, 2 F.4th at 244. The Supreme Court and the Fourth Circuit have unequivocally held that none of these equitable remedies are "money damages." *Id.* at 216–17; *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011).

8

careful distinctions that the Fourth Circuit drew between the different forms of equitable relief that Plaintiff seeks, and to impose a "financial injury" requirement on surcharge and disgorgement that does not exist. *Peters*, 2 F.4th at 216–17 (describing the particular features of equitable restitution, surcharge, disgorgement, and injunctive relief); *id.* at 221 (emphasizing that unlike restitution, "Peters' claims based on surcharge, disgorgement, and declaratory and injunctive relief . . . do not require a showing of personal financial harm").[3]

Defendants are similarly misleading when they contend that "[e]ven Peters argues that the Court must determine the 'benefit accrued [by Defendants]' for her claims." *See* Supp. Opp'n at 10. By tacking on the phrase "for her claims," Defendants turn the Fourth Circuit's conclusion on its head. The Fourth Circuit's point was exactly the opposite: "[A] claim for surcharge under an unjust enrichment theory requires no showing of financial injury, but rather a benefit accrued by one or both of the Appellees, which Peters sufficiently demonstrates based on her claim that Aetna bypassed its obligation to pay Optum's administrative fee." *Peters*, 2 F.4th at 220. The Fourth Circuit held the same as to disgorgement. *Id.* ("[R]equiring a financial loss for disgorgement claims would effectively ensure that wrongdoers could profit from their unlawful acts as long as the wronged party suffers no financial

---

[3] The Fourth Circuit also held that Plaintiff can pursue these remedies on behalf of her Plan, thus Defendants' arguments fail as to the plan class for the same reasons. *Peters*, 2 F.4th at 221.

loss.") (quoting *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 366 (4th Cir. 2015)). And the Fourth Circuit explicitly rejected Defendants' contention that Plaintiff must have suffered an individualized injury to maintain a claim for relief under 29 U.S.C. § 1132(a)(3) for a violation of ERISA fiduciary duties. *Id.* at 220–21 (citing *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 610 (6th Cir. 2007)). In any event, even if Defendants could successfully raise individualized questions as to the ultimate award of damages or equitable relief under ERISA, "the need for individualized proof of damages alone will *not* defeat class certification." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003).

As the Fourth Circuit—and the cases that it cited—make clear, the equitable remedies that Plaintiff seeks are designed to prevent fiduciaries like Defendants from benefitting from their fiduciary breaches. The Fourth Circuit case relied upon by Defendants reaffirmed that "even if the participants suffered no monetary harm from the violation," ERISA does not allow a plan fiduciary to wrongfully use participants' funds for the fiduciary's benefit, and the fiduciary "must disgorge its ill-gotten benefit to plan participants." *Pender v. Bank of Am. Corp.*, 736 F. App'x 359, 372 (4th Cir. 2018); *see also Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (fiduciaries must disgorge plan assets obtained through prohibited transactions under 29 U.S.C. § 1106); *see also LeBlanc v. Cahill*, 153 F.3d 134, 153 (4th Cir. 1998) (same). Here, even if the Fourth Circuit had not already held that Defendants

benefitted by passing on Optum's administrative fee to Aetna-administered plans and the beneficiaries of those plans, it is obviously a common question.

## II. UNDER CLEAR AND BINDING FOURTH CIRCUIT AUTHORITY, THE REMEDIES THAT PLAINTIFF IS PURSUING DO NOT REQUIRE TRACING.

In direct contravention of the Fourth Circuit's opinion, Defendants also argue that the surcharge and disgorgement remedies require tracing, and that Plaintiff cannot do so. Supp. Opp'n at 16–18. However, Defendants completely misstate Fourth Circuit law and are wrong on the facts.

### A. The Fourth Circuit Has Held That Equitable Tracing Is Not Required For Disgorgement And Surcharge Claims.

Defendants' claim that disgorgement and surcharge require tracing is flatly contradicted by controlling Fourth Circuit authority. Just six weeks ago in *Amazon.com*, the Court of Appeals held that "***disgorgement does not require tracing of specific funds in a defendant's possession***." 2021 WL 3878403, at \*6 (emphasis added) (citing *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011); *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000); *FTC v. Vylah Tec LLC*, 328 F. Supp. 3d 1326, 1331 (M.D. Fla. 2018)).

Defendants do not cite *Amazon.com*, which forecloses their argument. Unsurprisingly, none of the cases they rely upon is contrary to that decision. *Great-West Life & Annuity Insurance Co. v. Knudson* concerned equitable restitution, not claims seeking remedies under § 1132(a)(2) or equitable remedies such as surcharge

11

or unjust enrichment. 534 U.S. 204 (2002).[4] Indeed, in *Knudson* the Supreme Court confirmed that a plaintiff can recover profits produced by the defendant's use of his property, ***even if he cannot identify a particular res containing the profits sought to be recovered***. *Id.* at 214 n. 2 (citing 1 Dobbs § 4.3(1), at 588, and § 4.3(5), at 608). As discussed *supra*, Section I.B, the Fourth Circuit carefully distinguished between these different equitable remedies in the case at bar and held that Plaintiff was entitled to at least two of them—surcharge and unjust enrichment.

Defendants wholly mischaracterize the Fourth Circuit's statement in *Pender* that an accounting for profits "requires the disgorgement of 'profits ***produced by property*** which in equity and good conscience belonged to the plaintiff.'" 788 F.3d at 364 (emphasis added) (quoting 1 D. Dobbs, Law of Remedies § 4.3(5), at 608 (2d ed.1993)). By omitting the phrase "produced by property," Defendants again change the meaning of the Fourth Circuit's statement, which is that this equitable remedy does ***not*** require tracing.

Defendants also rely on out-of-Circuit, inapposite cases to try to convince this Court to reject the binding precedents of the Fourth Circuit. In *Teets v. Great-West Life & Annuity Ins. Co.*, for example, the Tenth Circuit agreed that disgorgement is available under § 1132(a)(3) when a plaintiff identifies "property or money wrongly

---

[4] Defendants' halfhearted citation to *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006), *see* Supp. Opp'n at 16, is equally unavailing as that case also concerned restitution, not disgorgement or surcharge.

held" by a fiduciary that was used to generate profits for the fiduciary. 921 F.3d 1200, 1226 (10th Cir. 2019) (quoting *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 238 (3d Cir. 2009)). By showing that Aetna wrongly caused her and her plan to pay Optum's administrative fee, thereby increasing Aetna's profits by the amount that Aetna should have paid but did not, Plaintiff has shown what Mr. Teets could not. *See id.* at 1229–30. In *Knieriem v. Group Health Plan*, the plaintiff did not dispute that he sought "money damages," unlike here, where Plaintiff seeks equitable relief. 434 F.3d 1058, 1060 (8th Cir. 2006). Defendants do not tell the Court that the language they cite from *Knieriem* actually came from an earlier Eighth Circuit decision which affirmed that "***it is not necessary for the plaintiff to identify any particular res or fund of money holding the profits***" in order to obtain disgorgement. *See Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004) (emphasis added) (cited in *Knieriem*, 434 F.3d at 1063). Finally, Defendants' reliance on *Perelman v. Perelman*, 793 F.3d 368 (3d Cir. 2015) is misplaced because that case concerned a plaintiff's standing **under a defined benefit plan**—which is very different from the health plans at issue here for the reasons discussed above in reference to *Thole*. *See supra* Section I.A.[5]

---

[5] Defendants press that Plaintiff must show her "individual right to the defendant's profit," relying on the inapposite holding in *Perelman*. Supp. Opp'n at 16. But the Fourth Circuit resolved that issue in Plaintiff's favor, finding that Plaintiff did demonstrate that Aetna benefited from deceptively shifting the payment of Optum's administrative fee to Plaintiff and her plan. *Peters*, 2 F.4th at 220.

## B. Defendants Do Not Establish That Tracing Is Required For Forms Of Relief Expressly Allowed Under Section 502(a)(2).

Even assuming that tracing might otherwise apply to equitable remedies Plaintiff may pursue under 29 U.S.C. § 1132(a)(3), Defendants do not even argue, let alone demonstrate, that tracing applies to the remedies expressly provided under § 1132(a)(2) to redress a fiduciary breach. Section 1132(a)(2) provides that a breaching fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Section 1109(a) also subjects the wayward fiduciary "to such other… remedial relief as the court may deem appropriate." *Id.* Given that the tracing requirement flows solely from the fact that the available relief under §1132(a)(3) is equitable, not legal, it is inapplicable to relief under § 1109(a), which makes a breaching fiduciary "personally liable" for losses caused to an ERISA plan. None of the explicitly described remedies under § 1109(a)—restoring losses to the plan, disgorgement of profits earned with plan assets, or other appropriate "remedial" (as opposed to equitable) relief—requires tracing. *See Resnick v. Schwartz,* No. 17 C 04944, 2018 WL 4191525, at *5 and n.9 (N.D. Ill. Sept. 3, 2019) (while tracing "to an identifiable fund" may be required to recover against a non-

fiduciary under § 1132(a)(3), a fiduciary is "personally liable" to the plan for losses caused by fiduciary breaches under § 1109).[6]

### C. Even If This Court Were To Impose A Tracing Requirement, Plaintiff Can Satisfy It Through Class-Wide Proof.

Even if disgorgement did require tracing, Plaintiff can satisfy that requirement on a class-wide basis. It is undisputed that Plaintiff can show, based on common evidence, that Aetna paid the Optum administrative fee (which it collected from plans and participants, as reflected in the Explanations of Benefits ("EOBs")) to Optum. Moreover, Plaintiff can establish through common evidence the "particular funds" in Optum's possession that belong in good conscience to putative class members or their plans: specifically, the "slush" account in which Optum kept the administrative fee payments it received. Dkt. No.199-17, Eichten Tr. 210:3–211:25. Even if Optum commingled this money, "as long as the amount in the account exceeds the amount of misappropriated funds that were deposited there, all the plaintiffs' money is still in the account." *See Bronson Partners*, 654 F.3d at 373 n.8. Further, it is irrelevant that the payments into Optum's "slush" account came from

---

[6] *See also e.g., Carpenters Pension and Annuity Plan of Phil. and Vicinity v. Grosso*, No. 07-5013, 2009 WL 2431340, at *6 (E.D. Pa. Aug. 6, 2009) ("Lying and misappropriating plan assets for one's own use breaches a fiduciary duty. . . . Accordingly, [the breaching fiduciary] is personally liable to the Pension Plan for the payments he received as a result of his deception and the earnings on those payments.") (citing 29 U.S.C. §§ 1109, 1132(a)(2)); *In re Trans-Indus., Inc.*, 609 B.R. 608, 642 (Bankr. E.D. Mich. 2019) (characterizing relief under 29 U.S.C. § 1132(a)(2) as "damages" rather than equitable relief).

Aetna, rather than directly from the plans, because Aetna acted with the authority to issue the checks. Dkt. No. 199-20, Aetna 30(b)(6) Tr. 117:7–23. Finally, it is undisputed that Aetna transferred administrative fee payments to Optum, and Optum does not dispute that the funds are in its bank account. Indeed, Defendants' request for an equitable tracing requirement (notwithstanding the Fourth Circuit's decisions in *Amazon.com* and this case) alone justifies keeping Optum in the case as a defendant.

## III. THE PUTATIVE CLASSES EASILY MEET THE RULE 23 REQUIREMENTS.

### A. The Fourth Circuit Already Held That There Are Common Questions.

In her original class certification briefs and opening supplemental brief, Plaintiff identified multiple questions that satisfy the commonality requirement of Rule 23(a)(2). The Fourth Circuit agreed, finding that "***there are common issues of law and fact***, including, for instance, whether Aetna was a fiduciary; whether it breached its duties to plans and plan participants by directing Optum to bury its administrative fee in the claims process; and whether its breach amounted to a harm as to the particular plan and plan participants." *Peters*, 2 F.4th at 243 (emphasis added). That is the law of the case.

Nonetheless, Defendants labor to undo the Fourth Circuit's finding. They first claim that purported variations in plan language, as well as in Aetna's contracts,

communications, and course of dealing with each plan sponsor, defy commonality. The Fourth Circuit also rejected both of these arguments. Defendants' argument that the plan language purportedly differs for terms such as "Network Provider" and "In-Network Provider," Supp. Opp'n at 14 n.8, is foreclosed by the Fourth Circuit's emphatic holding that it is unreasonable to interpret any plan language's definition of "provider" to mean an entity like Optum. *Peters*, 2 F.4th at 212, 233–34.[7] Put simply, and as demonstrated in Plaintiff's prior briefs, *see* Dkt. Nos. 146, 179 & 256, any differences in plan language that Defendants cite to are immaterial. *Second*, Defendants assert that differences in the administrative service contracts undermine commonality, but again, the Fourth Circuit already found unambiguously that it is the SPD, not the MSA, that must be used to interpret plan terms. *Peters*, 2 F.4th at 233; *see also id.* at 229 (stating that "the lodestar to determining fiduciary or party in interest liability ***are the terms of the Plan***") (emphasis added).

Defendants next contend that *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985), requires the Court to apply an individualized analysis for each class member to determine whether Aetna was unjustly enriched. Again, this argument ignores the Fourth Circuit's decision, which clearly stated that a *Donovan* analysis must only be conducted for a restitution claim, ***not*** a claim for disgorgement or surcharge. *See*

---

[7] This Court has already found that "[t]here does not appear to be any meaningful variation of these terms among the plans," *see* Sept. 6, 2018 Order at 2, Dkt. No. 156, another critical judicial finding that Defendants conveniently fail to address.

*Peters*, 2 F.4th at 244 ("claims for surcharge, disgorgement, and declaratory and injunctive relief . . . do not require a showing of direct financial injury").[8]

### B. It Follows From The Fourth Circuit's Opinion That Plaintiff Is A Typical And Adequate Class Representative.

For the reasons discussed in Sections I and II, Defendants' argument that Plaintiff's claims are atypical and that she is an inadequate class representative because she was not injured by the challenged conduct, is not personally entitled to disgorgement or surcharge, and cannot satisfy the tracing requirement, fail for numerous reasons. Moreover, Plaintiff has no conflict with the class with respect to the requested relief. Indeed, the focus of the requested surcharge or disgorgement remedy is Defendants' ill-gotten gains, rendering it impossible that any class member would be worse off if the Court orders this remedy. *See supra* Section I.B.

Defendants also argue that Plaintiff is atypical because, as a former plan member, she lacks Article III standing to seek prospective declaratory or injunctive relief. Supp. Opp'n at 4. They are wrong about this as well. First, Defendants calculated Plaintiff's financial responsibility for deductible claims using Optum's rate and told Plaintiff in EOBs that she "owed" those charges. Dkt No. 233-17 (March 20, 2014 EOB for a February 19, 2014 service using Optum's rate, rather

---

[8] As discussed in Section II, Defendants' argument that a "tracing" requirement for disgorgement and surcharge remedies defeats commonality is directly contrary to recent Fourth Circuit jurisprudence.

than provider's rate, for deductible claim). However, Defendants never collected this money from her, and never told her that these statements were false or that she was not financially responsible for the charges.[9] As such, there is a risk of future harm if Defendants ever attempt to collect on these deductible claims. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–55 (2010) (finding that the plaintiffs established standing to seek injunctive relief where they demonstrated a substantial risk of future harm). Plaintiff is entitled to an injunction to prevent this action, along with all the other class members who face the identical threat of future harm. Second, Defendants also ignore injury to the Mars Plan, which is still being harmed by the challenged practices. Since Plaintiff has standing to pursue her claims, as detailed above, she may also seek appropriate relief on behalf of the plan under §1132(a)(2), as the Fourth Circuit held.[10]

### C. The Classes Should Be Certified Under Rule 23(b)(3).

In light of the Fourth Circuit's decision, Plaintiff's showing in her original class certification papers easily satisfies the requirements of Rule 23(b)(3).

---

[9] Defendants coined the term "deductible credit" in this litigation and have argued in legal briefs submitted by their outside counsel that they do not intend to collect these "deductible credits," but absent an injunction enforcing such promise, Defendants could issue a recoupment demand to Plaintiff for these uncollected charges at any time.

[10] It is undisputed that the putative classes meet the numerosity requirement of Rule 23(a)(1).

Defendants do not dispute that Plaintiff has satisfied the superiority requirement, and challenge only Rule 23(b)(3)'s predominance requirement on the grounds that the Fourth Circuit "spent many pages analyzing the Mars Plan's language" and "analyzing Peter's individual claims history," which it would supposedly have to do for each class member. Supp. Opp'n at 19, 20. Not true. Defendants again mischaracterize the Fourth Circuit's analysis which rejected Defendants' position.

First, as there is no material variation among plan terms, *see supra* Section III.A (and prior briefing), the Fourth Circuit's analysis of the Mars Plan's material language applies to all plans in the class. Second, there is common evidence that every class member had at least one claim that was subjected to Defendants' overcharge scheme, and the Fourth Circuit held that is all that is required to pursue surcharge or disgorgement, without any need for an analysis of individual claims history in the aggregate. *See Peters*, 2 F.4th at 244. And the issues that the Fourth Circuit found common to the putative classes, including "whether [Aetna] breached its duties to plans and plan participants by directing Optum to bury its administrative fee in the claims process; and whether its breach amounted to a harm as to the particular plan and plan participants," *id*. at 243, predominate because they are issues far more central to resolution of the case than any individual issues. Finally, as there is no tracing requirement for a disgorgement remedy, there is no individualized inquiry as to the flow of any assets. *See supra* Section II.

### D. The Classes Could Also Be Certified Under Rule 23(b)(1)(A).

Certification under Rule 23(b)(1)(A) is appropriate where individual actions would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct. In response to Plaintiff's argument that it would be untenable for some courts to allow Defendants to pass on Optum's administrative fees to some plans and insureds, but not others, Defendants argue that this would be just fine. Supp. Opp'n at 22–23. This is nonsense.

First, as the Fourth Circuit found, it is unreasonable to read the Mars Plan language to mean that Optum is a "provider." Second, as this Court found and Plaintiff has demonstrated, the relevant language in the Mars Plan is materially indistinguishable from the language in all other class members' plans. *See* Dkt. Nos. 146-13, 156. Third, it is undisputed that Defendants imposed the same fee-shifting scheme on all class members. These facts easily demonstrate that there is a "risk of inconsistent or varying adjudications that would establish incompatible standards of conduct" if all class members' claims are not resolved at the same time.

### IV. THE FOURTH CIRCUIT'S DECISION CONFIRMS THAT CLASS CLAIMS AGAINST OPTUM SHOULD BE CERTIFIED.

Recycling arguments that have been squarely rejected by the Fourth Circuit twice,[11] Optum separately asks this Court to deny class certification of the claims against it. *See* Supp. Opp'n at 24–30. Optum's position is foreclosed by the analysis of the Fourth Circuit, which concluded that common evidence demonstrated that "Optum could be held liable as a party in interest involved in prohibited transactions based on its apparent participation in and knowledge of Aetna's administrative fee billing model." *Peters*, 2 F.4th at 240.

As a preliminary matter, Optum attempts to wriggle out of class liability by arguing that Plaintiff's sole remaining claim against it is for disgorgement and that she abandoned that claim. Neither contention is correct. First, multiple claims against Optum remain in this litigation; Optum inexplicably ignores Plaintiff's claims for declaratory and injunctive relief. Second, as the Fourth Circuit pointed out, Plaintiff has asserted her claims against Optum throughout this litigation, *see id.*, and has not abandoned those claims. *Id.* at 240 n.21 (citing *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 92–93 (4th Cir. 2018) ("If not express, abandonment must be clear and unambiguous.")).

Indeed, Defendants do not (and could not plausibly) contest that Plaintiff may bring a disgorgement claim against Optum, a party in interest. *See id.* at 229

---

[11] Optum raised nearly identical arguments in Defendants' brief on appeal and their failed petition for panel rehearing or rehearing en banc. *See* UCCA4 Appeal 19-2085, Dkt. No. 43 at 51–56; UCCA4 Appeal 19-2085, Dkt. No. 94 at 19–26.

(explaining that a nonfiduciary party in interest may incur ERISA liability where it participated in a prohibited transaction and "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful") (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000)). All of Plaintiff's claims against Optum remain ripe for class certification.

**A. The Fourth Circuit Held That Optum Is A Party In Interest.**

The Fourth Circuit directly rejected Optum's contention, *see* Supp. Opp'n at 25, that it was not a party in interest because Optum did not have pre-existing relationships with the Aetna plans before entering into the Aetna-Optum contracts. *See Peters*, 2 F.4th at 239 ("While the district court indicated that Optum could not be a party in interest as a matter of law because Optum had no 'pre-existing relationship[s]' with either the Plan or Aetna . . . *this is incorrect*.") (emphasis added). The Fourth Circuit held that Optum could be a party in interest "because it 'provided services to the plan at the time [its administrative] fees were paid[.]" *Id.* at 240 (quoting *Sweda v. Univ. Pa.*, 923 F.3d 320, 339 (3d Cir. 2019)). This is indisputably true for all class members' plans.

**B. The Fourth Circuit Identified Class-Wide Evidence Demonstrating That Optum Knowingly Participated In Prohibited Transactions.**

Defendants also renew their erroneous contention that the Court will need to undertake an individualized inquiry to determine whether Optum knew or should have known that it was engaging in prohibited transactions with each class member's

plan. Supp. Opp'n at 26–28. Again, the Fourth Circuit wholly rejected this argument. The Fourth Circuit held, based on class-wide evidence, that Optum had the requisite knowledge to be liable as a party in interest to Plaintiff—a holding that necessarily extends to every class member. Specifically, the Fourth Circuit cited to record evidence of Optum employees raising concerns about Aetna's "very problematic" approach to member and plan responsibility in general. *Peters*, 2 F.4th at 240 n.20 (internal citation omitted). This evidence was not in regard to Plaintiff's specific benefit claims, but "the legitimacy of the administrative fee billing model." *Id*. at 240. Relying on this class-wide evidence, the Fourth Circuit concluded that "a reasonable factfinder could infer that Optum was fully aware of the questionable nature" of Aetna's questionable billing practices "and concurred in it." *Id.* at 240. In other words, Optum's knowledge of the illegality of its scheme with Aetna is a class-wide question that can be proven through common evidence. Optum offers no evidence to the contrary.

### C. Class-Wide Proof Demonstrates Class Members' Entitlement To Disgorgement From Optum.

Optum further argues that Plaintiff is not entitled to disgorgement from Optum because she has not met the equitable tracing requirement and the administrative fees paid to Optum constituted "reasonable compensation." *See* Supp. Opp'n at 28–30. As explained above, *see* Section II.A, disgorgement does not require equitable tracing. Further, Defendants' reasonable compensation defense is both untimely and

fails on the merits. Reasonable compensation under § 408(b)(2) is an affirmative defense, which must be pleaded. *See Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (section 408 exemptions are affirmative defenses). Defendants did not do so, so that defense is waived. *See Staudner v. Robinson Aviation, Inc.*, 910 F.3d 141, 148 (4th Cir. 2018) (affirmative defenses are waived if not pleaded).

Even if Defendants had pleaded this affirmative defense, however, it would be irrelevant to class certification or Optum's ultimate ERISA liability. Plaintiff does not challenge Optum's right to be compensated by Aetna for the work it performed, she challenges Defendants' decision to force plans and class members to pay those amounts. Defendants offer no evidence, much less individualized evidence, indicating that it was ever reasonable for plans and members to bear Optum's administrative charges masquerading as medical expenses. Indeed, it is undisputed that Aetna is paid by the plans for all of the administrative work it subcontracts to Optum. *See* Dkt. No. 56 at ¶ 14. Put simply, common evidence defeats this unpled defense. Moreover, regardless of what remedies this Court orders, Optum will always be free to seek additional payments from Aetna if it desires, but this consideration is entirely irrelevant to class certification.

## CONCLUSION

Plaintiff's Motion for Class Certification should be granted.

Dated: October 15, 2021

D. Brian Hufford*                          s/ Larry McDevitt
Jason S. Cowart*                           Larry McDevitt
Nell Z. Peyser*                            David M. Wilkerson
ZUCKERMAN SPAEDER LLP                      THE VAN WINKLE LAW FIRM
485 Madison Avenue, 10th Floor             11 North Market Street
New York, NY 10022                         Asheville, NC 28801
(212) 704-9600                             (828) 258-2991
(212) 704-4256 (fax)                       lmcdevitt@vwlawfirm.com
dbhufford@zuckerman.com
jcowart@zuckerman.com
npeyser@zuckerman.com

                                           *Attorneys for Plaintiff Sandra M. Peters,*
Andrew N. Goldfarb**                       *on behalf of herself and all others*
Alyssa Howard**                            *similarly situated*
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, DC 20036
(202) 778-1800
(202) 822-8106
agoldfarb@zuckerman.com
ahoward@zuckerman.com

*\* pro hac vice*
*\*\* pro hac vice pending*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 15th day of October, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification via electronic means to the attorneys of record at that time.

*s/ Larry McDevitt*
Larry McDevitt