# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL CASE NO. 1:15-cv-00109-MR

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| AETNA, INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, INC., ) ) ) ) ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on remand from the United States Court of Appeals for the Fourth Circuit for, *inter alia*, further consideration of the Plaintiff's Motion for Class Certification [Doc. 144]. Peters v. Aetna, Inc., 2 F.4th 199 (4th Cir. 2021).

## I.    PROCEDURAL BACKGROUND

The Plaintiff Sandra M. Peters brings this putative class action against the Defendants Aetna, Inc., Aetna Life Insurance Company (collectively, "Aetna"), and OptumHealth Care Solutions, Inc. ("Optum"), asserting claims pursuant to the Employee Retirement Income Security Act of 1974, as

amended, 29 U.S.C. § 1001, et seq. ("ERISA").[1] [Doc. 1]. In her Complaint, the Plaintiff alleges that Aetna engaged in a fraudulent scheme with its subcontractor Optum, whereby insureds were caused to pay Optum's administrative fees because the Defendants misrepresented such fees as medical expenses. The Plaintiff alleges that these misrepresentations

> allow[ ] Aetna to illegally (i) obtain payment of [Optum's] administrative fees directly from insureds when the insureds' deductibles have not been reached; (ii) use insureds' health spending accounts to pay for these fees; (iii) inflate insureds' co-insurance obligations using administrative fees; (iv) artificially reduce the amount of available coverage for medical services when such coverage is subject to an annual cap; and (v) obtain payment of the administrative fees directly from employers when an insured's deductible has been exhausted or is inapplicable.

[Id. at ¶ 2]. The Plaintiff seeks relief for the Defendants' misconduct under ERISA, 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3) for the following relief: (1) restitution for amounts overcharged; (2) disgorgement and surcharge for the Defendants to return any improper gains; and (3) various declaratory and injunctive relief. [See id. at ¶¶ 91-101]. The Plaintiff seeks to bring this as a class action on behalf of two classes: a class of self-insured plans which

---

[1] The Plaintiff also asserted two claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO"). Those counts, however, were dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 54].

were forced to pay Optum's administrative fees as a result of the Aetna-Optum arrangement, and a class of "members," i.e., participants and beneficiaries of Aetna insured/administered plans, who were also forced to pay such fees.

Following a period of discovery, the Plaintiff moved for class certification [Doc. 144], which the Defendants opposed [Doc. 171], and the Defendants filed motions for summary judgment [Docs. 188, 225]. The Court denied the class certification motion, and in a separate order granted both Defendants summary judgment, thereby dismissing all of the Plaintiff's claims. [Docs. 203, 242].

The Plaintiff appealed both rulings. The Fourth Circuit affirmed in part, reversed in part, vacated in part, and remanded this matter for further proceedings consistent with the Fourth Circuit's opinion. Peters v. Aetna, Inc., 2 F.4th 199 (4th Cir. 2021). The Defendants filed a petition for rehearing or rehearing en banc, which was denied. See Peters v. Aetna, Inc., No. 19-2085, Doc. 96 (4th Cir. July 20, 2021). The Supreme Court denied the Defendants' petition for a writ of certiorari. OptumHealth Care Solutions v. Peters, 142 S. Ct. 1227 (2022).

On remand, the Court directed the parties to file supplemental briefs on the issue of class certification. [Doc. 254]. The parties thereafter filed

their supplemental briefs. [Docs. 256, 259, 262, 267]. Additionally, the Defendants filed a Notice of Supplemental Authority [Doc. 270], to which the Plaintiff responded [Doc. 271]. Having been fully briefed, this matter is ripe for disposition.

## II.    STANDARD OF REVIEW

The party seeking class certification bears the burden of demonstrating compliance with Rule 23. "A party seeking class certification must do more than plead compliance with the aforementioned Rule 23 requirements. Rather, the party must present evidence that the putative class complies with Rule 23." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014) (internal citations omitted). While the plaintiff bears the burden of demonstrating compliance with Rule 23, the Court "has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." Id. at 358 (quoting in part Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011)). To satisfy this obligation, the Court may "probe behind the pleadings before coming to rest on the certification question." Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (citation and internal quotation marks omitted). Ultimately, the decision to certify a class action is within the discretion of the Court. Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003).

4

## III.  FACTUAL BACKGROUND

Aetna insures, underwrites, and administers health benefits plans. [Doc. 56 at ¶ 5].  Aetna's responsibilities under its plans include processing and administering claims, as well as entering into network participation agreements with providers.  [Id. at ¶ 21].  In addition, Aetna receives compensation from plan sponsors of self-funded[2] plans in exchange for providing these administrative services.  Those fees are set forth in "administrative services agreements."  [Id. at ¶ 14].

At the time that this litigation was filed, the Plaintiff Sandra Peters was a member of a self-insured health insurance plan offered through her husband's former employer, Mars, Inc. ("the Mars Health Care Plan" or simply "the Plan"). The Mars Health Care Plan is one of approximately 1,600 self-insured plans that Aetna administers.  The Plaintiff, however, is no longer a member of the Mars Health Care Plan.  See Peters, 2 F.4th at 221 n.11 (citing J.A. 2046: Peters Dep. at 39)9.

In 2011, Aetna sought to retain Optum to contract with physical therapy and chiropractic providers on its behalf and process claims for member benefits submitted by those providers.  [See Doc. 146-7 at  2-3 (Feb. 28,

---

[2] "Self-funded" or "self-insured" plans are ones in which employers are "financially responsible for payment of benefits owed under the terms of the plan."  [Id. at ¶ 4].

5

2011 email)]. Aetna agreed to pay Optum a "per-visit rate" or "case rate" for each claim (the "Optum Rate"). [Doc. 144-13: Network Reference Tool at 3-4; Doc. 146-23: Aetna 30(b)(6) Dep. at 101-02]. As such, Aetna treated Optum as the "provider." The result was to include Optum's administrative fees as part of the claim, and the Optum Rate (including those administrative fees) as the "Negotiated Charge" and a "Covered Expense" under all of its plans. [Doc. 146-23: Aetna 30(b)(6) Dep. at 39-42, 150-54]. When a plan was responsible to pay for some or all of a claim, Aetna would determine both the plan's and the member's financial responsibility using the Optum Rate, rather than using the actual amount the medical provider had agreed to receive for the treatment rendered.[3] [Id. at 170]. Through this practice, Optum was able to collect an administrative fee from the payments made by the plans as compensation for its services to Aetna.

The Plaintiff received chiropractic care and physical therapy services from Optum providers from 2013 through 2015. [Doc. 1 at ¶¶ 40-56]. She contends that the Aetna-Optum arrangement wrongfully allowed Optum to

---

[3] According to the Defendants, when a claim was subject to a member's deductible—such that the plan did not have to pay for the claim—the Defendants did not instruct the provider to collect the Optum Rate, and Optum itself did not seek to collect it, such that the member was responsible for paying only the actual provider's agreed charge. [See Doc. 146-23: Aetna 30(b)(6) Dep. at 167-69].

"bury" its administrative fees in claims, and that Aetna misled her by representing these administrative fees as medical expenses. [Id.]. The Plaintiff further contends Defendants repeated this identical conduct as to the putative class members. [See Doc. 146-22: Expert Report of Constantijn Panis, Ph.D. ("Panis Rpt.") at ¶¶ 37, 39; see also Docs. 146-18, 146-19, 146-20 (Aetna EOB and Optum files for other members reflecting the same practice)].

To state this more simply, the dispute is whether Optum is a "provider" of the chiropractic and physical therapy services. If it is a "provider" that simply subcontracts for the services and charges a fee for serving as the "general contractor," then its arrangement is consistent with the Plan. On the other hand, if Aetna has simply contracted with Optum for Optum to provide some administrative services that Aetna had agreed to perform in its contract with the Plan, then the Aetna/Optum arrangement allows for charging a fee greater than allowed by the plan contract, and further serves to hide that excess fee from the Plan and its members by misidentifying it as part of a claim for services.

The Plaintiff seeks class-wide relief under 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3). In so doing, the Plaintiff seeks to represent two classes: a

class of plans and a class of members. The Plaintiff defines the plan class as follows:

> Plan Claim Class: All participants or beneficiaries of self-insured ERISA health insurance plans administered by Aetna for which plan responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

[Doc. 144 at 1]. Even though this is expressed in terms of a class of "participants or beneficiaries," this class consists of those who have a right to bring a derivative action on behalf of their self-insured plans for the plans having been overcharged by the Defendants as a result of the Aetna/Optum arrangement. Such right to bring a derivative action arises from 29 U.S.C. § 1132(a)(2), which allows participants or beneficiaries to seek "appropriate relief."[4]

The Plaintiff defines the member class as follows:

> Member Claim Class: All participants or beneficiaries of ERISA health insurance plans insured or administered by Aetna for whom coinsurance responsibility for a claim was assessed using an

---

[4] This class is limited to self-insured plans because in the case of plans insured or underwritten by Aetna, the arrangement "overcharges" Aetna itself. Thus, its ill-gotten gains resulting from the arrangement would equal its loss as insurer or underwriter. (To the extent that the Court misunderstands or mischaracterizes the Plaintiff's intent in the definition and operation of this class, it would be best that such be addressed now rather than later.)

8

> agreed rate between Optum and Aetna that
> exceeded the provider's contracted rate with Optum
> for the treatment provided.

[Id.].  This class consists of individuals who were covered by plans administered by Aetna—whether those plans were self-insured or insured/underwritten by Aetna, where the individual participants or beneficiaries stood to lose some amount as a result of the Aetna/Optum arrangement.  Such would arise from the impact on the individuals' coinsurance responsibility under their respective plans.

## IV.  DISCUSSION

In this action, the Plaintiff asserts the following claims for herself, the Plan, and the putative class members under ERISA: (i) equitable restitution for self-insured plans pursuant to 29 U.S.C. § 1132(a)(2) and for participants pursuant to § 1132(a)(1); (ii) surcharge and disgorgement[5] for self-insured plans and participants/beneficiaries pursuant to § 1132(a)(1) and (2); and (iii) declaratory and injunctive relief for both self-insured plans and

---

[5] Surcharge is an equitable remedy under § 1132(a) of ERISA intended to provide relief in the form of monetary compensation for a loss resulting from a fiduciary's breach of duty or to prevent the fiduciary's unjust enrichment.  See CIGNA Corp. v. Amara, 563 U.S. 421, 441-42 (2011).  Disgorgement is also an equitable remedy under § 1132(a) which allows a plan or plan participant to seek "the disgorgement of 'profits produced by property which in equity and good conscience belonged to the plaintiff.'"  Pender v. Bank of Am. Corp., 788 F.3d 354, 364-65 (4th Cir. 2015) (quoting in part 1 D. Dobbs, Law of Remedies § 4.3(5) at 608 (2d ed. 1993)).

9

participants/beneficiaries pursuant to § 1132(a)(3).  <u>Peters</u>, 2 F.4th at 216.
The Fourth Circuit remanded the case for further consideration of various
issues impacting each of these causes of action, as well as a "full
reevaluation" of the Plaintiff's motion for class certification.  <u>Id.</u>

In their supplemental briefing post-remand, the Defendants raise
several arguments challenging the Plaintiff's standing to assert her claims in
light of recent Supreme Court precedent.  Optum also specifically challenges
the propriety of the Plaintiff seeking relief against Optum, and it renews its
request to be dismissed from this action.

In light of the Fourth Circuit's remand, as well as the issues raised by
the Defendants in their supplemental briefing, the Court will now address the
following issues: (1) the effect of the Fourth Circuit's decision on the
restitution claims asserted by the Plaintiff; (2) the Defendants' arguments
regarding the Plaintiff's standing; (3) Optum's renewed request to be
dismissed from this action; and (4) the Plaintiff's motion for class certification.

### A.    Restitution Claims

On appeal, the Fourth Circuit concluded that the Plaintiff had
demonstrated a financial injury sufficient to establish standing so as to
proceed with her individual restitution claim, reasoning that for standing
purposes, "the financial loss analysis must be conducted at the individual

claims level rather than at the aggregate claims level." Peters, 2 F.4th at 218. Applying this principle, the Court concluded that the Plaintiff had adequately shown "that combining Optum's administrative fee with the provider's Negotiated Charge via the bundled rate caused her to pay more on certain individual claims than she otherwise would have had to pay under the Plan's terms, therefore causing a financial injury sufficient to establish an injury-in-fact for Article III standing purposes." Id. at 219.

Ultimately, however, the Fourth Circuit concluded that the Plaintiff had failed to show a financial loss sufficient to establish a compensable injury on the merits of her restitution claim. Specifically, applying the formula set forth in Donovan v. Bierwirth, 754 F.2d 1049 (2d Cir. 1985), the Court held as follows:

> [T]he measure of loss applicable in an ERISA trust circumstance like this case requires a comparison of what Peters or the Plan would have paid had Peters' claims excluded Optum's administrative fee with what they actually paid on those claims . . . . [I]f what Peters and the Plan actually paid on Peters' claims is less than—or equal to—what they would have paid had Peters' claims excluded Optum's administrative fee, no loss was sustained.
>
> \*     \*     \*
>
> Although, as noted, we disagree with the district court's reasoning, we affirm the grant of summary judgment to [the Defendants] as applied to Peters

11

because she failed to demonstrate that she suffered the required financial injury for purposes of restitution. Applying the <u>Donovan</u> formula to Peters' total claims reflects that she would have paid more each year, or broken even, if she had only paid the health care provider's Negotiated Charge as opposed to what she paid in the aggregate under the bundled rate . . . .

\*      \*      \*

Therefore, Peters experienced no direct financial injury (but rather a net gain) based on the bundled rate scheme in the aggregate.

<u>Peters</u>, 2 F.4th at 225-27. The Fourth Circuit therefore affirmed the grant of summary judgment to the Defendants on the Plaintiff's individual claim for restitution under § 502(a)(1) and (3). <u>Id.</u> at 221.

As for the Plaintiff's restitution claim on behalf of the Plan, however, the Fourth Circuit remanded for further consideration of the Plan's entitlement to restitution under § 502(a)(2) using the <u>Donovan</u> framework. <u>Id.</u> at 222. In light of the Fourth Circuit's decision, the Plaintiff states in her supplemental brief that she is now electing to pursue equitable relief solely in the form of disgorgement, surcharge, and declaratory and injunctive relief. [<u>See</u> Doc. 256 at 13 n.2]. As the Plaintiff no longer seeks a restitution remedy on a class-wide basis, for either the Member Claim Class or the Plan Claim Class, the Fourth Circuit's directive to further consider the Plan's entitlement

to restitution is rendered moot, and the Plaintiff's claim for restitution on behalf of the Plan under § 502(a)(2) will be dismissed.

## B. Standing

### 1. Requirement of Financial Injury for Equitable Claims

The Fourth Circuit held that the Plaintiff has Article III standing to pursue equitable claims in the nature of surcharge, disgorgement, and declaratory and injunctive relief, both as an individual participant and on behalf of her Plan, holding that a demonstration of financial injury is not a prerequisite for such claims under ERISA.[6]  See Peters, 2 F.4th at 219-21. In so holding, the Court relied on Pender v. Bank of America Corp., 788 F.3d 354, 365-66 (4th Cir. 2015) (holding that "a financial loss is not a prerequisite for standing to bring a disgorgement claim under ERISA"); CIGNA Corp. v. Amara, 563 U.S. 421, 441-42 (2011) (holding that equity courts could permit surcharge "to provide relief in the form of monetary compensation for a loss resulting from a trustee's breach of duty, *or* to prevent the trustee's unjust enrichment") (emphasis added); and Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 610 (6th Cir. 2007) ("Plaintiffs need not demonstrate

---

[6] The Fourth Circuit left open the question of whether the Plaintiff has standing to seek *prospective* injunctive relief in light of the fact that she is no longer a member of the Mars Plan. Id. at 221 n.11.  The Court will address that issue separately in subsection C., *infra.*

individualized injury to proceed with their claims for injunctive relief under §
[502](a)(3); they may allege only violation of the fiduciary duty owed to them
as a participant in and beneficiary of their respective ERISA plans.").

On remand, the Defendants argue that the Fourth Circuit's
determination of the Plaintiff's standing to assert these equitable claims
without a showing of any actual financial injury was in error in light of three
recent Supreme Court decisions:  Thole v. U.S. Bank N.A., 140 S. Ct. 1615
(2020); California v. Texas, 141 S. Ct. 2104 (2021); and TransUnion LLC v.
Ramirez, 141 S. Ct. 2190 (2021).[7]  The Defendants contend that these
decisions require the Plaintiff to demonstrate an actual, financial injury in
order to establish Article III standing.  Because the Plaintiff suffered no direct
financial harm, the Defendants argue that these cases compel a conclusion
that the Plaintiff lacks standing to pursue even equitable claims for
surcharge, disgorgement, and declaratory and injunctive relief, either for
herself or on behalf of the Plan.  [Doc. 259 at 13-17].

_____

[7] The Supreme Court decided Thole on June 1, 2020, after the parties had submitted their
appellate briefs to the Fourth Circuit.  The Defendants cited Thole in a notice of
supplemental authority filed with the Fourth Circuit.  Peters v. Aetna, Inc., No. 19-2085,
Doc. 55.  The Supreme Court decided California v. Texas on June 17, 2021, shortly before
the Fourth Circuit published the Peters decision on June 22, 2021.  TransUnion was
decided on June 25, 2021, three days after the Peters decision.  The Defendants raised
all three cases in their petition for panel rehearing or rehearing en banc.  See id., Doc.
94. The Fourth Circuit denied the Defendants' petition for rehearing without specifically
discussing any of the cited cases.  Id., Doc. 96.

The Defendants' argument in this regard presupposes that this line of Supreme Court decisions effectively overruled the cases relied upon by the Fourth Circuit in concluding that the Plaintiff could establish standing to assert claims for surcharge, disgorgement, and declaratory and injunctive relief even without a showing of a direct financial injury. A careful examination of these decisions reveals, however, that the Fourth Circuit's analysis of the Plaintiff's Article III standing is entirely consistent with the Supreme Court's reasoning in these cases. For example, in <u>Thole</u>, the Supreme Court concluded that the plaintiffs had not suffered a cognizable injury because they had not alleged that any benefit they sought had been wrongfully adjudicated. <u>Thole</u>, 140 S. Ct. at 1619. As members of a defined-benefit pension plan, the plaintiffs' benefits were fixed by the plan's written terms, and they received exactly what the plan entitled them to receive every month. The payments "d[id] not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." <u>Id.</u> at 1618. The <u>Thole</u> plaintiffs did not allege that any of their past benefit claims had been wrongfully calculated in contravention of plan terms. <u>Id.</u> at 1619. Because they could not allege that the outcome of the case would have any impact on them whatsoever, the Supreme Court concluded that they had no injury. <u>Id.</u>

15

Here, in contrast, every class member was overcharged *on at least one benefit claim* and the Plaintiff has alleged that the challenged scheme caused those overcharges for every member of the class. See Peters, 2 F.4th at 243 ("the underlying harm derives from the same common contention—that [the Defendants'] fee shifting scheme breached the terms of the applicable Plan and constituted a breach of fiduciary duty"). The Plaintiff has shown precisely what the Thole plaintiffs could not—that the misconduct at issue led to an overcharge on at least one benefit claim that harmed her, just as it did for all class members. Thus, even under the reasoning of Thole, the Plaintiff has established a direct financial injury of a nature sufficient to confer Article III standing.

In TransUnion, the Supreme Court considered whether two groups of class members had standing to challenge TransUnion's failure to follow reasonable procedures in violation of the Fair Credit Reporting Act. TransUnion had flagged certain individuals as potential matches for names of terrorists on the U.S. Treasury Department's Office of Foreign Assets Control's list of "specially designated nationals" (the "OFAC list") without taking any further steps to assess whether the individuals were actually one of the people identified on the OFAC list. TransUnion, 141 S. Ct. at 2201. For the group of class members for whom TransUnion sent an alert to a third

party that the individual was a potential match, the Supreme Court had "no trouble" concluding that they had been injured, even without any evidence that the class member had been denied credit or suffered any monetary harm related to the alert. Id. at 2209. The concrete injury was the fact that the third party now had the information, and this was precisely the type of harm that Congress intended to stop by requiring adequate procedures. Id. For the other group of class members whose information simply sat on a TransUnion data server and was never used, the Supreme Court found they had not been injured. See id. at 2212-13.

The putative classes in the present action are like those for whom the TransUnion Court had "no trouble" finding Article III standing. All class members in this case allege that they were overcharged on at least one benefit claim in violation of their plan terms. For the purposes of determining standing, it is of no moment whether these class members also suffered a financial injury in the aggregate. The TransUnion Court's holding that the defendant's disclosure of the "potential match" information alone caused "a concrete harm that qualifies as an injury in fact"—without any showing of any additional adverse event (e.g., being refused credit, suffering monetary harm) that resulted from that disclosure, see id. at 2209—is entirely consistent with the Fourth Circuit's decision in this case.

17

In California, the plaintiffs sought declaratory relief that the minimum essential coverage provision of the Affordable Care Act was unconstitutional because it set the penalty amount at zero dollars. 141 S. Ct. at 2114. The Supreme Court concluded that, in the absence of anything else, the plaintiffs lacked standing to sue because the declaration the plaintiffs sought would not impact them and would amount to nothing more than an advisory opinion. Id. at 2116. Here, the opposite is true. The Fourth Circuit carefully examined each remedy potentially available to the Plaintiff—surcharge, disgorgement, and declaratory and injunctive relief—with an eye towards how each category of equitable relief would (or would not) redress the Plaintiff's injury. See Peters, 2 F.4th at 217-21. Since surcharge and disgorgement focus on preventing a defendant's unjust enrichment, the Fourth Circuit explicitly concluded that standing for seeking those remedies did not require any aggregate personal financial loss.[8] Id. at 219-20. All that is required to

_____

[8] Again, even if such aggregate financial loss were required, the Fourth Circuit also found that the Plaintiff had suffered a direct financial injury with respect to certain individual claims. Thus, the Plaintiff still has standing even if she were required to demonstrate a direct financial loss in order to establishing standing to assert claims for disgorgement, surcharge, and declaratory and injunctive relief.

establish standing is proof that the Defendants were unjustly enriched on discrete benefit claims.[9]

For all these reasons, the Court concludes that the Plaintiff continues to have Article III standing to assert claims for disgorgement, surcharge, and (at least some forms of) declaratory and injunctive relief, both as an individual participant and on behalf of her Plan, without proof of a financial loss. As the Plaintiff has standing without proof of a financial loss to assert disgorgement/surcharge claims, both as an individual member and on behalf of her Plan, she also has standing to serve as a class representative on behalf of other individual members and self-insured plans who allege that Aetna likewise bypassed its obligation to pay Optum's administrative fees with respect to their claims.

### 2. Standing to Seek Prospective Declaratory and Injunctive Relief

While holding that the Plaintiff has standing to assert claims for disgorgement, surcharge, and declaratory and injunctive relief, the Fourth

---

[9] It does not appear that the Plaintiff would personally be entitled to any disgorgement/surcharge proceeds because she suffered no loss in the aggregate as a result of the Defendants' alleged scheme. See Peters, 2 F.4th at 223 (noting that Plaintiff "suffered no direct financial injury for [the Defendants'] actions") (discussing restitution claim). This, in turn, raises questions as to whether she may properly serve as a class representative for individual members who may in fact be entitled to such proceeds. The Court will address such concerns in the discussion regarding class certification, *infra.*

Circuit noted that "[t]he record appears to indicate that Peters is no longer a Plan participant, which raises a question on *prospective* injunctive relief because she may not be able to rely on only past conduct to establish Article III standing." Peters, 2 F.4th at 221 n.11 (citation omitted) (emphasis added). Noting that the parties had not raised this issue on appeal, the Fourth Circuit "le[ft] consideration of this matter for the district court's resolution in the first instance upon remand." Id.

"[A] plaintiff seeking prospective injunctive relief may not rely on prior harm to establish Article III standing." Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018) (citation and internal quotation marks omitted). Rather, the plaintiff must show an "ongoing or future injury in fact." Id. (citation omitted). To establish standing based on a future injury, the plaintiff must show that there is a "substantial risk" that the future harm will occur. See Beck v. McDonald, 848 F.3d 262, 275 (4th Cir. 2017).

Here, the Plaintiff argues that the Defendants calculated her financial responsibility for deductible claims using Optum's rate and told the Plaintiff in Explanation of Benefit forms (EOBs) that she owed those charges. While the Defendants have never attempted to collect this money from her, the Plaintiff argues that the Defendants have never told her that those statements are false or that she was not financially responsible for those

20

charges. As such, the Plaintiff contends, she has a "risk of future harm" should the Defendants ever attempt collect on those deductible claims. [Doc. 262 at 24-25].

The Plaintiff's contention that the Defendants *may* attempt *at some point* in the future to collect on charges related to benefits claims from a decade ago is far too speculative and nebulous to establish a substantial risk of future harm.[10] See Beck, 848 F.3d at 274-75 (finding the plaintiffs' claim of an enhanced risk of future identity theft resulting from data breach "too speculative" to establish Article III standing). Without a concrete risk of future harm, the Plaintiff's lack of continued participation in the Mars Plan is fatal to her standing to assert claims for prospective injunctive relief. Simply put, she no longer has "skin in the game." Because the Plaintiff lacks the necessary standing, her claim for prospective injunctive relief must be dismissed.[11]

---

[10] The Plaintiff also has shown nothing to indicate that the statute of limitations has not expired with regard to such claims.

[11] The dismissal of the Plaintiff's claim for prospective injunctive relief would not defeat any claim the Plaintiff might have for injunctive relief that is retrospective in nature.

21

### C. Plaintiff's Remaining Claims Against Optum

In the Defendants' supplemental briefing on the issue of class certification, Optum separately asks this Court to deny class certification against it and renews its request to be dismissed from this action. [Doc. 259 at 33-34].

Optum's arguments are foreclosed by the Fourth Circuit's opinion, which concluded that the Plaintiff had presented sufficient evidence from which a reasonable factfinder could conclude that "Optum could be held as a party in interest involved in prohibited transactions based on its apparent participation in and knowledge of Aetna's administrative fee billing model." Peters, 2 F.4th at 240. As for Optum's claim that the Plaintiff has abandoned her sole remaining claim against Optum for disgorgement, this argument is misguided. First and foremost, the Plaintiff still has claims for declaratory and non-prospective injunctive relief against Optum that remain. Further, as the Fourth Circuit pointed out, the Plaintiff did not abandon her disgorgement claim against Optum on appeal, see Peters, 2 F.4th at 240 n.21, and the Court does not construe her supplemental briefing as abandoning any such claim. Optum's renewed request to be dismissed from this action is therefore denied.

**D.    Class Certification**

Having resolved the issues left open by the Fourth Circuit as well as the issues raised by the Defendants in their supplemental briefing on remand, the Court now turns to the Plaintiff's motion for class certification.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Dukes, 564 U.S. at 348 (citation and internal quotation marks omitted). To justify a departure from that usual rule, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Id. at 348-49 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)). Thus, in seeking the certification of a class action, a putative class representative must demonstrate as a threshold matter that she is a member of the proposed class and that the other class members are "readily identifiable" or "ascertainable." EQT Prod., 764 F.3d at 358 ("A class cannot be certified unless a court can readily identify the class members in reference to objective criteria.").

Once this threshold determination has been made, the Court must then determine whether the readily identifiable class should be certified. Rule 23(a) of the Federal Rules of Civil Procedure sets forth the four prerequisites that an action must satisfy in order to be certified as a class action: (1) the

class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims and defenses of the class as a whole ("typicality"); and (4) the representative party must fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." Dukes, 564 U.S. at 349 (citations and internal quotation marks omitted). In addition to satisfying the requirements of Rule 23(a), "the class action must fall within one of the three categories enumerated in Rule 23(b)." Gunnells, 348 F.3d at 423.

### 1. Definition of the Proposed Classes

The Plaintiff proposes the certification of two claim classes. The first class is referred to as the "Plan Claim Class." This proposed class would present derivative claims, brought by individual participants or beneficiaries of self-insured, Aetna-administered health insurance plans, to address *plan* losses on behalf of their respective plans through the remedies of

disgorgement, surcharge, and declaratory and non-prospective injunctive relief. Further, this proposed class encompasses only participants and beneficiaries of *self-insured* plans and does not include plans insured by Aetna itself.[12] Because the "Plan Claim Class" would present only derivative claims on behalf of the identified plans, any losses incurred by those participants or beneficiaries *individually* would not be addressed in the "Plan Claim Class" but would instead be addressed through the "Member Claim Class," discussed below. Thus, it is possible for an individual participant or beneficiary to be a member of both the "Plan Claim Class" and the "Member Claim Class," depending on the type of claim being asserted by that individual.

The second proposed class is the "Member Claim Class." This class would present the individual claims of participants and beneficiaries, including both participants and beneficiaries of Aetna health insurance plans as well as participants and beneficiaries of self-insured health insurance plans that are only administered (as opposed to both administered and insured) by Aetna, for the remedies of disgorgement/surcharge of any benefit

---

[12] The proposed class definition would also seemingly exclude health insurance plans administered by Aetna but insured by a third party insurer. Plaintiff's expert indicates, however, that only 0.2% of claims involve such a situation. [Doc. 146-22 at 11]. As such, this category is immaterial to the questions presented here.

25

the Defendants received at the expense of such participants or beneficiaries, as well as declaratory and non-prospective injunctive relief.

## 2. Rule 23(a) Certification

### a. Ascertainability

"The plaintiff bears the burden of offering a reliable and administratively feasible mechanism for determining whether putative class members fall within the proposed class definition." Krakauer v. Dish Network L.L.C., 311 F.R.D. 384, 390 (M.D.N.C. 2015) (quoting in part Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013)) (internal quotation marks omitted).

Here, the Fourth Circuit noted that "the proposed class members appear[ ] to be objectively identifiable based on the [Defendants'] own data, as Peters identified 87,754 members who experienced a scenario such as hers, whether they (or their plan) were charged Optum's administrative fee." Peters, 2 F.4th at 242-43. The Defendants' data[13] show the amount of administrative fees that the Defendants forced the plans and plan members to bear for each claim—i.e., the amount by which the member's and the

---

[13] The Plaintiff's expert, Constantijn Panis, Ph.D., examined data from both Aetna and Optum for the relevant time period. In examining the claims data, Dr. Panis noted that the Aetna and Optum data did not match up exactly, with some medical visits appearing in the Aetna data only, others in the Optum data only, and yet others in both sources. Nevertheless, Dr. Panis was able to match members' medical visits between the Aetna and Optum data for a substantial portion of claims. [Doc. 146-22: Panis Rpt. at ¶¶ 17-24].

plan's financial responsibility exceeded the actual provider's Negotiated Charge for a particular claim. [See Doc. 146-22: Panis Rpt. at ¶¶ 30-39 (discussing claims)]. As both the Plan Claim Class and the Member Claim Class appear to be generally ascertainable through an examination of the Defendants' own data from the class period, the Court concludes that the Plaintiff has provided an administratively feasible method of determining the two proposed classes.

### b.    Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Plaintiff has identified 87,754 members and 1,954 plans that were subjected to paying Optum's administrative fees. [See Doc. 146-22: Panis Rpt. at 16]. There appears to be no dispute that the putative classes meet the numerosity requirement set forth in rule 23(a)(1). Accordingly, the Court concludes that the Plaintiff has sufficiently demonstrated that the classes of plaintiffs are so numerous that joinder would be impracticable, thereby satisfying the numerosity requirement for both the Plan Claim Class and the Member Claim Class.

### c.    Commonality

Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although the rule speaks in terms of common questions, 'what matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" EQT Prod. Co., 764 F.3d at 360 (alterations and emphasis in original) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350). "A single common question will suffice, but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  Id. (citation omitted) (quoting Wal-Mart Stores, Inc., 564 U.S. at 350).

Re-examining the commonality issue in light of the claims that it concluded had survived summary judgment, the Fourth Circuit noted that there are a number of common issues of law and fact related to Aetna's conduct, including: (1) whether Aetna was a fiduciary; (2) whether Aetna breached its duties to plans and plan participants by directing Optum to bury its administrative fees in the claims process; and (3) whether Aetna's breach amounted to a harm to the particular plan and plan participants.  See Peters, 2 F.4th at 243.  In addition to the common questions identified by the Fourth Circuit, the Court concludes that there are also common issues of law and

28

fact related to Optum, including: (1) whether Optum was a party in interest under ERISA; and (2) whether Optum participated in prohibited transactions based on the evidence of the Aetna-Optum contracts and the claim data reflecting payments from the plans that were used to pay Optum's administrative fees.

In their supplemental briefing on remand, the Defendants argue that, despite the existence of these identified issues, the commonality requirement is nevertheless lacking here because these issues cannot be answered with common evidence due to the variances in the relevant plan language.[14]  [Doc. 259 at 22-24].

In support of her motion for class certification, the Plaintiff presented a random sample of language from twenty-one of the plans in the proposed Plan Claim Class.  [Doc. 146-13].  As the Court has previously noted, these sampled plans do not contain "any meaningful variation" in their relevant terms.  [Doc. 156 at 2].  The Defendants do not dispute that the relevant

---

[14] The Defendants also argue that there are significant variances in the administrative service contracts with plan sponsors as well as in the plan communications that defeat commonality.  [Id.].  Such contracts and communications, however, are not "documents and instruments governing the plan" and therefore are not controlling on the issue of the Defendants' obligations arising under the plans.  See Boyd v. Met. Life Ins. Co., 636 F.3d 138, 140 (4th Cir. 2011) (discussing the "plan documents rule" endorsed by Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan, 555 U.S. 285 (2009)).

language of the majority of the twenty-one plans in the Plaintiff's random sample is basically identical to her plan. Indeed, most of these plans define the charge that members and plans are responsible to pay as the "Negotiated Charge" or "Negotiated Rate," which is the "maximum charge" a "Network Provider [or preferred care provider or PPO provider] has agreed to make as to any service or supply." [See id.]. A "Network Provider," in turn, is the "health care provider" that "has contracted to furnish services or supplies for this plan" and "is, with Aetna's consent, included in the directory as a network provider." [See id.]. Although the Defendants argue that four of the plans sampled are materially distinct and "irreconcilable" with the other seventeen [Doc. 163 at 17], the Defendants fail to explain how the variations in the plan language are material. In fact, while four of the plans sampled appear to use slightly different language from the other seventeen [see Doc. 146-13 at 4 (Summary Plan Description, or SPD, for Allstate Cafeteria Plan); at 5 (SPD for CarMax Health Plan); at 6 (SPD for Compass Group Benefits Program); at 10 (SPD for Johnson & Johnson Salaried Medical Plan)], the written terms of these four plans state essentially the same thing. Like the other seventeen, none of these four plans define a "provider" as a "general contractor" for services, such as Optum, that Aetna hires to process claims and perform network contracting for it. [See id.]. Further, like the other

30

seventeen, none of the four plans states that members and plans will be required to pay Optum's administrative fees as part of their insurance claims for the work Optum does on Aetna's behalf. [Id.]. The only thing different about these four plans is that they define the relevant charge to be the rate that the medical provider agreed "with Aetna" to accept, whereas the other seventeen plans do not explicitly reference with whom the provider has an agreement. [Id.]. However, all of the plans define the relevant negotiated charge to be the one that the *medical provider* has agreed to receive. Thus, the outcome-determinative question under all of these plans is whether Optum could be treated as the medical provider and its administrative fee as an obligation that members and plans were required to pay.[15] As such, the Court concludes that the purported distinctions among the plans are nothing more than "minor variations in the phrasing of the relevant plan language," which are "incidental to the shared legal theory and similar conduct" at issue and do not bar class certification. Smith v. United HealthCare Servs., Inc.,

_____

[15] It is undisputed that all healthcare providers have administrative costs and thus collect administrative fees as part of their charges for services. The question is whether the agreements in question deem Optum to be a medical provider and therefore allow for the charging of such administrative fees.

No. CIV 00-1163 ADM/AJB, 2002 WL 192565, at *4 (D. Minn. Feb. 5, 2022).[16]

Accordingly, the Court concludes that there exist questions of law and fact that are common to both the Plan Claim Class and the Member Claim Class, and that resolution of these questions in a class-wide proceeding can generate common answers apt to drive the resolution of the litigation. The commonality prong of the Rule 23 analysis is therefore satisfied with respect to both the Plan Claim Class and the Member Claim Class.

### d. Typicality

Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006) (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 340 (4th Cir.

---

[16] Even if the Court were later to determine that such variations as those identified in these four plans are material, the Court could address that issue by creating a subclass for that category of plans. See EQT Prod., 764 F.3d at 363 (stating that plaintiffs who alleged ownership claims based on varying deeds could potentially "identify a finite number of variations in [the] deed language, such that the ownership question is answerable on a subclass basis").

32

1998)).  This requirement tends to merge with the commonality requirement. Id.

The above analysis as to the commonality requirement also applies to the typicality requirement. The Plaintiff has sufficiently shown that her claims and the claims of the putative classes are based on the same alleged facts and legal theory—namely, that Aetna created a scheme by which plans and plan members would pay Optum's administrative fees and that this scheme violated ERISA.  This is true even for those class members who were members of other plans.  See Selby v. Principal Mut. Life Ins. Co., 197 F.R.D. 48, 58 n.14 (S.D.N.Y. 2000) ("When the named plaintiff in an ERISA class action challenges an insurer's practice that the insurer engages in with respect to all of its plans, the court will allow the plaintiff to represent persons in the insurer's other insurance plans.").

The Defendants argue that the Plaintiff's claims are not typical of the putative class members because she suffered no direct financial injury and therefore is not personally entitled to disgorgement or surcharge.  [Doc. 259 at 17-21].  With respect to the Plan Claim Class, the Court finds the Plaintiff's claims to be typical.  All participants and beneficiaries have the same right to bring a derivative claim on behalf of their self-funded plan to prevent the Defendants' unjust enrichment.  With respect to the Member Claim Class,

33

the Plaintiff has alleged that all of the class members were subjected to the same type of administrative scheme, and that such scheme resulted in a benefit accruing to one or both of the Defendants. In this regard, the Plaintiff's claim appears to be typical of some of these class members, but not of others, as it has already been determined that she did not suffer a financial loss as a result of the Defendants' scheme. A claim for disgorgement of ill-gotten gains for the benefit of oneself is materially different from a claim for disgorgement for the benefit of one's plan—even where the plaintiff may have standing to bring such a claim.

Nevertheless, the Court finds that there is sufficient commonality between all the Member Class claims at this point to determine that the Plaintiff's claim is typical for the purpose of initial class certification. The Court will reserve the question of whether the Member Claim Class should be divided into subclasses to distinguish those participants/beneficiaries who suffered a net financial loss and those who did not.

### e. Adequacy of Representation

Rule 23 requires a determination that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This analysis is two-pronged. The Court must determine (1) that the plaintiff "possess[es] the same interest and suffer[s] the same injury as

the class members" and that the plaintiff's interests are not antagonistic to the other members; and (2) that the plaintiff's counsel is "qualified, experienced and generally able to conduct the proposed litigation." Rehberg v. Flowers Baking Co. of Jamestown, LLC, No. 3:12-cv-00596-MOC-DSC, 2015 WL 1346125, at *11 (W.D.N.C. Mar. 24, 2015) (first quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997); and then quoting Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011)).

As with the commonality and typicality analysis, the Court concludes the Plaintiff has sufficiently shown she has the same interest in identifying and correcting fiduciary breaches as the putative class members, thereby satisfying the first prong of the adequacy of representation analysis.[17] The Court also concludes that the Plaintiff's counsel is qualified, experienced, and generally capable of conducting this litigation. Accordingly, the Court concludes the Plaintiff has met the requirements of Rule 23(a)(4).

---

[17] As noted *supra*, to the extent that some of the putative class members have interests that vary from the Plaintiff (i.e., they actually suffered a financial loss as a result of the Defendants' conduct and thus could assert a claim to part of the disgorgement/surcharge proceeds), such variances could be addressed with the creation of a sub-class of such individuals in order to adequately protect their interests. If division of the Member Class into such sub-classes occurs, a determination will have to be made as to whether the Plaintiff has "suffer[ed] the same injury as the [sub-]class members," see E. Tex. Motor Freight Sys., 431 U.S. at 403, such that her representation of that sub-class continues to satisfy the adequacy of representation requirement.

### 3.    Rule 23(b) Certification

Having determined that the Plaintiff has adequately cleared the hurdle of each of the requirements of Rule 23(a) at this stage, the Court next turns to the issue of certification under Rule 23(b).  Here, the Plaintiff seeks certification under Rule 23(b)(1) and (3), which provide, respectively, as follows:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> *      *      *
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

36

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(1), (3).[18]

Here, if a class action were not allowed to proceed, there would be a significant risk of inconsistent judgments, resulting in conflicting standards of conduct for the Defendants. See Kennedy v. United Healthcare of Ohio, Inc., 206 F.R.D. 191, 198 (S.D. Ohio 2002) ("Plaintiffs seek prospective equitable relief on the basis that defendant's earlier practices violated ERISA. Separate lawsuits could result in inconsistent judgments on the merits of such claims. Simply stated, one court could determine that defendant's practice violated ERISA, while another court could conclude that it did not."); see also Stanford v. Foamex L.P., 263 F.R.D. 156, 173 (E.D. Pa. 2009) ("the risk of inconsistent orders . . . satisfies Rule 23(b)(1)(A)"); West v. Cont'l Auto., Inc., No. 3:16-cv-502-FDW-DSC, 2017 WL 2470633, at *3 (W.D.N.C.

---

[18] Because the Court concludes that certification is appropriate under Rule 23(b), the Court need not address the Plaintiff's alternative argument that certification of each of the proffered common questions as an issue class is appropriate under Rule 23(c)(4).

37

June 7, 2017) ("there is a risk that class members would seek relief in other courts, leading to conflicting interpretations of the Plan and conflicting remedies"). Because the classes' claims "implicate misconduct" in the administration of the plans, "disparate lawsuits by individual participants would raise the specter of varying adjudications." In re Marsh ERISA Litig., 265 F.R.D. 128, 144 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Accordingly, the Court concludes that the certification of these classes is appropriate under Rule 21(b)(1)(A).

"[C]ertification under Rule 23(b)(3) is appropriate when all of the prerequisites of Rule 23(a) are satisfied and two other requirements are met. Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." EQT Prod. Co., 764 F.3d at 357 (citations omitted). While the predominance analysis is governed by the same analytical principals as the Rule 23(a) commonality analysis, the 23(b)(3) analysis is "more demanding." Id. at 365. This is because "[t]he predominance inquiry focuses not only on the existence of common questions, but also how those questions relate to the controversy at the heart of the litigation." Id. at 366. "Even a plethora of identical practices

will not satisfy the predominance requirement if the defendant['s] common conduct has little bearing on the central issue in the litigation . . . ."  Id.

Here, common issues will predominate, as the Defendants' common conduct is critical to the determination of their ultimate liability.  Each of the putative class members were insured by ERISA plans, and ERISA provides common definitions for the type of conduct that renders one a fiduciary or a party in interest and the type of conduct that violates fiduciary duties or constitutes prohibited transactions. These common legal standards, coupled with the common evidence showing that Aetna engaged in a policy of forcing members and plans to bear responsibility for Optum's fees, easily satisfies the predominance requirement.  See Brooks v. Educators Mut. Life Ins. Co., 206 F.R.D. 96, 104 (E.D. Pa. 2002) (certifying ERISA class based on insurer's common scheme of applying cap on payments).

Similarly, the issue of the classes' entitlement to equitable monetary relief also predominates over the insignificant issues that Defendants may raise, such as speculation about providers' billing or forgiveness of member obligations.  The Defendants' own data details precisely the amount of the financial responsibility that members and plans were assessed for Optum's fees that ostensibly should have been paid directly by Aetna.  The Plaintiff's expert provided formulaic class-wide approaches to calculating the

39

Defendants' unjust enrichment, using their own data. [See Doc. 146-22: Panis Rpt. at ¶¶ 35-38, 41-44]. Thus, the data alone can be used to determine how much the Defendants owe.[19]

In determining whether proceeding in a class action is superior to other available methods of litigation, courts consider, among other factors: concerns of judicial economy; the risk of inconsistent judgments against the defendants; the barriers to individual litigation faced by class members; the split of state and federal claims in a litigation; and whether there are alternative mechanisms to resolving the claims. See EQT Prod. Co., 764 F.3d at 371. Here, judicial economy weighs heavily in favor of proceeding as a class action. The issue at the heart of this case is common to all class members and there is little incentive for individual plaintiffs to bring their cases independently because the cost of doing so far exceeds the value of their individual claims. Accordingly, the Court concludes that proceeding as

---

[19] Here, the Defendants argue, as they did in their original opposition to certification, that resolving the putative class members' claims would require individualized inquiries into each class member's applicable plan language and complete claims experience. [Doc. 172 at 48; Doc. 259 at 27-30]. The Defendants' argument in this regard is premised on the notion that the Plaintiff and putative class members seek individualized recalculating and reprocessing of their claims to omit the wrongfully imposed administrative fees. The Fourth Circuit's opinion, however, makes clear that the remedy that the Plaintiff seeks is not individualized monetary damages awards, but rather is class-wide equitable relief in the form of disgorgement or surcharge of the amount by which Aetna was unjustly enriched by charging plans and plan members the administrative fees charged by Optum.

a class action is superior to other methods of litigation. Therefore, the Plaintiff has sufficiently shown that class certification pursuant to Rule 23(b) is warranted.

### 4.    Appointment of Class Counsel

Rule 23(g)(1) states that a "court that certifies a class must appoint class counsel," and "[i]n appointing class counsel, the court . . . must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. . . ."  Fed. R. Civ. P. 23(g)(1).

Here, the Plaintiff is represented by qualified and competent counsel at The Van Winkle Law Firm and Zuckerman Spaeder LLP.  These firms have invested significant time and resources in this matter and are committed to doing so in the future in order to represent the classes and vigorously prosecute the claims.   Further, the Court finds that the Plaintiff's counsel are qualified and experienced in actions like these.  Accordingly, the Court will appoint the Plaintiff's counsel as class counsel.

41

## V.  CONCLUSION

For the foregoing reasons, the Court concludes that the Fourth Circuit's directive to further consider the Plan's entitlement to restitution is rendered moot, and the Plaintiff's claim for restitution on behalf of the Plan under 29 U.S.C. § 1132(a)(2) will be dismissed; that the Plaintiff lacks standing to seek prospective injunctive relief in this case, and therefore, the Plaintiff's claims for prospective injunctive relief will be dismissed; and that certification pursuant to Rule 23 of the Federal Rules of Civil Procedure is appropriate for the Plaintiff's claims of disgorgement, surcharge, and declaratory and non-prospective injunctive relief under ERISA.  The Court will certify this matter as a class action pursuant to Rule 23, with two classes of individuals, the Plan Claim Class and the Member Claim Class, as described more fully below.  The Court reserves the issue of whether the Member Claim Class should be divided into sub-classes for resolution at a later date.  Finally, the Court will direct the Plaintiff to submit a proposed class action notice to the Court, and the Defendants will be given an opportunity to object to such notice.

# O R D E R

**IT IS, THEREFORE, ORDERED** that:

(1)  The Plaintiff's claims for prospective injunctive relief, both for herself and on behalf of the Plan, are **DISMISSED** due to a lack of standing;

(2)  The Plaintiff's claims for restitution, both for herself and on behalf of the Plan, are hereby **DISMISSED WITH PREJUDICE**;

(3)  The Plaintiff's Motion for Class Certification [Doc. 144] is **GRANTED**, and the following classes are hereby certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3):

- <u>Plan Claim Class</u>: All participants or beneficiaries of self-insured ERISA health insurance plans administered by Aetna for which plan responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

- <u>Member Claim Class</u>: All participants or beneficiaries of ERISA health insurance plans insured or administered by Aetna for whom coinsurance responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

43

(4)    The law firms of The Van Winkle Law Firm and Zuckerman Spaeder LLP are hereby appointed as counsel for the class;

(5)    Within fourteen (14) days of the entry of this Order, the Plaintiff shall submit a proposed class action notice to the Court.  The Defendants shall have fourteen (14) days from the Plaintiff's submission to file objections to the proposed notice.  The Plaintiff will have fourteen (14) days thereafter to file any response to those objections.

**IT IS SO ORDERED.**

Signed: June 5, 2023

Martin Reidinger
Chief United States District Judge

44