# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

| | | |
|---|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, | ) ) ) ) | Case No. 1:15-cv-00109-MR |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| AETNA INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

    A.    Factual Summary, Class Certification, and Denial of Summary
           Judgment ..........................................................................................2

I.      DESCRIPTION OF THE SETTLEMENT ...............................................3

    A.    The Settlement Amount and Plan of Allocation. .........................4

    B.    The Attorney's Fee Amount .........................................................6

    C.    Release of Certain Claims against Defendants. ...........................6

    D.    Other Provisions ..........................................................................7

           1.    Notice to the Class. ...........................................................7

           2.    Incentive award for named Plaintiff. .................................8

           3.    No further processing of claims under the Aetna-Optum
                 arrangement at issue ..........................................................8

II.     THE PROPOSED SETTLEMENT EASILY SATISFIES THE
      REQUIREMENTS FOR PRELIMINARY APPROVAL .......................8

    A.    Legal Standard for Preliminary Approval ....................................8

    B.    The Proposed Settlement Satisfies the Standard for Preliminary
           Approval. ...................................................................................10

           1.    The Class representative and Class Counsel have adequately
                 represented the Classes and are entitled to the incentive award
                 and Attorneys' Fee Amount, respectively. ...................10

           2.    The Settlement was negotiated at arm's length. ...........12

            3.    The relief provided for the Class is adequate ................12

                 a.    The recovery for the Classes is exceptional .......13

                 b.    Costs, risks, and delay of trial and appeal .........14

                 c.    The proposed Plan of Allocation is fair and adequate. ......16

                 d.    Proposed award of attorneys' fees and expenses ..............16

            4.    The Settlement treats Class members equitably relative to each
                 other. ...............................................................................17

III.    THE NOTICE PLAN SATISFIES RULE 23 ......................................17

IV.    PROPOSED SCHEDULE ...................................................................18

CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Berry v. Schulman,*
807 F.3d 600 (4th Cir. 2015) ................................................................................................ 11

*Boger v. Citrix Sys., Inc.,*
No. 19-cv-01234-LKG, 2023 WL 1415625 (D. Md. Jan 31, 2023) ......................................... 8

*Boyd v. Coventry Health Care Inc.,*
299 F.R.D. 451 (D. Md. 2014) ........................................................................................ 14, 16

*Cantu-Guerrero v. Lumber Liquidators, Inc.,*
952 F.3d 471 (4th Cir. 2020) .................................................................................................. 9

*Ciarciello v. Bioventus Inc.,*
No. 1:23-cv-32, 2024 WL 5155539 (M.D.N.C. Dec. 18, 2024) ....................................... 16, 17

*Clark v. Duke Univ.,*
No. 1:16-cv-1044, 2019 WL 2579201 (M.D.N.C. June 24, 2019) ......................................... 11

*Clark v. Duke Univ.,*
No. 1:16-cv-1044, 2019 WL 2588029 (M.D.N.C. June 24, 2019) ......................................... 13

*Curtis v. Genesis Eng'g Sols., Inc.,*
No. GJH-21-722, 2022 WL 1062024 (D. Md. Apr. 8, 2022) ................................................. 10

*Ferguson v. PNC Fin. Servs. Grp., Inc.,*
No. 2:19-cv-01135-MHH, 2024 WL 3015751 (N.D. Ala. June 14, 2024) .............................. 13

*Haney v. Genworth Life Ins. Co.,*
No. 3:22-cv-55, 2023 WL 424736 (E.D. Va. Jan. 26, 2023) ................................................... 8

*In re Jiffy Lube Securities Litigation,*
927 F.2d 155 (4th Cir. 1991) ............................................................................................. 9, 17

*In re MedStar ERISA Litig.,*
No. JKB-20-1984, 2024 WL 4110941 (D. Md. Sept. 5, 2024) ......................................... 11, 16

*In re WorldCom, Inc. ERISA Litig.,*
No. 02 Civ. 4816(DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............................. 13, 14

*Kelly v. Johns Hopkins Univ.,*
16-cv-2835-GLR, 2020 WL 434473 (D. Md. Jan. 28, 2020) ................................................. 11

*Lomascolo v. Parsons Brinckerhoff, Inc.,*
No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955 (E.D. Va. Sept. 28, 2009) ........................... 10

*McAdams v. Robinson,*
26 F.4th 149 (4th Cir. 2022) ................................................................................................. 17

*Mehling v. New York Life Ins. Co.,*
248 F.R.D. 455 (E.D. Pa. 2008) ............................................................................................ 14

Case 1:15-cv-00109-MR    Document 321    Filed 02/27/25    Page 3 of 24

*Peters v. Aetna, Inc.*,
  2 F.4th 199 (4th Cir. 2021) ................................................................ 2

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) .............................................................. 15

*Robinson v. Carolina First Bank NA*,
  No. 7:18-cv-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ....................... 8

*Savani v. URS Prof'l Sols. LLC*,
  121 F. Supp. 3d 564 (D.S.C. 2015) ....................................................... 11

*Skochin v. Genworth Fin., Inc.*,
  No. 3:19-cv-49, 2020 WL 6536140 (E.D. Va. Nov. 5, 2020) ............................. 11

*Williams v. Rohm & Haas Pension Plan*,
  658 F.3d 629 (7th Cir. 2011) ............................................................. 14

## OTHER AUTHORITIES

*In re Fremont Gen. Corp. Litig.*, No. 2:07-cv-02693-JHN-FFM,
  ECF 277 (C.D. Cal. July 11, 2011) ....................................................... 14

*In re Fremont Gen. Corp. Litig.*, No. 2:07-cv-02693-JHN-FFM,
  ECF 286 (Aug. 10, 2011) .................................................................. 14

*In re Syncor ERISA Litig.*, No. 2:03-cv-02446-RGK-RC,
  ECF 300 (C.D. Cal. Sept. 29, 2008) ...................................................... 14

*In re Syncor ERISA Litig.*, No. 2:03-cv-02446-RGK-RC,
  ECF 309 (C.D. Cal. Oct. 22, 2008) ....................................................... 14

*Manual for Complex Litig.* (Fourth) § 21.632–34 (2004) ................................. 8

## RULES

Fed. R. Civ. P. 23 ................................................................... 2, 18

Fed. R. Civ. P. 23(b)(1) ............................................................... 17

Fed. R. Civ. P. 23(b)(2) ............................................................... 17

Fed. R. Civ. P. 23(c)(2)(A) ............................................................ 17

Fed. R. Civ. P. 23(e)(1)(B) ............................................................ 17

Fed. R. Civ. P. 23(e)(1)(B)(i) .......................................................... 9

Fed. R. Civ. P. 23(e)(2) ......................................................... 9, 10, 12

Fed. R. Civ. P. 23(e)(2)(C) ............................................................ 13

## STATUTES

29 U.S.C. § 1132(a) ..................................................................... 4

29 U.S.C. § 1132(g) ..................................................................... 6

# INTRODUCTION

Plaintiff Sandra M. Peters, individually and on behalf of the two certified classes (the "Classes"), respectfully seeks preliminary approval of the proposed settlement (the "Settlement") with Defendants Aetna Inc. and Aetna Life Insurance Co. ("Aetna") and OptumHealth Care Solutions, LLC ("Optum" and together with Aetna, "Defendants").

The Settlement accomplishes the goals of this litigation and will end this nearly decade-long dispute. The certified Classes consist of individuals enrolled in ERISA health plans administered by Aetna who received covered chiropractic and physical therapy services ("Optum Provider Services") where their financial responsibility for a claim, or their plan's responsibility, was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for such services (the "Challenged Rate"). They brought claims under ERISA seeking a court order ending Defendants' imposition of the Challenged Rate, requiring Defendants to compensate both members and plans that paid the Challenged Rate, and requiring Defendants to pay their attorneys' fees.

The Settlement materially advances each of these goals. Looking forward, the Aetna-Optum arrangement under which the Classes' claims arose has ended, so Aetna is no longer and will not be processing new claims using the Challenged Rate. Retrospectively, the Settlement provides $4.8 million dollars (the "Settlement Amount") that will first be used to compensate individuals for alleged overpayments that they paid, and then used to compensate Plans for their alleged overpayments. Although the precise amount of such compensation will depend on the number and value of claims filed, it is expected that (i) individuals will receive most of their alleged overpayments (for the ERISA claims of the "Member Claim Class," hereafter the "Member Class"); and (ii) Plans will receive a material percentage of their overpayments (for the "Plan Class" claims bearing on the Plans' payment of the Challenged Rate). Aetna will separately pay

the Classes' lawyers $3.55 million for attorneys' fees (the "Attorneys' Fee Amount"), meaning that the Classes' recoveries from the Settlement Amount will not be reduced to compensate their lawyers.

Were the litigation to continue, the Classes faced years of additional litigation with a highly uncertain outcome as to both liability and relief. These principal settlement terms—in light of the risks of litigation, the time value of money, and how long this case has been pending—make the Settlement extremely favorable for the Classes. The proposed Settlement easily satisfies the standards for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure.

### A. Factual Summary, Class Certification, and Denial of Summary Judgment

In June 2015, Plaintiff filed her complaint in this lawsuit (the "Action"). The Complaint alleged, on behalf of her and others similarly situated, that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA") and breached the terms of employee welfare benefit plans by improperly charging members of ERISA health care plans administered by Aetna, and the plans themselves, administrative fees pertaining to chiropractic and physical therapy performed by Optum's network of providers.

After substantial discovery, in 2018 Plaintiff moved for class certification, which the Court denied in March 2019. In May 2019, Defendants moved for summary judgment, which the Court granted in September 2019. (Docs. 242, 243.) Plaintiff appealed to the Fourth Circuit, which vacated the denial of class certification and reversed in part the grant of summary judgment. *Peters v. Aetna, Inc.*, 2 F.4th 199 (4th Cir. 2021).

Following remand to this Court, and after supplemental briefing, the Court granted Plaintiff's new motion for class certification in June 2023. (Doc. 272.) The certified Member Class was defined as:

> All participants or beneficiaries of ERISA health insurance plans insured or administered by Aetna for whom coinsurance responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

The certified Plan Class was defined as:

> All participants or beneficiaries of self-insured ERISA health insurance plans administered by Aetna for which plan responsibility for a claim was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum for the treatment provided.

The Court also appointed Zuckerman Spaeder LLP and The Van Winkle Law Firm as counsel for the Class ("Class Counsel"). *Id.* at 44.

After the Court's certification of the Classes, the Parties engaged in arms-length, good faith settlement discussions for almost one year. After the Court set trial for early 2025, on December 17, 2024, the Parties reached an agreement in principle on the material terms of settlement, executed a term sheet, and filed the term sheet under seal with the Court. (Doc. 317, 318.). By docket entries of December 10 and 17, 2024, the Court took the trial date and related pre-trial deadlines off calendar and ordered Plaintiff to file this motion.

## I.     DESCRIPTION OF THE SETTLEMENT

The proposed Settlement has three major components: (A) Defendants' payment of the Settlement Amount ($4.8 million) to remedy the Classes' alleged injuries under ERISA, to be allocated pursuant to Plaintiff's proposed Plan of Allocation; (B) a separate payment by Aetna of the Attorneys' Fee Amount ($3.55 million) to remedy the Classes' alleged entitlement to attorneys' fees under ERISA; and C) a release by the Classes of all claims against Defendants related to the subject matter of the Action.

3

## A. The Settlement Amount and Plan of Allocation.

The Classes sought money from Defendants for their alleged misconduct under 29 U.S.C. § 1132(a). Under the Settlement Agreement (attached as Exhibit 1), Defendants will pay the Classes the Settlement Amount—$4.6 million from Aetna and $200,000 from Optum (*see* Settlement Agmt. §§ 1.20, 2.7)—into an account administered by a third-party administrator approved by the Court (the "Settlement Administrator"). Within 30 days after preliminary approval, Aetna will pay $52,400 (the "Settlement Administration Amount") to contribute to the costs of notice. *Id.* § 2.6. The Settlement Amount will be paid within 30 days after the Effective Date of the Settlement. *Id.* § 2.7.

The Settlement Fund will consist of the Settlement Amount, less any named plaintiff incentive award and the Classes' share of settlement administration expenses reasonably invoiced by the Settlement Administrator. *Id.* § 1.11. The Settlement Administrator will distribute the Settlement Fund to members of the Classes according to the Plan of Allocation (attached as Exhibit 2). *Id.* §§ 1.17, 4.2.

The Plan of Allocation is designed to efficiently make pro rata payments to members and Plans whose proportional shares exceed the respective de minimis amounts for Member Class members and Plans.[1] Under the Plan of Allocation, the Settlement Administrator will determine each Member Class member's and each Plan's proportional share of the Settlement Fund based on each individual's and Plan's "Individual Claim" and "Plan Claim," respectively. *See* Ex. 2. The amount of an Individual Claim for a Member Class member (or Plan Claim for a Plan) is equal to the total excess amount that the Class Member (or Plan) paid for Optum Provider Services during the Class Period for claims where the Challenged Rate exceeded the provider's contracted rate

---

[1] These de minimis amounts are set at a level designed to ensure that the administrative costs of processing a settlement payment do not exceed the value of the payment itself.

with Optum, as measured by the difference between (A) Challenged Rate and (B) the provider's contracted rate with Optum for those claims. *Id.*[2]

For claims with a date of service through December 31, 2017, the amount of an Individual Claim will be based on Aetna's records. For claims with a date of service after 2017, the amount of an Individual Claim Loss will be based on Aetna's records plus information submitted by the Member Class member showing that the claim occurred at a time when their Plan document (the Summary Plan Description) did not include language disclosing that the allowed amount could include an administrative fee.[3]

Half of the Settlement Fund (about $2.4 million) will be initially allocated to pay members of the Member Class their proportional shares of their Individual Claims. If those shares collectively amount to less than half the Settlement Fund (that is, less than $2.4 million), the leftover amount will be added to the other half of the Settlement Fund, which will then be allocated to pay eligible Plans their respective proportional shares for the Classes' claims on behalf of their Plans.

Plaintiff requests that the Court appoint Atticus Administration, LLC to serve as the Settlement Administrator to oversee and implement the provision of Notice to the Classes and to administer the Settlement in accordance with the Settlement and Plan of Allocation. Atticus has significant experience serving as the administrator of class action settlements, including cases that

---

[2] As a simple example: If the Challenged Rate that a Class Member paid for one chiropractic and/or physical therapy session was $10, where the provider's contracted rate with Optum was $8, the Class Member's Individual Claim for that claim would be $2 ($10 - $8 = $2). If that Class Member had 10 such sessions, the total Individual Claim for the Class Member would be $20 ($2 per session x 10 sessions = $20).

[3] As part of the notice plan, Class members will be given directions explaining how to submit evidence to the Settlement Administrator to support their Individual Claim for claims with a date of service after December 31, 2017.

require the maintenance, handling, and protection of protected health information ("PHI"). *See* Declaration of Andrew N. Goldfarb ¶ 15 (attached as Exhibit 3).

## B.     The Attorney's Fee Amount

The Classes also sought payment by Defendants of Plaintiffs' legal fees, pursuant to 29 U.S.C. § 1132(g). Under the Settlement, Aetna has agreed to pay the Attorneys' Fee Amount separate and apart from the Settlement Amount. Optum will not make any payment for attorneys' fees or costs. *Id.* § 1.21. The Attorneys' Fee Amount will compensate Class Counsel for a portion of the significant investment of time and resources they have made during the nearly 10 years that this case has been litigated. The Attorneys' Fee Amount represents a "negative multiplier"—that is, Class Counsel will recover only about 50% of their lodestar at 2024 rates.

## C.  Release of Certain Claims against Defendants.

In exchange for Settlement Amount and the Attorney's Fee Amount, as well as the other consideration included in the Settlement Agreement, the members of the Classes agree to release Defendants (and related entities) from Released Claims (Settlement Agmt. § 4.6), which are defined in part as:

> [A]ny and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, contingent or non-contingent, accrued or unaccrued, known or unknown, that were asserted in the Action or that could have been asserted in the Action before the date of final approval of the settlement, including any and all claims relating to or arising from benefit claims in which member or plan responsibility for a claim for Optum Provider Services was assessed using an agreed rate between Optum and Aetna that exceeded the provider's contracted rate with Optum. For avoidance of doubt, Released Claims cover any and all claims relating to or arising from the subject matter of the Action.

*Id.* § 1.16. At the same time, Defendants (and related entities) will similarly release the members of the Classes, including Plaintiff, from any and all claims related to the subject matter of the Action. *Id.* § 4.6.

**D. Other Provisions.**

The proposed Settlement also contains the following provisions:

1.    Notice to the Class. The Settlement Agreement provides for a "Notice of Proposed Settlement of Class Action and Fairness Hearing" ("Notice of Settlement") to be sent to members of the Class within 60 days after the Preliminary Approval Order is entered by the Court. *Id.* §§ 1.12, 2.3. The proposed Notice of Settlement is attached as Exhibit B to the Settlement Agreement. Aetna will send the notice initially to Class members based on the last known address in its records, and the Settlement Administrator will undertake to locate updated addresses for Class members whom Aetna cannot locate or for whom the initial mailing is returned. *Id.* The Settlement and proposed Preliminary Approval Order contain specific provisions regarding the handling of this information, to ensure compliance with HIPAA and state privacy laws. *Id.* §§ 1.18, 2.5. The Settlement Administrator will use its best efforts to locate and notify Class members. As further described *infra* Section III, notice will occur principally by: (i) a summary (short-form) notice send in a sealed postcard via first-class U.S. Mail; and (ii) a Settlement website providing a "long-form" notice, which includes additional, detailed information about the case, the proposed settlement, and Class members' rights and obligations.

Under the Settlement, members of the Member Class will have the opportunity to exclude themselves from the Classes and opt out of the Settlement. The Notice of Settlement explains the opt-out and objection procedures, and the Settlement website will include opt-out and objections forms. Ex. B to Settlement Agmt. To be valid, a mailed opt-out or objection must be postmarked

within 40 days after the Notice of Settlement is issued. Settlement Agmt. §§ 2.4, 3.9; Ex. B to Settlement Agmt.

        2.    <u>Incentive award for named Plaintiff.</u> The Settlement Agreement provides that Plaintiff may request an incentive award of $20,000 to reflect her important contributions to this case. Settlement Agmt. §§ 1.11, 3.8.

        3.    <u>No further processing of claims under the Aetna-Optum arrangement at issue.</u> The contractual arrangement between Defendants under which the claims of Plaintiff and the Classes arose ended on or about April 1, 2023. Aetna agrees that it will not process any new claims subject to that arrangement and, as a result, will not issue any Explanation of Benefits forms ("EOBs") for new claims that relate to such arrangement. *See* Attachment A to Goldfarb Decl.

## II.    THE PROPOSED SETTLEMENT EASILY SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL

### A.    Legal Standard for Preliminary Approval.

In this Circuit, court review of a proposed class settlement has two phases. First, the Court determines as an initial matter whether the proposed settlement is in the "range of reasonableness," meaning that it is likely that the Court will approve it after interested parties have an opportunity to object. *See Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 WL 719031, *7 (D.S.C. Feb. 14, 2019) ("The purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is sufficiently within the range of reasonableness.") (internal quotation marks and citation omitted); *see also Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 1415625, *3 (D. Md. Jan 31, 2023). Second, the Court conducts a fairness hearing, during or after which it decides whether to grant final approval to the settlement. *See, e.g.*, *Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-55, 2023 WL 424736, *8 (E.D. Va. Jan. 26, 2023); *Manual for Complex Litig.* (Fourth) § 21.632–34 (2004).

For this first stage—assessing whether to preliminarily approve the settlement—the Court's analysis is guided by the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B)(i). The Rule 23(e)(2) factors are whether:

> (A)    the class representatives and class counsel have adequately represented the class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
> > (i)    the costs, risks, and delay of trial and appeal;
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)    the proposal treats class members equitably relative to each other.

The list of considerations in Rule 23(e)(2) are not intended to displace factors that the Circuits have used to assess settlements. In *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-59 (4th Cir. 1991), the Fourth Circuit set out factors by which to evaluate whether a proposed class action settlement is fair and adequate. The so-called "*Jiffy Lube* factors" "almost completely overlap with the…Rule 23(e)(2) factors." *Cantu-Guerrero v. Lumber Liquidators, Inc.,* 952 F.3d 471, n.8 (4th Cir. 2020).[4] Here, the notice, opt-out, and objection process will provide additional important information about the Settlement and how Class members view it; and courts in the Fourth Circuit considering proposed settlements give weight to the "overriding public interest in

---

[4] The *Jiffy Lube* factors for a class settlement's fairness are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. The *Jiffy Lube* factors for a class settlement's adequacy are (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

9

favor of settlement, particularly in class action suits," *Curtis v. Genesis Eng'g Sols., Inc.*, No. GJH-21-722, 2022 WL 1062024, *2 (D. Md. Apr. 8, 2022), quoting *Lomascolo v. Parsons Brinckerhoff, Inc.,* No. 1:08cv1310 (AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).

### B. The Proposed Settlement Satisfies the Standard for Preliminary Approval.

As shown below, the Settlement easily satisfies the factors set out in Rule 23(e)(2).

    1. <u>The Class representative and Class Counsel have adequately represented the Classes and are entitled to the incentive award and Attorneys' Fee Amount, respectively.</u>

The Court is likely to find that both the Class representative and Class Counsel have adequately represented the Classes, contributing substantially to the favorable outcome reflected in the Settlement.

<u>Class Representative</u>. In certifying the Classes, the Court found that Ms. Peters's claims were typical of those of other Class members and that her interests were aligned with those of the Class members. (Doc. 272 at 34-35.)

Throughout the long life of this case Ms. Peters has been a diligent, attentive, and unwavering advocate for the interests of the Classes. Her willingness to serve as the named plaintiff has made it possible to obtain substantial relief for the Classes. She dedicated hundreds of hours to the case. She closely followed case developments throughout the case; prepared for and gave a full-day deposition; met with Class Counsel to discuss litigation and trial strategy; and conferred with Class Counsel at key points during the settlement negotiations, emphasizing the need to address the core conduct by Defendants underlying the Action. *See* Goldfarb Decl. ¶¶ 11-14.

Ms. Peters more than "adequately represented the classes" and deserves a $20,000 incentive award to be paid from the Settlement Amount. Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (internal quotation marks and citation omitted). The factors for considering an incentive award are "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *In re MedStar ERISA Litig.*, No. JKB-20-1984, 2024 WL 4110941, at *9 (D. Md. Sept. 5, 2024) (internal quotation marks and citation omitted). Here, all those factors support an award for Ms. Peters. "A substantial incentive award is appropriate in a complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Clark v. Duke Univ.*, No. 1:16-cv-1044, 2019 WL 2579201, at *5 (M.D.N.C. June 24, 2019) (quoting *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 577 (D.S.C. 2015)). *See also, e.g.*, *Kelly v. Johns Hopkins Univ.*, 16-cv-2835-GLR, 2020 WL 434473, at *7-8 (D. Md. Jan. 28, 2020) (approving incentive awards of $20,000 to each of eight class representatives in an ERISA class action); *Skochin v. Genworth Fin., Inc.*, No. 3:19-cv-49, 2020 WL 6536140, at *11 (E.D. Va. Nov. 5, 2020) (approving $25,000 service award); *Clark*, 2019 WL 2579201 at *5 (approving incentive awards of $25,000 or $30,000 for each of the five named plaintiffs in ERISA class settlement).

<u>Class Counsel</u>. In the class certification decision, the Court also appointed Zuckerman Spaeder LLP and The Van Winkle Law Firm as Class Counsel, finding them "qualified and competent counsel" who are "qualified and experienced in actions like" this case and who "have invested significant time and resources in this matter and are committed to doing so in the future in order to represent the classes and vigorously prosecute the claims." (Doc. 272 at 41.) Class Counsel conducted years of discovery and briefed the original class certification and summary judgment motions before this Court. Faced with the Court's initial rejection of Plaintiff's positions in those motions, Class Counsel briefed, argued, and ultimately prevailed on appeal to the Fourth Circuit. Then after supplemental briefing on remand to this Court, the Court certified the Classes.

After securing certification of the Classes, Class Counsel continued to diligently pursue relief for the Classes, both by preparing for trial and by negotiating the favorable settlement for the Classes. In short, Class Counsel's efforts for Ms. Peters and the Classes, including the successful appeal to the Fourth Circuit, positioned the case to resolve by a negotiated resolution.

### 2. The Settlement was negotiated at arm's length.

The parties reached agreement on a proposed resolution of the case after nine and a half years of hard-fought litigation, including almost a year of arms-length, contentious negotiations during which both sides had counsel zealously representing their respective interests, and information that enabled them to evaluate the strengths and weaknesses of their respective cases. Counsel for Aetna and Class Counsel had numerous telephonic and video meetings, buttressed by extensive email communications, to discuss the scope, contours, and key terms of a resolution.

The negotiations intensified in the summer and early fall of 2024 after the Court entered a schedule setting deadlines for pre-trial activities (and as those deadlines approached). Indeed, as the Court is aware, the parties' negotiations went down to the wire: the parties reached agreement on a term sheet literally an hour before Class Counsel was set to travel to Asheville for a status conference with the Court. *See* Goldfarb Decl. ¶¶ 6-10.

### 3. The relief provided for the Class is adequate.

The Court is likely to find that the relief obtained for the Class easily satisfies the "adequacy" standard in Rule 23(e)(2), taking into account the substantial relief obtained for the Classes; the added costs, risks, and delay that trial and appeal would impose if the case were not resolved at this time; the proposed Plan of Allocation, which will efficiently distribute relief to Member Class members and Plans for their claims; the agreement for attorneys' fees, which is separate from and will not diminish the settlement's monetary relief for the Classes and represents

a "negative multiplier," i.e., only a fraction (about one-half) of Class Counsel's lodestar; and the equitable treatment of members of the Classes. *See* Fed. R. Civ. P. 23(e)(2)(C).

As noted above, Plaintiff brought this case with three main objectives: to end Defendants' practice of charging the Challenged Fee contrary to the written terms of Aetna's ERISA plans, including making misleading representations in EOBs about the Challenged Fee; to recover the payments, by Aetna plan beneficiaries and their Plans, of the Challenged Fees; and to recover the Classes' attorneys' fees. With respect to the first objective, the challenged arrangement ended during the litigation in April 2023. Aetna agrees that it will not process any new claims subject to that arrangement, and, as a result, will not issue EOBs for new claims that reflect the challenged arrangement. The Settlement also achieves the second and third objectives by ensuring significant monetary relief to the Classes, plus a separate payment of their attorneys' fees, while eliminating the risk of an adverse outcome after additional litigation and appeals.

a.    The recovery for the Classes is exceptional.

The Settlement provides exceptional monetary relief for the Classes and compensates them for their claims. Although the precise amount of such compensation will depend in part on the number and value of claims filed, Class Counsel expects that Member Class members who receive distributions are likely to recover most the Challenged Fees that they paid, that their Plans will recover well over 10% of their overpayments for the 2012-2017 period, and that Class Counsel will separately receive approximately 50% of their lodestar.

This expected recovery far exceeds recoveries of other approved ERISA class action settlements. *See, e.g.*, *Clark v. Duke Univ.*, No. 1:16-cv-1044, 2019 WL 2588029, at *5 (M.D.N.C. June 24, 2019) (monetary and nonmonetary relief of 12% of damages sought); *Ferguson v. PNC Fin. Servs. Grp., Inc.*, No. 2:19-cv-01135-MHH, 2024 WL 3015751, at *2 (N.D. Ala. June 14, 2024) (approving fees in connection with settlement recovering 7.7% of estimated damages); *In*

*re WorldCom, Inc. ERISA Litig.*, No. 02 Civ. 4816(DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (7% of maximum damages); *In re Syncor ERISA Litig.*, No. 2:03-2446-RGK-RC, ECF 300 at 9 & ECF 309 (C.D. Cal. Sept. 29, 2008 and Oct. 22, 2008) (8.7% of maximum damages); *In re Fremont Gen. Corp. Litig.*, No. 2:07-02693-JHN-FFM, ECF 277 at 10 & ECF 286 (C.D. Cal. July 11, 2011 and Aug. 10, 2011) (10.8% of maximum losses); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (3.2% of maximum damages); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (24.3% of maximum damages); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery).

      b.    <u>Costs, risks, and delay of trial and appeal.</u>

Although Plaintiff believes she would have a strong chance of prevailing at trial and on any subsequent appeals, the Classes would face both procedural and substantive obstacles to obtain final relief. These risks factored heavily into Plaintiff's evaluation of the case and her decision to settle. First, Plaintiff would have had to prevail before this Court at trial. Defendants would likely have sought to narrow or de-certify the Classes based on evidence relating to their disclosures to Plans during the Class Period. Such disclosures included annual disclosures to plan sponsors beginning in 2015 stating that Aetna sometimes contracts with vendors who are responsible for contracting with providers and that the rate Aetna pays to the vendors and charged to the plans includes an administrative fee for any delegated services by the vendor. In addition, in 2017 Aetna also revised its template administrative agreements with plan sponsors to include language like that in the plan sponsor disclosures. And beginning in plan year 2018, Aetna revised its template Summary Plan Description (SPD) documents to state that the "negotiated charge" includes "the amount we agree to pay directly to a network provider or third-party vendor (including any administrative fee in the amount paid)" (the "Admin Fee Language"). *See* Attachment A to Goldfarb Decl. While Plaintiff was prepared to address these issues had the case proceeded to trial,

Plaintiff had to weigh such evidence when evaluating the likelihood of ultimately prevailing in the case and the benefits of a settlement now that eliminated such risks.

Defendants would also assert a slew of factual and legal defenses to liability and relief, including that the disclosures described above defeated any allegation of injury. And Defendants would argue that the Classes could not obtain some or all of the relief they sought.[5] Assuming a decision for Plaintiff on liability and relief at trial, Plaintiff would also have to defeat Defendants' post-trial appeals on these and other issues, including the scope of any relief ordered. Plaintiff estimates it would take at least another two years, and possibly longer, to obtain a final judgment.

Resolution by the Settlement eliminates all of these risks, including the risk that the litigation could end with no recovery for the Classes. It also gives the Classes the benefit of the time value of money. By receiving money now, Class members can earn interest on, invest, or spend the money, rather than being forced to wait until final resolution of the litigation—which could easily take years on top of the over nine years the case has been pending already—to receive an amount that might well be less (or nothing). *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

At the same time, the scope of the mutual releases is fair to both parties. In consideration for the substantial benefits to Class members, the Settlement will allow Defendants to eliminate all legal risks from the Classes arising from or relating to the challenged conduct during the Class Period (except from those who opt out of the Settlement).

---

[5] *See, e.g.*, Doc. Nos. 259, 267, 275, 288.

c.    The proposed Plan of Allocation is fair and adequate.

A plan of allocation must be fair and adequate. However, it "need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *In re MedStar ERISA Litig.*, 2024 WL 4110941 at *5 (quoting *Boyd,* 299 F.R.D. at 461). The Court will likely find this factor satisfied because the proposed Plan of Allocation will fairly and efficiently distribute the Settlement Fund to the Classes. As described *supra*, all Member Class members who are eligible to receive a distribution—that is, those with a total Individual Claim above a de minimis threshold amount— will receive a substantial percentage of that Individual Claim.

The proposed Plan of Allocation provides equal relief to Member Class members for all of their claims throughout the Class Period. To account for Aetna's post-2017 changes to relevant plan language and Aetna's disclosures to plans, the Plan of Allocation limits Plans' recoveries to the 2012-2017 period, and requires that post-2017 Member Class claims be supported by information showing that when the Class member paid the Challenged Rate, their Plan document (i.e., the Summary Plan Description) did not include the Admin Fee Language.

d.    Proposed award of attorneys' fees and expenses.

In light of the favorable settlement for the Classes and Plaintiff's success in the course of the litigation after over nine years of litigation, the Court is likely to find that the Attorneys' Fee Amount (which will be paid separate and apart from the Settlement Amount) is fair, reasonable, and adequate. That is particularly true because the Attorneys' Fee Amount represents a "negative" multiplier (i.e., a multiplier below 1.0) on Class Counsel's time. *See, e.g.*, *Ciarciello v. Bioventus Inc.*, No. 1:23-cv-32, 2024 WL 5155539, at *13 (M.D.N.C. Dec. 18, 2024) (approving fee request where lodestar cross-check showed multiplier of .82, and citing cases indicated that courts in the Fourth Circuit regularly approve attorneys' fees as reasonable with multipliers "between 2 and

16

4.5"). Here, the Attorneys' Fee Amount reflects a negative multiplier of about .50 based on 2024 rates, a multiplier even smaller than that in *Ciarciello*; and as the court recognized in *Ciarciello*, that multiplier will decrease further as a result of Class Counsel's settlement approval and administration-related activities. *Id.* Under the proposed schedule, Plaintiff will file, well in advance of the deadline for opt-outs and objections, a motion supporting the request to award Class Counsel the Attorneys' Fee Amount. Class members will be able to evaluate the fee and expense request when deciding whether to participate in or object to the Settlement.

4. <u>The Settlement treats Class members equitably relative to each other.</u>

The Settlement Agreement does not improperly grant preferential treatment to the named Plaintiff. As described above, the proposed Plan of Allocation provides for efficient distribution to Class members based on a fair and reasonable allocation formula that applies to every Class member, including the named Plaintiff.[6]

## III. THE NOTICE PLAN SATISFIES RULE 23

Rule 23(e)(1)(B) requires that the Court direct that notice be given to class members who would be bound by the Settlement "in a reasonable manner." For classes certified under Rule 23(b)(1) or (b)(2), notice must be "appropriate." Fed. R. Civ. P. 23(c)(2)(A). The notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022).

---

[6] In the motion for final approval of the Settlement, Plaintiff will address any of the other *Jiffy Lube* factors not otherwise addressed in substance here, such as the degree of opposition to the settlement.

17

The notice plan proposed by Plaintiff satisfies Rule 23. Aetna will provide a "Class List" to the Settlement Administrator with the names and addresses of possible members of the Classes.[7] On the schedule approved by the Court, the short-form Notice of Proposed Settlement will be sent by Aetna directly to the persons on the Class List for whom Aetna has located addresses, in a sealed postcard via first class mail. The Settlement Administrator will help locate updated addresses for Class members for which Aetna has no (or no reliable) address, and for Class members whose first Notice is returned. The Settlement Administrator will mail the Notice to such persons. The mailed Notice will summarize the Settlement and the Class members' rights and options, direct Class members to the settlement website, and provide contact information for the Settlement Administrator. The website will provide all information required by a "long-form" notice about the case, including a description of the case and the Classes, the terms of the proposed settlement, a description of the relief obtained for the Classes, and directions on how to opt-out or object. The website will also have links to other case documents and opt-out or objection forms.

In short, the Notice plan will provide Class members with the information needed to allow them to understand the case, their options, and the relief they are likely to receive, so that they can make an informed decision about how to proceed.[8]

## IV.    PROPOSED SCHEDULE

Plaintiff proposes the following schedule for the period leading up to the fairness hearing at which the Court will consider whether to grant final approval to the proposed Settlement.

---

[7] This list is likely to be over-inclusive because some on the list who received Optum Provider Services never actually paid the Challenged Rate, because when they received the services they either (i) had not yet covered all of their deductible, in which case they were not charged the Challenged Rate, or (ii) had reached their annual out-of-pocket maximum, in which case they had no further cost-share obligations and their Plan paid the full amount.

[8] For people on the Class List whose mailed Notice is returned as undeliverable, the Settlement Administrator will use its best efforts to locate updated addresses and send the Notice to such persons at those updated addresses.

18

| DATE | EVENT |
|---|---|
| Day 1 | Order entered granting preliminary approval |
| Day 60 | Last day to issue initial Class notice |
| Day 79 | Plaintiff files request for attorneys' fees and expenses |
| Day 100 | Last day for Class members to opt out or object to Settlement |
| Day 114 | Last day for Plaintiff to file a motion for final approval of the Settlement and to respond to objections |
| Day 125 or after | Fairness hearing to consider final approval of Settlement |

## CONCLUSION

For the foregoing reasons, the Court should: (i) grant preliminary approval to the proposed Settlement Agreement; (ii) approve the proposed schedule concerning notice, opt-out, and objection deadlines; (iii) appoint Atticus as the Settlement Administrator; and (iv) set a hearing for final approval of the Settlement. A proposed order is attached as Exhibit A to the Settlement Agreement.

Respectfully submitted,

Dated:        February 27, 2025

ZUCKERMAN SPAEDER LLP

By: /s/Andrew N. Goldfarb
Andrew N. Goldfarb (*pro hac vice*)
1800 M Street, NW, Suite 1000
Washington, DC 20036
Tel:     (202) 778-1800
Fax:     (202) 822-8106
*agoldfarb@zuckerman.com*

Larry McDevitt
David M. Wilkerson
Heather Whitaker Goldstein
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
(828) 258-2991
lmcdevitt@vwlawfirm.com

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
Nell Z. Peyser (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 19th Floor
New York, NY 10022
Tel: (212) 704-9600
Fax: (212) 704-4256
*dbhufford@zuckerman.com*
*jcowart@zuckerman.com*
*npeyser@zuckerman.com*

*Attorneys for Plaintiff and the Classes*