# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:15-cv-00109-MR

| | |
|---|---|
| SANDRA M. PETERS, on behalf of herself and all others similarly situated, </br></br> Plaintiff, </br></br> vs. </br></br> AETNA, INC., AETNA LIFE INSURANCE COMPANY, and OPTUMHEALTH CARE SOLUTIONS, LLC, </br></br> Defendants. | **MEMORANDUM OF DECISION AND ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT** |

**THIS MATTER** is before the Court on the Plaintiff's Unopposed Motion for Final Approval of Class Settlement [Doc. 328] and the Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Costs and Service Award for Class Representative [Doc. 324].

## I. BACKGROUND

In June 2015, the Plaintiff Sandra M. Peters filed a putative class action complaint against the Defendants Aetna Inc., Aetna Life Insurance Company (collectively, "Aetna"), and OptumHealth Care Solutions, LLC ("Optum"), challenging the Defendants' imposition of Optum's administrative fees on her

chiropractic health care claims. [Doc. 1]. Specifically, the Complaint alleged that the Defendants violated ERISA by improperly charging members, and the plans themselves, administrative fees pertaining to chiropractic and physical therapy services performed by Optum's network of providers. [Id.]. The Defendants charged these fees by assessing the members' and plans' financial responsibility using an agreed rate between Aetna and Optum (the "Challenged Rate") that exceeded the provider's contracted rate with Optum for such services. [Id.]. The Complaint had three goals: stopping the Defendants from imposing the Challenged Rate (pursuant to 29 U.S.C. § 1132(a)), requiring the Defendants to reimburse members and plans for their overpayments (also pursuant to 29 U.S.C. § 1132(a)), and requiring the Defendants to separately pay the Plaintiffs' attorneys' fees (pursuant to 29 U.S.C. § 1132(g)). [Id.].

The Defendants each filed a Motion to Dismiss the Complaint, which the Court granted in part and denied in part. [Docs. 37, 39, 54]. The parties then conducted extensive discovery. [Doc. 326: Goldfarb Decl. at ¶ 25]. The Plaintiff served over sixty document requests and fifteen interrogatories and responded to thirty-four document requests and twenty-eight interrogatories. [Id.]. Collectively, the parties produced and reviewed thousands of documents. [Id.]. The Plaintiff's counsel took ten depositions of Aetna and

2

Case 1:15-cv-00109-MR     Document 330     Filed 09/04/25     Page 2 of 20

Optum witnesses, including corporate designee witnesses and a defense expert witness.  [Id.].  The parties also worked together to resolve multiple discovery-related disputes, exchanging dozens of letters and attending multiple meet-and-confers.  [Id.].  While the parties invested significant time in resolving these disputes on their own, there were a few issues that required judicial intervention, including the Plaintiff's filing of a motion to compel.  [Id.].  The Plaintiff also retained an expert witness, Dr. Stan Panis, who prepared an expert report.  [Id.].

In 2018, the Plaintiff moved for class certification, which the Court denied in March 2019.  [Doc. 203].  In May 2019, each Defendant separately moved for summary judgment, which the Court granted in September 2019.  [Docs. 242, 243].  The Plaintiff appealed to the Fourth Circuit, which in June 2021 vacated the denial of class certification and reversed in part the grant of summary judgment.  Peters v. Aetna, Inc., 2 F.4th 199 (4th Cir. 2021).

Following remand to this Court, and after supplemental briefing, in June 2023, the Court granted the Plaintiff's second motion for class certification, certifying two classes: a Plan Claim Class and a Member Claim Class (collectively, "the Classes").  [Doc. 272].  The Court also appointed Zuckerman Spaeder LLP ("Zuckerman") and The Van Winkle Law Firm ("Van Winkle") as Class Counsel.  [Id. at 44].

After the Court set a trial date for early 2025, Class Counsel worked diligently to prepare for trial, including mapping out all the evidence and preparing a detailed trial plan. [Doc. 326: Goldfarb Decl. at ¶ 30]. Class Counsel met frequently in the summer of 2024 to prepare for trial. [Id.].

After the Court's certification of the Classes, the parties engaged in arms-length, good faith settlement discussions for almost one full year while simultaneously preparing for trial. [Id. at ¶ 31]. The parties first negotiated a common fund for the benefit of the Classes. [Id.]. After reaching agreement on the common fund, the parties separately negotiated an attorneys' fee payment. [Id.]. After the Court set trial for early 2025, on December 17, 2024, the parties reached an agreement in principle on all material terms of settlement, executed a term sheet, and filed the term sheet under seal with the Court. [Docs. 317, 318].

Pursuant to the proposed settlement, Aetna agreed to pay $4.6 million for the benefit of the Classes, separate and apart from its payment to Class Counsel. Optum agreed to pay $200,000 for the benefit of the Classes. As for attorneys' fees and expenses, Aetna agreed to pay $3.55 million for the benefit of Class Counsel, separate and apart from its payment to the Classes. Pursuant to the parties' settlement agreement, Optum would not

pay attorneys' fees for the benefit of Class Counsel. [Doc. 321-1: Settlement Agreement].

On March 19, 2025, the Court granted preliminary approval of the settlement, including the retention of Atticus Administration, LLC ("Atticus"), to serve as the Settlement Administrator to give notice to the Classes and carry out such other responsibilities as provided for in the Settlement Agreement. [Doc. 322]. Aetna provided Atticus with records identifying 256,219 Class members. [Doc. 329-3: Bridley Decl. at ¶ 6]. Aetna then mailed the approved Short Form Notice[1] directly to these Class members consistent with the Settlement Agreement and pursuant to the Preliminary Approval Order. [Id. at ¶ 7]. For the 70 mailings that were originally returned as undeliverable, Atticus attempted to obtain updated addresses and re-mailed the Short Form Notice to 26 Class members for whom it could locate addresses. [Id.]. The overall mailing success rate was 99.87%. [Id.].

---

[1] The Short Form Notice provided basic information about the key components of the Settlement, including a description of the relief obtained, instructions on how to opt out and/or object, and the proposed amount of attorneys' fees and expenses. [Doc. 329-3: Bridley Decl. at ¶ 8, Ex. B]. It also directed Class members to the settlement website (www.aetnaoptumadminfeesettlement.com) created by Atticus to review the Long Form Notice, Settlement Agreement, and other important filings in the case, and provided contact information (email, phone, mailing address) for Atticus. [Id.]. Atticus received 593 calls to the hotline set up for the Settlement, and the Settlement website received 7,393 unique visits. [Id. at ¶¶ 8-9].

On June 20, 2025, the Plaintiff timely filed her unopposed Motion for Award of Attorneys' Fees and Costs and Service Award for Class Representative. [Doc. 324].

As of the July 10, 2025, deadline for opting out of the Settlement or objecting to it or the Fee Request, only twelve class members had opted out, and only one objection to the Settlement was received. [Doc. 329-3: Bridley Decl. at ¶ 10]. This objection, however, does not address the terms of the settlement explicitly but rather cites generalized concerns about misconduct in the healthcare space and irrelevant concerns about Medicare. [See Doc. 327]. Moreover, the objector does not appear to be a member of either of the Classes; rather, the objector notes that his wife is a class member but that she has declined to opt out. [Id.].

As required by the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"), on March 6, 2025, Atticus also sent notices of the proposed Settlement on behalf of each Defendant to appropriate State officials, the Attorney General of the United States, and the United States Secretary of Labor. [Doc. 329-3: Bridley Decl. at ¶¶ 4-5; Doc. 329-1: Doc. 329-1: Goldfarb Decl. at ¶ 6]. No recipient of the CAFA notice has raised any objection to the Settlement. [Doc. 329-1: Goldfarb Decl. at ¶ 6].

The Plaintiff, individually and on behalf of the two certified classes, now moves for final approval of the proposed settlement, including approval of the attorneys' fees, expenses, and service award contained therein.

## II.   STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires parties to seek approval from the Court before settling a class action lawsuit. See Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval."). When reviewing a proposed class action settlement, the Court is to view the terms as would a fiduciary for the class. See In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig., 952 F.3d 471, 483–84 (4th Cir. 2020). The Court may approve a proposed settlement "only after a hearing and only on finding that [the proposed settlement] is fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2).

The Fourth Circuit has developed multi-factor tests for determining whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2). For determining a settlement's fairness, the Court must consider the following factors:

> (1) the posture of the case at the time settlement was proposed;

> (2) the extent of discovery that had been conducted;
>
> (3) the circumstances surrounding the negotiations; and
>
> (4) the experience of counsel in the area of [the] class action litigation.

In re Jiffy Lube Sec. Litig., 927 F.2d 155, 159 (4th Cir. 1991).[2]  In assessing specifically the adequacy of a settlement, the Court must consider:

> (1) the relative strength of the plaintiffs' case on the merits;
>
> (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;
>
> (3) the anticipated duration and expense of additional litigation;
>
> (4) the solvency of the defendant[ ] and the likelihood of recovery on a litigated judgment[3]; and
>
> (5) the degree of opposition to the settlement.

Id.  Ultimately, the decision to approve a class action settlement is a matter within the wide discretion of the district court.  See In re: Lumber Liquidators, 952 F.3d at 484.

---

[2] While Jiffy Lube was decided prior to the 2018 amendments to Rule 23(e)(2), the Fourth Circuit has recognized that the Jiffy Lube factors "almost completely overlap with the new Rule 23(e)(2) factors."  In re: Lumber Liquidators, 952 F.3d at 484 n.8.

[3] As the Defendants appear to be solvent, this factor will not be discussed further herein.

## III. DISCUSSION

### A. Approval of Proposed Settlement

Consideration of the relevant Jiffy Lube factors leads this Court to conclude that the proposed settlement is fair. By the time that the parties reached a settlement in this case, the parties had conducted extensive discovery and had litigated the case vigorously up until the eve of trial. See Jiffy Lube, 927 F.2d at 159 ("a reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial"). The settlement was the product of arms-length negotiations, which by all indications was conducted in good faith and without collusion. The parties reached agreement on a proposed resolution of the case, including the separately negotiated attorneys' fees for Class Counsel, after nine and a half years of hard-fought litigation, including almost a year of arms-length, contentious negotiations during which the parties each had counsel zealously representing their respective interests and were in possession of information that enabled them to evaluate the strengths and weaknesses of their respective cases. Finally, the Plaintiff and the certified classes were represented by counsel who were highly experienced in healthcare-related class action litigation.

The Court further finds that the proposed settlement is adequate. Although the Plaintiff believes she would have a strong chance of prevailing at trial and on any subsequent appeals, the Plaintiff also admits that the Classes potentially faced serious procedural and substantive obstacles to obtaining final relief through continued litigation. First, the Plaintiff would have had to prevail before this Court at trial. The Defendants would likely have sought to narrow or de-certify the Classes based on evidence relating to their disclosures to Plans during the Class Period. Such disclosures included annual disclosures to plan sponsors beginning in 2015 stating that Aetna sometimes contracts with vendors who are responsible for contracting with providers and that the rate Aetna pays to the vendors and charged to the plans includes an administrative fee for any delegated services by the vendor. In addition, in 2017, Aetna also revised its template administrative agreements with plan sponsors to include language like that in the plan sponsor disclosures. Further, beginning in plan year 2018, Aetna revised its template Summary Plan Description (SPD) documents to clarify that the "negotiated charge" referenced therein included the administrative fee paid to Optum. These risks factored heavily into the Plaintiff's evaluation of the case and her decision to agree to the settlement. Further, the Plaintiff estimates it would take at least another two years, and possibly longer, to

obtain a final judgment. In that time, the parties would incur very substantial expenses in continuing this litigation due to the complexity of the issues involved and the work that would need to be done to try the case and then litigate all post-trial appeals. Rather than continuing down this uncertain path, the settlement gives the Classes the certainty of a favorable outcome and the benefit of the time value of money. Further, Class Counsel expects that individual Class members are likely to recover *all* of the Challenged Rates that they paid for the 2012-2017 period. While Counsel anticipates that plan Class members are likely to recover only 30-40% of their losses, this recovery is still significant in light of the particular challenges that the members of the Plan Class faced in pursuing their particular claims.

Finally, the Court notes that the overwhelmingly positive reaction of the Classes upon being provided with notice of the proposed settlement also demonstrates the satisfaction of Class Members with the settlement result and strongly favors final approval thereof.

For all of these reasons, the Court concludes that the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. Approval of Award of Fees and Costs

ERISA's civil enforcement provisions create a statutory entitlement to attorneys' fees. See 29 U.S.C. § 1132(g). Because this is a class action,

Rule 23(h) of the Federal Rules of Civil Procedure also authorizes the Court to award reasonable attorney's fees and costs. Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

To determine whether the requested fee award is reasonable, the Court must assess the factors identified in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), which are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 226 n.28. "Although the Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the factors are not always applicable." Firehouse Restaurant Group, Inc. v. Scurmont LLC, No. 4:09-cv-00618-RBH, 2011 WL 4943889, at *12 (D.S.C. Oct. 17, 2011) (citing EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir. 1990)).

12

Having determined that the proposed settlement is fair, reasonable, and adequate for the Class members, the Court also finds that nothing in the agreement regarding the payment of attorneys' fees indicates or implies any collusion for the benefit of the attorneys at the expense of the parties. Moreover, the Court finds that the agreement regarding attorneys' fees to be fair and reasonable based on the following relevant Barber factors.

### 1. Degree Of Success Obtained (Barber Factor 8)

The Fourth Circuit has "noted that 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'" In re Abrams & Abrams, P.A., 605 F.3d 238, 247 (4th Cir. 2010) (internal quotation marks and citation omitted); In re Wachovia Corp. ERISA Litig., No. 3:09cv262, 2011 WL 5037183, at *3 (W.D.N.C. Oct. 24, 2011) ("The result achieved should . . . be the most prominent factor considered in the analysis.").

Here, the Plaintiff achieved a significant degree of success. The lead Plaintiff brought this case with three main objectives: to end the Defendants' practice of charging the Challenged Fee contrary to the written terms of Aetna's ERISA plans, including making misleading representations in EOBs about the Challenged Fee; to recover the payments of the Challenged Rates by Aetna plan beneficiaries and their plans; and to separately recover the

13

Classes' attorneys' fees. [Doc. 1]. With respect to the first objective, the challenged arrangement ended during the litigation in April 2023. Aetna agreed that it would not process any new claims subject to that arrangement, and, as a result, would not issue EOBs for new claims that reflect the challenged arrangement. [Doc. 321-1: Settlement Agmt. § 2.8]. The settlement also achieves the second and third objectives by ensuring significant monetary relief to the Classes through a common fund, plus a separate payment of their attorneys' fees. [Id. at §§ 1.20, 1.21].

As for the monetary relief to the Classes, the settlement is exceptional in compensating them for their claims. As previously noted, Class Counsel expects that individual Class members are likely to recover *all* of the Challenged Rates that they paid for the 2012-2017 period, and that the plan Class members are likely to recover at least 30-40% of their losses. This result is also particularly impressive because it was entirely possible that the Classes would receive nothing if the case had progressed to trial. See Feinberg v. T. Rowe Price Grp., Inc., 610 F. Supp. 3d 758, 772 (D. Md. 2022) ("Given the Court's already-described skepticism regarding the likelihood of success at trial, at least to the magnitude proposed by Plaintiffs, the risk of nonpayment was very high.").

### 2. Magnitude, Complexity, and Risks of Litigation (Barber Factors 2, 4, 6, 7)

The magnitude and complexity of the ERISA claims brought, combined with Class Counsel's willingness to bring such claims with the understanding that Counsel would not be paid unless the Classes prevailed in some manner, also support the reasonableness of the requested fee award. From the outset, Class Counsel faced numerous, substantial risks to a successful outcome. Despite the complexity of the case, Class Counsel took it on a fully contingent basis and faced total nonpayment in the event of an unsuccessful outcome. By doing so, Class Counsel also forewent the opportunity to apply its significant time in this case to others for which it is paid on an hourly basis. Accordingly, these factors weigh in favor of approving the fee award.

### 3. Quality of Representation (Barber Factors 3, 9)

Class Counsel Zuckerman is a national leader in the field of healthcare-related ERISA litigation, including class actions, and Van Winkle is a highly experienced and respected civil litigation firm in this District. [Doc. 326: Goldfarb Decl. ¶¶ 9, 15-21; Doc. 326-1: Van Winkle Decl. ¶¶ 2-3]. Class Counsel's extensive experience resulted in strong advocacy for the Classes and positioned the case to resolve in a favorable settlement. This factor, therefore, weighs in favor of approving the requested fee award.

### 4. Amount of Recovery (Barber Factors 1, 5, 12)

As previously noted, Class Counsel's fees and expenses will be paid by Aetna separate and apart from the Defendants' $4.8 million common fund payment to the Classes. As such, the payment of attorneys' fees and expenses will not reduce the Classes' recovery in the least. Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr., No. 15-cv-1113 (VAB), 2016 WL 6542707, at *14 (D. Conn. Nov. 3, 2016) ("In cases such as this one, where the parties agree to a fee that is to be paid separately by the Defendants rather than one that come[s] from, and therefore reduces, the Settlement Fund available to the class, the Court's fiduciary role in overseeing the award is greatly reduced' because 'the danger of conflicts of interest between attorneys and class members is diminished.") (internal quotation marks and citation omitted).

The relief obtained for the Classes results directly from Class Counsel's expertise and its investment of significant time and effort in this case. As demonstrated by the submitted declarations, Zuckerman lawyers have invested 7,941.2 hours in the case and Van Winkle lawyers have invested 577.3 hours. [Doc. 326: Goldfarb Decl. at ¶ 32; Doc. 326-1: Van Winkle Decl. at ¶ 11]. In addition, Class Counsel staffed this case efficiently: one Zuckerman associate, Ms. Peyser, was primarily responsible for the day-

16

Case 1:15-cv-00109-MR    Document 330    Filed 09/04/25    Page 16 of 20

to-day management of this case and accounted for more of the total hours expended than any other lawyer. [Doc. 326: Goldfarb Decl. at ¶¶ 14, 21]. Ms. Peyser has a lower billing rate than the Zuckerman partners who oversaw her work. [Id. at ¶ 38]. Given the enormous amount of work necessary to investigate, litigate aggressively for ten years, and then negotiate the successful settlement, the Court finds that Class Counsel's expenditure of time on the case was reasonable.

As for counsel's hourly rates, the rates claimed by Class Counsel are well in excess of the prevailing local rates in this District and would result in a lodestar amount in excess of $8,000,000. While the Court would be inclined to find counsel's claimed hourly rates to be excessive, Class Counsel requests a fee that would be only about 39% of the claimed lodestar incurred to date. In light of the reduced fee request, the Court finds the overall requested fee award to be reasonable.

### 5. Public Policy Considerations (Barber Factor 10)

Public policy also favors the requested fee award because it is unlikely that the individual class members would have pursued their claims individually. Further, "[t]here are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation." In re

17

Allura Fiber Cement Siding Litig., No. 2:19-mn-02886-DCN, MDL No. 2886, 2021 WL 2043531, at *5 (D.S.C. May 21, 2021). This factor also weighs in favor of approval.[4]

### C. Approval of Service Award

The Settlement Agreement also provides that Ms. Peters as the lead Plaintiff may be paid $20,000 from the common fund to reflect her important contributions to this case. [Doc. 321-1: Settlement Agmt. § 1.11].

Lead plaintiff incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Berry v. Schulman, 807 F.3d 600, 613 (4th Cir. 2015) (citation omitted). The factors for considering an incentive award are "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." In re MedStar ERISA Litig., No. JKB-20-1984,

---

[4] Class Counsel is also entitled to reasonable reimbursement of non-taxable costs that were incurred in the prosecution of the class action. See 29 U.S.C. § 1132(g); see also Fed. R. Civ. P. 23(h). The negotiated amount Aetna has agreed to pay Class Counsel under the Settlement, $3.55 million, is inclusive of any non-taxable costs incurred by Class Counsel and therefore need not be addressed further.

2024 WL 4110941, at *9 (D. Md. Sept. 5, 2024) (internal quotation marks and citation omitted).

Here, the Plaintiff's willingness to serve as the named plaintiff has made it possible to obtain substantial relief for the Classes. During the course of the litigation, she dedicated over 200 hours to the case. [Doc. 326-2: Peters Decl. at ¶ 10; Doc. 326: Goldfarb Decl. at ¶ 43]. She closely followed case developments, prepared for and gave a full-day deposition, met with Class Counsel to discuss litigation and trial strategy, and conferred with Class Counsel at key points during the settlement negotiations, emphasizing the need to address the core conduct by the Defendants underlying the case. [Doc. 326-2: Peters Decl. at ¶¶ 11-15; Doc. 326: Goldfarb Decl. at ¶¶ 43, 45]. Accordingly, the Court finds that a $20,000 service award is warranted for Ms. Peters.

## IV. CONCLUSION

In sum, the Court finds that the proposed settlement is fair, reasonable, and adequate. The Court further finds that the proposed award of fees and expenses to Class Counsel and the service award to the Plaintiff Sandra M. Peters as the lead Plaintiff to be reasonable. Accordingly, the Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Costs and Service

19

Award for Class Representative [Doc. 324] and the Plaintiff's Unopposed Motion for Final Approval of Class Settlement [Doc. 328] are granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Unopposed Motion for Final Approval of Class Settlement [Doc. 328] is **GRANTED**, and the Class Settlement as set forth in the parties' Settlement Agreement is hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Unopposed Motion for Award of Attorneys' Fees and Costs and Service Award for Class Representative [Doc. 324] is **GRANTED**, and the award of attorneys' fees and costs to Class Counsel and the service award to the lead Plaintiff as class representative as set forth in the parties' Settlement Agreement are hereby **APPROVED**.

**IT IS FURTHER ORDERED** that the parties shall file a stipulation of dismissal with respect to all of the Plaintiffs' claims against the Defendants within thirty (30) days of the entry of this Order.

**IT IS SO ORDERED.**

Signed: September 3, 2025

*/s/ Martin Reidinger*
Martin Reidinger
Chief United States District Judge